UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SKILLZ PLATFORM INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVIAGAMES INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:21-cv-02436-BLF<br><br>[PROPOSED] SUPPLEMENTARY STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION<br><br>Judge: Hon. Susan van Keulen |

**1.    PURPOSE**

This Supplementary Stipulated Order (the "Order") will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Stipulation & Order RE: Discovery of Electronically Stored Information for Patent Litigation (ECF No. 56, the "August 20, 2021 ESI Order"), the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, the Stipulated Protective Order as Modified by the Court (ECF No. 58, the "Protective Order"), and any other applicable orders and rules. If a provision of this Order conflicts with the terms of the Protective Order, the Protective Order will control absent further order of the Court.

**2.    COOPERATION**

The Parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

**3.    LIAISON**

The Parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The Parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

**4.    PRESERVATION**

The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the Parties agree that, pursuant to the Court's "ESI DISCOVERY GUIDELINES Guideline 2.01 (Preservation)" ("Guidelines"), ESI to be preserved includes a designated custodian's ESI on any communication platform (e.g., email, instant messaging, text) that the custodian uses in carrying out the normal course and scope of his or her employment, regardless

of whether the platform is used by the Party.  Production from platforms not used by a Party will be addressed as needed.

**5.    ESI**

Identification of Custodians: No later than November 14, 2022, each side shall propose ten (10) of its own ESI custodians by name, title, and general job description (each an "Initial Custodian List").  As with Initial Disclosures, the "Initial Custodian List" shall reflect each side's good faith assessment of the persons or positions that are likely to have relevant information.  Each side will then have until November 17, 2022 to propose any changes to the Initial Custodian List.  The Parties shall promptly meet and confer as needed to reach an agreed-to set of custodians in accordance with this Court's Guidelines regarding each other's proposed custodians.  If the Parties do not reach agreement by November 21, 2022 on a final set of ten (10) custodians per side (each a "Final Custodian List"), the Parties shall submit any remaining dispute to the Court consistent with the Court's Guidelines.  Going forward, additional ESI custodians may be added only by a request to the Court supported by a showing of good cause.

Identification of Search Terms: No later than November 22, 2022, each side shall propose no more than ten (10) ESI search terms for each custodian on the other side's Final Custodian List (each an "Initial Search Term List").  The proposed search terms shall reflect each side's good faith assessment of terms that are likely to return relevant information.  Each side will then have ten (10) days from receipt of the other side's Initial Search Term List to test the efficacy of the proposed terms and propose any changes to the Initial Search Term List.  The parties will work in good faith to test the efficacy and proportionality of proposed search terms.  In addition, should search term testing reveal that a certain custodian(s) on either side's Final Custodian List lacks a material amount of ESI relevant to the case, the parties will meet and confer in good faith to revisit and/or modify the Final Custodian List to replace that custodian(s).  The parties shall promptly meet and confer as needed to reach final agreed-to set of search terms for each custodian and shall submit any remaining dispute to the Court consistent with the Court's Guidelines.  Going forward, additional ESI search terms may be added only by a request to the Court supported by a showing of good cause.

To the extent any Party objects that certain search terms will impose an undue burden or result in a number of documents disproportionate to the needs of the case, that Party shall provide a search term hit report for all terms the requesting Party proposed. To the extent feasible, the search term hit report must include information needed for the requesting Party to ascertain how many unique additional documents the objected-to search term(s) yields as compared to the remaining search terms to which the objecting Party does not object on the grounds of burden or proportionality. The objecting Party will accommodate reasonable requests for an additional search term hit report or reports to assist the requesting Party in modifying search terms to narrow the number of hits, if requested.

The Parties agree to meet-and-confer in good faith regarding search terms, data sources of the ESI, and custodians. If the Parties are unable to resolve any disagreements about the custodians, data sources, or search terms to be used for each Party's production, they shall submit any such dispute to the Court consistent with the Court's Guidelines.

The Parties shall substantially complete production of documents responsive to requests for production served to-date 40 days prior to the close of fact discovery.

Finally, for the avoidance of doubt, nothing in this Order permits a Party to otherwise withhold from production a known responsive document (e.g., responsive to a discovery request, relevant to the issues in the case, or that may otherwise lead to discovery of relevant information) within the Party's possession, custody, or control.

**6.    PRODUCTION FORMATS**

The Parties agree to produce for each document and electronic document in accordance with Exhibit A to the August 20, 2021 ESI Order regarding the document production specifications.

The Parties will use reasonable efforts to scan documents at or near their original size, so that the print or image of the document appears straight and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring any content of the document. The Parties agree not to degrade the searchability of documents as part of the document production process.

If particular documents warrant a different format, the Parties will cooperate to arrange for the mutually acceptable production of such documents.  For example, if the JPEG or TIFF images of a document cannot be produced with sufficient clarity, then a Party may request that such document be produced in native format instead.  Further, the Parties will meet and confer regarding the production specifications to be used in connection with the production of materials from instant messaging platforms to the extent such materials will be produced.

**7.     PHASING**

When a Party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the Parties agree to collect and produce responsive documents on a rolling basis, such that production of responsive documents ready for production is not delayed pending completion of the producing Party's investigation and collection.  The Parties do not otherwise agree to phasing of discovery.

**8.     DOCUMENTS PROTECTED FROM DISCOVERY**

a.   Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.  For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

b.   Communications involving trial counsel that post-date the filing of the Complaint need not be placed on a privilege log.

**9.     MODIFICATION**

This Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

**IT IS SO STIPULATED**, through Counsel of Record.

| | | |
|---|---|---|
| 1 | DATED:  November 7, 2022 | By: */s/ Chao "Wendy" Wang* |
| 2 | | Chao "Wendy" Wang, Bar No. 289325 |
| | | WWang@perkinscoie.com |
| | | PERKINS COIE LLP |
| 3 | | Counsel for Defendant AviaGames Inc. |

DATED:  November 7, 2022         By: */s/ Lance L. Yang*
                                 Lance L. Yang (Bar No. 260705)
                                 lanceyang@quinnemanuel.com
                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                 Counsel for Plaintiff Skillz Platform Inc.

IT IS ORDERED that the forgoing Agreement is approved.

Dated:  November 8, 2022         _____
                                 *(signature: Susan van Keulen)*

                                 HON. SUSAN VAN KEULEN
                                 UNITED STATES MAGISTRATE JUDGE