| | |
|---|---|
| Chao "Wendy" Wang, Bar No. 289325<br>WWang@perkinscoie.com<br>PERKINS COIE LLP<br>3150 Porter Drive<br>Palo Alto, CA 94304<br>Telephone: 650.838.4315<br>Facsimile: 650.838.4350 | Judith B. Jennison (Bar No. 165929)<br>PERKINS COIE LLP<br>JJennison@perkinscoie.com<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>Telephone: 206-359-3489<br>Fax: (206) 359-4489 |
| Matthew C. Bernstein, Bar No. 199240<br>MBernstein@perkinscoie.com<br>Joseph P. Reid, Bar No. 211082<br>JReid@perkinscoie.com<br>Miguel J. Bombach, Bar No. 274287<br>MBombach@perkinscoie.com<br>Abigail A. Gardner, Bar No. 334598<br>AGardner@perkinscoie.com<br>PERKINS COIE LLP<br>11452 El Camino Real, Suite 300<br>San Diego, CA 92130-2080<br>Telephone: 858.720.5700<br>Facsimile: 858.720.5799 | W. Matthew Pierce (*pro hac vice*)<br>WPierce@perkinscoie.com<br>PERKINS COIE LLP<br>1900 16th Street, Ste. 1400<br>Denver, CO 80202<br>Telephone: (303) 291-2300<br>Fax: (303) 291-2400<br><br>Dakota Paul Kanetzky (*pro hac vice*)<br>DKanetzky@perkinscoie.com<br>PERKINS COIE LLP<br>405 Colorado Street, Ste 1700<br>Austin, TX 78701<br>Telephone: (737) 256-6115<br>Fax: (737) 256-6300 |

*Attorneys for Defendant AviaGames Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SKILLZ PLATFORM INC., a Delaware corporation,<br><br>              Plaintiff,<br><br>   v.<br><br>AVIAGAMES INC., a Delaware corporation,<br><br>             Defendant. | Case No.: 5:21-cv-02436-BLF (SVK)<br><br>**DEFENDANT AVIAGAMES INC.'S OPPOSITION TO PLAINTIFF SKILLZ PLATFORM INC.'S EMERGENCY MOTION** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

I.   INTRODUCTION .......................................................................................................... 1

II.  LEGAL STANDARD ..................................................................................................... 2

III. ARGUMENT ................................................................................................................... 2

    A.   Skillz Misrepresents What it Alleges to be "Bots" ............................................. 2

    B.   Skillz's New Counsel's Do-Over Should be Rejected ........................................ 4

        1.   Skillz Cannot Establish Diligence Because it Had AviaGames' Source Code for Two Years and Did not Pursue ▬▬▬▬ .......... 4

        2.   Skillz's Appeal to Lark Chats Produced in Discovery Rings Hollow ........ 6

        3.   Skillz Made its Infringement Theory Clear in its Contentions ................... 7

        4.   Skillz Cannot Circumvent the Patent Rules and This Court's Schedule ...................................................................................................... 9

    C.   Skillz's Request is Driven by Ulterior Motives .................................................. 9

IV.  CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*ASUS Computer Int'l v. Round Rock Rsch., LLC*,
   No. 12-CV-02099 JST (NC), 2014 WL 1463609 (N.D. Cal. Apr. 11, 2014) ...................... 9, 10

*Byrd v. Guess*,
   137 F.3d 1126 (9th Cir. 1998) ........................................................................................... 2

*Galdamez v. Potter*,
   415 F.3d 1015 (9th Cir. 2005) ........................................................................................... 2

*Golden Bridge Tech. Inc v. Apple, Inc.*,
   No. 5:12-CV-04882-PSG, 2014 WL 1928977 (N.D. Cal. May 14, 2014) .............................. 9

*Google, Inc. v. Netlist, Inc.*,
   No. C 08-4144 ............................................................................................................... 2, 6

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ............................................................................................ 2

*Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,
   411 F. Supp. 3d 975 (N.D. Cal. 2019) ............................................................................... 9

*United States v. Dunnigan*,
   507 U.S. 87 (1993) ........................................................................................................... 3

-ii-   Case No.: 5:21-cv-02436-BLF (SVK)
OPPOSITION TO EMERGENCY MOTION TO REOPEN DISCOVERY

## I. INTRODUCTION

Skillz's emergency motion attempts to re-do its doomed infringement case by mischaracterizing AviaGames' software as using "bots." AviaGames does not use bots in cash games, and ███████████████████████████████████████████████████████████████. AviaGames' witnesses testified truthfully.

One undisputed fact—missing from Skillz's motion—warrants denying Skillz's motion to reopen discovery: Skillz's former counsel and its experts had AviaGames' complete code base ████████████████████████ for *two years* and did not pursue this theory. This is a patent case, and all relevant functionalities are in AviaGames' source code. Since 2021, Skillz's counsel and its four experts made numerous trips to inspect code. ████████████████████ ██████████████████████████████████████████ In the 433 pages of printed code, the ████████████████████████████████████████████████████████████████████████████████ ████████████████████████ Skillz's new counsel ignored the most important source code evidence in this software case, so its complaints about the Lark messages ring hollow. The Lark messages, which former counsel had access to for over three months and which new counsel analyzed in less than two weeks, were produced during the discovery period. Also missing from Skillz's motion is that AviaGames' 30(b)(6) technical witness Peng Zhang explained that AviaGames' "bot" usage, in the traditional sense, is limited to game tutorials. Good cause under Rule 16 requires a showing of diligence by the movant. Skillz's request must be denied due to its complete lack of diligence because Skillz could have raised this long before the eve of summary judgment.

The reality is, Skillz and its experts made a deliberate decision to not pursue this futile theory because it is entirely irrelevant to the '564 patent's claims. ████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Understanding the irrelevance of this feature, Skillz's former counsel and experts focused its entire infringement theory on AviaGames' iOS and Android App, running on an iPhone or Android device (*i.e.*, hardware; a "bot" is not hardware). Skillz neither raised any "bot" theory in its expert report nor moved to amend its

infringement contentions. New counsel having a new idea, predicated on falsehoods, is not a pass for Skillz to re-do its case. This motion was no "emergency" but rather a desperate attempt to distract from—and avoid—the merits of AviaGames' summary judgment motion.

Moreover, despite new counsel's feigned outrage, Skillz itself engages in the exact conduct it falsely accuses AviaGames of carrying out: its documents show that Skillz uses what its executives explicitly refer to as "bots." Even worse, Skillz's CEO Andrew Paradise lied about this exact issue a mere two weeks ago, when he falsely stated on a public shareholder call that "[t]he Skillz platform has never used bots and never will." He then vowed to go after competitors that he believes use bots. The motives behind Skillz's recent actions are transparent.

Finally, per the Court's instruction, AviaGames does not respond as to Skillz's requests for sanctions here, though it opposes all relief sought and reserves all rights related to the same.

## II.    LEGAL STANDARD

Modifying the scheduling order under Rule 16(b) requires the moving party to show good cause. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). The inquiry focuses on the diligence of the party seeking the modification. "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Id.* at 609; *see also Google, Inc. v. Netlist, Inc.*, No. C 08-4144 SBA, 2010 WL 1838693, at *2 (N.D. Cal. May 5, 2010) ("The critical issue is not *when* [movant] discovered this information, but rather, whether they *could have* discovered it earlier had it acted with the requisite diligence.") (emphasis in original). "In evaluating a motion to amend the pretrial order, a district court should consider four factors: (1) the degree of prejudice or surprise to the [non-moving party] if the order is modified; (2) the ability of the [non-moving party] to cure the prejudice; (3) any impact of modification on the orderly and efficient conduct of the trial; and (4) any willfulness or bad faith by the party seeking modification." *Galdamez v. Potter*, 415 F.3d 1015, 1020 (9th Cir.2005) (citing *Byrd v. Guess*, 137 F.3d 1126, 1132 (9th Cir. 1998)).

## III.   ARGUMENT

### A.    Skillz Misrepresents What it Alleges to be "Bots"

Skillz's new counsel conducted no research before making outlandish claims a mere 13

1    days after appearing.  For two years, Skillz's former counsel and its team of experts had full access
2    to AviaGames' source code, ███████████████████████████████, yet opted not
3    to accuse it of infringement due to its irrelevance.  *See Infra* § III.B.1 (discussing issue in detail).
4    But, before addressing Skillz's lack of diligence, a brief explanation of AviaGames' software
5    operation and Vickie Chen's and Jamie Leung's depositions is warranted given Skillz's
6    groundless—and serious—perjury allegations.
7            At the hearing, Skillz's new counsel asserted AviaGames used "bots," arguing they were
8    something that infiltrates someone's phone or runs amok on a server.  (*See* Ex. 1[1] (Hearing Tr. at
9    68:18-23.)  This is plainly untrue.  The functionality that Skillz mischaracterizes in AviaGames'
10   Pocket7Games is a real human player's ██████████████████
11   ████████████████████████████████████████████████████████
12   ████████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████████
14   ████████████████████████████████████████████████████████
15   ████████████████████████████████████████████████████████
16   ████████████████████  In all cases, AviaGames matches players of similar skill levels.
17   (*Id.* at ¶ 8.)  These implementations are not bots as Skillz alleges.  AviaGames only uses non-human
18   "bots" in new user tutorials, not cash games.  (*Id.* at ¶¶ 5, 9.)
19           Skillz's perjury allegations are equally untrue.  This functionality is not understood by either
20   Vickie Chen or Jamie Leung to be a "bot."  (Chen Decl. at ¶ 5; Leung Decl. at ¶ 5.)  The definition
21   of perjury requires three elements: (1) that a witness gave false testimony (2) on a material matter
22   (3) with willful intent rather than as a result of confusion, mistake, or faulty memory.  *United States*
23   *v. Dunnigan*, 507 U.S. 87, 94 (1993).  Ms. Chen and Mr. Leung, who are not programmers, where
24   asked in their 30(b)(1) capacity if AviaGames implemented bots, and answered truthfully: no.  (V.
25   Chen Decl. at ¶¶ 5-6; J. Leung Decl. at ¶¶ 5-6.)  AviaGames does not use bots in cash games.
26           The Court should not be swayed by new counsel's outrage at the hearing; it was merely

---

[1] The exhibits are attached to the declaration of Miguel Bombach, filed concurrently herewith.

1  theatrics.  As it turns out, ***Skillz*** is the only party here that implements "bots," as unequivocally
2  described by its ▮▮▮▮ documentations.  (▮▮▮▮
3  ▮▮▮▮
4  ▮▮▮▮
5  ▮▮▮▮
6  ▮▮▮▮
7  ▮▮▮▮ *see also* Ex. 4, SKLZPAT00009983 (describing
8  the use of a "real-time bot that the player will be matched against" in another separate mode).)  New
9  counsel's attempts to distract from the fact that they are seeking an infringement re-do after failing
10 to adduce any direct infringement evidence should carry no weight.
11
12
13
14
15
16
17
18
19
20
21
22
23
24      **B.**    **Skillz's New Counsel's Do-Over Should be Rejected**

           **1.**    **Skillz Cannot Establish Diligence Because it Had AviaGames' Source Code for Two Years and Did not Pursue this "Bot" Theory**

26      This is a patent case focused on software, and the functionality of AviaGames' games is in
27  the source code it provided in 2021.  The alleged "bot" function has never been a secret and has
28  been readily available to Skillz for two years.  In December 2021, Skillz requested and received

source code print-outs of 188 pages. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ A representative example is below, which says in plain language ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

But a layperson did not review AviaGames' source code. Skillz had a team of four experts, including their testifying expert Dr. Zagal, a PhD in Computer Science. Skillz, Dr. Zagal, and Skillz's former counsel presumably knew this ▮▮▮▮▮▮ entirely irrelevant, as they inspected but never accused this functionality. Tellingly, they used the initial source code print-outs (AVIA_SC000001-188) to develop their current infringement theories on other functionality (*see Infra* at §III.B.3), to respond to AviaGames' infringement-related interrogatories (Ex. 6 at 6-7 (Skillz Resp. to AviaGames, Inc.'s Second Set of Interrogatories)), and in their expert report. (Ex. 7 at ¶¶ 79-98.) Not once were the purported "bots" mentioned. To be clear, AviaGames' source code production was uncontrovertibly fulsome and gave Skillz everything it needed to explore its infringement case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Despite new counsel's hyperbolic statements to the contrary, Skillz's attorneys at Quinn Emanuel and their experts had full access to AviaGames' source code, and they conducted multiple inspections and requested multiple print-outs. In total, Skillz received 433 full pages of source code (Bombach Decl. at ¶ 22), which is nearly 2.5x the 200-page limit the parties had agreed to under the protective order (Dkt. 58 at 14). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Nothing was hidden from Skillz who, tellingly, had zero discovery complaints up until new counsel's strategy.

Source code is not the only thing ignored by Skillz's new counsel in its motion. Skillz also received testimony from AviaGames' programmer and CTO, Peng Zhang, who was designated to testify about technical concepts including matchmaking. (Ex. 9 (Zhang Dep. Tr. at 12:13-23); *see*

*also* Ex. 10 at 8 (Skillz's April 14, 2023 30(b)(6) Deposition Notice to AviaGames.))  He testified that the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇  For further source-code questions, he requested that he be provided with the code files to avoid speculating from memory.  (*Id.* at 74:9-13 (asking counsel for more code to answer question).)  Counsel did not provide Mr. Zhang the code because he did not print it out, and moved on.  (*Id.* at 74:14-16 (counsel admitting that "I don't know that we have it printed out, which is why I'm asking").).  Skillz's counsel never served a 30(b)(6) topic on what they ▇▇ ▇▇▇▇▇▇▇▇▇ and never complained about the adequacy or accuracy of Mr. Zhang's testimony.

Skillz clearly lacked diligence in bringing this motion.  In *Netlist*, the moving party contended it acted diligently because it only recently discovered non-public information through depositions. 2010 WL 1838693 at *2.  This Court disagreed and held that "[t]he critical issue is not ***when*** [the moving party] discovered this information, but rather, whether they ***could have*** discovered it earlier had it acted with the requisite diligence," such as reviewing the non-moving party's document production.  *Id.*  Here, Skillz had the code for two years and its experts and prior counsel chose not to pursue anything related to any alleged, irrelevant "bot."

Skillz's new counsel cannot claim that Skillz was sandbagged, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇  The truth of the matter is that new counsel made ***no effort*** to conduct due diligence—or seemingly even speak with Quinn Emanuel who seemingly refused to co-sign their meritless motion—before making baseless allegations.  This code was available for nearly two years, and had Skillz's former counsel or experts wanted to develop an infringement theory based on ▇▇▇▇▇▇▇▇▇▇▇ they had access to the source code to do so long ago.  They chose not to because it was irrelevant.

**2.    Skillz's Appeal to Lark Chats Produced in Discovery Rings Hollow**

Skillz's arguments that the most relevant discovery was withheld until the last second are simply wrong.  Skillz had access to AviaGames' entire source code base, which is the clearest source of technical operation, for years.  Further, the documents cited in Skillz's motion, which are mostly random IMs from random employees, were produced starting May 5, 2023, with native database files provided within a few days. (Ex. 11; Bombach Decl. at ¶ 14.)  This is three months

before the motion, and before the key depositions, and Skillz did not raise that it was burdened or otherwise request rescheduling or second depositions.

Skillz's excuse that it took time to process these Chinese-language messages is belied by the facts. First, Skillz's prior counsel (Quinn Emanuel) has the resources of a large law firm and at least two attorneys of record—who were extremely active in this case—who are fluent in Chinese. (Exs. 12 at 3 and 13 at 3 (Profiles of H. Wang and L. Yang of Quinn Emanuel).) Second, it only took new counsel 13 days to locate and translate these messages. Skillz's new counsel appeared and obtained access to AEO documents on July 28 (Dkt. 174; Dkt. 58 at ¶¶ 2.10, 7.3), and was able to uncover these messages, draft their motion, and prepare for the summary judgment hearing within 13 days. Skillz's story that this information was difficult to uncover is simply not true.

### 3. Skillz Made its Infringement Theory Clear in its Contentions

At the hearing, new counsel King & Spalding—after two weeks of being on the case—spit-balled many on-the-fly infringement theories, *e.g.*, bots infiltrate and take over someone's phone akin to a virus or that there are bots run amok on Apple's App Store playing games. (Ex. 1 at 68:18-23.) These outlandish theories are unsupported by the source code or any expert testimony.

Skillz's contentions and expert reports in this case made Skillz's infringement theory crystal clear: AviaGames' iOS and Android Apps running on a person's smartphone are accused. Skillz's infringement contentions alleged—under Patent L. R. 3-1(b), which requires the accused instrumentality to be identified with specificity—that AviaGames' "Pocket7Games application and its standalone game applications (both for Android and iOS, including Bingo Clash, Solitaire!, 21 Gold, Bubble Shot, Dunk Shot, Fruit Frenzy, 2048 Blitz, Explodocube, and Tile Blitz, infringe the Asserted Claims." (Ex. 14 at 2 (Skillz' Aug. 27, 2021, Infringement Contention Pleading).)

Skillz solidified its theory under Patent L. R. 3-1(c), which requires "[a] chart identifying specifically where each limitation of each asserted claim is found." Every single asserted claim of the '564 patent requires "receiving, at a client including an executable game instance" ('564 patent at 16:10-11, 16:61, 18:6), and Skillz identified AviaGames' iOS (and Android) Apps as the "executable game instance." (Ex. 15 at 2 (Ex. B to Aug. 27, 2021, Infringement Contentions.); *see also id.* at 19 (referencing same allegation for claim 11); *see also id.* at 23 (same for claim 18).)

Skillz repeated these allegations in their Dec. 17, 2021 Amended Infringement Contentions. (Ex. 16 at 2, 31, 36 (Ex. B to Dec. 17, 2021, Amended Infringement Contentions.)) Moreover, the claims further require "executing the game instance . . . such that a beginning of gameplay experience is common between the game instance and a second game instance executing on a second client" ('564 patent at 16:21-27, 17:5-11, 18:18-23), where Skillz alleged that "an iOS or Android client executing the P7G software executes a game instance to provide an online competition to a player" in all its contentions. (Ex. 15 at 8, 21 (referencing same allegation for claim 11), 24 (same for claim 18); *see also* Ex. 16 at 14, 33, 35.) Skillz's unmistakable identification from Ex. 15 at 2 is below.



Skillz's expert, Dr. Zagal, adopted this position in his report. (*See, e.g.,* Ex. 7 (Zagal Rpt.) at ¶ 95 ("The P7G apps include executable game instances that run at a client. For example, as discussed above, the P7G apps are mobile applications that run, or 'execute,' on iOS and Android devices."); *see also id.* at ¶ 115, ¶ 123.) He repeated the same allegation for the executable game instance in other clauses. (*Id.* at ¶ 99 ("[T]he P7G apps execute a game instance at a user's mobile device (e.g., an iPhone, iPad, or Android device), and use pseudo-random numbers generated using the received pseudo-random number seed to provide the same 'random' elements to all players in a match."); *see also id.* at ¶ 115, ¶ 123. He then confirmed this understanding at deposition. (Ex. 17 at 36:17-37:24 (Zagal Dep. Tr.) ("[I]t's what's on the claimed device, which in this case is both. It's the Pocket7Games, which is an app, but then also, if the games are stand-alone, then those also count."). Although Skillz and its expert reviewed all of AviaGames' source code

they appear nowhere in Skillz's infringement contentions or expert report.

Skillz's new counsel's theory makes no sense. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ to the allegation does not change the fact that it is always a human playing a game on an iPhone or an Android device.

### 4. Skillz Cannot Circumvent the Patent Rules and This Court's Schedule

Skillz's new counsel's attempt to introduce a new infringement theory days before a summary judgment hearing is beyond the pale and flies in the face of the Patent Local Rules. The Rules "exist[] to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." *Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *3 (N.D. Cal. May 14, 2014); *see also Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, 411 F. Supp. 3d 975, 981 (N.D. Cal. 2019) (the rules are "designed to provide structure to discovery and to enable the parties to move efficiently toward claim construction and the eventual resolution of their dispute"). Undisclosed theories cannot be provided via expert report or motion, and will be stricken. *ASUS Computer Int'l v. Round Rock Rsch., LLC*, No. 12-CV-02099 JST (NC), 2014 WL 1463609, at *4 (N.D. Cal. Apr. 11, 2014) (striking expert report for changing identification of elements between contentions and report.)

Initial infringement contentions were first served on August 27, 2021 (Ex. 14) and amended on December 17 (Ex. 15), a claim construction order was issued on June 21, 2022 (Dkt. 117), discovery closed on May 25, 2023 (Dkt. 146), expert reports were served on May 26, 2023 (Dkt. 146), and Skillz was allowed to amend its complaint on June 21, 2023 (Dkt. 154). There is no legitimate reason for a do-over. And, even if Skillz were allowed to take further discovery, its efforts will be futile as it has no basis to amend its contentions. Skillz had the requisite source code for two years and has no legitimate excuse for missing every single deadline for disclosing its new theory, and it should not be allowed to re-do an entire case simply because it wants to.

### C. Skillz's Request is Driven by Ulterior Motives

Skillz's motion is nothing more than an attack on AviaGames' business and attempt to re-do this case. On Skillz's August 2, 2023 Q2 earnings call, CEO Andrew Paradise publicly declared: "[t]he Skillz platform has never used bots and never will." (Ex. 18 at 2 (Skillz earnings call

1  transcript).) This was a lie. Skillz unequivocally uses bots, as detailed above. Mr. Paradise also
2  stated that "we intend to address the issue and increase customers' visibility into those competitors
3  they're [SIC] using bots." *Id.* A little more than a week later, Skillz filed the Emergency Motion,
4  which Quinn Emanuel seemingly refused to co-sign.

5        In doing so, Skillz blindsided AviaGames with outlandish new allegations (*e.g.*, bots,
6  perjury, RICO threats, and sanctions) on old evidence, when it knew full-well that AviaGames'
7  counsel was preparing for summary judgment. Skillz and its new counsel are making a mockery
8  of the Court's procedures and rules, and ignoring common professional decency to co-counsel and
9  decorum before the Court. The timing makes Skillz's true motives clear: to thwart AviaGames'
10 summary judgment motion, and get a do-over on its case, all while smearing AviaGames. Skillz
11 should be bound by the rules, as well as its many strategic decisions made throughout discovery.

12 **IV.  CONCLUSION**

13       No further discovery is warranted, and AviaGames opposes all relief sought by Plaintiff for
14 the reasons described herein. To the extent that the Court is inclined to re-open discovery, it should
15 be strictly confined to the purported ▮▮▮▮▮ and nothing more. As the Court is well-aware,
16 Skillz has zero record evidence of direct infringement. (*See, e.g.*, Ex. 1 at 62:4-6; *id.* at 66:20-67:1
17 (Skillz "adduc[ing] trial testimony that they did play in the U.S." cannot defeat summary judgment
18 because Skillz "[doesn't] know what any one of them would say" and is "speculating they would
19 support" it)). Skillz should not be allowed to try to fish for new evidence it wishes it had raised or
20 otherwise discovered to oppose summary judgment, such as AviaGames' use or testing.

21       Moreover, Skillz should not be allowed to supplement its contentions, or enter new expert
22 opinion, as it had AviaGames' source code for nearly two years and chose the infringement theories
23 it now relies upon. Further, to the extent that the Court opens discovery, AviaGames requests
24 reciprocal discovery on the use of bots in Skillz's allegedly embodying platform.

25       Finally, because of Mr. Paradise's earnings call statements about competitors' bot use and
26 his intention to expose it to consumers (and in light of the recent press related to the same),
27 AviaGames requests leave to amend its answer to add counterclaims related to unfair competition
28 and intentional interference with contractual relationships, and to add an unclean hands defense.

DATED: August 18, 2023

**PERKINS COIE LLP**

By: */s/ Chao "Wendy" Wang*
 Chao "Wendy" Wang, Bar No. 289325
 WWang@perkinscoie.com

*Attorneys for Defendant AviaGames Inc.*