# EXHIBIT C

1

```
01:28:51   1              IN THE UNITED STATES DISTRICT COURT

           2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

           3                      SAN JOSE DIVISION

           4
               SKILLZ PLATFORM, INC.,       )
           5                                 )   CV-21-2436-BLF
                          PLAINTIFF,         )   SAN JOSE, CALIFORNIA
           6                                 )
                    VS.                      )   AUGUST 15, 2023
           7                                 )
               AVIAGAMES, INC.,             )   PAGES 1-78
           8                                 )
                          DEFENDANT.         )
           9                                 )
              _____)
          10
                        TRANSCRIPT OF PROCEEDINGS
          11          BEFORE THE HONORABLE BETH LABSON FREEMAN
                         UNITED STATES DISTRICT JUDGE
          12

          13   A P P E A R A N C E S:

          14

          15   FOR THE PLAINTIFF:    BY:  JENNIFER TAYLOR STEWART
                                     KING & SPALDING LLP
          16                         50 CALIFORNIA STREET, SUITE 3300
                                     SAN FRANCISCO, CA 94111
          17

          18   FOR THE PLAINTIFF:    BY:  CHRISTOPHER CHARLES CAMPBELL
                                     KING & SPALDING LLP
          19                         1650 TYSONS BLVD, SUITE 400
                                     MCLEAN, VA 22102
          20

          21            APPEARANCES CONTINUED ON THE NEXT PAGE

          22

          23   OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                           CERTIFICATE NUMBER 13185
          24

          25       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                       TRANSCRIPT PRODUCED WITH COMPUTER
```

UNITED STATES COURT REPORTERS

---

2

```
 1   APPEARANCES CONTINUED:

 2

 3   FOR THE PLAINTIFF:    BY:  BRITTON FREDERIC DAVIS
                           KING & SPALDING LLP
 4                         1401 LAWRENCE STREET, SUITE 1900
                           DENVER, CO 80202
 5

 6   FOR THE PLAINTIFF:    BY:  MATTHEW DAVID WOOD
                           KING & SPALDING LLP
 7                         500 W 2ND ST.
                           AUSTIN, TX 78701
 8

 9   FOR THE PLAINTIFF:    BY:  YUSHAN LUO
                           KING & SPALDING LLP
10                         1700 PENNSYLVANIA AVE. NW
                           WASHINGTON, DC 20006
11

12   FOR THE PLAINTIFF:    BY:  RON HAGIZ
                           QUINN EMANUEL URQUHART & SULLIVAN LLP
13                         51 MADISON AVE, 22ND FLOOR
                           NEW YORK, NY 10016
14

15   FOR THE PLAINTIFF:    BY:  LANCE L. YANG
                           QUINN EMANUEL URQUHART & SULLIVAN, LLP
16                         865 S. FIGUEROA STREET, 10TH FLOOR
                           LOS ANGELES, CA 90017
17

18   FOR THE DEFENDANT:    BY:  CHAO WENDY WANG
                           PERKINS COIE LLP
19                         3150 PORTER DRIVE
                           PALO ALTO, CA 94304
20

21   FOR THE DEFENDANT:    BY:  MIGUEL JOSE BOMBACH
                                ABIGAIL GARDNER
22                         PERKINS COIE LLC
                           11452 EL CAMINO REAL, SUITE 300
23                         SAN DIEGO, CA 92130

24   ALSO PRESENT FOR THE DEFENDANT:   PING WANG
                                       SCOTT LEICHATANH
25
```

UNITED STATES COURT REPORTERS

---

3

```
            1   SAN JOSE, CALIFORNIA          AUGUST 15, 2023

            2               P R O C E E D I N G S

            3   (COURT CONVENED AT 1:32 P.M.)

01:33:01    4         THE COURT:  GOOD AFTERNOON, EVERYONE.  WELCOME.

01:33:03    5   PLEASE BE SEATED.

01:33:04    6   LET'S CALL THE CASE AND GET YOUR APPEARANCES.

01:33:06    7         THE CLERK:  CALLING CASE 21-2436.  SKILLZ PLATFORM,

01:33:12    8   INC. VERSUS AVIAGAMES, INC.

01:33:14    9   COUNSEL, IF YOU WOULD PLEASE STATE YOUR APPEARANCES.

01:33:16   10         MS. STEWART:  YES.  GOOD AFTERNOON, YOUR HONOR.

01:33:18   11   JENNIFER STEWART FROM KING & SPALDING ON BEHALF OF

01:33:21   12   PLAINTIFF, SKILLZ PLATFORM, INC.

01:33:23   13         THE COURT:  YOU ARE WELCOME, BUT I DON'T KNOW WHY YOU

01:33:24   14   ARE SITTING ON THE WRONG SIDE OF THE COURTROOM.

01:33:28   15         MS. STEWART:  WE ASKED THAT SAME QUESTION,

01:33:30   16   YOUR HONOR.

01:33:30   17         THE COURT:  SO YOU NEED TO MOVE, BECAUSE THE COURT

01:33:32   18   REPORTER AND I ARE SO GEARED TO IT BEING ONE WAY.  AND I

01:33:35   19   APOLOGIZE, BUT IT'S -- I THINK YOU UNDERSTAND.  ENJOY YOUR

01:33:45   20   PROXIMITY TO THE JURY BOX.

01:34:17   21   THANK YOU ALL FOR YOUR COURTESY ON MAKING THE MOVE, I

01:34:24   22   REALLY APPRECIATE IT.

01:34:45   23         MS. STEWART:  APOLOGIES FOR THAT, YOUR HONOR.

01:34:47   24         THE COURT:  OKAY.  SO IN THIS COURTROOM, WE ARE A

01:34:50   25   LITTLE BIT BOUND BY THE MICROPHONES, AND SO FOR YOUR
```

UNITED STATES COURT REPORTERS

---

4

```
01:34:54    1   APPEARANCES, OF COURSE JUST LEAN IN, BUT WHEN YOU ARE ACTUALLY

01:34:57    2   ARGUING, I WILL NEED YOU TO STEP UP TO THE PODIUMS.

01:35:00    3   SO LET'S TRY THAT AGAIN, AND THANK YOU.

01:35:03    4         MS. STEWART:  UNDERSTOOD.

01:35:04    5   GOOD AFTERNOON, YOUR HONOR.  JENNIFER STEWART FROM KING &

01:35:08    6   SPALDING, ALONG WITH MY COLLEAGUES BRITT DAVIS, CHRIS CAMPBELL,

01:35:14    7   MATT WOOD --

01:35:17    8         THE COURT:  HELLO ALL.

01:35:19    9         MS. STEWART:  -- AND YUSHAN LUO.

01:35:22   10         THE COURT:  MR. LUO.

01:35:24   11         MR. CAMPBELL:  YOUR HONOR, WE HAVE ALSO WITH US

01:35:26   12   CO-COUNSEL.

01:35:27   13         MR. YANG:  YOUR HONOR, LANCE YANG FROM QUINN EMANUEL

01:35:29   14   ON BEHALF OF PLAINTIFF, AND RON HAGIZ, ALSO FROM QUINN EMANUEL.

01:35:41   15         MS. STEWART:  THANK YOU, YOUR HONOR.

01:35:41   16         MS. WANG:  GOOD AFTERNOON, YOUR HONOR.

01:35:42   17   WENDY WANG AT PERKINS COIE, REPRESENTING AVIAGAMES, INC.

01:35:47   18   WITH ME ARE MY COLLEAGUE, MR. MIGUEL BOMBACH AND

01:35:51   19   MS. ABIGAIL GARDNER, ALSO FROM PERKINS COIE.

01:35:55   20   WE ALSO INVITED OUR CLIENTS.  WE HAVE AVIAGAMES'

01:36:00   21   CO-FOUNDER, PING WANG, AND ALSO OUR GENERAL COUNSEL,

01:36:04   22   MR. SCOTT LEICHATANH.  AND IT'S GREAT TO SEE YOU AGAIN IN

01:36:06   23   PERSON NOW.

01:36:06   24         THE COURT:  THANK YOU.

01:36:07   25   SO MS. WANG, IT'S BEEN A LONG TIME SINCE IT'S BEEN IN
```

UNITED STATES COURT REPORTERS

5

01:36:11  1  PERSON, HASN'T IT.

01:36:12  2      ALL RIGHT.  SO LET ME LAY OUT HOW I WOULD LIKE TO PROCEED

01:36:16  3  THIS AFTERNOON.  WE HAVE A LOT TO COVER.  I HAVE A 3:30 HARD

01:36:20  4  STOP BECAUSE I HAVE OTHER HEARINGS THAT I HAVE TO DO ON ZOOM.

01:36:27  5      I WANT TO DISCUSS BRIEFLY, THE DOCUMENT ENTITLED

01:36:31  6  "EMERGENCY MOTION TO REOPEN DISCOVERY" FILED BY SKILLZ THIS

01:36:35  7  WEEK AND SEE WHAT WE ARE GOING TO DO WITH THAT, HOW WE ARE

01:36:39  8  GOING TO PROCEED.

01:36:39  9      THEN I THINK I WOULD LIKE TO START WITH SKILLZ'S MOTION,

01:36:43 10  THE ISSUES ARE I THINK A LITTLE MORE DISCREET AND FOCUSED.  AND

01:36:47 11  THEN WE WILL GO TO THE MORE TRADITIONAL DEFENDANT'S MOTION ON

01:36:50 12  INVALIDITY AND NON-INFRINGEMENT.

01:36:52 13      SO IT'S A LOT TO COVER, AND I MAY BE PUSHING YOU ALONG,

01:36:58 14  ALTHOUGH IT WOULD BENEFIT ME TO HEAR YOUR ARGUMENT FOR LONGER,

01:37:04 15  BUT THE TWO HOURS IS ALL I HAVE.

01:37:06 16      LET ME FIRST TURN -- MS. STEWART, I DON'T KNOW -- IS IT

01:37:09 17  MR. CAMPBELL?

01:37:10 18      MR. CAMPBELL:  IT IS INDEED, YOUR HONOR.

01:37:11 19  AND I ASSUME THIS IS THE PODIUM?  FIRST TIME.

01:37:13 20      THE COURT:  YES.

01:37:14 21      MR. CAMPBELL:  THANK YOU.

01:37:16 22  SO AS YOUR HONOR OBSERVED, WE DID FILE AN EMERGENCY MOTION

01:37:19 23  WITH THE COURT.  I'M WITH THE LAW FIRM OF KING & SPALDING.  WE

01:37:25 24  RECENTLY CAME INTO THIS CASE AND WE ARE WORKING WITH

01:37:27 25  CO-COUNSEL, QUINN EMANUEL.

UNITED STATES COURT REPORTERS

6

01:37:30  1      AND OUR INVOLVEMENT HAS BEEN VERY BRIEF, COUPLE WEEKS,

01:37:34  2  THREE WEEKS AT MOST, NOT EVEN THAT, BUT WE CAME ACROSS SOME

01:37:39  3  EVIDENCE THAT WAS INCREDIBLY DISTURBING.  WE BELIEVE THAT

01:37:45  4  WITNESSES FROM AVIA HAVE PERJURED THEMSELVES, THEY HAVE NOT

01:37:52  5  BEEN HONEST WITH COUNSEL FOR SKILLZ, THEY HAVE NOT BEEN HONEST

01:37:57  6  WITH SKILLZ.  WE BELIEVE THAT THEY HAVE HID CRITICAL EVIDENCE

01:38:00  7  IN THIS CASE THAT BEARS DIRECTLY ON THE ISSUES OF INFRINGEMENT,

01:38:06  8  WILLFUL INFRINGEMENT, ENHANCED DAMAGES, AND ALSO FEES

01:38:12  9  ASSOCIATED WITH THIS.

01:38:13 10      SO IT ALL STARTS WITH HOW AVIA REPRESENTS ITSELF TO THE

01:38:21 11  OUTSIDE WORLD.  THEY HOLD THEMSELVES OUT AS A TRUSTED PLATFORM,

01:38:26 12  AND IT TELLS THE PUBLIC THAT THEY ARE LEGITIMATE.  IT TELLS THE

01:38:30 13  PUBLIC THAT THEY HAVE NO FINANCIAL INTEREST IN THE OUTCOME OF

01:38:34 14  THE CASH GAMES.  BUT THAT'S ALL A LIE, AND WE FIGURED OUT THAT

01:38:40 15  LIE BECAUSE WE GOT, AFTER THE CLOSE OF FACT DISCOVERY, A SLEW

01:38:45 16  OF DOCUMENTS THAT SHOW EXACTLY WHAT THEY ARE DOING.  THEY ARE

01:38:49 17  USING ROBOTS, THEY ARE CHEATING THE PUBLIC.

01:38:52 18      SO AVIA'S SENIOR EXECUTIVES, INCLUDING THEIR CO-FOUNDER,

01:38:57 19  MS. VICKI CHEN, WHO IS THE CEO, SHE LIED ABOUT THE USAGE OF

01:39:02 20  BOTS UNDER OATH.  SHE WAS ASKED DIRECTLY THAT QUESTION.  AND AS

01:39:07 21  WELL, THE VP OF MARKETING, LIKEWISE WAS ASKED THE QUESTION

01:39:13 22  ABOUT WHETHER AVIA USES BOTS, AND HE CATEGORICALLY SAID "NO."

01:39:18 23      AND WHY IS THIS IMPORTANT?  IT'S IMPORTANT BECAUSE IT GOES

01:39:21 24  DIRECTLY TO INFRINGEMENT, THE INSTANCE OF THAT BOT IS

01:39:24 25  PERFORMING THE FUNCTIONALITY, WE BELIEVE, OF THE CLAIM.  IT

UNITED STATES COURT REPORTERS

7

01:39:26  1  GOES TO DAMAGES.  DAMAGES ARE CRITICAL HERE.

01:39:28  2      SO WHEN YOU PLAY A BOT, YOU AND I, YOUR HONOR, WE ARE

01:39:31  3  PLAYING THE GAME OF BINGO, THE ENTRY FEE IS A DOLLAR, SO YOU

01:39:37  4  ARE PLAYING THE GAME, YOU THINK YOU ARE PLAYING AGAINST ANOTHER

01:39:42  5  PERSON, BUT YOU ARE NOT, YOU ARE PLAYING A BOT, I'M THE BOT.

01:39:45  6      IF YOU LOSE THAT GAME, AND THEY CAN DECIDE IF YOU ARE

01:39:47  7  GOING TO WIN OR LOSE, YOU ARE NOT GOING TO BEAT A COMPUTER,

01:39:51  8  THEY GET TO KEEP ALL THAT MONEY, IT GOES RIGHT TO THE DAMAGES.

01:39:55  9      SO AVIA APPARENTLY INTENTIONALLY DEPRIVED SKILLZ OF THIS

01:39:59 10  CRITICAL INFORMATION.  THEY DID IT --

01:40:02 11      THE COURT:  DOES THIS -- WHAT YOU BELIEVE YOU FOUND

01:40:04 12  IN THE EVIDENCE, DOES IT GO TO THE ISSUE OF DIRECT

01:40:07 13  INFRINGEMENT?

01:40:07 14      MR. CAMPBELL:  IT DOES, YOUR HONOR.

01:40:09 15      THE COURT:  BECAUSE THAT'S THE FIRST ARGUMENT THAT

01:40:11 16  MS. WANG MAKES IS THAT NOTHING OCCURRED IN THE UNITED STATES.

01:40:14 17      AND SO IT CONCERNS ME ABOUT HOW I'M GOING TO HANDLE THIS

01:40:20 18  MOTION, AND SO CERTAINLY AVIA IS AT A DISADVANTAGE BECAUSE THEY

01:40:25 19  HAVEN'T HAD THE OPPORTUNITY TO RESPOND YET, AND -- WHICH WE

01:40:29 20  NEED TO WORK OUT TO HAPPEN VERY QUICKLY -- BUT IN YOUR FURTHER

01:40:32 21  ARGUMENT, I'M GOING TO WANT TO HEAR WHERE YOU BELIEVE THIS

01:40:35 22  EVIDENCE IS RELEVANT TO AVIA'S MOTION, BECAUSE THEY --

01:40:43 23      MR. CAMPBELL:  THAT WOULD TO BE SKILLZ'S MOTION,

01:40:47 24  YOUR HONOR.

01:40:47 25      THE COURT:  I'M SORRY, SKILLZ'S MOTION, BECAUSE THEY

UNITED STATES COURT REPORTERS

8

01:40:49  1  ARGUE THAT THERE IS NO DIRECT INFRINGEMENT -- NO, THAT'S AVIA'S

01:40:54  2  MOTION, THEY SAY THERE IS NO DIRECT INFRINGEMENT.

01:40:57  3      MR. CAMPBELL:  CORRECT.

01:40:58  4      THE COURT:  BECAUSE THE CUSTOMER COMPLETES THE

01:40:59  5  ELEMENTS AND THE TESTING THAT YOU SUGGESTED OCCURS IN CHINA.

01:41:02  6  SO I'M WONDERING IF THE USE OF ROBOTS ACTUALLY OCCURS IN

01:41:06  7  THE UNITED STATES.

01:41:07  8      MR. CAMPBELL:  THAT IS OUR UNDERSTANDING, AND THOSE

01:41:08  9  ARE PROOFS THAT WE INTEND TO MAKE.

01:41:10 10      THE COURT:  YOU NEED EVIDENCE FOR THAT.

01:41:11 11      MR. CAMPBELL:  YES.  AND WE JUST GOT THESE DOCUMENTS,

01:41:14 12  YOUR HONOR, AND THAT'S WHY WE ARE ASKING FOR THIS EMERGENCY

01:41:17 13  RELIEF TO REOPEN DISCOVERY.

01:41:18 14      THE COURT:  ALL RIGHT.

01:41:18 15      AND WOULD YOU BE ABLE TO DEVELOP IN FAIRLY SHORT ORDER,

01:41:22 16  THE DISCOVERY PLAN NECESSARY AND A TIME FRAME YOU EXPECT WOULD

01:41:26 17  BE NECESSARY?

01:41:27 18      MR. CAMPBELL:  ABSOLUTELY, YOUR HONOR.  WE HAVE

01:41:28 19  ALREADY STARTED TO GIVE THOUGHT TO EXACTLY HOW WE WOULD START.

01:41:31 20      THE COURT:  OKAY.  GOOD.

01:41:33 21  SO LET ME TURN -- I DON'T KNOW WHO IS GOING TO

01:41:36 22  ADDRESS THIS, AND IT'S NOT YOUR ONLY -- I JUST NEED TO KNOW

01:41:39 23  WHERE WE ARE GOING AND WHAT IMPACT IT HAS ON THIS MOTION.

01:41:43 24  MR. BOMBACH?

01:41:44 25      MR. BOMBACH:  YES.  THANK YOU, YOUR HONOR.

UNITED STATES COURT REPORTERS

**9**

01:41:48  1  THIS MOTION DID COME IN AT 10:30 ON FRIDAY.  QUINN EMANUEL

01:41:54  2  HAS BEEN COUNSEL OF RECORD FOR ABOUT THREE YEARS, DISCOVERY

01:41:59  3  CLOSED THREE MONTHS AGO.  CONTENTIONS, EXPERT REPORTS, THEY

01:42:05  4  HAVE HAD AVIAGAMES' CODE FOR EVER SINCE CONTENTIONS.  THESE ARE

01:42:13  5  JUST -- WE WOULD LIKE THE OPPORTUNITY TO RESPOND, AND WE WILL

01:42:17  6  IN DUE COURSE, BUT THESE ARE --

01:42:19  7  THE COURT:  DUE COURSE IS LIKE TOMORROW, SO I'M SURE

01:42:21  8  YOUR RESPONSE IS MOSTLY WRITTEN, BUT ARE YOU SUGGESTING THAT

01:42:24  9  YOU WILL BE ABLE TO SHOW THAT THE USE OF BOTS IS APPARENT IN

01:42:27  10  THE SOURCE CODE?

01:42:29  11  MR. BOMBACH:  THEY ACTUALLY -- WE HAD A 30(B)(6)

01:42:32  12  WITNESS TESTIFY AS TO MATCHMAKING.  THE 30(B)(6) WITNESS, WHICH

01:42:37  13  THEY DIDN'T MENTION IN ANY OF THEIR PAPERS, WAS -- HE TESTIFIED

01:42:44  14  THAT IT'S DONE, IF THERE IS A TUTORIAL.  AND IT'S THREE MONTHS

01:42:48  15  THAT THERE'S BEEN NO COMPLAINTS, NO ISSUES -- NO DISCOVERY

01:42:54  16  DISPUTES.  QUINN HAS NOT RAISED ANYTHING SINCE DISCOVERY

01:42:59  17  CLOSED.  WE ALLOWED THEM TO AMEND THEIR COMPLAINT.

01:43:03  18  THE COURT:  YES.

01:43:04  19  MR. BOMBACH:  AND WE ALSO AMENDED OUR ANSWER.

01:43:07  20  NONE OF THIS HAPPENED -- KING & SPALDING HAS APPEARED A

01:43:11  21  WEEK AGO.

01:43:13  22  THE COURT:  I WAS SURPRISED TO SEE THAT.

01:43:15  23  MR. BOMBACH:  A WEEK OR TWO AGO, AND THIS -- IT'S

01:43:21  24  KIND OF OUT OF LEFT FIELD TO REOPEN DISCOVERY.

01:43:25  25  AND WITH RESPECT TO --

UNITED STATES COURT REPORTERS

**10**

01:43:26  1  THE COURT:  SO, I DON'T ACTUALLY THINK THAT, BUT I

01:43:29  2  WANT TO SEE YOUR RESPONSE, BUT CERTAINLY A NEW LAW FIRM IS NOT

01:43:35  3  GOOD CAUSE TO REOPEN DISCOVERY, BUT NEWLY PROVIDED MATERIALS

01:43:40  4  THAT GO DIRECTLY TO THE MAIN ISSUES IN THE CASE WOULD BE.

01:43:46  5  SO I'M GOING TO NEED YOU TO RESPOND TO THIS.  AND SO AS I

01:43:49  6  SAID, I'M SURE YOU'VE ALREADY STARTED THAT.  I WILL ALLOW --

01:43:53  7  LET'S SEE, HOW LONG IS THIS MOTION?

01:43:58  8  MR. BOMBACH:  YOUR HONOR, MAY I ADD ONE THING?

01:44:00  9  THE COURT:  YES, OF COURSE.

01:44:01  10  MR. BOMBACH:  IT'S NOT REALLY PROVIDED MATERIAL, THIS

01:44:03  11  WAS STUFF THAT WAS PROVIDED DURING THE DISCOVERY PERIOD AND

01:44:06  12  BEFORE DEPOSITIONS.

01:44:07  13  THE COURT:  WELL, I GATHER FROM MR. CAMPBELL'S

01:44:10  14  ARGUMENT THAT IT WAS PROVIDED IN CHINESE AND UNREADABLE FORM

01:44:13  15  AND THAT THAT TOOK SOME TIME.

01:44:16  16  SO I'M GOING TO BE DECIDING THIS UNDER THE RULE 16 GOOD

01:44:19  17  CAUSE STANDARD.  QUITE FRANKLY, THIS MANY MONTHS IN ADVANCE OF

01:44:23  18  TRIAL, IT'S NOT A HIGH BAR.  IT'S NOTHING, BUT IT'S NOT A

01:44:28  19  HIGH BAR TO MODIFY THE CASE SCHEDULE.

01:44:33  20  AND I'M GOING TO LIMIT YOU TO TEN PAGES.  DON'T GIVE ME A

01:44:36  21  THOUSAND PAGES OF STUFF, BECAUSE I AM NOT GOING TO READ IT.

01:44:42  22  AND I'M NOT PARTICULARLY INTERESTED IN THE ISSUE OF SANCTIONS

01:44:44  23  RIGHT NOW, THAT WILL COME LATER.  I REALLY DON'T NEED ANY

01:44:48  24  BRIEFING ON IT.  MR. CAMPBELL HAS MADE HIS COMMENT ON IT, AND

01:44:52  25  I'M NOT GOING TO BE DEALING WITH THAT AT THIS POINT.  BUT I

UNITED STATES COURT REPORTERS

**11**

01:44:54  1  WANT TO KNOW ABOUT WHETHER I SHOULD REOPEN, BECAUSE HE MAKES A

01:44:59  2  VERY STRONG CASE.

01:45:00  3  I'M ALSO -- AS WE PROCEED, I'M VERY CONCERNED ABOUT

01:45:03  4  WHETHER YOUR MOTION ON NON-INFRINGEMENT MAY BE SCUTTLED AND OFF

01:45:08  5  THE TABLE, AND THEN THE QUESTION WILL BE, WILL IT EVER COME

01:45:11  6  BACK, BECAUSE I MAY JUST SEND YOU TO TRIAL ON THAT.

01:45:15  7  MR. BOMBACH:  I WILL LET MY COLLEAGUE, MS. WANG,

01:45:17  8  RESPOND TO THAT.  WE DON'T THINK --

01:45:19  9  THE COURT:  IF I REOPEN DISCOVERY, THEN UNDER

01:45:22  10  RULE 56, I AM NOT GOING TO LIMIT SKILLZ TO THE EVIDENCE THAT

01:45:25  11  THEY HAD WHEN THEY HAVE ALREADY TOLD ME THAT THEY BELIEVE THERE

01:45:29  12  IS OTHER EVIDENCE OUT THERE.

01:45:30  13  AND YOU ARGUE THAT THERE IS NO DIRECT INFRINGEMENT BECAUSE

01:45:33  14  NOTHING -- NOT ALL OF THE ELEMENTS TOOK PLACE IN THE UNITED

01:45:38  15  STATES, THAT THE TESTING TOOK PLACE IN CHINA.

01:45:42  16  THAT WAS A LITTLE SURPRISE TO ME.  I MEAN, IT'S GREAT THE

01:45:46  17  COMPANY IS DOING THAT IN CHINA, I HAD UNDERSTOOD THEIR ORIGIN

01:45:49  18  STORY TO BE TWO VERY SUCCESSFUL IMMIGRANT WOMEN WHO HAD

01:45:52  19  DEVELOPED THIS IN MOUNTAIN VIEW OR SUNNYVALE, AND HATS OFF TO

01:45:56  20  THEM AND THEIR SUCCESS, BUT NOW WE'VE GOT MORE OF AN ORIGIN

01:46:00  21  MYTH THAN AN ORIGIN STORY THAT SEEMS TO BE DEVELOPING, SO I'M

01:46:04  22  REALLY QUITE CONCERNED ABOUT THAT.

01:46:05  23  MR. BOMBACH:  WITH RESPECT TO THE DIRECT

01:46:07  24  INFRINGEMENT, I WILL LET MY COLLEAGUE, MS. WANG, ADDRESS IT,

01:46:10  25  BUT THE CLAIMS ARE DIRECTED TO --

UNITED STATES COURT REPORTERS

**12**

01:46:12  1  THE COURT:  ALL RIGHT.  SO I WILL EXPECT YOUR BRIEF,

01:46:15  2  MR. BOMBACH, ON FRIDAY.

01:46:16  3  MR. BOMBACH:  YES.  THANK YOU, YOUR HONOR.

01:46:17  4  THE COURT:  NO REPLY.

01:46:19  5  AND IF BY FRIDAY, MR. CAMPBELL, IF I COULD HAVE THAT

01:46:23  6  DISCOVERY PLAN, AND IT BETTER BE SHORT, AND I WOULD LIKE A

01:46:26  7  SCHEDULE ON IT SO THAT I CAN SEE IF IT CAN BE COMPLETED.

01:46:29  8  MR. CAMPBELL:  YES, YOUR HONOR.

01:46:30  9  THE COURT:  OKAY.  AND THAT WILL HELP EVERYBODY OUT.

01:46:34  10  IF THIS PANS OUT, THESE ARE VERY SERIOUS ALLEGATIONS.  BUT

01:46:39  11  I ALSO NEED TO BE SURE, MR. CAMPBELL, THIS ISN'T JUST BECAUSE A

01:46:42  12  NEW FIRM WITH FRESH EYES HAS COME INTO THE CASE.

01:46:45  13  MR. CAMPBELL:  UNDERSTOOD, YOUR HONOR.

01:46:45  14  THE COURT:  OKAY.  I WAS A LITTLE THROWN WHEN I SAW

01:46:47  15  YOUR FIRM'S NAME.  YOU ARE WELCOME AND IT'S NICE TO SEE YOU,

01:46:50  16  BUT OF COURSE I HAVE BEEN DEEP INTO THIS WITH OTHER COUNSEL,

01:46:54  17  AND SO WE JUST CHANGE GEARS HERE A LITTLE BIT.

01:46:57  18  ALL RIGHT.  SO I THINK THAT TAKES CARE OF THE EMERGENCY

01:47:00  19  MOTION, BUT I HAVE CONCERN THAT, AS I SAID, IT MAY SCUTTLE SOME

01:47:07  20  OF THE AVIA MOTION ON NON-INFRINGEMENT.

01:47:10  21  ALL RIGHT.  SO LET ME THEN TURN TO THE FIRST -- I WOULD

01:47:13  22  LIKE TO START WITH THE SKILLZ MOTION.  AND THIS MOTION ON

01:47:22  23  INEQUITABLE CONDUCT, AND THEN THREE VERY DISCREET ARGUMENTS ON

01:47:28  24  PRIOR ART, ON ANTICIPATION AND OBVIOUSNESS, NOT AFFECTING THOSE

01:47:33  25  THREE PRIOR ART REFERENCES, AS THEY MAY BE IN COMBINATION ON

UNITED STATES COURT REPORTERS

13

01:47:41 1 OTHERS, I'M NOT LOOKING AT THAT AT ALL.

01:47:43 2 LET ME JUST SAY AT THE OUTSET, THIS MOTION LOOKS PRETTY

01:47:48 3 GOOD TO ME. I DON'T THINK -- ONE OF THE ISSUES I'M MOST

01:47:53 4 CONCERNED ABOUT ON INEQUITABLE CONDUCT IS THAT SKILLZ ARGUES

01:47:56 5 THAT THE THEORY OF INTENT THAT WAS PLED IN THE ANSWER IS

01:48:02 6 DIFFERENT THAN THE THEORY THAT IS ARGUED IN THE PAPERS.

01:48:05 7 NOW MR. BOMBACH INDICATED THERE WAS AN AMENDED ANSWER, I

01:48:09 8 HOPE I READ THE AMENDED ANSWER, I CERTAINLY READ THE ANSWER,

01:48:12 9 BUT IF THAT NEW THEORY APPEARED BEFORE THIS BREACHING, YOU WILL

01:48:16 10 LET ME KNOW THAT.

01:48:17 11 MR. WOOD: CERTAINLY, YOUR HONOR.

01:48:17 12 THE COURT: ALL RIGHT.

01:48:18 13 SO WE NEED TO CONCLUDE EVERYTHING ON THIS MOTION -- I

01:48:22 14 GUESS I WILL GIVE EACH SIDE 20 MINUTES TO MAKE YOUR ARGUMENT,

01:48:25 15 AND I'M SURE I WILL BE INTERRUPTING YOU QUITE A BIT.

01:48:28 16 AND YOU ARE MR. WOOD?

01:48:29 17 MR. WOOD: YES, MA'AM.

01:48:30 18 THE COURT: ALL RIGHT. MR. WOOD, LET ME HEAR YOUR

01:48:32 19 ARGUMENT.

01:48:32 20 MR. WOOD: CERTAINLY.

01:48:33 21 AND BEFORE WE BEGIN, JUST A COUPLE OF HOUSEKEEPING POINTS.

01:48:36 22 FIRST, AS YOU MENTIONED, THERE ARE TWO SORT OF SEPARATE

01:48:39 23 ISSUES WITHIN OUR MOTION, INEQUITABLE CONDUCT AND THEN THE

01:48:42 24 VALIDITY ISSUES. AND YOUR HONOR, I'M CERTAINLY HAPPY TO GO

01:48:45 25 THROUGH ALL THE POINTS OF OUR MOTION AT ONCE, OR IF YOU PREFER,

UNITED STATES COURT REPORTERS

14

01:48:48 1 I CAN TAKE ONE ISSUE, LET THE OTHER SIDE RESPOND --

01:48:51 2 THE COURT: NO, I THINK BECAUSE WE ARE A LITTLE SHORT

01:48:53 3 ON TIME, IT WOULD BE MORE EFFICIENT IF I HEAR THE WHOLE

01:48:55 4 ARGUMENT. I MAY FEEL DIFFERENTLY ON THE AVIA'S MOTION, IT'S A

01:48:59 5 LITTLE MORE COMPLICATED ON WRITTEN DESCRIPTION VERSUS

01:49:03 6 INVALIDITY -- OR RATHER NON-INFRINGEMENT.

01:49:05 7 ALL RIGHT. SO THANK YOU.

01:49:08 8 MR. WOOD: WE DO HAVE A SLIDE PRESENTATION. I HAVE

01:49:10 9 SOME HARD COPIES IF YOU PREFER.

01:49:12 10 THE COURT: THANK YOU, YES. THANK YOU FOR BRINGING

01:49:14 11 THOSE.

01:49:17 12 MR. WOOD: SOME HARD COPIES AS WELL.

01:49:41 13 WE HAD BOUND THEM SEPARATELY BY ISSUE, BUT I BELIEVE THE

01:49:45 14 ONE ON TOP SHOULD BE THE PORTION ON INEQUITABLE CONDUCT.

01:49:50 15 THE COURT: YES, IT IS. THANK YOU.

01:49:52 16 MR. WOOD: YOUR HONOR, FOR THAT PORTION OF THE

01:49:56 17 ARGUMENT, A LOT OF THE EVIDENCE WE ARE GOING TO DISCUSS IS

01:49:59 18 SKILLZ'S INTERNAL COMMUNICATIONS, WHICH I BELIEVE HAVE BEEN

01:50:01 19 DESIGNATED ATTORNEY'S EYES ONLY.

01:50:03 20 THE COURT: I THINK WE WADED THROUGH A LOT OF YOUR

01:50:08 21 SEALING MOTIONS LAST WEEK.

01:50:10 22 SO IS THERE ANYONE IN THE COURTROOM WHO, IN YOUR VIEW,

01:50:15 23 WOULD NOT BE PRIVY TO THESE DOCUMENTS?

01:50:18 24 MR. WOOD: I WILL DEFER TO MY CO-COUNSEL WHO IS MORE

01:50:21 25 FAMILIAR WITH THE GOINGS ON, BUT I WOULD ASSUME THAT --

UNITED STATES COURT REPORTERS

15

01:50:31 1 THE COURT: SO TYPICALLY WE JUST TURN THE SCREENS OFF

01:50:35 2 IN THE COURTROOM BUT THE COURTROOM REMAINS OPEN; IS THAT

01:50:38 3 SUFFICIENT?

01:50:40 4 MR. CAMPBELL: THAT IS SUFFICIENT, YOUR HONOR.

01:50:42 5 MR. WOOD: OKAY.

01:50:44 6 THE COURT: AND THAT WAY IT'S JUST THE SEALED

01:50:47 7 MATTERS, BUT EVERYTHING THAT YOU ARE COMMENTING ON WILL BE

01:50:50 8 AVAILABLE TO THE PUBLIC AND THE TRANSCRIPT WILL BE. THAT

01:50:53 9 WORKS.

01:50:53 10 MR. WOOD: I BELIEVE SO.

01:50:54 11 THE COURT: AND MS. WANG, IS THAT ALL RIGHT WITH YOU?

01:50:57 12 MS. WANG: YOUR HONOR, WITH THE DIRECT INFRINGEMENT

01:50:59 13 AND ALSO INEQUITABLE CONDUCT, THAT WOULD BE SUFFICIENT, BUT WE

01:51:03 14 WILL BE TALKING ABOUT SOURCE CODE IN THE NON-INFRINGEMENT

01:51:06 15 ARGUMENT.

01:51:07 16 THE COURT: WELL PEOPLE DON'T USUALLY READ -- PEOPLE

01:51:11 17 RARELY READ SOURCE CODE OUT LOUD, SO WE ARE NOT GOING TO PUT IT

01:51:15 18 ON THE AUDIENCE SCREENS; IS THAT OKAY?

01:51:16 19 MS. WANG: YES, YOUR HONOR.

01:51:17 20 THE COURT: OKAY. LET ME KNOW AS WE GO ALONG BECAUSE

01:51:20 21 I DO WANT TO PROTECT THE THINGS I'VE SEEN.

01:51:22 22 AS YOU MENTION, AS YOU HAVE COMMENTED ALREADY, I DO

01:51:25 23 BELIEVE THIS MOTION IS PRETTY STRAIGHTFORWARD. IT'S A FAIRLY

01:51:30 24 DISCREET ISSUE IN TERMS OF QUESTIONS OF POTENTIALLY IMPROPER

01:51:30 25

UNITED STATES COURT REPORTERS

16

01:51:34 1 INVENTORSHIP.

01:51:35 2 AT THE OUTSET, I WANTED TO ADDRESS THE STANDARD UNDER

01:51:38 3 WHICH WE BELIEVE YOUR HONOR SHOULD BE DECIDING THIS MOTION.

01:51:42 4 AVIA MADE SOME COMMENTS IN THEIR RESPONSIVE BRIEF THAT WE

01:51:46 5 HADN'T ADEQUATELY STATED THE STANDARD AND HAD FOCUSED ON CLEAR

01:51:49 6 AND CONVINCING EVIDENCE AS OPPOSED TO JUST A GENUINE ISSUE OF

01:51:52 7 MATERIAL FACT.

01:51:53 8 AND I BELIEVE THE SUPREME COURT HAS BEEN QUITE CLEAR THAT

01:51:56 9 THOSE STANDARDS, WHEN IT COMES TO SUMMARY JUDGEMENT MOTIONS,

01:51:59 10 ARE RELATED. THE QUESTION BEFORE THE COURT IS WHETHER OR NOT

01:52:03 11 THE EVIDENCE THAT'S BEEN PRESENTED IS OF SUFFICIENT CALIBER AND

01:52:06 12 QUALITY TO ALLOW AN ACTUAL FACT FINDER TO FIND BY CLEAR AND

01:52:11 13 CONVINCING EVIDENCE.

01:52:12 14 AND I THINK THE GUIDANCE FROM THE FEDERAL CIRCUIT, WHEN IT

01:52:15 15 COMES PARTICULARLY TO THE QUESTION OF SPECIFIC INTENT TO

01:52:17 16 DECEIVE THE PTO, MAKES IT VERY CLEAR THAT IT REQUIRES

01:52:23 17 SUFFICIENT EVIDENCE TO ESSENTIALLY REQUIRE A FINDING OF

01:52:26 18 DECEITFUL INTENT, THAT THAT CAN BE THE SINGLE MOST REASONABLE

01:52:30 19 INFERENCE. AND WE BELIEVE THAT AVIA HAS NOT MADE THAT SHOWING

01:52:35 20 IN THE EVIDENCE THAT THEY HAVE PRESENTED.

01:52:38 21 AVIA HAS TO BE ABLE TO SHOW THAT THE NAMED INVENTORS KNEW

01:52:43 22 OF A MATERIAL REFERENCE AND DELIBERATELY WITHHELD IT. AND WE

01:52:48 23 DON'T BELIEVE THE E-MAILS AND THE EVIDENCE THEY HAVE PUT

01:52:50 24 FORWARD, DEMONSTRATES THAT THERE WAS ANY ACTUAL KNOWLEDGE, WE

01:52:53 25 DON'T BELIEVE IT DEMONSTRATES THAT THERE WAS ANY QUESTION OF

UNITED STATES COURT REPORTERS

17

01:52:56 1 INVESTORSHIP AT ALL, CERTAINLY NOT ANY QUESTION THAT THERE WAS

01:52:59 2 ANY ACTUAL KNOWLEDGE ON BEHALF OF THE NAMED INVENTORS.

01:53:03 3 THE POINT YOU RAISED, YOUR HONOR, WE DON'T BELIEVE THAT

01:53:07 4 THE THEORY THAT AVIA HAS MADE IN THEIR MOTION IS THE SAME AS

01:53:14 5 WHAT WAS PLED IN THEIR ANSWER.

01:53:16 6 AS YOU NOTED, THERE WAS AN AMENDED ANSWER THAT WAS FILED

01:53:19 7 JUNE 23RD OF THIS YEAR, A LITTLE OVER A MONTH AGO. IN THAT

01:53:24 8 ANSWER, THEIR THEORY OF INEQUITABLE CONDUCT SETS FORTH CLEARLY

01:53:28 9 THEIR POSITION THAT THEY DIDN'T BELIEVE THAT SHUBERT OR

01:53:32 10 FREDETTE WERE UNDER ANY OBLIGATION TO CONVEY ANY RIGHTS THEY

01:53:36 11 HAD AND ANY PROPERTY THEY WOULD HAVE BEEN AN INVENTOR OF.

01:53:41 12 THERE'S AN ATTEMPT IN THE BRIEFING TO DISTINGUISH BETWEEN

01:53:44 13 INVENTORSHIP AND OWNERSHIP. CERTAINLY ONE OF THE KEY FINANCIAL

01:53:48 14 ASPECTS OF BEING A NAMED INVENTOR IS YOU ARE PRESUMPTIVELY THE

01:53:51 15 OWNER UNLESS YOU ASSIGN THOSE RIGHTS. AND WE SEE THAT CLEARLY

01:53:54 16 SET FORTH IN THE BRIEFING, AND THAT'S THE THEORY THAT AVIA PLED

01:53:57 17 AND PRESENTED TO THE COURT AND TO US A LITTLE OVER A MONTH AGO.

01:54:04 18 THE COURT: I GUESS I'M GOING TO GET RIGHT DOWN TO

01:54:06 19 IT, MR. WOOD.

01:54:07 20 WHEN I LOOK AT EXHIBIT 1, WHICH IS THE OCTOBER 17, 2012

01:54:11 21 E-MAIL FROM MR. FREDETTE, WHICH LAYS OUT IN GREAT DETAIL, A

01:54:19 22 PROCESS, IN FOUR PAGES. IT STARTS WITH, "I PUT TOGETHER THE

01:54:25 23 ENGINEERING TEAM'S DETAILED VERSION OF A LIMITED SET OF

01:54:28 24 FEATURES."

01:54:31 25 I READ THIS AS MR. FREDETTE SAYING, I WAS THE NOTE TAKER.

UNITED STATES COURT REPORTERS

18

01:54:35 1 MR. WOOD: CORRECT.

01:54:35 2 THE COURT: AM I READING THIS WRONG?

01:54:37 3 MR. WOOD: I THINK THAT IS THE SINGLE MOST REASONABLE

01:54:38 4 INFERENCE, YOUR HONOR. THAT IS EXACTLY HOW I READ THIS.

01:54:42 5 THE COURT: AND WAS MR. FREDETTE, WAS HE THE TEAM?

01:54:45 6 WAS HE THE SOLE PERSON ON THE ENGINEERING TEAM?

01:54:48 7 MR. WOOD: I DON'T BELIEVE THAT'S CORRECT,

01:54:49 8 YOUR HONOR.

01:54:49 9 THE COURT: OKAY.

01:54:52 10 MR. WOOD: YOU MADE MY EXACT POINT A LITTLE BIT

01:54:54 11 BEFORE I WAS GOING TO.

01:54:56 12 THE COURT: SORRY.

01:54:56 13 MR. WOOD: I THINK AS YOU SEE EVEN FURTHER IN THAT

01:54:59 14 INTRODUCTORY PARAGRAPH, HE ENDS SPECIFICALLY BY SAYING THAT

01:55:03 15 "THERE IS DEFINITELY ENGINEERING WORK TO DO THAT I HADN'T

01:55:05 16 THOUGHT OF."

01:55:06 17 I THINK THAT MAKES QUITE CLEAR THAT THIS WAS A

01:55:09 18 COLLABORATIVE PROCESS AMONG A BROAD ENGINEERING TEAM

01:55:17 19 IDENTIFYING WORK THAT NEEDED TO BE DONE, WORK THAT HAD ALREADY

01:55:20 20 BEEN DONE AND CHECKED OFF THE LIST, AND THAT HE WASN'T

01:55:23 21 CONTRIBUTING TO THE ENTIRETY OF THESE IDEAS.

01:55:25 22 THERE'S NO INDICATION, AS WE LOOK AT THE SPECIFIC PORTION

01:55:28 23 THAT'S AT ISSUE HERE, THAT THIS WAS AN IDEA THAT MR. FREDETTE

01:55:33 24 HAD COME UP WITH HIMSELF. AND INDEED, HE NOTES IN

01:55:37 25 SUBHEADING 1, RIGHT THERE, THAT IF THE IDEA, WHICH IS THE

UNITED STATES COURT REPORTERS

19

01:55:41 1 ALLEGED INVENTION, IS WHAT THE TEAM WANTS TO GO WITH, THERE'S

01:55:43 2 NO MORE WORK TO DO, INDICATING THIS HAS ALREADY BEEN COMPLETED.

01:55:47 3 THE COURT: SO MOVING ON THEN TO THE ISSUE OF INTENT

01:55:50 4 AND THE STANDARD OF THE SINGLE MOST REASONABLE INFERENCE, I

01:55:54 5 DON'T ACTUALLY THINK SUMMARY JUDGEMENT IS HANDLED DIFFERENTLY

01:55:58 6 WHEN THE STANDARD IS CLEAR AND CONVINCING EVIDENCE, BECAUSE I

01:56:01 7 HAVE TO MAKE A DECISION BASED ON UNDISPUTED FACTS AS A MATTER

01:56:04 8 OF LAW, WHICH PROBABLY IS A HIGHER STANDARD THAN CLEAR AND

01:56:09 9 CONVINCING EVIDENCE.

01:56:10 10 SO MOVING ON, ARE YOU SUGGESTING THAT IF I CAN DISCERN

01:56:18 11 FROM THE EVIDENCE MORE THAN ONE REASONABLE INFERENCE, THAT

01:56:21 12 WOULD NOT GO TO THE JURY?

01:56:23 13 MR. WOOD: I BELIEVE THAT'S CORRECT.

01:56:24 14 AND IN THE FIRST INSTANCE, I BELIEVE A QUESTION AT TRIAL,

01:56:27 15 YOU WOULD DECIDE AS AN EQUITABLE MATTER, BUT CERTAINLY THE FACT

01:56:30 16 FINDER, IF THERE IS AT LEAST AN EQUALLY REASONABLE

01:56:37 17 INTERPRETATION OF THE --

01:56:38 18 THE COURT: AND HOW DO I -- SO AT SUMMARY JUDGEMENT,

01:56:40 19 HOW DO I DETERMINE EQUALLY REASONABLE? I'M NOT SURE THAT'S --

01:56:44 20 HOW I'M GOING TO DO THAT AT SUMMARY JUDGEMENT?

01:56:48 21 MR. WOOD: I BELIEVE THE QUESTION WOULD BE WHETHER A

01:56:50 22 RATIONAL FACT FINDER, SOMEBODY SITTING IN YOUR POSITION. YOUR

01:56:54 23 COLLEAGUE DOWN THE HALL MIGHT LOOK AT THIS AND COME TO A

01:56:57 24 DIFFERENT CONCLUSION THAN YOU, I THINK THAT WOULD BE HOW YOU

01:57:00 25 WOULD DIFFERENTIATE BETWEEN THE STANDARD AT TRIAL VERSUS THE

UNITED STATES COURT REPORTERS

20

01:57:03 1 STANDARD AT SUMMARY JUDGEMENT.

01:57:04 2 BUT I THINK IF ANY JUDGE SITTING IN YOUR POSITION,

01:57:07 3 YOUR HONOR, WOULD LOOK AT THIS AND SEE TWO REASONABLE

01:57:11 4 INTERPRETATIONS SUCH THAT THEY WOULDN'T FEEL LIKE IT REQUIRED

01:57:14 5 THEM AS THERASENSE REQUIRES THEM TO REACH THAT PARTICULAR

01:57:18 6 CONCLUSION, THEN I DON'T BELIEVE THE STANDARD HAS BEEN MET.

01:57:21 7 THE COURT: OKAY. ALL RIGHT.

01:57:22 8 LET ME LET YOU GET BACK TO YOUR ARGUMENT ON THIS BECAUSE I

01:57:26 9 WANT TO MAKE SURE YOU HAVE TIME ON THE THREE PRIOR ART

01:57:28 10 REFERENCES.

01:57:29 11 MR. WOOD: CERTAINLY.

01:57:29 12 UNLESS YOU HAVE ANY OTHER QUESTIONS ON THE INEQUITABLE

01:57:32 13 CONDUCT POINT, I WILL GO AHEAD AND MOVE ON TO THE VALIDITY

01:57:39 14 POINT WHICH IS IN A SEPARATE BOUND COPY. AND UNFORTUNATELY, IT

01:57:45 15 IS A SEPARATE PRESENTATION ON MY COMPUTER.

01:57:47 16 IF I COULD ASK MR. CAMPBELL MAYBE TO -- APOLOGIES,

01:57:57 17 YOUR HONOR.

01:58:12 18 YOUR HONOR AGAIN, I THINK THE ISSUES IN THIS PORTION OF

01:58:16 19 THE MOTION ARE FAIRLY DISCREET AS WELL. WHEN IT COMES TO THE

01:58:19 20 QUESTION OF ANTICIPATION, WE DON'T BELIEVE THAT ANY OF THESE

01:58:23 21 THREE REFERENCES DEMONSTRATES THAT ANY OF THE SEEDS BEING

01:58:26 22 DISCLOSED ARE CHARACTERIZED BY ANY OF THE ID'S THAT AVIA IS

01:58:32 23 POINTING TO AS A UNIQUE MATCH ID.

01:58:35 24 WHEN IT COMES TO THE QUESTION OF OBVIOUSNESS, WE DON'T

01:58:37 25 BELIEVE THERE'S ANY MOTIVATION THAT HAS BEEN POINTED TO BY AVIA

UNITED STATES COURT REPORTERS

21

1 OR THEIR EXPERT, DR. WELCH, THAT WOULD POINT A POSITA IN THE
2 DIRECTION OF USING A UNIQUE MATCH ID TO CHARACTERIZE THAT SEED.
3 THE COURT: WELL WE GET INTO THE DIFFICULTY OF, OR
4 THE DISPUTE ON THE ISSUE, AND IT MAY COME UP IN THE HALLIBURTON
5 CITE, THAT A TOURNAMENT ID -- I NEED YOU TO DISCUSS WHETHER THE
6 HALLIBURTON TOURNAMENT ID IS DIFFERENT THAN A GENERIC
7 TOURNAMENT ID, OR AS AVIA SUGGESTS, A TOURNAMENT ID IS KNOWN IN
8 THE ART AND IT'S ONE THING KNOW, AND IF YOU USE IT, EVERYBODY
9 KNOWS WHAT IT IS AND IT IS GENERIC.
10 I DON'T KNOW THAT MYSELF, SO I NEED TO HEAR SOME ARGUMENT
11 ON IT. AND I DON'T KNOW WHETHER YOU -- BECAUSE THIS GETS INTO
12 THE PROSECUTION HISTORY ESTOPPEL ISSUE AS WELL, AND IT KIND OF
13 PERMEATES OR DRAWS THROUGH A NUMBER OF ISSUES, BUT IT STARTS
14 ACTUALLY HERE, I THINK, IN YOUR MOTION, AS WE LOOK AT THE
15 HALLIBURTON REFERENCE.
16 MR. WOOD: CERTAINLY, YOUR HONOR.
17 AND AS YOU MENTIONED, I THINK THIS WILL BECOME -- WILL GET
18 BORNE OUT A LITTLE BIT MORE IN AVIA'S MOTION ONCE WE GET THERE.
19 BUT FOR OUR PURPOSES, YOUR HONOR, I DON'T BELIEVE WE NEED TO
20 ADDRESS THAT ISSUE, PARTICULARLY WHEN IT COMES TO HALLIBURTON,
21 EVEN SETTING ASIDE THE QUESTION OF WHETHER HALLIBURTON'S
22 TOURNAMENT ID IS THE SAME TOURNAMENT ID, IS ACTUALLY A UNIQUE
23 MATCH IDENTIFIER.
24 WE DON'T BELIEVE THERE'S ANY DISCLOSURE IN HALLIBURTON OF
25 USING THAT IDENTIFIER, WHATEVER IT IS, TO CHARACTERIZE THE SEED

UNITED STATES COURT REPORTERS

22

1 THAT IS BEING OBTAINED OR GENERATED, SO I DON'T BELIEVE YOU
2 NEED TO REACH THAT ISSUE IN ORDER TO FIND IN OUR FAVOR,
3 YOUR HONOR.
4 THE COURT: I APPRECIATE THAT.
5 SO YOU WANT TO RUN THROUGH THESE PRIOR ART REFERENCES FOR
6 ME?
7 MR. WOOD: CERTAINLY.
8 AS I SAID, I THINK AT BEST, WE WILL SEE THIS THROUGHOUT
9 EACH OF THE THREE REFERENCES, AT BEST, DR. WELCH IDENTIFIES,
10 HERE'S AN ID AND HERE IS A SEED.
11 WE THINK THIS BEAUTIFUL PURPLE ARROW THAT OUR AV PERSON
12 PUT IN FOR ME IS REALLY THE KEY ISSUE. THERE'S NO DISCLOSURE
13 THAT THAT ID HAS ANYTHING TO DO WITH THE SEED THAT IS BEING
14 PULLED.
15 AND I THINK -- I TAKE YOUR POINT WITH RESPECT TO
16 HALLIBURTON THAT THERE MIGHT BE A LITTLE BIT MORE OF A
17 QUESTION. WE WILL LET MY COLLEAGUE, MR. DAVIS, TALK ABOUT THAT
18 A LITTLE BIT MORE, BUT I DON'T THINK YOU NEED TO REACH THAT
19 ISSUE.
20 ON OUR MOTION, PARTICULARLY WITH PATEL, I THINK IT IS
21 CLEAR THOUGH, THAT THE GAME ID BEING POINTED TO IN PATEL IS NOT
22 A UNIQUE MATCH ID.
23 TAKING THESE ONE AT A TIME, STEUER, THE FIRST ONE, I'VE
24 TRIED TO DO MY BEST TO IDENTIFY WHAT WOULD BE THE BEST PIECES
25 OF EVIDENCE THAT DR. WELCH WOULD POINT TO.

UNITED STATES COURT REPORTERS

23

1 HERE YOU SEE EXAMPLES IN THE DISCLOSURE OF --
2 THE COURT: JUST SLOW DOWN A LITTLE BIT.
3 MR. WOOD: IN THE DISCLOSURE OF TOURNAMENT ID AND THE
4 PSEUDO RANDOM NUMBERS, OR THE SEEDS. THERE'S JUST SIMPLY
5 NOTHING IN THIS DISCLOSURE THAT TALKS ABOUT EITHER OF THESE TWO
6 POINTS THAT SHOWS THAT ONE IS BEING CHARACTERIZED BY THE OTHER,
7 THAT YOU ARE USING THE TOURNAMENT ID TO PULL THE PSEUDO RANDOM
8 NUMBERS. AND I DON'T THINK DR. WELCH EVEN TRIES TO MAKE THAT
9 POINT.
10 HERE AT PARAGRAPH 26 OF HIS EXPERT REPORT, HE SIMPLY SAYS,
11 THAT "STEUER TEACHES A DATABASE HAVING A TOURNAMENT
12 IDENTIFIER."
13 THE COURT: I'M SORRY. THERE'S A COURT REPORTER HERE
14 AND SHE CAN'T DO IT THAT FAST. I CAN'T EVEN RECEIVE IT THAT
15 FAST.
16 MR. WOOD: I APOLOGIZE.
17 STEUER SIMPLY TEACHES A DATABASE HAVING AN IDENTIFIER AND
18 RECEIVING THAT TOURNAMENT. THERE'S NO DISCLOSURE THAT -- OR
19 EVEN ANY ARGUMENT FROM DR. WELCH, THAT ONE HAS ANYTHING TO DO
20 WITH THE OTHER ONE.
21 HERE WE SEE AN EXAMPLE OF -- IN STEUER, OF SENDING A SEED
22 FOR EACH GAME IN THE TOURNAMENT, AND THERE'S NO DISCLOSURE OF
23 THE TOURNAMENT ID BEING USED FOR THAT PURPOSE AT ALL.
24 IN HALLIBURTON, I BELIEVE WE HAVE A SIMILAR ISSUE IN
25 COLUMNS 7 AND 8, WE SEE DISCUSSION OF PROVIDING A SEED, OR THE

UNITED STATES COURT REPORTERS

24

1 ARRANGEMENT, THE SHUFFLING OF THE CARD DECK FOR USE IN THE
2 GAME.
3 AS HALLIBURTON EXPLAINS LATER, THIS PROCESS OF
4 TRANSFERRING A SEED, ANY SEED, REGARDLESS OF HOW IT'S
5 CHARACTERIZED, IS SOMETHING THAT WAS ALREADY KNOWN IN THE ART,
6 AND THERE'S NO DISCLOSURE OF THE ADDED STEP THAT COMES IN IN
7 SKILLZ'S PATENT OF CHARACTERIZING THE SEED BASED ON THE ID.
8 THIS IS THE ONE PORTION IN HALLIBURTON, COLUMN 102, WHICH
9 DEPICTS AN IDENTIFICATION NUMBER. FOR EACH GAME, THIS WAS THE
10 ONLY PORTION THAT I WAS ABLE TO FIND IN HALLIBURTON OF ANY
11 DISCLOSURE OF AN IDENTIFICATION NUMBER FOR THE TOURNAMENT.
12 AND AS YOU CAN SEE HERE, THERE'S NO INDICATION THAT THIS
13 IS BEING USED FOR PURPOSES OF THIS SEED. AND WHEN WE LOOK AT
14 DR. WELCH'S REPORT, AGAIN WE SEE THE SAME THING. MY
15 INTERPRETATION IS HE'S SAYING THERE IS A SEED AND THERE IS AN
16 ID, AND THEN THAT'S ALL WE NEED, WITHOUT SHOWING ANY CONNECTION
17 BETWEEN THE TWO OR HOW ONE IS USED TO OBTAIN OR GENERATE THE
18 OTHER.
19 PATEL, AGAIN I BELIEVE IS THE SAME STORY HERE, BUT I THINK
20 IT'S AN EVEN EASIER DECISION FOR YOUR HONOR, BECAUSE THE
21 DISCLOSURE HERE ISN'T EVEN TO A TOURNAMENT ID, IT'S TO A GAME
22 ID. AND AS YOU CAN SEE HERE IN FIGURE 57, I THINK THIS MAKES
23 THE POINT QUITE CLEARLY THAT THE GAME ID IS SIMPLY A GAME OF
24 SOLITAIRE, IT'S NOT A UNIQUE MATCH, IT'S JUST A TYPE OF GAME,
25 AND THERE ARE ANY NUMBER OF SEEDS, YOU KNOW, 1 TO 1,000, THAT

UNITED STATES COURT REPORTERS

25

02:04:28 1 ARE IDENTIFIED IN ACCORDANCE WITH THAT GAME.  THE GAME ID HERE

02:04:32 2 IS NOT A UNIQUE MATCH IDENTIFIER.

02:04:35 3     SO I THINK ON 102, ANTICIPATION, IT'S -- DR. WELCH HAS NOT

02:04:45 4 BEEN ABLE TO IDENTIFY ANY CHARACTERIZATION FOR ANY OF THESE

02:04:48 5 REFERENCES.  TO THE EXTENT THERE IS AN OBVIOUSNESS ARGUMENT

02:04:53 6 HERE, WE DON'T BELIEVE THAT DR. WELCH OR AVIA HAVE DEMONSTRATED

02:04:57 7 ANY MOTIVATION TO MODIFY THE SEED TO BE CHARACTERIZED BY A

02:05:03 8 UNIQUE MATCH ID.

02:05:06 9     THE ONE COMMENT THAT DR. WELCH MADE IN HIS REPORT, AND

02:05:09 10 THIS IS FROM 263, WHICH I BELIEVE IS ADDRESSING STEUER, BUT 345

02:05:14 11 AND 408 FOR HALLIBURTON AND PATEL, I BELIEVE SAY SUBSTANTIALLY

02:05:17 12 THE SAME THING, THAT THE SEED IS JUST A NUMBER, AND PICKING ANY

02:05:20 13 NUMBER IS AN OBVIOUS DESIGN CHOICE.

02:05:23 14     THAT MIGHT BE AN ARGUMENT WHY YOU MIGHT PICK THE SEED A

02:05:27 15 DIFFERENT WAY, BUT I THINK IT MAKES THE POINT THAT THE POSITA

02:05:29 16 LOOKING AT THIS WOULD PICK THE SEED ANY NUMBER OF DIFFERENT

02:05:32 17 WAYS.  THERE'S NO MOTIVATION OR DISCLOSURE THAT IT'S POINTING

02:05:36 18 YOU IN A SPECIFIC DIRECTION TO PICK THE SEED BASED ON A

02:05:41 19 CHARACTERIZATION PROVIDED BY THE MATCH ID, IT'S PICKING THE

02:05:44 20 SEED ANY WAY YOU WANT, ROLLING A DICE, THROWING A DART AT A

02:05:49 21 DART BOARD, THERE'S NOTHING IN THIS ARGUMENT FROM DR. WELCH OR

02:05:55 22 FROM AVIA THAT WOULD EXPLAIN WHY ONCE YOU'VE DECIDED THE SEED

02:06:02 23 CAN BE ANYTHING, THAT YOU WOULD MAKE IT CHARACTERIZED BASED OFF

02:06:05 24 THE UNIQUE MATCH ID.

02:06:06 25     THE COURT:  THANK YOU.

UNITED STATES COURT REPORTERS

26

02:06:07 1     WHO WILL I HEAR FROM?

02:06:08 2     MS. WANG:  YOUR HONOR, THIS IS MS. GARDNER'S FIRST

02:06:11 3 TIME TO YOUR COURTROOM.  WE UNDERSTAND THE NORTHERN DISTRICT

02:06:14 4 HAS A YOUNG LAWYER'S PROGRAM, SO MS. GARDNER AND MR. BOMBACH

02:06:19 5 WILL SPLIT THE MOTION, IF THAT IS ALLOWED, PLEASE.

02:06:21 6     THE COURT:  ABSOLUTELY.

02:06:22 7     AND MS. GARDNER, WELCOME.  I'M GLAD TO SEE YOU HERE.

02:06:29 8     MS. GARDNER:  THANK YOU, YOUR HONOR.  IT'S GOOD TO BE

02:06:31 9 HERE.

02:06:31 10     I WILL BE TAKING UP THE INEQUITABLE CONDUCT PORTION OF THE

02:06:34 11 ARGUMENT.

02:06:34 12     THE COURT:  OKAY.

02:06:35 13     MS. GARDNER:  AND I'VE HEARD YOUR HONOR'S CONCERNS, I

02:06:38 14 WOULD LIKE TO JUST START BY LEVEL SETTING.

02:06:41 15     IT'S NOT DISPUTED, AFTER HEARING EVERYTHING THAT SKILLZ'S

02:06:44 16 COUNSEL JUST SAID, THERE IS ABSOLUTELY NO DISPUTE THAT THERE'S

02:06:47 17 NO WRITTEN EVIDENCE AT ALL WITH THE NAMED INVENTORS THAT DID

02:06:51 18 THIS, THE ONLY DOCUMENTS IN THE RECORD AT ALL ARE THE TWO

02:06:54 19 E-MAILS.

02:06:55 20     SO I'M HAPPY TO DISCUSS MORE, THE DEPOSITION TESTIMONY

02:07:00 21 THEY HAVE FROM TODAY VERSUS THE E-MAILS, BUT I DID WANT TO DIVE

02:07:06 22 INTO THE QUESTIONS YOU'VE RAISED.

02:07:07 23     YOU HAVE A CONCERN ABOUT THE THEORY OF INTENT.  SKILLZ'S

02:07:10 24 CASE LAW ON THIS ISSUE IS NOT QUITE APPLICABLE HERE.  THE CASE,

02:07:15 25 BROADCOM, THAT SKILLZ CITES, IS A CASE ABOUT AN UNDISCLOSED

UNITED STATES COURT REPORTERS

27

02:07:19 1 PRIOR ART REFERENCE RATHER THAN AN OMITTED INVENTOR.

02:07:22 2     WHAT HAPPENED IN THAT CASE IS THAT ON THE ANSWER, THEY

02:07:26 3 PLED THAT THE NAMED INVENTORS FAILED TO DISCLOSE THE PRIOR ART

02:07:29 4 REFERENCE, AND THEN ON SUMMARY JUDGEMENT, THEY BROUGHT UP A

02:07:33 5 DIFFERENT PRIOR ART REFERENCE.

02:07:36 6     SO HERE IN OUR ANSWER, WE PLED THAT SHUBERT AND

02:07:40 7 TIM FREDETTE WERE OMITTED INVENTORS.  AND HERE ON SUMMARY

02:07:42 8 JUDGEMENT, WE ARE AGAIN PLEADING THAT THE EXACT SAME TWO PEOPLE

02:07:45 9 ARE OMITTED INVENTORS, BASED ON THE EXACT SAME EVIDENCE.

02:07:52 10     THE COURT:  BUT THIS IS AN ENTIRELY NEW THEORY OF

02:07:56 11 INTENT, THAT IT HAD TO DO WITH THE -- NOT TO DO WITH THE

02:08:01 12 OWNERSHIP OF THE RIGHTS TO THE PATENT, BUT THIS WOULD SCARE

02:08:07 13 AWAY EARLY ROUND INVESTORS IF THESE TWO KEY EMPLOYEES WERE NO

02:08:15 14 LONGER WITH THE COMPANY.

02:08:17 15     FIRST OF ALL, I THINK YOU'VE GOT FACTS THAT SHOW THE DATES

02:08:22 16 OF THEIR DEPARTURE FROM THE COMPANY AND THE DATES OF THE ROUNDS

02:08:26 17 OF FINANCING, THAT'S FINE.  BUT YOU'VE MADE UP, NOT YOU

02:08:30 18 PERSONALLY, YOU'VE MADE UP EVERYTHING ELSE FROM THAT.  YOU'VE

02:08:33 19 SPUN A TALE THAT HAS NO BASIS, WITH NO EVIDENTIARY SUPPORT,

02:08:39 20 THAT IT WAS CRITICAL TO FINANCING.

02:08:42 21     YOU'VE GIVEN ME THE GENERIC THAT STARTUP COMPANIES ARE

02:08:46 22 WORRIED ABOUT FINANCING AND THEY WANT TO PUT ON A GOOD UNITED

02:08:50 23 FRONT OF THE TALENT BEING IN THE BLEACHERS THERE WITH THE TEAM,

02:08:58 24 BUT YOU DON'T HAVE ANY EVIDENCE THAT THAT'S WHAT WAS ACTUALLY

02:09:01 25 GOING ON AT SKILLZ.

UNITED STATES COURT REPORTERS

28

02:09:04 1     MS. GARDNER:  A FEW POINTS, YOUR HONOR.

02:09:05 2     THE COURT:  OKAY.

02:09:05 3     MS. GARDNER:  FIRST, INEQUITABLE CONDUCT, AS YOU ARE

02:09:08 4 AWARE, NEVER REQUIRES SMOKING GUN EVIDENCE.  CIRCUMSTANTIAL

02:09:11 5 EVIDENCE IS USED IN THESE CASES, BECAUSE THERE'S NOT GOING TO

02:09:15 6 BE AN E-MAIL WHERE MR. PARADISE OR MR. CHAFKIN SAID, LET'S

02:09:19 7 DECEIVE THE PTO, SO INFERENTIAL EVIDENCE IS WHAT IS COMMON

02:09:23 8 HERE.

02:09:23 9     THE COURT:  BUT I DON'T HAVE ANY EVIDENCE ON WHAT

02:09:25 10 THEY WERE -- HOW THEY WERE TRYING TO PRESENT THEMSELVES TO

02:09:29 11 THEIR EARLY INVESTORS.

02:09:32 12     MS. GARDNER:  THERE IS NOT MUCH EVIDENCE OF THAT.

02:09:34 13     MR. PARADISE TESTIFIED THAT THE PATENTS THAT THEY HAD,

02:09:37 14 THEIR EARLY FOUNDATIONAL PATENTS, WHICH INCLUDES THIS ONE, WERE

02:09:40 15 IMPORTANT TO INVESTORS.

02:09:43 16     THE COURT:  BUT THIS WASN'T THE ONLY PATENT THAT THEY

02:09:45 17 WERE TRYING TO GET INVESTMENTS FOR, WAS IT?

02:09:48 18     MS. GARDNER:  THAT'S CORRECT, YOUR HONOR.

02:09:49 19     AT THE TIME, THEY DID HAVE A VERY SMALL NUMBER OF

02:09:52 20 EMPLOYEES.  THESE WERE TWO OF THE EIGHT FIRST EMPLOYEES, AND SO

02:09:56 21 BY THE TIME THEY WERE GONE, IT'S A VERY SMALL NUMBER.

02:09:59 22     E-MAILS, THEMSELVES, ALSO SHOW THAT THERE'S ONLY FOUR

02:10:03 23 INDIVIDUALS WHO WERE INVOLVED IN THIS CONVERSATION OTHER THAN

02:10:05 24 MR. PARADISE AND MR. CHAFKIN, IT WAS JUST SHUBERT AND FREDETTE

02:10:10 25 ON THESE E-MAILS.

UNITED STATES COURT REPORTERS

29

02:10:11  1    THE COURT:  SO THAT ACTUALLY DOESN'T TELL ME VERY
02:10:13  2  MUCH BECAUSE I DON'T HAVE ANY KNOWLEDGE OF WHY THERE WERE ONLY
02:10:19  3  THOSE PEOPLE ON THE E-MAIL.
02:10:21  4    AND I CAN'T -- I MEAN, THERE ARE CERTAIN INFERENCES THAT I
02:10:25  5  HAVE TO DRAW IN YOUR FAVOR AS THE OPPOSING PARTY, BUT THEY HAVE
02:10:29  6  TO BE REASONABLE, AND I DON'T SEE -- I'M SEEING MR. FREDETTE
02:10:33  7  SAY, I PUT TOGETHER THE ENGINEERING TEAM'S DETAILED VERSION, IT
02:10:37  8  DOESN'T SAY, "HEY TEAM."
02:10:40  9    SO HE'S CLEARLY SENDING THIS E-MAIL TO A GROUP OF PEOPLE
02:10:46  10  WHO ARE APPARENTLY NOT THE ENGINEERING TEAM, BECAUSE OTHERWISE
02:10:50  11  HE WOULDN'T BE SENDING IT.
02:10:52  12    AND HE DOESN'T CLAIM ANY INVENTORSHIP HIMSELF.  WHY WOULD
02:10:57  13  THIS NOT MORE REASONABLY BE MR. FREDETTE AS A -- VERY HIGH
02:11:02  14  LEVEL, I DON'T MEAN TO TAKE ANYTHING AWAY FROM HIS SKILL, BUT
02:11:05  15  AS THE SCRIBE ON WHAT THE TEAM WAS PUTTING TOGETHER?
02:11:10  16    MS. GARDNER:  YOUR HONOR, THAT IS CERTAINLY ONE
02:11:12  17  POSSIBLE INFERENCE.
02:11:14  18    BUT TURNING TO THE LANGUAGE OF THE E-MAIL ITSELF, DOWN TO
02:11:18  19  THE CITED PORTION AT SUB-BULLET, IT'S SUB-BULLET ONE, WHERE
02:11:23  20  HE'S DESCRIBING THIS PARTICULAR ISSUE.  THE LANGUAGE IN THAT
02:11:29  21  PARTICULAR ISSUE IS PROSPECTIVE.  IT STARTS WITH "IF."  THE
02:11:33  22  "IF" WAS OMITTED FROM THE QUOTE IN SKILLZ'S BRIEF, AND IT'S
02:11:37  23  TALKING ABOUT WHAT COULD BE ACCOMPLISHED USING THIS TOURNAMENT
02:11:40  24  ID.
02:11:40  25    THE COURT:  BUT WHY IS IT -- TO ME, THE ONLY

30

02:11:43  1  REASONABLE INFERENCE IS THAT THIS WAS WHAT THE TEAM DISCUSSED.
02:11:47  2    MS. GARDNER:  WELL, YOUR HONOR, THE RESPONSE FROM
02:11:51  3  SHUBERT, AT THE TOP OF THIS, IS A GREAT WRITE-UP.  A COUPLE
02:11:54  4  POINTS ON THAT.
02:11:57  5    OUR VIEW IS THE MOST REASONABLE INFERENCE IS THIS IS A
02:12:00  6  GREAT WRITE-UP OF SHUBERT'S IDEA, PROPOSED IN THE E-MAIL A WEEK
02:12:04  7  PRIOR.
02:12:04  8    THE COURT:  WHAT?  OKAY.  I DIDN'T SEE THAT COMING.
02:12:07  9    OKAY.  IT'S A WRITE-UP, BUT THE E-MAIL SAYS "I PUT
02:12:12  10  TOGETHER THE'S TEAM'S VERSION."  SO THE ONLY WRITE-UP IS WHAT
02:12:17  11  MR. FREDETTE SENT.
02:12:18  12    SO LET'S LOOK AT THE OTHER E-MAIL, BECAUSE THAT ONE WAS
02:12:21  13  DIFFERENT IN NATURE.  SO THIS PREDATES THE OCTOBER 17TH E-MAIL,
02:12:32  14  AND THIS STARTS WITH AN E-MAIL FROM MR. CHAFKIN, I DON'T KNOW
02:12:39  15  WHO HE'S SENDING IT TO, THAT I CAN'T TELL.
02:12:47  16    MS. GARDNER:  IN MR. CHAFKIN'S E-MAIL, HE QUERIES
02:12:52  17  ANDREA SHUBERT ABOUT A GAME THAT THEY ARE CONSIDERING FOR
02:12:55  18  ACQUISITION.
02:12:55  19    THE COURT:  RIGHT.  OKAY.  SO THIS IS -- OKAY.
02:12:59  20  RIGHT.
02:13:00  21    MS. GARDNER:  WHICH WE THINK FIRST IMPLIES THAT HE
02:13:02  22  DIDN'T KNOW THE ANSWER HIMSELF, DESPITE BEING A NAMED INVENTOR.
02:13:08  23    THE COURT:  OKAY.  BUT THIS IS ABOUT BUYING SOMEBODY
02:13:10  24  ELSE'S PRODUCT, NOT MAKING THEIR OWN.
02:13:12  25    MS. GARDNER:  WELL, THEY USED IT FOR TESTING AND

31

02:13:15  1  DEVELOPMENT OF THEIR OWN PRODUCTS, YOUR HONOR.
02:13:16  2    THE COURT:  OKAY.  BUT IT'S STILL ABOUT TRYING TO
02:13:19  3  DECIDE WHETHER TO BUY SOMEBODY ELSE'S PRODUCT.  WE NEED TO FEEL
02:13:25  4  GOOD ABOUT ANY GAME WE ARE GOING TO PURCHASE ALONG TWO
02:13:25  5  DIMENSIONS.  SO HE'S SAYING, IS THIS GAME CAPABLE?  DOES IT DO
02:13:28  6  THAT?  AND SHE SAID -- AND SHE'S BASICALLY ANALYZING WHETHER A
02:13:32  7  PRE-EXISTING PRODUCT SATISFIES SKILLZ'S NEEDS.
02:13:42  8    WHAT'S SHE INVENTING HERE?  SHOW ME SOME LANGUAGE HERE OF
02:13:47  9  HER INVENTORSHIP.
02:13:48  10    MS. GARDNER:  THE LANGUAGE HERE THAT RELATES TO THE
02:13:50  11  PATENT IS THE SUGGESTION OF USING SOMETHING IN THE TOURNAMENT
02:13:54  12  SETUP AS THE PSEUDO RANDOM NUMBER SEED.  AND SO AS THAT'S
02:13:55  13  WRITTEN UP IN MR. FREDETTE'S E-MAIL FIVE DAYS LATER, THEY
02:14:01  14  SETTLE ON THE TOURNAMENT ID, WHICH IS WHAT IS ALMOST VERBATIM
02:14:04  15  PARALLELED IN THE PATENT AND WHAT MR. PARADISE CONFIRMED DURING
02:14:07  16  HIS DEPOSITION IS AN ACCURATE WRITE-UP OF THE PATENT AS WELL.
02:14:11  17    THE COURT:  OKAY.  GO AHEAD.
02:14:20  18    AND THANK YOU FOR WALKING THROUGH THAT SO EXPERTLY.
02:14:20  19    MS. GARDNER:  THANK YOU, YOUR HONOR.
02:14:24  20    GOING TO THE DEPOSITION TESTIMONY, BECAUSE THAT'S THE ONLY
02:14:34  21  EVIDENCE SKILLZ HAS, ALL FROM 2023.  THERE'S FOUR NAMED
02:14:39  22  INVENTORS, ONE OF THEM DIDN'T SHOW UP.  MR. PARADISE FIRST
02:14:43  23  TESTIFIED THAT EVERYONE WOULD AGREE HE WAS THE PRIMARY
02:14:43  24  INVENTOR.
02:14:46  25    THAT DIDN'T HAPPEN BECAUSE MR. CHAFKIN TESTIFIED HE DIDN'T

32

02:14:49  1  FEEL COMFORTABLE ASCRIBING SUBJECTIVE VALUE TO DIFFERENT TEAM
02:14:53  2  MEMBER'S CONTRIBUTIONS IN WHAT WAS A TEAM EFFORT.  AND MR.
02:14:58  3  PETRALIA TESTIFIED IT WAS A TEAM EFFORT.  AND MR. PARADISE WENT
02:15:03  4  ON TO CONTRADICT HIMSELF, TESTIFYING THAT HE CAME UP WITH
02:15:05  5  EVERYTHING WHILE HE WAS AT INTUIT BEFORE HE CAME TO SKILLZ,
02:15:10  6  WHICH WOULD MEAN THAT MR. CHAFKIN, MR. PETRALIA AND MR. ABDALLA
02:15:14  7  WERE NOT INVENTORS.
02:15:16  8    SO WHAT WE HAVE IN THE EVIDENCE IS TWO E-MAILS FROM 2012.
02:15:24  9  WE HAVE THE PATENT APPLICATION OF THE CONTINUATION IN PART THAT
02:15:27  10  NEARLY DIRECTLY QUOTES MR. FREDETTE'S E-MAIL, A MONTH AFTER HE
02:15:33  11  WAS FIRED, AFTER MR. PARADISE TESTIFIED HE WENT BANANAS.  AND
02:15:37  12  THEN TODAY WE HAVE THREE OF THE FOUR NAMED INVENTORS
02:15:42  13  DISAGREEING WITH EACH OTHER.  AND ALONG THE WAY, WE HAVE
02:15:46  14  SHUBERT, WHO IS NOW ANDREW DAVIS, MAKING CLAIMS OF INVENTORSHIP
02:15:51  15  RELATED TO --
02:15:51  16    THE COURT:  BUT I DON'T THINK THEY SAY THAT THEY
02:15:53  17  INVENTED THIS PATENT.
02:16:04  18    I READ, I DON'T KNOW WHAT TO CALL IT, A SCREEN SHOT OF A
02:16:06  19  POST THAT THEY MADE.  AND IT DIDN'T SAY TO ME IT WAS THE SAME
02:16:10  20  PATENT, SO THAT WAS A LITTLE CONFUSING TO ME.
02:16:16  21    MS. GARDNER:  A COUPLE THINGS ON THAT, YOUR HONOR.
02:16:18  22  FIRST OF ALL, SHUBERT IS NOT CREDITED WITH INVENTING
02:16:22  23  ANYTHING AT SKILLZ.
02:16:23  24    THE COURT:  WELL I'M ONLY CONCERNED WITH THE '564
02:16:25  25  THOUGH.  SO IF SHUBERT FEELS SLIGHTED BY OTHER WORK THAT THEY

33

| | |
|---|---|
| 02:16:33 | 1   DID ON OTHER PROJECTS, THAT'S BETWEEN SHUBERT AND THE COMPANY, |
| 02:16:38 | 2   NOT PART OF THIS LAWSUIT, AND IT'S NOT CIRCUMSTANTIAL EVIDENCE |
| 02:16:43 | 3   OF INVENTORSHIP ON THE '564. |
| 02:16:47 | 4        MS. GARDNER:  OUR POSITION IS THAT SHUBERT'S BELIEF |
| 02:16:49 | 5   IS NOT ENTIRELY EVEN NECESSARY, BUT THIS DOES REBUT SKILLZ'S |
| 02:16:54 | 6   POINT THAT NOBODY BELIEVES THEY WERE AN INVENTOR. |
| 02:16:57 | 7        THERE'S OTHER JUST SORT OF VAGUE CLAIMS THAT SHUBERT WAS |
| 02:17:00 | 8   INVOLVED IN INVENTING THINGS RELATED TO FAIRNESS.  AND SKILLZ'S |
| 02:17:05 | 9   EXPERTS ACTUALLY SAY THAT THE '564 PATENT IS RELEVANT TO ALL OF |
| 02:17:08 | 10  FAIRNESS. |
| 02:17:11 | 11        AND RELATEDLY, OUR EXPERT HAS AN OPINION ON INVENTORSHIP |
| 02:17:14 | 12  HERE AND THEIR EXPERT HAS NO OPINION. |
| 02:17:17 | 13        THE COURT:  AND WHERE DOES DR. WELCH GIVE ME AN |
| 02:17:22 | 14  OPINION ON INVENTORSHIP? |
| 02:17:23 | 15        MS. GARDNER:  IN HIS REPORT, YOUR HONOR, DR. WELCH |
| 02:17:25 | 16  HAD AN OPINION THAT BOTH ANDREA SHUBERT AND TIM FREDETTE WERE |
| 02:17:32 | 17  INVENTORS OF THE PATENT AND THAT THEY WERE WRONGFULLY OMITTED. |
| 02:17:35 | 18        THE COURT:  CAN YOU -- I AM NOT RECALLING THAT |
| 02:17:37 | 19  PARAGRAPH OR SET OF PARAGRAPHS.  DO YOU HAVE THAT HANDY IN YOUR |
| 02:17:40 | 20  NOTES? |
| 02:17:43 | 21        MR. BOMBACH:  IT'S 153 OF WELCH'S REPORT.  IT STARTS |
| 02:17:48 | 22  THERE AND IT CONTINUES FOR SEVERAL PARAGRAPHS. |
| 02:17:52 | 23        THE COURT:  THANK YOU.  I DIDN'T BRING THE WHOLE |
| 02:17:53 | 24  REPORT TO THE BENCH, BUT I THINK I BROUGHT THAT WITH ME.  NO, I |
| 02:17:57 | 25  DIDN'T. |

UNITED STATES COURT REPORTERS

34

| | |
|---|---|
| 02:17:57 | 1        THANK YOU.  THAT'S ALL I NEEDED.  I REALLY APPRECIATE |
| 02:18:00 | 2   THAT. |
| 02:18:00 | 3        MS. GARDNER:  AND ALSO, MR. WELCH'S REPORT WAS ISSUED |
| 02:18:03 | 4   OVER A MONTH BEFORE THE CONTRACTS WERE PRODUCED FROM SKILLS, |
| 02:18:08 | 5   WHICH IS FURTHER REASON WHY THAT WAS VERY LATE, IN OUR VIEW, |
| 02:18:12 | 6   BECAUSE MR. CHAFKIN WAS ASKED ABOUT THE SHUBERT E-MAIL ON |
| 02:18:17 | 7   MAY 12TH.  MR. PARADISE WAS ASKED ABOUT BOTH E-MAILS, AND |
| 02:18:20 | 8   DR. WELCH, OF COURSE, HAD HIS EXPERT OPINION.  AND SO YOU KNOW, |
| 02:18:25 | 9   THE CONTRACTS WERE PRODUCED OVER A MONTH LATER, AND RIGHT |
| 02:18:28 | 10  BEFORE THE ANSWER WAS ON FILE. |
| 02:18:30 | 11        THE COURT:  OKAY.  THANK YOU. |
| 02:18:32 | 12  ANYTHING ELSE ON INEQUITABLE CONDUCT? |
| 02:18:39 | 13        MS. GARDNER:  ONE MOMENT, YOUR HONOR. |
| 02:18:40 | 14        THE COURT:  OF COURSE. |
| 02:18:41 | 15        MS. GARDNER:  I APOLOGIZE. |
| 02:18:57 | 16        THE CONTRACTS, AS YOUR HONOR IS AWARE FROM THE BRIEFING, |
| 02:19:00 | 17  OUR MAIN POINT ON THEM IS THAT THEY ARE RELATED TO OWNERSHIP |
| 02:19:04 | 18  AND NOT INVENTORSHIP. |
| 02:19:05 | 19        THE COURT:  I THINK I DO NEED YOU TO -- YOU INDICATED |
| 02:19:07 | 20  THAT YOU DIDN'T THINK THAT SKILLZ'S CASE AUTHORITY ON CHANGING |
| 02:19:18 | 21  THEORIES IN THE MIDDLE WAS APPROPRIATE, BUT THAT'S A LITTLE BIT |
| 02:19:21 | 22  NEWS TO ME.  YOU THINK YOU CAN JUST COME UP WITH A NEW THEORY |
| 02:19:24 | 23  IN OPPOSITION TO SUMMARY JUDGEMENT AND HAVING NEVER PUT THE |
| 02:19:26 | 24  OTHER SIDE ON NOTICE? |
| 02:19:27 | 25        MS. GARDNER:  OUR THEORY, AS WE VIEW IT, IS STILL |

UNITED STATES COURT REPORTERS

35

| | |
|---|---|
| 02:19:30 | 1   JUST THAT TIM FREDETTE AND ANDREA SHUBERT WERE OMITTED |
| 02:19:34 | 2   INVENTORS, AS SHOWN BY THESE E-MAILS, AS SHOWN BY THE |
| 02:19:37 | 3   CONTRADICTORY DEPOSITION TESTIMONY. |
| 02:19:39 | 4        THE SPECIFIC CASE THEY CITED WAS -- IT WOULD BE MORE |
| 02:19:42 | 5   ANALOGOUS AS IF WE WERE NOW SAYING BOB SMITH WAS AN OMITTED |
| 02:19:47 | 6   INVENTOR. |
| 02:19:48 | 7        THE COURT:  OKAY. |
| 02:19:48 | 8        MS. GARDNER:  THE PROBLEM WITH THE LACK OF EVIDENCE |
| 02:19:50 | 9   OF INVENTORSHIP BY ANY OF THESE FOLKS WERE DOCUMENTS FROM 2012, |
| 02:19:55 | 10  IS THAT WE CAN'T BE CLEAR AS TO WHY MR. PARADISE OR MR. CHAFKIN |
| 02:20:01 | 11  WOULD HAVE OMITTED THEM.  IT COULD HAVE BEEN TO MAINTAIN |
| 02:20:04 | 12  CONTROL. |
| 02:20:04 | 13        NEITHER SHUBERT NOR FREDETTE APPEARS TO BE UNDER SKILLZ'S |
| 02:20:09 | 14  CONTROL.  THEY DIDN'T COME TO DEPOSITION, THEY DIDN'T HAVE A |
| 02:20:12 | 15  DECLARATION, NOTHING LIKE THAT.  WE KNOW FREDETTE LEFT ON BAD |
| 02:20:16 | 16  TERMS.  SHUBERT IS IDENTIFYING UNDER A DIFFERENT NAME AND IS IN |
| 02:20:20 | 17  A DIFFERENT COUNTRY. |
| 02:20:23 | 18        THE COURT:  YEAH.  OKAY.  I DIDN'T KNOW THAT.  I SAW |
| 02:20:23 | 19  THE DIFFERENT NAME. |
| 02:20:25 | 20        MS. GARDNER:  IT COULD HAVE BEEN TO SECURE FUNDING, |
| 02:20:27 | 21  BECAUSE AS MR. PARADISE TESTIFIED, IT WAS VERY POORLY FUNDED AS |
| 02:20:31 | 22  OF THE TIME, AND HE ONLY LEFT INTUIT, DESPITE THIS POOR |
| 02:20:37 | 23  FUNDING, BECAUSE HE HAD ALREADY INVENTED THIS BY HIMSELF |
| 02:20:40 | 24  WITHOUT CHAFKIN AND WITHOUT PETRALIA.  IT COULD HAVE JUST BEEN |
| 02:20:46 | 25  THE BAD BLOOD BETWEEN HIM AND MR. FREDETTE.  UNFORTUNATELY ALL |

UNITED STATES COURT REPORTERS

36

| | |
|---|---|
| 02:20:50 | 1   WE HAVE HERE IS THAT THEY ARE, TODAY, CONTRADICTING THEMSELVES. |
| 02:20:55 | 2   AND BACK THEN, WE JUST HAVE THESE TWO E-MAILS. |
| 02:20:57 | 3        THE COURT:  OKAY.  YES.  WELL, AS LAWYERS, WE DON'T |
| 02:21:01 | 4   MAKE THE EVIDENCE, DO WE. |
| 02:21:02 | 5        MS. GARDNER:  NO, YOUR HONOR. |
| 02:21:03 | 6        THE COURT:  THANK YOU. |
| 02:21:04 | 7        MS. GARDNER:  ONE FINAL POINT IS THAT BECAUSE THE |
| 02:21:07 | 8   EVIDENCE FROM SKILLZ IS DEPOSITION TESTIMONY, THE WITNESS |
| 02:21:11 | 9   CREDIBILITY IS EXTREMELY IMPORTANT HERE.  AND EVEN THOUGH THE |
| 02:21:14 | 10  INEQUITABLE CONDUCT DECISION IS ULTIMATELY UP TO YOUR HONOR, |
| 02:21:17 | 11  YOUR HONOR WOULD GREATLY BENEFIT FROM WEIGHING THAT EVIDENCE IN |
| 02:21:21 | 12  ASSESSING THESE WITNESSES IN PERSON. |
| 02:21:22 | 13        THE COURT:  THANK YOU. |
| 02:21:23 | 14        MS. GARDNER:  THANK YOU. |
| 02:21:25 | 15        THE COURT:  ALL RIGHT.  MR. BOMBACH, ARE YOU GOING |
| 02:21:27 | 16  TO -- I'M SORRY THAT YOU HAVE SEVEN MINUTES, BUT LET'S HEAR |
| 02:21:30 | 17  ABOUT THESE THREE PRIOR ART REFERENCES.  AND DON'T TALK FASTER. |
| 02:21:35 | 18        MR. BOMBACH:  I WILL TRY MY BEST TO GO SUPER FAST. |
| 02:21:45 | 19        THE COURT:  OKAY. |
| 02:21:50 | 20        MR. BOMBACH:  IF YOU COULD PUT UP SLIDE 41. |
| 02:21:52 | 21        THIS ISSUE IS MAINLY A DISAGREEMENT ON WHETHER THE |
| 02:21:57 | 22  REFERENCES TEACH A CERTAIN ELEMENT.  BUT BEFORE I GET INTO |
| 02:22:00 | 23  THAT, I WANT TO MAKE CLEAR THAT WE ARE PRESENTING ANTICIPATORY |
| 02:22:05 | 24  REFERENCES UNDER SKILLZ'S INTERPRETATION, WHICH MY COLLEAGUE |
| 02:22:10 | 25  MS. WANG, WILL GET INTO A LITTLE MORE, IS THAT A MERE LOOK-UP |

UNITED STATES COURT REPORTERS

37

02:22:14 1 USING A UNIQUE MATCH IDENTIFIER, WHICH SKILLZ BELIEVES CAN BE A

02:22:20 2 TOURNAMENT ID, SATISFIES THE CLAIMS.

02:22:26 3 THE COURT:  WELL IT MAY, THAT MIGHT BE A JURY ISSUE,

02:22:29 4 HOWEVER.

02:22:29 5 MR. BOMBACH:  IF YOU COULD TURN TO THE NEXT SLIDE, 42

02:22:31 6 PLEASE.

02:22:35 7 SKILLZ HAS SINCE ABANDONED SOME OF ITS THEORIES THAT OUR

02:22:39 8 GENSEED DOES INFRINGE BECAUSE IT JUST MAKES A SEED.  AND THAT

02:22:42 9 SEED, BY VIRTUE OF BEING A SEED, HAS A UNIQUE MATCH IDENTIFIER.

02:22:48 10 AND MS. WANG WILL GET A LITTLE MORE IN DETAIL ON THAT, BUT WE

02:22:51 11 THINK SUMMARY JUDGEMENT ON NON-INFRINGEMENT IS APPROPRIATE

02:22:56 12 THERE, AND I WILL NOT ADDRESS THAT IN VALIDITY.

02:22:58 13 AND VERY QUICKLY, IF YOU COULD TURN TO SLIDE 43.

02:23:01 14 PATEL, WE PRESENTED THAT BECAUSE SKILLZ HAD MAINTAINED

02:23:11 15 THAT GAME ID WAS A UNIQUE MATCH IDENTIFIER.  SKILLZ HAS THUS

02:23:15 16 ABANDONED THAT INFRINGEMENT THEORY AND NOW AGREES WITH

02:23:18 17 AVIAGAMES THAT A GAME ID IS NOT A UNIQUE MATCH IDENTIFIER.

02:23:24 18 NON-INFRINGEMENT ON THAT PARTICULAR ISSUE IS APPROPRIATE

02:23:29 19 AND IT MOOTS OUR PRESENTATION OF PATEL AS ANTICIPATORY

02:23:32 20 REFERENCE.

02:23:35 21 THE COURT:  I'M SORRY, YOU THINK IT'S MOOT?  SO YOU

02:23:37 22 GAVE ME THIS ARGUMENT THAT MADE MY HEAD HURT, IT'S NOT THAT YOU

02:23:40 23 ARE WRONG IN THE LAW, BUT BASICALLY YOU SAID THEY CAN'T HAVE IT

02:23:44 24 BOTH WAYS ON THEIR INTERPRETATION.

02:23:46 25 MR. BOMBACH:  YES.

38

02:23:46 1 THE COURT:  SO YOU'RE -- BUT IT'S VERY HARD FOR ME TO

02:23:50 2 HOLD ON TO THIS, YOU ARE SAYING IF A, THEN IT'S MOOT, AND IF B,

02:23:54 3 THEN --

02:23:54 4 MR. BOMBACH:  SO, WITH PATEL --

02:23:56 5 THE COURT:  WITH PATEL.

02:23:57 6 MR. BOMBACH:  I'M SORRY FOR INTERRUPTING YOUR HONOR.

02:23:59 7 WITH PATEL, AS OF THE FILING OF OUR OPPOSITION, THEY HAD

02:24:04 8 MAINTAINED THAT A GAME ID IS A UNIQUE MATCH IDENTIFIER.  AND BY

02:24:10 9 THE TIME OF THEIR REPLY, THEY HAVE AFFIRMATIVELY AGREED WITH

02:24:14 10 AVIAGAMES THAT A GAME ID IS NOT A UNIQUE MATCH IDENTIFIER.

02:24:19 11 THE COURT:  YES.

02:24:19 12 MR. BOMBACH:  WITH THAT, THAT WAS THE THEORY WE HAD

02:24:21 13 RELIED ON FOR PATEL.  SO IN THAT INSTANCE, IT DOES MOOT OUR

02:24:27 14 PRESENTATION OF PATEL AS --

02:24:29 15 THE COURT:  SO IF I GRANTED SUMMARY JUDGEMENT AS TO

02:24:34 16 ANTICIPATION UNDER PATEL, YOU AGREE WITH THAT.

02:24:37 17 MR. BOMBACH:  YES.

02:24:37 18 THE COURT:  OKAY.

02:24:40 19 MR. BOMBACH:  AND I WANT TO MOVE ON TO STEUER REALLY

02:24:46 20 QUICK.  THIS IS MAINLY JUST A DISAGREEMENT ON WHAT STEUER

02:24:51 21 TEACHES.

02:24:52 22 THE COURT:  SO I'M ONLY CHUCKLING, BECAUSE THIS

02:24:54 23 PARTICULAR PRIOR ART REFERENCE HAS BEEN THE SUBJECT OF MORE

02:24:56 24 CONTROVERSY WITH THIS PATENT IN THE PROSECUTION HISTORY.

02:25:01 25 MR. BOMBACH:  YES, IT'S BEEN VERY CONTROVERSIAL FOR

39

02:25:05 1 SURE.  AND WITH RESPECT TO STEUER, WE HAD PRESENTED ITS USAGE

02:25:11 2 OF A TOURNAMENT ID AS A LOOK-UP, AS A RETRIEVAL FOR A SEED FOR

02:25:16 3 A GAME.

02:25:18 4 SKILLZ DISAGREES THAT THAT IS TAUGHT IN STEUER.  BUT IF WE

02:25:23 5 COULD TURN TO SLIDE 45, WHAT STEUER DOES IS IT ALLOWS A GAMER,

02:25:31 6 JUST SAYS OH, DO YOU WANT TO PLAY TOURNAMENT 1, 2, 3, 4 OR 5?

02:25:35 7 THE PLAYER RESPONDS, I WANT TO PLAY TOURNAMENT 3, AND THEN

02:25:40 8 STEUER PROVIDES A SEED FOR THAT TOURNAMENT.

02:25:45 9 AND COUNSEL FOR SKILLZ POINTED TO PARAGRAPH 27, AND I WANT

02:25:51 10 TO ACTUALLY GO A LITTLE SLOWER ON PARAGRAPH 27, IT SAYS

02:25:57 11 "PROVIDE A TOURNAMENT MENU TO," AND THEN IT GOES, "THE GAME."

02:26:02 12 SO AS TO PROVIDE A USER, SELECTABLE ACCESS TO ONGOING

02:26:06 13 TOURNAMENTS FOUND IN THE TOURNAMENT DATABASE AND RECEIVE THE

02:26:11 14 TOURNAMENT ID ASSOCIATED WITH A USER-SELECTED ONGOING

02:26:17 15 TOURNAMENT.  SO A USER CHOOSES THEIR TOURNAMENT, THE SERVER

02:26:22 16 GETS THAT ID.

02:26:25 17 AND THEN IT CONTINUES, THAT SAME PARAGRAPH, "THE

02:26:31 18 CLIENT-SERVER COMMUNICATION MODULE MAY FURTHER PROVIDE AT LEAST

02:26:36 19 ONE OF THE SERVER-SIDE GENERATED NUMBERS ASSOCIATED WITH THE

02:26:39 20 USER SELECTED ONGOING TOURNAMENT."

02:26:44 21 SO A USER WILL SELECT A TOURNAMENT, THEN IT WILL PROVIDE

02:26:47 22 ONE OF THE RANDOM NUMBERS.

02:26:51 23 AND IF YOU COULD TURN BACK TO SLIDE 44, ON PARAGRAPH 12 OF

02:26:59 24 STEUER, IT SAYS IT'S A RANDOM SEED.  SO IT'S SAYING THAT THE

02:27:05 25 SEED IS PROVIDED.

40

02:27:07 1 AND IF YOU COULD TURN BACK TO PARAGRAPH 45, THAT'S WHAT

02:27:14 2 DR. WELCH HAD SAID AT HIS DEPOSITION, HE SAID, "I THINK A

02:27:19 3 PERSON OF ORDINARY SKILL WOULD SEE THAT AS A TOURNAMENT ID,"

02:27:23 4 WHEN HE'S REFERRING TO THE EXCHANGE.

02:27:26 5 SO HERE THERE'S SUFFICIENT EVIDENCE TO SHOW THAT THERE IS

02:27:30 6 A GENUINE DISPUTE THAT A REASONABLE JUROR WOULD SIDE FOR

02:27:37 7 AVIAGAMES.

02:27:41 8 AND JUST FOR CLARITY, WE ARE RELYING ON THE UNIQUE MATCH

02:27:46 9 IDENTIFIER BEING THE TOURNAMENT IDENTIFIER, BUT AS MS. WANG

02:27:49 10 WILL GO INTO IN FURTHER DETAIL, WE THINK THAT CLAIM

02:27:53 11 INTERPRETATION IS WRONG BECAUSE OF THE DISCLAIMER.  AS WELL, WE

02:27:59 12 BELIEVE THAT THE LOOK-UP USING A TOURNAMENT IDENTIFIER TO

02:28:03 13 MAINLY RETRIEVE A SEED IS ALSO AN INCORRECT INTERPRETATION OF

02:28:07 14 THE CLAIMS.

02:28:08 15 AND IF YOU COULD TURN TO SLIDE 46.  THIS IS ANOTHER

02:28:15 16 INSTANCE OF DISAGREEMENT ON WHAT THE PRIOR ART TEACHES, BUT

02:28:22 17 IT'S -- DR. WELCH'S THEORY IS BASED ON REASONED EVIDENCE OF THE

02:28:28 18 REFERENCE.

02:28:30 19 YOU COULD SEE FIGURE 6, IT HAS MULTIPLE ID'S, LIKE 9154,

02:28:39 20 9155. SO THE GUI SAYS, PLAYER, WHAT TOURNAMENT DO YOU WANT TO

02:28:45 21 PLAY?  AND THEN THE PLAYER WILL SELECT THAT TOURNAMENT AND GET

02:28:50 22 DETAIL FOR THAT TOURNAMENT.

02:28:52 23 IF YOU COULD TURN TO SLIDE 47, AND THERE'S A FLOW CHART

02:28:58 24 GIVEN FOR THAT, YOU SELECT, USER MAKES A SELECTION, SERVER

02:29:02 25 SENDS THE SEED, THE CARD DECK.

41

02:29:07 1    SO YOU ARE GIVEN THE OPTIONS, THE SERVER IS TOLD WHICH
02:29:11 2  TOURNAMENT YOU WANT TO PLAY, AND THEN THE SERVER PROVIDES THE
02:29:14 3  SEED FOR THAT TOURNAMENT.  I THINK IT LOGICALLY FOLLOWS THAT
02:29:17 4  IT'S GOING TO BE USING INFORMATION OF THAT TOURNAMENT.
02:29:20 5    AND IF YOU COULD TURN TO SLIDE 48, PLEASE.  IT'S PRETTY
02:29:27 6  EXPLICIT IN HALLIBURTON 730-746, WHERE ONCE THE USER PRESSES
02:29:35 7  THE PLAY BUTTON, WEB SERVER PROVIDES INFORMATION RELATED TO THE
02:29:40 8  SELECTED GAME.  THE WEB SERVER PROVIDES THE CARDS BY PROVIDING
02:29:44 9  A SEED.
02:29:45 10    SO ONCE THE PLAYER PRESSES PLAY, THE SERVER IS GOING TO
02:29:49 11  RETRIEVE THE SEED FOR THE GAME, THE TOURNAMENT THAT THE PLAYER
02:29:52 12  SELECTED.
02:29:55 13    AND IF YOU COULD -- IT'S A DISAGREEMENT ON WHAT THE
02:30:00 14  TOURNAMENT TEACHES -- I MEAN WHAT HALLIBURTON TEACHES -- AND
02:30:05 15  THERE'S A GENUINE DISPUTE HERE, THE EVIDENCE SHOULD BE VIEWED
02:30:10 16  IN LIGHT MOST FAVORABLE TO THE NONMOVANT.
02:30:16 17    SO SUMMARY JUDGEMENT, NO ANTICIPATION FOR HALLIBURTON AND
02:30:21 18  STEUER IS APPROPRIATE.  BUT AGAIN, WE STRONGLY BELIEVE THAT
02:30:26 19  SKILLZ'S CLAIM INTERPRETATION IS INCORRECT AND THEY CAN'T HAVE
02:30:30 20  IT BOTH WAYS.  BUT IF YOU AGREED WITH OUR INTERPRETATION, THEN
02:30:33 21  ACTUALLY, SUMMARY JUDGEMENT WOULD BE APPROPRIATE.
02:30:37 22    THE COURT:  A LITTLE OFF TOPIC, BUT HOW MANY PRIOR
02:30:40 23  ART REFERENCES OR COMBINATIONS WILL YOU BE PRESENTING TO THE
02:30:43 24  JURY?
02:30:44 25    MR. BOMBACH:  MOST DEFINITELY NOT ALL OF THOSE IN
UNITED STATES COURT REPORTERS

42

02:30:47 1  DR. WELCH'S REPORT.  I CAN'T ANSWER EXACTLY HOW MANY, BUT WE
02:30:53 2  WILL NOT BURDEN THE JURY WITH ALL OF THAT.
02:30:56 3    THE COURT:  THAT'S FINE.  I DON'T LIMIT YOU, I JUST
02:30:58 4  LIMIT YOUR HOURS.
02:30:59 5    MR. BOMBACH:  YEAH.
02:30:59 6    THE COURT:  SO THEY WILL ALL BE ADJUDICATED AT THE
02:31:03 7  TRIAL, AS OPPOSED TO ME LIMITING YOU AND LEAVING SOME OUT THERE
02:31:08 8  HANGING.
02:31:12 9  GO AHEAD.
02:31:13 10    MR. BOMBACH:  AND VERY QUICKLY, I WANT TO END ON --
02:31:16 11    THE COURT:  YOU ARE EATING INTO YOUR ARGUMENT TIME
02:31:18 12  FOR YOUR MOTION, I DO WANT YOU TO KNOW THAT.
02:31:20 13    MR. BOMBACH:  NO, OKAY, 10 SECONDS.
02:31:23 14  VERY QUICKLY, IF YOU COULD TURN ON TO --
02:31:26 15    THE COURT:  AS I SAID, I'M HERE UNTIL 3:30, AND THEN
02:31:29 16  I'M GONE.
02:31:30 17    MR. BOMBACH:  IF YOU COULD TURN TO SLIDE 53.
02:31:31 18  THE OBVIOUSNESS, WE DO PRESENT THAT ANY NUMBER CAN BE
02:31:35 19  PROVIDED AS A SEED.  STEUER, HALLIBURTON SAYS YOU CAN PICK ANY
02:31:42 20  NUMBER AS YOUR SEED, IT DOESN'T MATTER, SO LONG AS THE SAME
02:31:46 21  PLAYERS GET THE SAME SEED.
02:31:48 22  SO IT IS AGNOSTIC TO THE PARTICULAR NUMBER CHOSEN.  AND
02:31:51 23  WHEN STEUER SAYS, HEY YOU CAN PICK ANY NUMBER, AND STEUER
02:31:56 24  ITSELF HAS A HANDFUL OF NUMBERS, THE TOURNAMENT ID IS ONE OF
02:31:59 25  THEM, IT'S AN OBVIOUS DESIGN CHOICE JUST TO PICK ONE OF THOSE
UNITED STATES COURT REPORTERS

43

02:32:04 1  NUMBERS THAT STEUER ALREADY DISCLOSES.
02:32:06 2    AND IF YOUR HONOR HAS NO FURTHER QUESTIONS, I WILL --
02:32:10 3  THANK YOU.
02:32:10 4    THE COURT:  NO.  THANK YOU.
02:32:12 5    MR. WOODS, DID YOU WANT 90 SECONDS TO REFUTE ANYTHING?
02:32:15 6    MR. WOOD:  I WILL TAKE IT.  I WILL START -- GIVEN
02:32:18 7  THAT LIMITED AMOUNT OF TIME, IF THERE'S ANYTHING IN PARTICULAR
02:32:20 8  YOU WOULD LIKE ME TO ADDRESS?
02:32:21 9    THE COURT:  NO, I'M FINE.
02:32:23 10    MR. WOOD:  SO I WILL MAKE JUST A COUPLE POINTS
02:32:25 11  BRIEFLY, YOUR HONOR.  I WILL START WITH THE MOST RECENT
02:32:27 12  ARGUMENT AND WORK MY WAY BACKWARDS, IF THAT'S OKAY.
02:32:33 13  I'M NOT SEEING -- I DIDN'T SEE COUNSEL POINT TO ANY
02:32:38 14  DISCLOSURE IN ANY OF THESE REFERENCES OR ANYTHING IN
02:32:44 15  DR. WELCH'S REPORT SAYING THIS IS HOW YOU GET FROM WHAT WE ARE
02:32:47 16  CLAIMING IS A UNIQUE MATCH IDENTIFIER TO THE SEED.
02:32:51 17    ALL I'M SEEING IS THERE'S A UNIQUE MATCH IDENTIFIER
02:32:54 18  SOMEWHERE, AND EVENTUALLY A SEED IS GOING TO COME OUT, AND
02:32:57 19  THERE IS NO THROUGH LINE CONNECTING EITHER ONE OF THOSE TWO
02:33:00 20  ASPECTS, EITHER IN THE PRESENTATION THAT I JUST SAW, OR I
02:33:03 21  BELIEVE IN DR. WELCH'S REPORT.
02:33:06 22    THERE'S BEEN -- I THINK THIS WILL COME UP IN AVIA'S
02:33:11 23  MOTION, THERE'S BEEN DISCUSSION OF GAME ID VERSUS TOURNAMENT ID
02:33:14 24  VERSUS -- I THINK OUR POSITION WOULD BE THAT YOU HAVE TO LOOK
02:33:17 25  AT WHAT THAT FEATURE DOES.  WHEN YOU ARE PROGRAMMING A PIECE OF
UNITED STATES COURT REPORTERS

44

02:33:21 1  SOFTWARE AND YOU HAVE A COMPONENT, YOU CAN NAME IT WHATEVER YOU
02:33:24 2  WANT, YOU CAN CALL IT A GAME ID, YOU CAN CALL IT ANYTHING, YOU
02:33:27 3  CAN CALL IT A CUCUMBER.  WHAT IT ACTUALLY DOES IS WHAT IS
02:33:31 4  IMPORTANT, AND WE DON'T BELIEVE THERE'S ANY DISCLOSURE IN HERE.
02:33:34 5  CERTAINLY WITH PATEL, WE BELIEVE WITH OTHER ONES, THAT WHAT
02:33:38 6  THEY ARE CLAIMING IS A UNIQUE MATCH ID IS ACTUALLY A UNIQUE
02:33:42 7  IDENTIFIER MATCH.
02:33:43 8    THE COURT:  OKAY.  I THINK I'M GOING TO CALL A HALT
02:33:46 9  NOW, AND THANK YOU.
02:33:46 10    ALL RIGHT.  SO LET ME PUT ASIDE THESE PAPERS.  I'M GOING
02:34:14 11  TO NOW TURN TO AVIA'S MOTION, WHICH IS ACTUALLY FAR MORE
02:34:19 12  COMPLEX.  I WILL GIVE EACH SIDE 25 MINUTES, AND THAT WILL
02:34:31 13  PRESERVE ME TIME TO TURN ON ZOOM FOR MY OTHER HEARINGS.
02:34:35 14  MS. WANG.
02:34:36 15    MS. WANG:  THANK YOU, YOUR HONOR.
02:34:40 16  IF YOU COULD TURN TO SLIDE 2.
02:34:41 17    THE COURT:  LET'S HAVE YOU PULL THAT MICROPHONE A
02:34:45 18  LITTLE CLOSER.
02:34:46 19    MS. WANG:  SURE, BECAUSE I'M SHORTER.
02:34:47 20    THE COURT:  I'M WITH YOU.
02:34:48 21    MS. WANG:  SO AVIAGAMES OFFERS A SOCIAL GAMING
02:34:52 22  PLATFORM CALLED POCKET7GAMES.
02:34:55 23  NEXT SLIDE, PLEASE.
02:34:56 24  THE COMPANY IS FOUNDED BY --
02:34:59 25    THE COURT:  DO YOU HAVE A BINDER FOR ME?
UNITED STATES COURT REPORTERS

45

02:35:01 1        MS. WANG:  YES, YOUR HONOR.  I THINK --

02:35:04 2        THE CLERK:  IS IT THE SAME ONE?

02:35:05 3        THE COURT:  IS IT THE SAME ONE?  OH, SORRY.  THAT'S

02:35:08 4    WHY THERE'S SO MANY SLIDES IN THERE.  I GOT IT.  I'M WITH YOU.

02:35:24 5        MS. WANG:  SO SLIDE 3, PLEASE.

02:35:27 6        THE COURT:  I'M THERE.

02:35:27 7        MS. WANG:  THE COMPANY IS FOUNDED BY TWO FEMALE FIRST

02:35:30 8    GENERATION ENTREPRENEURS, VICKIE CHEN AND PING WANG.  SO PING

02:35:35 9    IS RIGHT THERE.

02:35:35 10       NEXT SLIDE, PLEASE.

02:35:38 11       SO YOUR HONOR EXPECTED A LOT OF TECHNICAL ARGUMENTS, BUT

02:35:42 12   BEFORE WE GET INTO THE TECHNICAL ARGUMENTS, THERE IS A LEGAL

02:35:45 13   ARGUMENT HERE WHICH IS PRETTY STRAIGHTFORWARD.

02:35:48 14       IT'S UNDISPUTED THAT SKILLZ ONLY ASSERTS DIRECT

02:35:53 15   INFRINGEMENT.  SKILLZ SIMPLY HAS PUT NO EVIDENCE IN THE RECORD

02:35:58 16   TO SHOW AVIAGAMES' DIRECT INFRINGEMENT.

02:36:01 17       YOUR HONOR IS VERY FAMILIAR WITH DIRECT VERSUS INDIRECT

02:36:04 18   INFRINGEMENT, SO I WON'T GET INTO THE LAW HERE.  WE WILL GO

02:36:09 19   THROUGH THE CLAIMS VERY QUICKLY, AND YOUR HONOR CAN SEE THE

02:36:12 20   CLAIMS ARE ALL DIRECTED TO A USER PLAYING GAMES ON A MOBILE

02:36:17 21   DEVICE, WHICH MEANS ALL CLAIMS REQUIRE HARDWARE, AND AVIAGAMES

02:36:22 22   IS A SOFTWARE COMPANY.  SUMMARY JUDGEMENT SHOULD BE GRANTED FOR

02:36:26 23   THIS REASON ALONE.

02:36:30 24       IF YOU COULD TURN TO SLIDE 5.

02:36:31 25       THE COURT:  I AM A LITTLE CONCERNED ABOUT THIS NEW

46

02:36:34 1    DEVELOPMENT, WHICH I KNOW YOU DISPUTE HOTLY, THAT AVIA USES

02:36:39 2    ROBOTS AND THAT THEY MAY, IN FACT, BECAUSE I DON'T KNOW WHETHER

02:36:43 3    THAT IMPACTS THIS ARGUMENT OF AVIA PERFORMING ALL OF THE

02:36:52 4    ELEMENTS OF CLAIM 1.

02:36:54 5        MS. WANG:  YES, YOUR HONOR, THAT'S A GREAT QUESTION.

02:36:56 6        SO WHEN COUNSEL MENTIONED ROBOTS, THEY ARE NOT TALKING

02:37:00 7    ABOUT METAL ROBOTS SITTING IN --

02:37:03 8        THE COURT:  NO, I KNOW, THEY ARE TALKING ABOUT

02:37:06 9    SOFTWARE BOTS.

02:37:07 10       MS. WANG:  RIGHT.

02:37:08 11       SO IF IT'S SOFTWARE, THERE'S UNCONTROVERTED EVIDENCE IN

02:37:11 12   THE RECORD SHOWING R&D HAPPENED ENTIRELY IN CHINA.  SO EVEN

02:37:15 13   IF -- YOU KNOW, I KNOW WE ARE NOT ARGUING ABOUT REOPENING

02:37:20 14   DISCOVERY.

02:37:20 15       THE COURT:  NO, NO, WE ARE NOT.  I JUST NEED TO KNOW

02:37:22 16   WHETHER THERE'S MORE ON IT TO COME.

02:37:25 17       BECAUSE IF THE BOT IS SOFTWARE THAT'S PUSHED TO BE PART OF

02:37:27 18   A TOURNAMENT OR MATCH THAT IS OCCURRING IN THE UNITED STATES,

02:37:30 19   UNLESS YOU HAVE -- THEN THAT'S WHY I'M CONCERNED THAT YOUR

02:37:36 20   DIRECT INFRINGEMENT OR YOUR LACK OF DIRECT INFRINGEMENT

02:37:40 21   ARGUMENT MAY BE IN JEOPARDY, SUCH THAT I WON'T RULE ON IT

02:37:46 22   BECAUSE OF THIS DEVELOPMENT.  THAT'S MY CONCERN.

02:37:47 23       MS. WANG:  RIGHT.  I APPRECIATE THAT, YOUR HONOR.

02:37:49 24       BUT IF YOUR HONOR LOOKS AT CLAIM 1, FOR EXAMPLE, THIS IS

02:37:52 25   RIGHT -- ACTUALLY THE RIGHT JUNCTURE TO TALK ABOUT THE CLAIM.

47

02:37:56 1        SO THE PATENT HAS THREE CATEGORIES OF CLAIMS, METHOD

02:38:02 2    CLAIMS, SYSTEM CLAIMS, AND COMPUTER READABLE MEDIUM, AKA,

02:38:08 3    BEAUREGARD CLAIM.

02:38:09 4        SO THE CLAIMS ALL HAVE SIMILAR LIMITATIONS.  SO WE TAKE

02:38:12 5    CLAIM 1 AS AN EXAMPLE.  IT'S A METHOD CLAIM.  SO IF YOUR HONOR

02:38:17 6    LOOKS AT THE LEFT, THAT'S THE CLAIM LANGUAGE.  IT SAYS

02:38:21 7    "RECEIVING AT A CLIENT, INCLUDING AN EXECUTABLE GAME INSTANCE,

02:38:28 8    AND ALSO RECEIVING A STREAM OF PSEUDO RANDOM NUMBER SEEDS."

02:38:34 9    AND THEN THE END OF THE FIRST PARAGRAPH, THE LIMITATION, WHERE

02:38:37 10   IT SAYS, "THE CLIENT ENROLLED IN THE ONLINE COMPETITION."

02:38:44 11       WHO WAS THE CLIENT?  WHAT IS THE CLIENT?  IT IS THE USER'S

02:38:47 12   PHONE.

02:38:48 13       THE COURT:  SO WHAT'S THE BOT?

02:38:54 14       MS. WANG:  THEY ARE TALKING ABOUT AVIAGAMES' SOURCE

02:38:54 15   CODE.

02:38:54 16       SO THIS HAS NOTHING TO DO WITH DIRECT INFRINGEMENT BECAUSE

02:38:59 17   THE CLAIM HAS TO BE CARRIED OR PERFORMED BY A PLAYER PLAYING

02:39:05 18   THE GAME ON THE CELL PHONE.  AVIAGAMES DOESN'T MAKE OR SELL A

02:39:10 19   CELL PHONE, THAT IS UNDISPUTED.

02:39:16 20       AND ALSO, WE PUT THE COURT'S CONSTRUCTION HERE ON THE

02:39:20 21   RIGHT, WHERE THE COURT CAN SEE THE TURQUOISE LIMITATION THAT

02:39:24 22   SAYS, "GENERATING USING THE STREAM OF PSEUDO RANDOM NUMBER

02:39:28 23   SEEDS," AND THE COURT'S CONSTRUCTION IS "GENERATING AT THE

02:39:32 24   CLIENT," THAT IS THE PLAYER'S PHONE.

02:39:41 25       IF YOU COULD TURN TO SLIDE 6, PLEASE.

48

02:39:43 1        THE COURT:  SO THIS WAS AN AGREED CONSTRUCTION, THIS

02:39:45 2    WAS NOT A CONTESTED CONSTRUCTION.

02:39:47 3        MS. WANG:  YOU ARE RIGHT, YOUR HONOR.

02:39:47 4        THE COURT:  YES.

02:39:50 5        MS. WANG:  AND ALSO, THIS IS SHOWN IN SKILLZ'S EXPERT

02:39:53 6    REPORT, SO SKILLZ'S EXPERT AGREES WITH THAT.

02:39:56 7        AND IF YOUR HONOR COULD LOOK AT CLAIM 1, AND THEN THE

02:39:59 8    ACCUSED PRODUCT IS THE POCKET7 APP'S MOBILE APPLICATIONS ON AN

02:40:07 9    IOS AND ANDROID DEVICE.  SO IT HAS TO BE ON A DEVICE.  SO THE

02:40:13 10   ACCUSED PRODUCT IS THE DEVICE, THE CELL PHONE WITH THE

02:40:18 11   AVIAGAMES POCKET7 APP ON IT.  AGAIN, AVIAGAMES DOESN'T SELL

02:40:22 12   DEVICES.

02:40:23 13       THE COURT:  WELL, I DON'T THINK SKILLZ DOES EITHER.

02:40:27 14   SKILLZ ISN'T PROVIDING THE DEVICE, I GUESS THAT CONFUSES ME.

02:40:31 15       MS. WANG:  RIGHT, YOUR HONOR.

02:40:33 16       SO SKILLZ OFFERS A MOBILE PLATFORM, IT'S CALLED THE SKILLZ

02:40:40 17   PLATFORM.  SO THEY ARE BOTH MOBILE APPS WHERE YOU CAN LOOK AT

02:40:43 18   THE APP ON YOUR PHONE.  BUT THERE'S A DISTINCTION.

02:40:47 19       THIS IS OFF TOPIC, BUT SKILLZ IS KIND OF A GAMING

02:40:50 20   PLATFORM, BUT AVIAGAMES HAS THE PLATFORM PLUS THE GAME.  SO WE

02:40:54 21   ACTUALLY SELF-DEVELOP BOTH THE PLATFORM AND THE GAME.  I THINK

02:40:58 22   THIS IS OFF TOPIC, BUT JUST FYI.

02:41:02 23       THE COURT:  THANK YOU.

02:41:05 24       MS. WANG:  SO YOUR HONOR, IF YOU COULD TURN TO SLIDE

02:41:06 25   7, I WON'T GET INTO THE DETAILS ABOUT THE SYSTEM CLAIM BECAUSE

### 49

| | |
|---|---|
| 02:41:10 | 1 THIS IS REALLY OBVIOUS, FOR A SYSTEM CLAIM. |
| 02:41:15 | 2 FOR DIRECT INFRINGEMENT, THE ACCUSED INFRINGER HAS TO USE |
| 02:41:18 | 3 OR SELL EVERY COMPONENT IN THAT SYSTEM.  AND HERE, THE SYSTEM |
| 02:41:22 | 4 REQUIRES A PHONE. |
| 02:41:26 | 5 AND AGAIN, SLIDE 8, IT SHOWS DR. ZAGAL, SKILLZ'S EXPERT, |
| 02:41:37 | 6 AGREES WITH IT. |
| 02:41:37 | 7 AND SLIDE 9, SO NOW WE ARE AT THIS BEAUREGARD CLAIM, IT'S |
| 02:41:44 | 8 A FANCY FRENCH NAME, I GUESS.  SO SKILLZ'S OPPOSITION ARGUMENT |
| 02:41:48 | 9 IS WRONG TO SAY THAT THIS CLAIM CAN BE DIRECTED TO SOFTWARE |
| 02:41:54 | 10 ONLY.  SO THERE'S CLEAR FEDERAL CIRCUIT PRECEDENT SHOWING THAT |
| 02:42:02 | 11 FOR THIS TYPE OF BEAUREGARD CLAIM, IT REQUIRES THE PHYSICAL |
| 02:42:07 | 12 NON-TRANSITORY MEMORY DEVICE.  SO THE SOFTWARE HAS TO BE ON |
| 02:42:11 | 13 HARDWARE.  THIS IS PRETTY INTUITIVE, BECAUSE THE SOFTWARE WOULD |
| 02:42:15 | 14 NOT RUN WITHOUT A DEVICE. |
| 02:42:18 | 15 AND AGAIN, HERE, YOUR HONOR, IF YOU COULD LOOK AT THE |
| 02:42:22 | 16 PREAMBLE OF CLAIM 11, IT SAYS IT IS A NON-TRANSITORY COMPUTER |
| 02:42:28 | 17 PROGRAM PRODUCT.  WHAT IS THAT?  IT'S A PHONE, IT'S THE USER'S |
| 02:42:33 | 18 CELL PHONE. |
| 02:42:38 | 19 AGAIN, SLIDE 10, IT SHOWS THAT DR. ZAGAL AGREES WITH IT. |
| 02:42:45 | 20 AND HE SAID "IT'S THE DATA PROCESSOR OF A MOBILE DEVICE, SUCH |
| 02:42:49 | 21 AS AN IPHONE, IPAD, ANDROID OR SMARTPHONE OR TABLET." |
| 02:42:54 | 22 AGAIN, WE DON'T PROVIDE THAT DEVICE. |
| 02:43:00 | 23 SO SLIDE 11.  AND AGAIN, THIS IS THE BLACK LETTER LAW ON |
| 02:43:05 | 24 DIRECT INFRINGEMENT.  AND SECTION 271(A) SAYS THE ACCUSED |
| 02:43:11 | 25 INFRINGER HAS TO "MAKE, USE, OFFER TO SELL OR SELL THE PATENTED |

UNITED STATES COURT REPORTERS

### 50

| | |
|---|---|
| 02:43:17 | 1 INVENTION."  SO AVIAGAMES DOESN'T MAKE, OFFER TO SELL OR SELL |
| 02:43:23 | 2 THE CELL PHONE.  SO ALL THAT'S LEFT IS AVIAGAMES' OWN USE OF |
| 02:43:29 | 3 ITS GAME IN THE UNITED STATES. |
| 02:43:30 | 4 THE COURT:  SO IS THERE AN ARGUMENT THAT THE BOT |
| 02:43:32 | 5 ACTUALLY LIVES ON THE CELL PHONE OF THE CUSTOMER IN THE |
| 02:43:36 | 6 UNITED STATES WHO THINKS HE'S PLAYING THE TOURNAMENT AND IS |
| 02:43:41 | 7 PLAYING -- AS THE HUMAN -- PLAYING THE AVIA GAME, AND THEN THE |
| 02:43:46 | 8 BOT INVADES THE REAL -- I'M SERIOUS, INVADES THE HUMAN PLAYER'S |
| 02:43:52 | 9 DEVICE? |
| 02:43:53 | 10 MS. WANG:  NO, NO, YOUR HONOR.  BECAUSE ALL WE ARE |
| 02:43:56 | 11 TALKING ABOUT -- AGAIN, WE ARE NOT TALKING ABOUT A METAL ROBOT, |
| 02:44:00 | 12 IT'S REALLY THE SOURCE CODE.  AND AVIAGAMES ONLY PROVIDES THE |
| 02:44:04 | 13 SOURCE CODE.  REGARDLESS, THESE CLAIMS REQUIRE THE CELL PHONE, |
| 02:44:08 | 14 AND THE CELL PHONE IS THE CLIENT. |
| 02:44:10 | 15 BUT WHENEVER THEY TALK ABOUT THE AVIAGAMES' SERVER OR THE |
| 02:44:17 | 16 AVIAGAMES' SOURCE CODE, THAT WAS ALL DEVELOPED IN CHINA.  THAT, |
| 02:44:22 | 17 WHATEVER BOT, IS REALLY NOT ON THE USER DEVICE BECAUSE THAT |
| 02:44:26 | 18 LIES WITH THE AVIAGAMES' SERVER WITH THE SOURCE CODE THAT WE |
| 02:44:30 | 19 ARE TALKING ABOUT.  SO THERE'S A CLEAR DISTINCTION HERE. |
| 02:44:33 | 20 THE COURT:  OKAY. |
| 02:44:35 | 21 MS. WANG:  SO ALL THERE'S LEFT IS AVIAGAMES' OWN USE. |
| 02:44:38 | 22 AND SLIDE 12, PLEASE. |
| 02:44:42 | 23 SO IN SKILLS'S OPPOSITION, IT SAYS AVIAGAMES' FOUNDERS |
| 02:44:49 | 24 MUST HAVE PLAYED THEIR OWN GAMES.  I MEAN, THERE IS NO EXPERT |
| 02:44:52 | 25 OPINION, NO DEPOSITION TESTIMONY AND NO TECHNICAL DOCUMENTS |

UNITED STATES COURT REPORTERS

### 51

| | |
|---|---|
| 02:44:59 | 1 SHOWING THE FOUNDER'S USE. |
| 02:45:03 | 2 SO AGAIN, YOUR HONOR, NOT TO COMMENT ON THIS ROBOT |
| 02:45:10 | 3 DISPUTE, BUT REALLY I SEE THIS AS AN ATTEMPT TO HAVE A DO-OVER |
| 02:45:13 | 4 TO SAY, OOPS, WE FORGOT AND LET'S DO IT AGAIN.  I MEAN, THAT'S |
| 02:45:17 | 5 OFF TOPIC AGAIN. |
| 02:45:18 | 6 LET'S MOVE ON TO SLIDE 13 WHERE UNCONTROVERTED RECORD |
| 02:45:25 | 7 EVIDENCE -- |
| 02:45:26 | 8 THE COURT:  SO IF I WERE TO AGREE WITH YOU THAT |
| 02:45:31 | 9 THERE'S NO EVIDENCE OF DIRECT INFRINGEMENT, THE CASE IS OVER; |
| 02:45:34 | 10 IS THAT RIGHT? |
| 02:45:34 | 11 MS. WANG:  YES.  YES, YOUR HONOR.  YES. |
| 02:45:38 | 12 SO HERE IT SAYS, UNCONTROVERTED EVIDENCE SHOWS TESTING AND |
| 02:45:43 | 13 R&D ONLY HAPPENED IN CHINA. |
| 02:45:45 | 14 AGAIN, IF WE TALK ABOUT WHOEVER MAKE ROBOT, OR THERE'S |
| 02:45:50 | 15 ROBOT IN THE CODE WHATSOEVER, THAT ALL HAPPENED IN CHINA. |
| 02:45:54 | 16 THERE IS NO EVIDENCE ON THIS RECORD.  WE ARE AT SUMMARY |
| 02:45:59 | 17 JUDGEMENT STAGE, AND IT SHOWS ALL R&D EMPLOYEES ARE IN CHINA. |
| 02:46:06 | 18 AND MS. CHEN TESTIFIED IN HER DEPOSITION THAT R&D ALL HAPPENED |
| 02:46:12 | 19 IN CHINA. |
| 02:46:14 | 20 SO YOUR HONOR, DISCOVERY IN THIS CASE LASTED FOR TWO |
| 02:46:19 | 21 YEARS, THERE WAS EXTENSIVE DISCOVERY, THEY TOOK OUR DEPOSITION |
| 02:46:23 | 22 OF OUR 30(B)(6) WITNESS ON R&D, ON MATCHING, WE PROVIDED EVERY |
| 02:46:29 | 23 WITNESS SKILLZ REQUESTED, AND YOUR HONOR CAN PROBABLY RECALL IN |
| 02:46:33 | 24 THIS CASE, THERE HAS BEEN NO DISCOVERY MOTION FILED, AND |
| 02:46:35 | 25 YOUR HONOR SAID I GOT A GOLD STAR LAST TIME, TO SAY THAT.  SO |

UNITED STATES COURT REPORTERS

### 52

| | |
|---|---|
| 02:46:40 | 1 REALLY, WE DIDN'T DENY ANY DISCOVERY, IT WAS ALL OPEN.  AND THE |
| 02:46:45 | 2 REASON WHY THIS WHOLE ISSUE CAME UP WAS BECAUSE WE DIDN'T |
| 02:46:48 | 3 WITHHOLD ANY INFORMATION.  AGAIN, THAT CONCLUDES THE FIRST |
| 02:46:53 | 4 GROUND OF NO DIRECT INFRINGEMENT. |
| 02:46:56 | 5 AM I GOOD ON TIME? |
| 02:46:58 | 6 THE COURT:  YOU HAVE 13 MINUTES TO DO THE REST OF IT. |
| 02:47:00 | 7 MS. WANG:  OKAY.  GREAT. |
| 02:47:04 | 8 THE COURT:  I MEAN, TWO HOURS IS A LOT TO ALLOT TO |
| 02:47:04 | 9 ONE MOTION. |
| 02:47:04 | 10 MS. WANG:  THANKS, YOUR HONOR. |
| 02:47:05 | 11 SO WE ARE MOVING ON TO GROUND TWO.  REGARDLESS OF WHO |
| 02:47:12 | 12 PLAYED THE GAME, THERE IS NO INFRINGEMENT BECAUSE THE STREAM OF |
| 02:47:17 | 13 SEEDS CHARACTERIZED BY A UNIQUE MATCH IDENTIFIER IS NOT |
| 02:47:21 | 14 PRACTICED. |
| 02:47:23 | 15 NEXT SLIDE, PLEASE. |
| 02:47:25 | 16 SO YOUR HONOR MIGHT RECALL OUR DISCUSSION ABOUT SEEDS AND |
| 02:47:31 | 17 NUMBERS, RANDOM NUMBERS AT THE TUTORIAL.  SO HERE, IF YOU START |
| 02:47:34 | 18 WITH 121, AND IF YOU HAVE A FUNCTION THAT SQUARES THE NUMBER |
| 02:47:40 | 19 AND TAKE THE MIDDLE NUMBERS, THEN THE NUMBER GENERATES A PSEUDO |
| 02:47:46 | 20 RANDOM NUMBER, 464. |
| 02:47:47 | 21 SO WE CALL IT PSEUDO BECAUSE IT'S GENERATED BY A COMPUTER, |
| 02:47:53 | 22 IT'S NOT PURELY ROLLING A DICE, THAT'S REALLY RANDOM. |
| 02:47:57 | 23 NEXT SLIDE. |
| 02:47:58 | 24 SO IN TETRIS, FOR EXAMPLE, THE '564 PATENT TALKED ABOUT |
| 02:48:03 | 25 USING RANDOM NUMBERS TO HAVE A COMMON GAME PLAY EXPERIENCE.  SO |

UNITED STATES COURT REPORTERS

53

02:48:09 1 FOR EXAMPLE HERE, EACH RANDOM NUMBER CORRESPONDS TO A SHAPE.
02:48:16 2     SO SLIDE 17.  YOUR HONOR HAS SEEN THIS BEFORE WHERE TWO
02:48:19 3 PLAYERS ARE PLAYING TETRIS, AND IF THEY HAVE COMMON RANDOM
02:48:25 4 NUMBERS, THEN THEY WILL SEE THE SAME SEQUENCE.  SO I GUESS IF
02:48:30 5 WE PLAY A GAME, IF YOUR HONOR WINS, I LOST, THAT MEANS
02:48:34 6 YOUR HONOR MADE A BETTER JUDGMENT THAN I DID.
02:48:37 7     SO WE HAVE TWO SEPARATE REASONS FOR NON-INFRINGEMENT.  THE
02:48:43 8 FIRST GROUND IS GAME ID, AND A USER ID IS NOT A UNIQUE MATCH
02:48:49 9 IDENTIFIER.
02:48:55 10     NEXT SLIDE, PLEASE.
02:48:58 11     SO THIS IS BRIEFLY HOW A PLAYER PLAYS THE POCKET7 GAMES.
02:49:03 12 YOU HAVE A MOBILE PHONE, YOU CLICK ON THE APP, THERE'S A
02:49:06 13 LOADING SCREEN, AND THEN YOU SELECT A GAME.  SO EACH GAME WILL
02:49:12 14 HAVE A GAME ID, THAT TELLS YOU WHAT THE GAME IS.  FOR EXAMPLE,
02:49:17 15 SOLITAIRE WILL ALWAYS HAVE A GAMES ID OF 2.  THIS DOESN'T
02:49:24 16 CHANGE AT ALL.
02:49:26 17     AFTER A USER SELECTS THE GAME, FOR EXAMPLE SOLITAIRE, AND
02:49:29 18 THE USER WOULD BE PROMPTED TO SELECT AN ENTRY FEE.  AND THEN
02:49:33 19 THE USER WOULD START A MATCH.
02:49:36 20     SO "GAME" MEANS THE TYPE OF GAME YOU PLAY.  "MATCH" MEANS
02:49:40 21 EACH COMPETITION THE TWO PLAYERS PLAY.  AND AFTER EACH MATCH, I
02:49:46 22 GUESS THE MATCH WOULD BE OVER, NO TWO MATCHES WILL BE THE SAME.
02:49:50 23     NEXT SLIDE, PLEASE.
02:49:54 24     IN THE SYSTEM, EACH USER WILL HAVE A USER ID, THAT'S
02:50:00 25 INTUITIVE.  SO THIS CUTE BEAR WILL HAVE A USER ID STARTING WITH

UNITED STATES COURT REPORTERS

54

02:50:05 1 415.  THAT NEVER CHANGES IN THE SYSTEM.
02:50:07 2     AND ON THE RIGHT, YOUR HONOR CAN SEE A MATCH ID, THAT
02:50:11 3 IDENTIFIES EACH MATCH OR EACH COMPETITION THE PLAYERS HAVE
02:50:16 4 PLAYED.  NO TWO MATCH ID'S WILL BE THE SAME IN THE SYSTEM.
02:50:22 5     SO YOUR HONOR CAN SEE WE DO HAVE A MATCH ID IN AVIAGAMES'
02:50:29 6 POCKET7 SYSTEM.  YOU KNOW WHAT, SKILLZ ADMITS THAT THIS MATCH
02:50:33 7 ID DOES NOT INFRINGE.  IT'S THE SAME MATCH ID THAT WE TALKED
02:50:37 8 ABOUT IN THE PATENT.  IT DOESN'T INFRINGE, BECAUSE YOUR HONOR
02:50:43 9 CAN SEE THE SEED GENERATION HAS NOTHING TO DO WITH THIS MATCH
02:50:49 10 ID.
02:50:50 11     NEXT SLIDE, PLEASE.
02:50:51 12     SO SKILLZ NOW ARGUES THE GAME ID PLUS A USER ID IS A
02:50:57 13 UNIQUE MATCH IDENTIFIER.  THIS MAKES NO SENSE.  WE TALKED ABOUT
02:51:02 14 THE GAME ID THAT TELLS YOU WHAT GAME YOU ARE PLAYING.  THIS
02:51:06 15 NEVER CHANGES, CANNOT IDENTIFY A MATCH.  A USER ID IDENTIFIES A
02:51:11 16 USER AND CANNOT IDENTIFY A MATCH EITHER.  COMBINING THESE TWO
02:51:16 17 CONSTANT NUMBERS DOESN'T MAKE THE COMBINATION UNIQUE.
02:51:21 18     AND THIS COMBINATION HAS NOTHING TO DO WITH MATCHES.  FOR
02:51:24 19 EXAMPLE, THE SAME USER ID CAN PLAY THE SAME GAME THOUSANDS OF
02:51:28 20 TIMES.  SO HOW CAN THIS COMBINATION BE UNIQUE?  SKILLZ
02:51:32 21 ACKNOWLEDGES THIS PROBLEM AND THEN ARGUES THAT A USER CAN ONLY
02:51:37 22 PLAY A MATCH AT ANY GIVEN TIME.  THAT MEANS THIS INJECTS A TIME
02:51:44 23 STAMP INTO THIS COMBINATION.  SO FOR EXAMPLE, USER NAME
02:51:48 24 WENDY WANG PLAYING SOLITAIRE AT 3:00 P.M., THAT IDENTIFIES THE
02:51:56 25 3:00 P.M. MATCH.  IF I DECIDE TO PLAY AGAIN AT 3:15, WENDY WANG

UNITED STATES COURT REPORTERS

55

02:52:03 1 PLAYING, GAME ID SOLITAIRE 2 AT 3:15.  THAT'S REALLY WHAT'S
02:52:08 2 TELLING THESE TWO MATCHES IS 3:00 P.M. VERSUS 3:15, NOT WENDY
02:52:14 3 WANG PLAYING SOLITAIRE.  I COULD PLAY THOUSANDS OF TIMES.  IT
02:52:18 4 DOESN'T IDENTIFY A MATCH.
02:52:20 5     AND UNCONTROVERTED EVIDENCE IN THE RECORD SHOWS AN EXPERT
02:52:25 6 REPORT FROM DR. WELCH SHOWS THAT AVIAGAMES DOES NOT USE A
02:52:31 7 TIMESTAMP AS A MATCH IDENTIFIER AND DOES NOT USE A TIMESTAMP TO
02:52:35 8 LOOK UP SEEDS.  SO SUMMARY JUDGEMENT SHOULD BE GRANTED FOR
02:52:38 9 NON-INFRINGEMENT.
02:52:42 10     NEXT SLIDE, PLEASE.
02:52:46 11     THERE IS A SECOND REASON FOR NON-INFRINGEMENT, BECAUSE
02:52:50 12 LOOKING UP A PREVIOUSLY GENERATED SEED IS NOT GENERATING THAT
02:52:54 13 SEED.
02:53:00 14     NEXT SLIDE, PLEASE.
02:53:01 15     SO THIS DIAGRAM SHOWS HOW SEEDS ARE GENERATED IN
02:53:07 16 AVIAGAMES' SYSTEM.  YOUR HONOR CAN SEE ON THE LEFT, THERE IS A
02:53:14 17 GENSEED FUNCTION.  IT'S UNDISPUTED THAT EVERY SEED IN POCKET7
02:53:20 18 GAMES IS GENERATED USING THE GENSEED FUNCTION.  IT'S ALSO
02:53:29 19 UNDISPUTED THAT SKILLZ DOES NOT ACCUSE THE GENSEED FUNCTION OF
02:53:33 20 THE INFRINGEMENT, BECAUSE THIS GENSEED FUNCTION SELECTS A
02:53:36 21 16-DIGIT NUMBER BY FILLING IN EACH DIGIT USING THE PRIOR ART
02:53:40 22 JAVA FUNCTION.
02:53:44 23     SO AFTER EACH MATCH, FOR EXAMPLE AFTER THE SOLITAIRE
02:53:48 24 MATCH, YOUR HONOR SEES ON THE SECOND SCREEN ON THE SLIDE, THIS
02:53:57 25 PREVIOUSLY GENERATED SEED WILL BE STORED IN A SEED LIBRARY IN

UNITED STATES COURT REPORTERS

56

02:53:58 1 THIS BUCKET RIGHT HERE.  SO WHEN A NEW MATCH BEGINS, IT MAY
02:54:02 2 EITHER GENERATE THE NEW SEED USING THE GENSEED FUNCTION WE JUST
02:54:07 3 TALKED ABOUT OR LOOK UP THE SEED LIBRARY TO GET A PREVIOUSLY
02:54:11 4 GENERATED SEED.
02:54:13 5     THE ONLY INFRINGEMENT THEORY LEFT IS SKILLZ ARGUES LOOKING
02:54:19 6 UP A PREVIOUSLY GENERATED SEED FROM THE LIBRARY IS GENERATING
02:54:23 7 THAT SEED.  THIS DOESN'T MAKE SENSE BECAUSE YOU CANNOT GENERATE
02:54:31 8 SOMETHING THAT HAS BEEN PREVIOUSLY GENERATED.  THIS IS REALLY
02:54:34 9 JUST GETTING IT, NOT GENERATING IT.
02:54:38 10     NEXT SLIDE, PLEASE.
02:54:41 11     SKILLZ IS INCORRECT THAT THE COURT ADOPTED ITS
02:54:44 12 INTERPRETATION IN CLAIM CONSTRUCTION.  IF YOUR HONOR COULD SEE
02:54:48 13 ON THE TOP OF THE SLIDE 24, IN FOOTNOTE 4 OF THE COURT'S CLAIM
02:54:55 14 CONSTRUCTION ORDER, THE COURT SAID, "THE COURT PROCEEDS WITH
02:54:59 15 ITS CLAIM CONSTRUCTION ANALYSIS WITHOUT REFERENCE TO WHETHER A
02:55:02 16 STREAM OF PSEUDO RANDOM NUMBER SEEDS GENERATED BY A LOOKUP
02:55:07 17 TABLE IS WITHIN THE SCOPE OF THE CLAIMS."
02:55:10 18     THE COURT:  AND I WILL SAY THAT MAY BE AN ISSUE FOR
02:55:13 19 THE JURY.
02:55:13 20     MS. WANG:  SO YOUR HONOR, WE DISAGREE WITH THAT.
02:55:16 21     THE COURT:  I UNDERSTAND.
02:55:17 22     MS. WANG:  THE REASON IS IF YOUR HONOR LOOKS AT THE
02:55:22 23 ORIGINAL CONTEMPLATED DISPUTE, YOUR HONOR SAID THE ULTIMATE
02:55:30 24 DISPUTE MIGHT BE WHETHER PLUGGING A UNIQUE MATCH IDENTIFIER
02:55:34 25 INTO A LOOKUP TABLE WHERE A GIVEN MATCH IDENTIFIER IS MATCHED

UNITED STATES COURT REPORTERS

57

02:55:37  1   UP WITH CERTAIN SEEDS, THAT WAS THE GENERATION.

02:55:41  2       SO REALLY AT THE TIME, THE PARTIES WERE CONTEMPLATING

02:55:45  3   PLUGGING IN A MATCH IDENTIFIER, FOR EXAMPLE 1, 2, 3, INTO THE

02:55:52  4   LOOKUP TABLE THAT GENERATES OR SPITS OUT A SEED, X, Y, Z,

02:55:57  5   WHETHER THAT PROCESS IS GENERATING.  NOW SKILLZ'S THEORY HAS

02:56:02  6   SHIFTED.  IT IS SAYING NO, NO, NO, LET'S NOT LOOK UP THE MATCH

02:56:06  7   ID, LET'S LOOK UP THE SEED ITSELF.  WHETHER LOOKING UP THE

02:56:09  8   PREVIOUSLY GENERATED SEED IS GENERATING THAT SEED, AS IF THIS

02:56:14  9   IS A CHICKEN AND EGG SITUATION.

02:56:18 10       SO NO REASONABLE JURY WILL FIND THIS IS A GENERATION BASED

02:56:23 11   ON THE PLAIN AND ORDINARY MEANING.

02:56:30 12       SO I HOPE I'M DOING WELL WITH TIME, YOUR HONOR.

02:56:34 13       THE COURT:  YOU HAVE FOUR MINUTES FOR THE ENTIRE REST

02:56:35 14   OF YOUR MOTION.

02:56:37 15       MS. WANG:  GREAT.

02:56:37 16       THE COURT:  AND I HAVE NOT HEARD ANYTHING ABOUT YOUR

02:56:40 17   SECOND ENTIRELY SEPARATE ISSUE.

02:56:42 18       MS. WANG:  RIGHT.  WRITTEN DESCRIPTION.

02:56:43 19       THE COURT:  WRITTEN DESCRIPTION.

02:56:45 20       MS. WANG:  SO THERE ARE THREE REASONS.

02:56:47 21       SLIDE 26, PLEASE.

02:56:50 22       FIRST, THERE IS NO DISCLOSURE OF A UNIQUE MATCH

02:56:54 23   IDENTIFIER.

02:56:55 24       NEXT SLIDE, PLEASE.

02:57:01 25       SO HERE, SKILLZ HAS ARGUED IN ITS IPR CLAIM CONSTRUCTION

UNITED STATES COURT REPORTERS

58

02:57:14  1   THAT THE TERM "MATCH" CANNOT INCLUDE THE WORD "TOURNAMENT" SO

02:57:18  2   TOURNAMENT ID DOES NOT RENDER A MATCH ID OBVIOUS.  THIS MEANS A

02:57:22  3   TOURNAMENT ID CANNOT BE THE MATCH ID AND CANNOT EVEN MAKE A

02:57:25  4   MATCH ID OBVIOUS.

02:57:33  5       NEXT SLIDE, PLEASE.

02:57:33  6       SO THE PTAB AGREED WITH SKILLZ AND THAT'S HOW THE PATENT

02:57:34  7   SURVIVED IPR.

02:57:37  8       THIS IS A TEXTBOOK DISCLAIMER CASE.  SKILLZ SAID UNIQUE

02:57:42  9   MATCH IDENTIFIER SHOULD HAVE A CERTAIN INTERPRETATION, IT

02:57:45 10   ARGUED THAT THE TOURNAMENT ID WAS NOT THAT, AND THE PTAB

02:57:50 11   ADOPTED THIS ARGUMENT.

02:57:52 12       NEXT SLIDE, PLEASE.

02:57:56 13       THE PTAB ALSO POINTED OUT THAT THE TERM "UNIQUE MATCH

02:58:00 14   IDENTIFIER" IS NOT FOUND IN THE SPECIFICATION.  AND THAT IS

02:58:03 15   USUALLY A HALLMARK OF WRITTEN DESCRIPTION FAILURE.

02:58:07 16       AS THE COURT CAN SEE ON THE LEFT, THE ALJ AGREED WITH

02:58:12 17   SKILLS THAT THE SPECIFICATION'S DESCRIPTION OF "TOURNAMENT ID"

02:58:16 18   DOES NOT ENCOMPASS THE MATCH ID, AND IT IS NOT THE SAME AS A

02:58:20 19   MATCH ID.

02:58:22 20       THE ALJ THEN REALIZED OH, IF THAT'S THE CASE, YOU HAVE A

02:58:26 21   WRITTEN DESCRIPTION PROBLEM.  HE SAID HE CANNOT DECIDE 112

02:58:31 22   CHALLENGES IN AN IPR.  NOW HERE WE ARE AT SUMMARY JUDGEMENT,

02:58:34 23   AND THE COURT SHOULD INVALIDATE THE PATENT FOR LACK OF WRITTEN

02:58:38 24   DESCRIPTION.

02:58:43 25       NEXT SLIDE, PLEASE.

UNITED STATES COURT REPORTERS

59

02:58:44  1       SO FOR HALLIBURTON, SKILLZ ARGUED THAT IT ONLY SAID

02:58:50  2   HALLIBURTON'S TOURNAMENT ID IS NOT A MATCH ID AND IT DIDN'T

02:58:57  3   DISCLAIM ITS OWN PATENT.  BUT THIS DOESN'T MAKE SENSE, BECAUSE

02:59:00  4   AS YOUR HONOR TALKED ABOUT EARLIER WITH MR. BOMBACH, TOURNAMENT

02:59:03  5   IS A TOURNAMENT, AND IDENTIFICATION NUMBER IS JUST A NUMBER

02:59:06  6   THAT IDENTIFIES THAT TOURNAMENT.

02:59:08  7       SKILLZ POINTS TO NO DIFFERENCE BETWEEN THE TOURNAMENT ID

02:59:11  8   IN HALLIBURTON VERSUS THE TOURNAMENT ID IN ITS OWN PATENT.

02:59:16  9       NEXT SLIDE, PLEASE.

02:59:18 10       FACED WITH THIS CLEAR DISCLAIMER, SKILLZ SAID HALLIBURTON

02:59:24 11   DISCLOSES MULTIPLE MATCH TOURNAMENTS, BUT THE '564 PATENT SAYS

02:59:29 12   THERE CAN BE ONLY SINGLE MATCH TOURNAMENTS.  BUT SKILLZ IS

02:59:33 13   SAYING, ESSENTIALLY, IN HALLIBURTON OR IN THE SINGLE MATCH

02:59:38 14   TOURNAMENT IN THE '564 PATENT, A MATCH ID AND A TOURNAMENT ID

02:59:42 15   ARE NECESSARILY THE SAME.

02:59:44 16       BUT THE '564 PATENT SPECIFICATION NEVER SAID THAT.  SO FOR

02:59:49 17   EXAMPLE, IF I HAVE A TOURNAMENT X, Y, Z, AND IT HAS A SINGLE

02:59:56 18   MATCH, THAT MATCH ID CAN BE 1, 2, 3.  AND THEN IF THERE ARE

02:59:59 19   MORE PLAYERS JOINING THE TOURNAMENT, THERE CAN BE 4, 5, 6, 7,

03:00:04 20   8, 9, ET CETERA.

03:00:05 21       AGAIN, THE EXPERT AGREED IS THAT THERE IS NO SUCH

03:00:08 22   DISCLOSURE IN THE '564 PATENT, AND YOUR HONOR IS WELL AWARE OF

03:00:12 23   THE FEDERAL CIRCUIT LAW THAT YOU CANNOT ARGUE OBVIOUSNESS IN

03:00:18 24   WRITTEN DESCRIPTION TO FILL IN THE BLANKS, IT HAS TO HAVE A

03:00:22 25   CERTAIN DISCLOSURE.

UNITED STATES COURT REPORTERS

60

03:00:27  1       SO THE NEXT TWO GROUNDS I WILL TALK PRETTY BRIEFLY.  SO

03:00:31  2   THE SECOND GROUND, IF YOU COULD GO TO SLIDE 33, THE CLAIM

03:00:35  3   REQUIRES A STREAM OF SEEDS CHARACTERIZED BY A UNIQUE MATCH

03:00:40  4   IDENTIFIER.  AND AT CLAIM CONSTRUCTION, THE COURT SAID, WELL, A

03:00:45  5   STREAM, THAT HAS TO BE MORE THAN ONE.

03:00:46  6       YES, THAT'S ABSOLUTELY RIGHT.  SO IN THE SPECIFICATION,

03:00:52  7   HOWEVER, THERE'S ONLY ONE DISCLOSURE WHERE THERE IS A

03:00:56  8   ONE-TO-ONE RELATIONSHIP.

03:01:09  9       NEXT SLIDE, PLEASE.

03:01:12 10       SKILLZ ARGUED ONE "A" CAN BE ONE OR MORE.  ALTHOUGH THIS

03:01:15 11   IS TRUE, IT DOESN'T ADDRESS THE RELATIONSHIP.  WHETHER IT'S A

03:01:18 12   ONE-TO-ONE RELATIONSHIP OR ONE-TO-MANY.  AND THE FEDERAL

03:01:24 13   CIRCUIT'S DECISION IN HARARI V. LEE IS HIGHLY INSTRUCTIVE.  IN

03:01:28 14   THAT CASE, IT'S REALLY CLOSELY ANALOGOUS, BECAUSE WHERE THE

03:01:32 15   COURT THERE -- THE CLAIM LANGUAGE THERE WAS A BIT LINE TO

03:01:36 16   ACTIVATE A NUMBER OF CELLS, AND THE FEDERAL CIRCUIT SAID THAT

03:01:41 17   MEANS YOU HAVE ONE BIT LINE CORRESPONDING TO ACTIVATING

03:01:48 18   MULTIPLE CELLS.  AND THE SPECIFICATION IN THE PATENT ONLY HAS A

03:01:50 19   ONE-TO-ONE CORRESPONDENCE.  SO THE FEDERAL CIRCUIT SAID THIS

03:01:54 20   PATENT LACKS WRITTEN DESCRIPTION AND IS THEREFORE INVALID.

03:01:59 21       SO THIRD GROUND FOR WRITTEN DESCRIPTION, THERE IS NO

03:02:05 22   DISCLOSURE OF RECEIVING A SEED AT THE CLIENT.  SO SKILLZ'S

03:02:12 23   OPPOSITION DIDN'T ADDRESS THAT SUBSTANTIVELY, ALL THEY SAID

03:02:16 24   WAS, WELL, WE DISCLOSED THE SERVER, WE DISCLOSED THE CLIENT, SO

03:02:24 25   THERE'S NO TRANSMISSION AND THAT IS OKAY.

UNITED STATES COURT REPORTERS

... 

61

03:02:26  1    AGAIN, FEDERAL CIRCUIT LAW SAYS YOU CANNOT RELY ON

03:02:28  2   OBVIOUSNESS, YOU HAVE TO DISCLOSE TO ONE OF ORDINARY SKILLED IN

03:02:33  3   THE ART TO KNOW THAT THE INVENTORS HAD POSSESSION OF THE

03:02:36  4   INVENTION AT THE TIME.

03:02:38  5    BUT HERE, YOU KNOW, THIS WHOLE PATENT IS ABOUT SEEDS.  SO

03:02:43  6   HOW TO TRANSFER THE SEEDS FROM THE SERVER TO THE CLIENT AND HOW

03:02:48  7   THE CLIENT RECEIVES IT IS PRETTY SIGNIFICANT, BECAUSE THE

03:02:52  8   SEEDS -- IF THE PLAYER CAN DECIPHER THE SEEDS AND INTERCEPT THE

03:02:56  9   SEEDS, THEORETICALLY THE PLAYER CAN CHEAT.

03:03:00  10   AND SO I THINK HOW TO ENCRYPT THE SEED, HOW TO MAKE SURE

03:03:05  11  THE ORDINARY SKILL IN THE ART CAN ACTUALLY KNOW WITH CERTAINTY

03:03:09  12  THAT THE INVENTORS GOT THE INVENTION, IS NOWHERE TO BE FOUND IN

03:03:15  13  THE PATENT.

03:03:16  14   WITH THAT, THANK YOU, YOUR HONOR FOR YOUR TIME.

03:03:21  15   THE COURT:  ALL RIGHT.  THANK YOU.

03:03:21  16   WHO WILL I HEAR FROM FROM SKILLZ?

03:03:24  17   MR. DAVIS:  ME, YOUR HONOR.  BRITTON DAVIS FROM

03:03:27  18  KING & SPALDING.

03:03:37  19   THE COURT:  ALL RIGHT.  GOOD AFTERNOON, MR. DAVIS.

03:03:40  20   MR. DAVIS:  I SHOULD CLARIFY, I'M GOING TO ADDRESS

03:03:41  21  THE INFRINGEMENT ISSUES, MY COLLEAGUE, MR. CAMPBELL, WILL

03:03:44  22  ADDRESS THE --

03:03:45  23   THE COURT:  OKAY.  AND IF YOU GO OVER TIME, YOU HAVE

03:03:48  24  TO EXPLAIN TO HIM OUT IN THE HALLWAY WHEN WE ARE DONE BECAUSE I

03:03:51  25  HAVE TO STOP AT 25 PAST.

UNITED STATES COURT REPORTERS

62

03:03:54  1    MR. DAVIS:  UNDERSTOOD.  IF THERE'S ANYTHING YOU

03:03:55  2   WOULD LIKE TO FOCUS ON INITIALLY, I WILL APPRECIATE THE

03:03:59  3   GUIDANCE.

03:03:59  4    THE COURT:  WELL I'M PRETTY CONCERNED ABOUT THIS

03:04:01  5   DIRECT INFRINGEMENT ARGUMENT AND THE ABSENCE OF EVIDENCE THAT

03:04:03  6   MS. WANG IS SUGGESTING.

03:04:05  7    MR. DAVIS:  ABSOLUTELY.

03:04:11  8    SO I WANT TO START AT SLIDE 18 WITH -- FIRST OF ALL, I

03:04:18  9   WILL START AT SLIDE 4.  AND THERE ARE MULTIPLE WAYS, UNDER

03:04:24  10  35 USC 271 FOR INFRINGEMENT TO OCCUR.  MAKING.  AND MAKING CAN

03:04:30  11  OCCUR FOR THE COMPUTER READABLE MEDIUM, AND SKILLZ SYSTEM

03:04:34  12  CLAIMS, WHEN THAT SOFTWARE EXISTS ON A CLIENT DEVICE, AND THAT

03:04:40  13  CLIENT DEVICE IS NOT ACTUALLY LIMITED TO A PHONE AS WAS

03:04:45  14  SUGGESTED BY AVIA'S COUNSEL; IN FACT, IF YOU LOOK AT PAGE 8 IN

03:04:50  15  OUR OPPOSITION, WHICH IS DOCKET 172-THREE, THAT'S THE SEALED

03:04:55  16  VERSION, AT LINES 17 THROUGH 25, WE DISCUSS WHERE AVIA'S OWN

03:05:05  17  EXPERT TESTIFIED THAT A CLIENT IS NOT NECESSARILY A PHONE, IT'S

03:05:09  18  IN FACT, NOT ANY SPECIFIC TYPE OF HARDWARE.

03:05:12  19   THE COURT:  IT IS HARDWARE.

03:05:13  20   MR. DAVIS:  IT IS JUST HARDWARE, BUT IT COULD BE A

03:05:15  21  SERVER THAT'S ACTING OR ANY PROCESSING DEVICE THAT IS RECEIVING

03:05:20  22  INFORMATION; THAT IS, IT'S RECEIVING INFORMATION FROM A SERVER.

03:05:23  23  SO IT DOES NOT NEED TO BE A PHONE.

03:05:26  24   THE COMMON EXAMPLE WE THINK OF, OF COURSE, IS A PHONE AS

03:05:30  25  THE CLIENT, BUT IT COULD BE ANOTHER COMPUTER, IT COULD BE

UNITED STATES COURT REPORTERS

63

03:05:34  1    ANOTHER PROCESSING INSTANCE ON THE AWS CLOUD WHERE THE SERVER

03:05:39  2   PORTION IS RUNNING.  AS LONG AS THIS PROCESSING UNIT IS

03:05:41  3   RECEIVING OR CAPABLE OF RECEIVING THE INFORMATION, IT WOULD BE

03:05:46  4   A CLIENT AND IT WOULD INFRINGE IF IT WAS WITHIN THE U.S., AND

03:05:50  5   WE THINK THAT THAT'S THE CASE.

03:05:52  6    THE COURT:  SO WHAT'S THE EVIDENCE YOU POINT ME TO?

03:05:54  7   THAT'S THE THEORY, WHAT'S THE EVIDENCE?

03:05:56  8    MR. DAVIS:  SO THIS IS AVIA'S EXPERT STATING THAT IT

03:06:00  9   COULD BE.

03:06:01  10   THE COURT:  IT COULD BE.  BUT NOW WHERE IS THE

03:06:02  11  EVIDENCE THAT IT IS?

03:06:03  12   MR. DAVIS:  THAT IT IS?

03:06:04  13   THE COURT:  THAT IT IS RECEIVED ON A SERVER IN THE

03:06:07  14  U.S.?

03:06:08  15   MR. DAVIS:  IT'S HOSTED ON AVIA'S WEBSITE AND IT'S IN

03:06:12  16  THEIR ACCOUNTS ON THE APPLE APP STORE AND IN THE SAMSUNG GALAXY

03:06:17  17  STORE.

03:06:17  18   SO THE COMPUTER READABLE MEDIUM CLAIMS ARE, THOSE DON'T

03:06:24  19  EVER REQUIRE CAPABILITY BECAUSE OF THE "WHICH WHEN EXECUTED"

03:06:28  20  LANGUAGE, WHICH AVIA CONVENIENTLY HAS EXCISED FROM ITS QUOTES

03:06:33  21  OF THE CLAIMS IN THE BRIEFS WHICH YOU CAN SEE AT SLIDE 6, THEY

03:06:39  22  ELLIPSED (SIC) THROUGH THE "WHICH WHEN," LANGUAGE WHICH IS THE

03:06:42  23  CRITICAL CONDITIONAL LANGUAGE OF CAPABILITY, WHICH DOES NOT

03:06:46  24  REQUIRE ACTUAL EXECUTION OR PLAY.

03:06:51  25   THAT IS SHOWN IN SLIDE 7 AT THE NETFUEL CASE WHICH IS FROM

UNITED STATES COURT REPORTERS

64

03:06:55  1    THIS DISTRICT IN 2020, "WHICH WHEN EXECUTED, IN A COMPUTER

03:07:00  2   READABLE MEDIUM CLAIM, DOES NOT REQUIRE EXECUTION, IT ONLY

03:07:04  3   REQUIRES CAPABILITY."

03:07:11  4    OUR THEORY OF INFRINGEMENT FOR THIS CAN BE FOUND AT

03:07:16  5   DR. ZAGAL'S EXPERT REPORT, WHICH IS DOCKET 161-3 AT

03:07:22  6   PARAGRAPH 75.  WE DETAIL HOW THE PLACEMENT OF THE SOFTWARE ON

03:07:25  7   THOSE SERVERS CONSTITUTES INFRINGEMENT OF THE COMPUTER

03:07:28  8   READABLE --

03:07:29  9    THE COURT:  AND SO I DON'T ACTUALLY HAVE EVIDENCE

03:07:31  10  WHERE THE AVIA SERVER IS LOCATED, DO I?

03:07:35  11   MR. DAVIS:  I DON'T KNOW WHERE THE AVIA SERVER IS

03:07:37  12  LOCATED.

03:07:37  13   THE COURT:  OKAY.  YOU DON'T OFFER ME THAT EVIDENCE,

03:07:39  14  BUT YOU CERTAINLY ARGUE THAT THE AVIA GAME IS AVAILABLE THROUGH

03:07:46  15  APPLE AND GOOGLE.

03:07:48  16   MR. DAVIS:  SOLD IN THE U.S., OFFERED FOR SALE IN THE

03:07:51  17  U.S., TRANSOCEAN SAYS THAT THAT IS A DIRECT INFRINGEMENT.

03:07:54  18   THE COURT:  OKAY.  AND SO ALL OF THE STEPS NEED TO BE

03:07:57  19  COMPLETED IN THE U.S. FOR THE GAME TO BE PLAYED THEN.

03:08:00  20   MR. DAVIS:  AS LONG AS THE SOFTWARE IS CAPABLE OF

03:08:03  21  PERFORMING THE FUNCTIONS FOR THE COMPUTER READABLE MEDIUM

03:08:07  22  CLAIM, THE STEPS DON'T ACTUALLY NEED TO BE PERFORMED.

03:08:10  23   THE COURT:  DON'T NEED TO BE PERFORMED.  OKAY.

03:08:12  24   MR. DAVIS:  THAT'S CORRECT.

03:08:13  25   THE COURT:  THANK YOU.

UNITED STATES COURT REPORTERS

65

| | |
|---|---|
| 03:08:14 | 1   MR. DAVIS:  IT JUST NEEDS TO BE CAPABLE. |
| 03:08:18 | 2       HERE WE HAVE EVIDENCE AT SLIDE 9 THAT AVIA DOES OFFER ITS |
| 03:08:23 | 3   APPS FOR SALE ON THE APP STORE, THE GALAXY STORE, AND THEY |
| 03:08:27 | 4   OFFER A DOWNLOAD OF THE ANDROID APP THROUGH THEIR OWN WEB |
| 03:08:31 | 5   SERVER. |
| 03:08:32 | 6       SO THAT'S AGAIN INFRINGEMENT BY, OF AT LEAST A COMPUTER |
| 03:08:36 | 7   READABLE MEDIUM CLAIMS FOR SALE OR OFFER FOR SALE. |
| 03:08:39 | 8       THE COURT:  AND THOSE ARE CLAIMS 1 THROUGH 10? |
| 03:08:42 | 9       MR. DAVIS:  11 THROUGH -- |
| 03:08:44 | 10      THE COURT:  I'M SORRY, 11 THROUGH 17. |
| 03:08:45 | 11      MR. DAVIS:  YES. |
| 03:08:46 | 12      THE COURT:  THANK YOU. |
| 03:08:48 | 13      MR. DAVIS:  AND THE GREE V. SUPERCELL CASE NOTES THAT |
| 03:08:54 | 14  ACCOUNTS OWNED BY SOMEBODY ON A THIRD PARTY SERVER, CAN SUFFICE |
| 03:08:59 | 15  FOR DIRECT INFRINGEMENT.  IN THAT CASE, SUPERCELL USED AWS OR |
| 03:09:05 | 16  AMAZON WEB SERVERS, AND WAS FOUND TO INFRINGE BY HOSTING |
| 03:09:12 | 17  SOFTWARE ON THOSE SERVER, THE GREE. |
| 03:09:15 | 18      HERE'S -- ON SLIDE 7, THERE'S A POLL FROM AVIAGAMES APP |
| 03:09:20 | 19  STORE POST, AND IT NOTES THE SELLER IS AVIAGAMES IN THE |
| 03:09:24 | 20  HIGHLIGHTED PORTION. |
| 03:09:28 | 21      SO ONE OTHER THING I WANTED TO NOTE IS USE.  WE HEARD A |
| 03:09:34 | 22  LOT ABOUT R&D AND DEVELOPMENT, BUT THAT'S NOT NECESSARY FOR |
| 03:09:38 | 23  INFRINGEMENT.  USE BY AN AVIAGAMES EMPLOYEE IN THE U.S. WOULD |
| 03:09:43 | 24  SUFFICE FOR THE METHOD CLAIM INFRINGEMENT BECAUSE METHOD |
| 03:09:47 | 25  CLAIMS, UNLIKE THE COMPUTER READABLE MEDIUM CLAIMS, REQUIRE USE |

UNITED STATES COURT REPORTERS

66

| | |
|---|---|
| 03:09:51 | 1   TO INFRINGE.  AND YOU HAVE TO USE IT IN THE U.S. |
| 03:09:54 | 2       BUT AVIAGAMES ACTUALLY ENCOURAGES ALL OF ITS EMPLOYEES TO |
| 03:09:59 | 3   PLAY THE GAME ON A DAILY BASIS AS MUCH AS POSSIBLE TO GENERATE |
| 03:10:06 | 4   CONTENT FOR SOCIAL MEDIA POSTS. |
| 03:10:08 | 5       SO WE THINK THIS IS VERY GOOD DIRECT EVIDENCE THAT AVIA'S |
| 03:10:14 | 6   EMPLOYEES ARE PLAYING, THOSE EMPLOYEES IN THE U.S. ARE GOING TO |
| 03:10:18 | 7   BE PLAYING. |
| 03:10:18 | 8       THE COURT:  WELL I DON'T THINK IT'S DIRECT EVIDENCE |
| 03:10:20 | 9   BECAUSE YOU DON'T HAVE EVIDENCE OF SOMEONE PLAYING, BUT |
| 03:10:26 | 10  CERTAINLY A STRONG INFERENCE COULD BE DRAWN, IS WHAT YOU ARE |
| 03:10:29 | 11  SUGGESTING, IS PLAYERS DO -- OR EMPLOYEES DO WHAT THEIR BOSS |
| 03:10:33 | 12  TELLS THEM TO DO. |
| 03:10:35 | 13      MR. DAVIS:  THAT'S CORRECT, YOUR HONOR. |
| 03:10:36 | 14      AND WE HAVE A NUMBER OF AVIA WITNESSES WITHIN THE SUBPOENA |
| 03:10:39 | 15  POWER OF THIS COURT WHICH WE WOULD CALL AND HAVE TESTIFY -- |
| 03:10:42 | 16      THE COURT:  BUT YOU DIDN'T.  I HAVE TO LOOK AT |
| 03:10:44 | 17  EVIDENCE I HAVE AND THE REASONABLE INFERENCES I CAN DRAW IN |
| 03:10:46 | 18  ORDER TO -- FOR YOU TO DEFEAT AVIA'S CLAIM HERE.  THAT'S WHY -- |
| 03:10:52 | 19  I MEAN, YOUR BURDEN IS LOW HERE BECAUSE YOU ARE DEFENDING. |
| 03:10:55 | 20      MR. DAVIS:  CORRECT, YOUR HONOR.  BUT THIS IS NOT A |
| 03:10:58 | 21  JMOL MOTION, RIGHT, THIS IS SUMMARY JUDGEMENT.  SO IF WE WERE |
| 03:11:02 | 22  ABLE TO ADDUCE TRIAL TESTIMONY THAT THEY DID PLAY IN THE U.S. |
| 03:11:06 | 23      THE COURT:  I DON'T AGREE WITH THAT BECAUSE YOU DON'T |
| 03:11:09 | 24  KNOW WHAT THEY ARE GOING TO SAY.  YOU DON'T KNOW WHAT ANY ONE |
| 03:11:12 | 25  OF THEM WOULD SAY, SO YOU ARE SPECULATING THEY WOULD SUPPORT |

UNITED STATES COURT REPORTERS

67

| | |
|---|---|
| 03:11:16 | 1   WHAT YOU ARE SAYING. |
| 03:11:16 | 2       I CAN DRAW A REASONABLE INFERENCE FROM THE DIRECTIVE THAT |
| 03:11:19 | 3   THEY DO PLAY AND THE EMPLOYEES ARE LOCATED IN THE U.S. |
| 03:11:23 | 4       DO YOU HAVE EVIDENCE THAT THERE ARE EMPLOYEES IN THE U.S.? |
| 03:11:25 | 5       MR. DAVIS:  YES, YOUR HONOR. |
| 03:11:26 | 6       THE COURT:  OKAY. |
| 03:11:28 | 7       MR. DAVIS:  SO CEO, VICKIE CHEN, LOCATED IN THE U.S., |
| 03:11:33 | 8   IN MOUNTAIN VIEW.  PING WANG, WHO IS IN THE COURTROOM TODAY, |
| 03:11:37 | 9   MOUNTAIN VIEW, CALIFORNIA.  YI PENG, CHIEF PRINCIPAL ENGINEER, |
| 03:11:44 | 10  MOUNTAIN VIEW, CALIFORNIA. |
| 03:11:45 | 11      AND THEN WE HAVE AN E-MAIL FROM MS. CHEN IN OCTOBER 2019, |
| 03:11:53 | 12  THAT NOTED THEY FOUNDED IN A GARAGE IN 2016 WITH THREE |
| 03:11:58 | 13  EMPLOYEES.  ONE YEAR LATER, THEY HAD NINE FULL-TIME EMPLOYEES |
| 03:12:02 | 14  IN THE U.S., AND THEN THEY STARTED DEVELOPING AND TESTING, BETA |
| 03:12:06 | 15  TESTING SINCE THEN. |
| 03:12:07 | 16      THE COURT:  AND IT SAYS, WE MOVED TO OUR CURRENT |
| 03:12:10 | 17  OFFICE.  IS THAT AN OFFICE IN THE U.S.? |
| 03:12:12 | 18      MR. DAVIS:  IF YOU LOOK FURTHER ALONG THE UNDERLINED, |
| 03:12:14 | 19  IT SAYS, WE HAVE TOTAL NINE FULL-TIME EMPLOYEES IN THE U.S. |
| 03:12:18 | 20      SO I WOULD SUBMIT THAT YES, YOUR HONOR. |
| 03:12:22 | 21      THE COURT:  OKAY. |
| 03:12:22 | 22      MR. DAVIS:  WE HAVE INDICATION THAT THEY HIRE TESTERS |
| 03:12:27 | 23  TO USE THE GAMES IN THE U.S. TO DEVELOP INFORMATION ABOUT THE |
| 03:12:34 | 24  SUCCESS OF THE GAMES. |
| 03:12:36 | 25      THIS WAS CITED IN OUR BRIEFING TOO, DOCKET 172-4 AT 3. |

UNITED STATES COURT REPORTERS

68

| | |
|---|---|
| 03:12:43 | 1       THE COURT:  OKAY.  I THINK WE CAN MOVE ON FROM THIS |
| 03:12:45 | 2   ONE.  THANK YOU VERY MUCH. |
| 03:12:46 | 3       MR. DAVIS:  SO I DID WANT TO RAISE THE BOT ISSUE. |
| 03:12:49 | 4   AND WE DO THINK THAT THIS IS ADDITIONAL EVIDENCE OF DIRECT |
| 03:12:54 | 5   INFRINGEMENT.  OF COURSE WE DON'T KNOW EXACTLY HOW IT DOES |
| 03:12:58 | 6   WORK, BUT THE EVIDENCE WE DO HAVE SUGGESTS VERY CLEARLY THAT |
| 03:13:04 | 7   GUIDES ARE ROBOTS AND THAT THEY CAN GUARANTEE A WINNING RATE, |
| 03:13:10 | 8   SO THEY CAN RIG THE GAME, AND THAT IN FACT, THERE WERE QUITE A |
| 03:13:16 | 9   FEW ROBOTS PLAYING WITH PEOPLE. |
| 03:13:18 | 10      SO HERE IN THIS EVIDENCE, IT SHOWS IN THE UPPER RIGHT-HAND |
| 03:13:23 | 11  CORNER, ROBOTS PLAYING WITH PEOPLE.  NOW YES, THEY'RE NOT A |
| 03:13:27 | 12  METAL ROBOT SITTING IN A ROOM, THIS IS A SOFTWARE INSTANCE |
| 03:13:31 | 13  PLAYING THE GAME, ACCORDING TO THEIR OWN WORDS.  AND THAT WOULD |
| 03:13:35 | 14  BE A PLAYER ON A CLIENT THAT WOULD DIRECTLY INFRINGE THE |
| 03:13:40 | 15  CLAIMS, IN OUR VIEW. |
| 03:13:43 | 16      THE COURT:  SO WHAT'S THE CLIENT IN THAT SCENARIO OF |
| 03:13:47 | 17  A PLAYER ON CLIENT, WHERE IS THE CLIENT LOCATED? |
| 03:13:51 | 18      MR. DAVIS:  SO WE DON'T HAVE FULL DISCOVERY ON THIS |
| 03:13:54 | 19  ISSUE, IT COULD EITHER BE ON THE PHONE OF A USER, AND IF THAT |
| 03:13:58 | 20  BOT IS UNDER CONTROL OF AVIAGAMES, WE WOULD SAY THAT THAT'S |
| 03:14:02 | 21  DIRECT INFRINGEMENT BY AVIAGAMES, EVEN IF IT'S ON ANOTHER |
| 03:14:05 | 22  PERSON'S PHONE, BECAUSE THEY ARE UNDER CONTROL OF THE OPERATION |
| 03:14:09 | 23  OF THE BOT. |
| 03:14:10 | 24      THE COURT:  SO I WASN'T OFF BASE WHEN I SUGGESTED THE |
| 03:14:14 | 25  BOT COULD BE ON THE HUMAN USER'S DEVICE. |

UNITED STATES COURT REPORTERS

69

03:14:17  1        MR. DAVIS:  IT CERTAINLY COULD.  I DON'T KNOW RIGHT
03:14:20  2    HERE.
03:14:20  3        THE COURT:  OKAY.  LET'S MOVE ON.
03:14:24  4        MR. DAVIS:  WE DON'T HAVE THE DISCOVERY HERE.
03:14:25  5        THE COURT:  WE DON'T.
03:14:26  6        MR. DAVIS:  EVERY CASH GAME SINCE JANUARY 6TH IN THE
03:14:29  7    U.S. TIME HAS A GUIDE WITH A ROBOT, AND THEY ARE BALANCING THE
03:14:35  8    WINNING RATE THROUGH THAT ROBOT.
03:14:37  9        THE COURT:  SINCE WHAT TIME FRAME?
03:14:39  10       MR. DAVIS:  JANUARY 6, 2022, U.S. TIME, THERE'S A
03:14:42  11   GUIDE WITH A ROBOT KIND-8 IN THE CASH SLOT OF EACH GAME.  WE
03:14:48  12   THINK THAT SHOWS THAT EACH CASH GAME IN THE U.S. HAS A ROBOT IN
03:14:52  13   IT.
03:14:53  14       THE COURT:  SO I DON'T KNOW IF THAT HAS ANYTHING TO
03:14:55  15   DO WITH INFRINGEMENT, BUT IT CERTAINLY HAS A LOT TO DO WITH
03:14:58  16   OTHER ASPECTS OF ONE'S BUSINESS.
03:15:01  17       LET'S MOVE ON.  I'M JUST WORRIED ABOUT THE TIME.  THERE
03:15:03  18   ARE A LOT OF OTHER ISSUES.
03:15:05  19       MR. DAVIS:  OKAY.
03:15:06  20       SO IT'S NECESSARY FOR AVIA'S PRODUCT, AND I THINK THIS IS
03:15:12  21   THE KEY ASPECT IS THE GUIDE HAS A USER ID AND IT'S SPOOFING AN
03:15:21  22   INACTIVE USER.  SO WE BELIEVE THIS SHOWS THAT IT'S PLAYING THE
03:15:25  23   GAMES AS A USER WITH A USER'S GAME ID, WHICH WOULD BE DIRECT
03:15:31  24   INFRINGEMENT.
03:15:32  25       NOW THIS COULD HAPPEN IN A COUPLE OF DIFFERENT WAYS.  ONE,

UNITED STATES COURT REPORTERS

70

03:15:36  1    IT COULD BE ON THEIR PHONE; TWO, IT COULD BE PLAYING ON A
03:15:39  2    SERVER.
03:15:40  3        THE COURT:  SO WHEN YOU SAY "YOUR PHONE," THAT'S
03:15:42  4    WHERE I'M CONFUSED.
03:15:44  5        MR. DAVIS:  ANY PHONE.
03:15:44  6        THE COURT:  IS THAT THE COMPETITOR'S PHONE?
03:15:46  7        MR. DAVIS:  YEAH.  IT COULD BE ON A COMPETITOR'S
03:15:49  8    PHONE IN THEIR ABK SOFTWARE, OR IT COULD BE ON A SERVER
03:15:54  9    INSTANCE.  I DON'T -- WE DON'T KNOW.
03:15:58  10       THE COURT:  OKAY.  I UNDERSTAND.
03:15:59  11       MR. DAVIS:  OKAY.  SO MOVING ON TO THE OTHER ISSUES
03:16:09  12   THAT WERE RAISED, THESE ARE REALLY SOFTWARE ISSUES ABOUT HOW
03:16:14  13   THE PRODUCT OPERATES AND WHETHER IT MEETS THE LIMITATIONS OF
03:16:17  14   THE CLAIMS.  IF YOUR HONOR IS ON THE FENCE HERE, I'M HAPPY TO
03:16:22  15   GO THROUGH MY PRESENTATION, IF YOU'VE MADE A DECISION --
03:16:25  16       THE COURT:  YOU HAVE NINE MINUTES, AND YOU CAN USE IT
03:16:27  17   ANY WAY YOU WANT, I'M NOT GOING TO INTERRUPT.
03:16:30  18       MR. DAVIS:  ALL RIGHT.  SO I'M GOING TO BE VERY BRIEF
03:16:32  19   THEN.
03:16:34  20       YOUR HONOR CONSTRUED THIS PHRASE, ALL OF THE DISPUTES
03:16:38  21   CENTER AROUND THE PHRASE IN THE PATENTS, "A STREAM OF PSEUDO
03:16:43  22   RANDOM NUMBER SEEDS CHARACTERIZED BY A UNIQUE MATCH
03:16:46  23   IDENTIFIER."
03:16:47  24       THERE WAS REGULAR BRIEFING, THERE WAS A HEARING, THERE WAS
03:16:50  25   SUPPLEMENTAL BRIEFING, AND I THINK YOUR HONOR GOT IT EXACTLY

UNITED STATES COURT REPORTERS

71

03:16:55  1    RIGHT THAT YOU CONSTRUE THE CLAIMS WITHOUT REFERENCE TO HOW THE
03:17:00  2    PRODUCT ACTUALLY WORKS.
03:17:03  3        NOW -- AND YOU NOTED, THE ULTIMATE DISPUTE IS WHETHER
03:17:08  4    SEEDS GENERATED BY PLUGGING A UNIQUE MATCH IDENTIFIER IN A
03:17:14  5    LOOKUP TABLE IS INFRINGEMENT.  THAT'S A FACT ISSUE.  WE HAVE
03:17:16  6    LOTS OF EVIDENCE IN THE FORM OF EXPERT TESTIMONY AND OTHERWISE
03:17:19  7    THAT THAT'S INFRINGEMENT.  SO WE THINK IT'S INAPPROPRIATE FOR
03:17:22  8    RESOLUTION AT SUMMARY JUDGEMENT.
03:17:30  9        THE OTHER ONE I WANTED TO RAISE IS AROUND THE UNIQUE
03:17:35  10   MATCH ID, WHICH DR. ZAGAL, IN HIS EXPERT REPORT SAYS, "INCLUDES
03:17:42  11   GAME ID PLUS A USER ID" WHEN IT'S LOOKING UP THE SEED IN THE
03:17:47  12   SEED LIBRARY.
03:17:50  13       WE HAVE EVIDENCE FROM AVIA'S WITNESSES THAT A PARTICULAR
03:17:56  14   PLAYER MAY ONLY BE IN ONE MATCH AT A GIVEN TIME, AND SO THAT
03:18:01  15   USER ID PLUS THE GAME ID WILL SPECIFICALLY IDENTIFY THAT MATCH
03:18:07  16   AS OPPOSED TO OTHERS, AND THE GENERAL PURPOSE OF THIS PATENT IS
03:18:11  17   TO ALLOW WHATEVER IS THE USER, THE MATCH ID, TO CREATE COMMON
03:18:18  18   GAME PLAY AMONGST USERS.
03:18:21  19       SO AS LONG AS YOU CAN GET TO THE SAME SEED WHICH WILL THEN
03:18:24  20   GENERATE THE SAME STRING OF RANDOM NUMBERS --
03:18:27  21       THE COURT:  SO -- BUT THIS IS THE ARGUMENT THAT
03:18:28  22   THERE'S NO TIMESTAMP ON THE MATCH.
03:18:31  23       MR. DAVIS:  AS LONG AS YOU CAN GET TO ONE MATCH,
03:18:35  24   RIGHT.  AND THERE'S ONLY -- YOU CAN ONLY PLAY ONE GAME AT A
03:18:40  25   TIME.

UNITED STATES COURT REPORTERS

72

03:18:40  1        THE COURT:  WELL, BUT YOU COULD GET TO TWO MATCHES,
03:18:42  2    IF I PLAY ONE MATCH AT 3:00 AND ONE AT 3:30, I'VE GOT THE SAME
03:18:46  3    IDENTIFIER, TWO DIFFERENT MATCHES, BECAUSE THERE'S NO
03:18:54  4    TIMESTAMP.
03:18:54  5        MR. DAVIS:  THE ANSWER FROM THEIR WITNESS IN OUR
03:18:56  6    BRIEFING IS THAT YOU CAN ONLY PLAY ONE MATCH AT A TIME, AND SO
03:19:02  7    THERE'S NO TWO MATCHES GOING ON.
03:19:05  8        THE COURT:  I SEE, SIMULTANEOUSLY.  GOT IT.  OKAY.
03:19:11  9        MR. DAVIS:  I THINK, YOUR HONOR, I'VE DEALT WITH THE
03:19:13  10   GENERATION ISSUE VERY QUICK, YOU CAN'T GENERATE A NUMBER, THEY
03:19:16  11   EXIST, YOU JUST PICK A NUMBER RANDOMLY.
03:19:19  12       SO WITH THAT, YOUR HONOR, I'M GOING TO TURN IT OVER TO MY
03:19:24  13   COLLEAGUE.
03:19:27  14       THE COURT:  AND LET ME TELL YOU THIS IS A CONCEPT
03:19:29  15   THAT JUST IS VERY ELUSIVE TO ME, SO I DO APPRECIATE YOUR HELP
03:19:35  16   ON IT.
03:19:44  17       MR. CAMPBELL:  THANK YOU, YOUR HONOR.
03:19:51  18       CHRIS CAMPBELL.  I WILL BE ADDRESSING THE WRITTEN
03:20:03  19   DESCRIPTION PIECE, AND I WILL BE VERY BRIEF.
03:20:06  20       LET'S TURN, IF WE COULD PLEASE, TO SLIDE 3.  JUST -- I'M
03:20:15  21   GOING TO USE SOME ACRONYMS, TIN, UMI, PRN, WILL MAKE THINGS
03:20:19  22   MOVE ALONG A LITTLE BIT FASTER.
03:20:26  23       LET'S JUMP DOWN TO SLIDE 8, PLEASE.
03:20:30  24       ALL RIGHT.  SO WHAT WE HAVE DONE HERE IS WE HAVE FRAMED
03:20:34  25   THE THREE DIFFERENT ISSUES THAT WERE PRESENTED IN THE BRIEF.

UNITED STATES COURT REPORTERS

73

| | |
|---|---|
| 03:20:36 | 1 WE'VE GOT THE NUMERICAL MISMATCH, WHERE IS THE PRN GENERATED, |
| 03:20:42 | 2 AND THEN THIS TIN VERSUS UMI, IS THERE A DISCLAIMER. |
| 03:20:46 | 3 SO LET'S TAKE THEM ONE BY ONE QUICKLY, AND WE WILL GET |
| 03:20:49 | 4 YOUR HONOR TO YOUR OTHER CALL. |
| 03:20:51 | 5 NEXT SLIDE. |
| 03:20:52 | 6 SO AS THE COURT KNOWS, WHEN A CLAIM ELEMENT BEGINS WITH |
| 03:20:59 | 7 THE INDEFINITE ARTICLE A, THAT MEANS ONE OR MORE.  AND THIS IS |
| 03:21:04 | 8 CLEAR FROM THE FEDERAL CIRCUIT, IT'S THE BALDWIN GRAPHICS CASE, |
| 03:21:08 | 9 IT'S IN OUR BRIEF, AND IT SAYS THERE THAT THE "A," OR AN "AN," |
| 03:21:15 | 10 CAN MEAN ONE OR MORE, AS BEST DESCRIBED AS A RULE, RATHER THAN |
| 03:21:20 | 11 MERELY AS A PRESUMPTION OR EVEN A CONVENTION. |
| 03:21:23 | 12 SO WHAT AVIA WOULD HAVE THE COURT DO IS REWRITE THE CLAIM. |
| 03:21:26 | 13 HOW?  THEY WANT TO TAKE THAT WORD "A" AND WRITE "A SINGLE." |
| 03:21:29 | 14 AND WE WOULD SUBMIT TO THE COURT, THAT THIS IS NOTHING MORE |
| 03:21:33 | 15 THAN A MARKMAN REDO DISGUISED NOW AS A MOTION FOR SUMMARY |
| 03:21:39 | 16 JUDGEMENT.  AND THE COURT OUGHT TO DECLINE THAT INVITATION, THE |
| 03:21:44 | 17 TIME HAS LONG PASSED TO CONSTRUE THE CLAIMS. |
| 03:21:46 | 18 SO THIS ISSUE HAS BEEN TWICE BRIEFED.  THE COURT HAD THE |
| 03:21:49 | 19 INITIAL BRIEFING, SENT THE PARTIES HOME, CAME BACK, AND THERE |
| 03:21:52 | 20 WAS ADDITIONAL MARKMAN BRIEFING.  THE COURT DID NOT LIKE |
| 03:21:56 | 21 SKILLZ'S POSITION OF PLAIN AND ORDINARY MEANING, YOU THOUGHT |
| 03:21:59 | 22 THAT AVIA'S POSITION WAS TOO NARROW.  BOTH SIDES CAME BACK, |
| 03:22:03 | 23 STARTED TO COME TOGETHER, THE COURT RESOLVED THAT. |
| 03:22:06 | 24 AVIA HAD EVERYTHING IT NEEDED, IT DOESN'T NEED TO COME |
| 03:22:08 | 25 BACK TO THE COURT NOW, THIS ISSUE HAS BEEN RESOLVED, "A" IS |

UNITED STATES COURT REPORTERS

74

| | |
|---|---|
| 03:22:12 | 1 "ONE OR MORE," BLACK LETTER LAW. |
| 03:22:16 | 2 ALL RIGHT.  LET'S TALK ABOUT THIS NUMERICAL MISMATCH. |
| 03:22:20 | 3 MINDFUL OF TIME. |
| 03:22:23 | 4 THIS FIRST QUOTE FROM THE SPEC IS VERY IMPORTANT BECAUSE |
| 03:22:27 | 5 IT SHOWS TOURNAMENTS COMPRISE A SINGLE MATCH OR A SERIES. |
| 03:22:31 | 6 WHERE YOU HAVE A SINGLE MATCH, YOU HAVE A ONE-TO-ONE |
| 03:22:34 | 7 RELATIONSHIP BETWEEN THE PRN, THE SEED, AND THE UMI.  WHERE YOU |
| 03:22:41 | 8 HAVE A SERIES OF MATCHES, YOU'VE GOT A MANY-TO-MANY |
| 03:22:44 | 9 RELATIONSHIP. |
| 03:22:44 | 10 SO AGAIN, AVIA POINTS TO THIS ONE EXAMPLE, THAT'S THE |
| 03:22:49 | 11 LOWER BLOCK FROM THE '564 PATENT AT 15, 3 THROUGH 7, BUT THE |
| 03:22:56 | 12 COURT OBSERVED IN THE CLAIM CONSTRUCTION ORDER THAT THIS IS |
| 03:22:58 | 13 JUST ONE EXAMPLE, AND A PERSON OF ORDINARY SKILL IN THE ART, |
| 03:23:04 | 14 WOULD UNDERSTAND THAT THE INVENTIONS ARE BROADER THAN THIS ONE |
| 03:23:07 | 15 EXAMPLE. |
| 03:23:08 | 16 SO LET'S LOOK AT HOW AN EXPERT, THAT IS DR. ZAGAL, NEXT |
| 03:23:12 | 17 SLIDE, UNDERSTANDS THE CLAIMS.  HE SAYS HERE, IN PARAGRAPH 81 |
| 03:23:16 | 18 OF HIS REPORT, THAT THE CLAIMS COVER MANY-TO-ONE, AND |
| 03:23:22 | 19 MANY-TO-MANY.  AND THAT'S THE UNDERLINED PORTION ON SLIDE 12. |
| 03:23:27 | 20 THE COURT:  SO I'M GOING TO GIVE YOU TWO MORE |
| 03:23:29 | 21 MINUTES.  I HAVE TO GO. |
| 03:23:31 | 22 MR. CAMPBELL:  SO LET ME PAUSE, IS THERE ANYTHING I |
| 03:23:34 | 23 CAN ADDRESS FOR THE COURT? |
| 03:23:35 | 24 THE COURT:  NO, I JUST WANT TO LET YOU -- |
| 03:23:36 | 25 MR. CAMPBELL:  THEN I WILL STOP.  THANK YOU VERY |

UNITED STATES COURT REPORTERS

75

| | |
|---|---|
| 03:23:38 | 1 MUCH, YOUR HONOR. |
| 03:23:38 | 2 THE COURT:  ALL RIGHT. |
| 03:23:39 | 3 SO COUNSEL, I THOUGHT TWO HOURS WAS MORE THAN ENOUGH, AND |
| 03:23:46 | 4 I REALLY APPRECIATE THE FINE QUALITY OF THE ARGUMENT, YOU'VE |
| 03:23:49 | 5 PROVIDED ME EXCELLENT BRIEFING.  YOU CAN HELP THE COURT |
| 03:23:53 | 6 ENORMOUSLY BY A WEEK OR TWO IN ADVANCE, LETTING US KNOW HOW |
| 03:23:58 | 7 MUCH TIME YOU WOULD LIKE, BECAUSE TWO HOURS IS A LOT, AND I |
| 03:24:01 | 8 NEVER IMAGINED THAT YOU WOULD ACTUALLY BE PREPARED TO SPEND THE |
| 03:24:05 | 9 DAY WITH ME.  I HAVE MORE HEARINGS TODAY AND A 4:00 MEETING, SO |
| 03:24:09 | 10 I WOULD HAVE GIVEN YOU MORE, BUT I CAN'T. |
| 03:24:11 | 11 AND SO I DON'T THINK IT'S WORTH HAVING YOU COME BACK, I |
| 03:24:15 | 12 THINK YOU'VE REALLY COVERED EVERYTHING.  IF FOR ANY REASON I |
| 03:24:18 | 13 FEEL I NEED MORE ARGUMENT ON A POINT, I CAN PULL YOU TOGETHER |
| 03:24:22 | 14 ON ZOOM, I IMAGINE, AND WE WILL CERTAINLY BE ABLE TO FIND A |
| 03:24:28 | 15 TIME WHEN WE COULD DO THAT.  I WOULDN'T MAKE YOU ALL COME BACK |
| 03:24:32 | 16 TO THE COURTROOM, ALTHOUGH I MUST TELL YOU THIS WOULD HAVE BEEN |
| 03:24:34 | 17 VERY DIFFICULT FOR ME IF YOU HAD BEEN REMOTE, SO THANK YOU. |
| 03:24:38 | 18 I DON'T KNOW WHETHER THE SKILLZ GROUP IS LOCAL, THE QUINN |
| 03:24:43 | 19 GROUP ARE LOCAL, BUT ARE YOU ALL SCATTERED THROUGHOUT THE |
| 03:24:47 | 20 COUNTRY? |
| 03:24:47 | 21 MR. CAMPBELL:  WE ARE SCATTERED, YOUR HONOR.  WE ARE |
| 03:24:49 | 22 AUSTIN, DC, DENVER, LA, NEW YORK.  WE ARE ALL OVER. |
| 03:24:55 | 23 MS. STEWART:  SAN FRANCISCO. |
| 03:24:57 | 24 MR. CAMPBELL:  AND SAN FRANCISCO. |
| 03:24:59 | 25 AND YOUR HONOR, WE HAVE ONE HOUSEKEEPING ISSUE.  WE DID |

UNITED STATES COURT REPORTERS

76

| | |
|---|---|
| 03:25:02 | 1 GET TRANSLATIONS FOR THE EMERGENCY MOTION.  HOW WOULD THE COURT |
| 03:25:05 | 2 WISH THAT WE PRESENT -- |
| 03:25:06 | 3 THE COURT:  IF YOU COULD JUST PUT IT ON THE DOCKET. |
| 03:25:09 | 4 THEY ARE JUST TRANSLATIONS? |
| 03:25:11 | 5 MR. CAMPBELL:  THEY ARE JUST TRANSLATIONS. |
| 03:25:13 | 6 THE COURT:  JUST PUT IT ON THE DOCKET AND THEN I WILL |
| 03:25:15 | 7 GET THE RESPONSE. |
| 03:25:16 | 8 AND MS. WANG, I DON'T KNOW WHETHER ANY OF YOUR TEAM HERE |
| 03:25:19 | 9 HAS TRAVELLED OUTSIDE OF THE BAY AREA? |
| 03:25:20 | 10 MS. WANG:  YES, YOUR HONOR.  MR. BOMBACH AND |
| 03:25:22 | 11 MS. GARDNER ARE BOTH FROM OUR SAN DIEGO OFFICE. |
| 03:25:25 | 12 THE COURT:  WELL, THANK YOU FOR MAKING THE TRIP.  WE |
| 03:25:27 | 13 DON'T DO IT SO MUCH ANYMORE, I'M HOPING WE GET BACK TO MORE OF |
| 03:25:30 | 14 THESE IN THE COURTROOM. |
| 03:25:31 | 15 ALL RIGHT.  WE HAVE TRIAL COMING UP.  I AM VERY CONCERNED |
| 03:25:33 | 16 THAT THERE ARE NOW RUMBLINGS OF AMENDING THE COMPLAINT, AND WE |
| 03:25:39 | 17 NEVER DO DO-OVERS ON SUMMARY JUDGEMENT, YOU ARE ONE AND DONE, |
| 03:25:41 | 18 AND I CAN SIMPLY DENY AN ISSUE, AND ALL THAT DOES IS MEAN WE |
| 03:25:47 | 19 WILL LET THE JURY DECIDE.  AND OF COURSE ON THE EQUITABLE |
| 03:25:49 | 20 ISSUES, I WILL BE THE FINDER OF FACT ON THAT. |
| 03:25:53 | 21 SO WE WILL SEE WHERE WE GO ON THE BOT ISSUE, BUT I WANT TO |
| 03:25:56 | 22 GET THAT BRIEFED BY FRIDAY AND HOPEFULLY HAVE AN ORDER OUT BY |
| 03:26:00 | 23 MONDAY BECAUSE -- AND I NEED TIME FRAMES IN IT.  IF YOUR TRIAL |
| 03:26:04 | 24 DATE IS IN JEOPARDY, I THINK YOU UNDERSTAND IT'S GOING TO BE A |
| 03:26:08 | 25 WHILE UNTIL I CAN RESET IT.  I WILL DO MY BEST.  IF YOU NEED |

UNITED STATES COURT REPORTERS

03:26:11  1    SEVERAL MONTHS, I MIGHT BE ABLE TO WORK ON THAT, SO THINK ABOUT
03:26:14  2    THAT.
03:26:14  3         I WILL WORK WITH YOU, BECAUSE THIS CASE IS OLD AND I
03:26:17  4    REALLY WANT YOU TO BE ABLE TO GET THIS WORK DONE, SO I'M NOT
03:26:21  5    PUSHING FOR THE DECEMBER TRIAL DATE, BUT I DON'T KNOW IF IT'S
03:26:24  6    NECESSARY TO CHANGE IT.  YOU WILL LET ME KNOW.
03:26:26  7         ALL RIGHT.  THANK YOU ALL.
03:26:28  8         (THE PROCEEDINGS WERE CONCLUDED AT 3:26 P.M.)
          9
         10
         11
         12
         13
         14
         15
         16
         17
         18
         19
         20
         21
         22
         23
         24
         25

UNITED STATES COURT REPORTERS

          1
          2
          3
          4          **CERTIFICATE OF REPORTER**
          5
          6
          7
          8          I, THE UNDERSIGNED OFFICIAL COURT
          9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR
         10    THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH
         11    FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY
         12    CERTIFY:
         13          THAT THE FOREGOING TRANSCRIPT,
         14    CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND
         15    CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS
         16    SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS
         17    HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED
         18    TRANSCRIPTION TO THE BEST OF MY ABILITY.
         19
         20
         21
         22
         23
         24
         25    SUMMER A. FISHER, CSR, CRR
               CERTIFICATE NUMBER 13185        DATED: 8/16/23