| | |
|---|---|
| Chao "Wendy" Wang, Bar No. 289325<br>WWang@perkinscoie.com<br>PERKINS COIE LLP<br>3150 Porter Drive<br>Palo Alto, CA 94304<br>Telephone: 650.838.4315<br>Facsimile: 650.838.4350 | Judith B. Jennison, Bar No. 165929<br>PERKINS COIE LLP<br>JJennison@perkinscoie.com<br>1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099<br>Telephone: 206-359-3489<br>Fax: (206) 359-4489 |
| Matthew C. Bernstein, Bar No. 199240<br>MBernstein@perkinscoie.com<br>Joseph P. Reid, Bar No. 211082<br>JReid@perkinscoie.com<br>Miguel J. Bombach, Bar No. 274287<br>MBombach@perkinscoie.com<br>Abigail A. Gardner, Bar No. 334598<br>AGardner@perkinscoie.com<br>PERKINS COIE LLP<br>11452 El Camino Real, Suite 300<br>San Diego, CA 92130-2080<br>Telephone: 858.720.5700<br>Facsimile: 858.720.5799 | W. Matthew Pierce (*pro hac vice*)<br>WPierce@perkinscoie.com<br>PERKINS COIE LLP<br>1900 16th Street, Ste. 1400<br>Denver, CO 80202<br>Telephone: (303) 291-2300<br>Fax: (303) 291-2400<br><br>Dakota Paul Kanetzky (*pro hac vice*)<br>DKanetzky@perkinscoie.com<br>PERKINS COIE LLP<br>405 Colorado Street, Ste 1700<br>Austin, TX 78701<br>Telephone: (737) 256-6115<br>Fax: (737) 256-6300 |

*Attorneys for Defendant AviaGames Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SKILLZ PLATFORM INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>AVIAGAMES INC., a Delaware corporation,<br><br>Defendant. | Case No.: 5:21-cv-02436-BLF (SVK)<br><br>**DEFENDANT AVIAGAMES INC.'S OPPOSITION TO PLAINTIFF SKILLZ PLATFORM INC.'S RULE 37 MOTION FOR SANCTIONS** |

I.      **INTRODUCTION**

Skillz's motion is rife with mischaracterizations and misstatements about what should have been a straightforward meet-and-confer process focused on fulfilling the Court's Order to provide "limited discovery" on a single issue for which discovery has been re-opened. As part of the discussion, but wholly absent from Skillz's motion:

- Skillz initially demanded three days of code review and, prior to Skillz filing the instant motion, AviaGames had agreed.
- The Protective Order in this case outlines that one computer shall be used for source code reviews.
- AviaGames explained the burden of providing entire "collateral files," including databases, and Skillz agreed that it did not need the entire database or collateral files and targeted requests were sufficient.

AviaGames attempted to reasonably negotiate with Skillz. Skillz, in turn, only became more aggressive to the point of filing its motion on the Saturday of the Labor Day weekend claiming it simply could not wait for AviaGames' next proposal. That proposal, which acquiesced to Skillz's three-day request but requested limitations due to burden on the collateral sources Skillz admitted it did not need, was entirely reasonable and in keeping with the Court's order re-opening discovery. And when Skillz did receive AviaGames' proposal prior to filing its motion, it refused to revise its motion to reflect the accurate state of discussions and instead misrepresented AviaGames' position in its motion by stating, repeatedly, that AviaGames only ever offered a single day with no opportunity for further review. And, in doing so, Skillz modified its position from 3-days with targeted requests for information from "collateral files" to unlimited days and all "collateral files." Yet, after two full years during which Skillz conducted numerous source code reviews under the terms of the negotiated protective order without ever seeking the vast, new additional sources of data—"scripts, schemas, and databases … including build files, make files, batch files, configuration files, versioning files, and any other collateral files"—it now characterizes as part of the "complete source code" that it "must have" in order to understand the source code, Skillz barreled forward with one unreasonable demand after the next.

Far from being interested in actually understanding whether AviaGames uses alleged "bots" in a manner that may relate to direct infringement or damages, Skillz has revealed itself to be in an unrelenting pursuit of its business objective to impugn AviaGames' integrity and poison its reputation in the marketplace. None of its allegations bear any relationship to any patent infringement allegations.

As the full record of the meet and confer process reveals, there is nothing sanctionable about AviaGames' conduct and, to the extent sanctions are in order, they should be levied against Skillz for bringing this motion and violating the terms of the Protective Order by using documents and testimony it obtained during discovery in this case to levy baseless allegations in a different case pending between the parties (and another third party, Big Run Studios) before Judge Araceli Martinez-Olguin. In that case, Skillz admits that it used discovery from this case to craft claims of false advertising and unfair competition. *See* Case No. 3:21-cv-04656-AMO, ECF. 197-3 at ¶ 116. The Protective Order plainly prohibits such discovery abuse.

AviaGames seeks a reasonable approach to source code review that will allow Skillz to have appropriately "limited discovery" relating to alleged "bots", in accordance with the Court's order re-opening discovery, so this case can proceed to trial as scheduled. To that end, Avia Games submits that Skillz's motion should be denied, and that Skillz should be permitted—consistent with AviaGames' last proposal and Skillz's initial request—three days to review AviaGames' source code under the terms of the Protective Order, without all the newly demanded collateral data source, and with the ability to seek additional days to the extent Skillz can show good cause for additional review.

**II.      MEET AND CONFER BACKGROUND**

Skillz's Motion presents an incomplete and inaccurate picture of the parties' meet-and-confer negotiations over additional source code review. On August 29, 2023, Skillz demanded three days for review with three computers and full access to new sources of collateral data, including all of AviaGames' "databases," "including build files, make files, batch files, configuration files, versioning files, and any other collateral file." (ECF 242-2 at 3 (Falik Aug. 29, 2023 E-Mail).)

Skillz had never before during the course of discovery so much as mentioned these other data repositories, and, among other things, making them available for inspection would be a time consuming and burdensome task. In view of the Court's Order, AviaGames expected one day of additional source code review, at most, by Skillz and rejected Skillz' demand that it turn over all of its databases—having **15 terabytes of information**—with no relevance to the alleged infringement or alleged "bots." Accordingly, on Thursday, August 31, 2023, AviaGames responded by proposing one day of source code review under the terms of the Protective Order (ECF 58 at § 9(c)), which provides for a single source code computer, and declined access to the collateral data sources noting that it was not "source code." (ECF 242-2 at 2-3 (Bombach Aug. 31 E-Mail).) AviaGames explained it had serious concerns regarding the production of collateral files, including databases, due to their size and sensitive information. (ECF 242-3 at 19-20 (stating that database production is burdensome). Skillz subsequently reiterated its a three-day access request (Wang Decl., Ex. A (Aug. 31 2023 Falik E-Mail)), but later conceded it did not need full access to collateral files, stating "Skillz also does not believe it needs the entirety of any database to understand its operation in relation to the source code." (ECF 248-1 at 5 (Wood Sept. 2, 2023 2:54 PM E-Mail).)

Counsel for AviaGames worked diligently on the Saturday of a holiday weekend to balance both concerns, *i.e.*, Skillz's desire for a three-day inspection with AviaGames' desire to protect its sensitive data (which Skillz admitted it did not need). Skillz had set a unilateral deadline at 5 PM Pacific. (ECF 248-1 at 5 (Wood Sept. 2 3:06 PM E-Mail).) AviaGames' counsel attempted to reach resolution and, given the unilateral deadline, stated it was minutes to being able to provide a reasonable proposal. (ECF 248-1 at 4 (Bombach Sept. 2 4:59 E-Mail) ("apologies on delay. I will get back to you very shortly, within a few minutes.").) Despite AviaGames' request to wait a few minutes, Skillz instead barreled forward with its motion, stating that its motion for terminating sanctions could be withdrawn. (ECF 248-1 at 5 (Wood Sept. 2, 5:06 PM E-Mail) (Skillz stating: "We cannot continue to delay. We are open to continued negotiations. We can withdraw our motion if we reach resolution.").) But, AviaGames did get back to Skillz within the promised minutes,

offering Skillz what it originally asked for (3-days) while offering to address any database requests if Skillz identified what data it needed:

> To avoid burdening the Court with motion practice and to cooperate in good faith, we agree with three days on one review computer, and we will offer you a break room.  As you conceded, Skillz does not need the entirety of any database to understand its operation in relation to the source code and Skillz has to show good cause by identifying the appropriate data, if any, that is sufficient to identify the data types its use.  Please confirm that is acceptable and we will prepare the source code computer.

(ECF 248-1 at 3 (Bombach Sept. 2, 2023 5:25 E-Mail).)  Skillz ignored this proposal.  Five minutes later, at 5:30 PM, Skillz filed its motion for terminating sanctions, in which it repeatedly (and falsely) insisted that AviaGames was only making its source code computer available for one day. (Wang Decl., Ex. B (ECF notice)).  Moreover, Skillz filed the above-described E-Mail chain on Tuesday, days after its Saturday motion, recognizing that it cannot be ignored and that AviaGames would mention it.  (ECF 248.)  Skillz barreled ahead with its motion for terminating sanctions, without giving AviaGames any notice it was filing for terminating sanctions, mentioning only discovery sanctions for the first time on a Friday meet and confer.

Skillz knew full well that the Court had ordered AviaGames to provide a production, and discovery responses on Sept. 5th, but chose to pursue a terminating sanctions motion on what appeared to be a discovery dispute seemingly heading towards mutual agreement.  Skillz is not engaging in good faith to resolve reasonable discovery concerns, and instead is weaponizing sanctions.  At no point did AviaGames ignore, violate, or fall within contempt of the Court's August 22, 2023 Order, which is silent to the scope of the additional source code review (which AviaGames has always previously provided).

### III. SKILLZ'S REQUESTED RELIEF IS UNSUPPORTED BY THE FACTS AND SHOULD BE REJECTED OUT OF HAND

Skillz overreaches in its requested relief.  Based on a discovery dispute essentially over the number of days and number of computers for the source code review on an issue that this Court has not yet determined is even relevant to the case, Skillz seeks an order prohibiting AviaGames from relying on its source code in any way to prove noninfringement.  It also seeks a finding of

infringement, again attempting to sidestep AviaGames' dispositive motion after it failed to come forth with any evidence to survive summary judgment. Moreover, Skillz itself admits that the seed generation algorithm AviaGames uses—which is central to the patent infringement issues in this case—does not infringe the '564 patent and, moreover, this patent was facing very serious validity challenges for its lack of written description. Skillz is trying to drum up discovery conflicts in order to avoid—and bypass–the weak merits of its patent infringement case.

None of Skillz's requests are proportional to the dispute or appropriate here. *See Network Appliance, Inc. v. Bluearc Corp.*, No. C 03–5665 MHP, 2005 WL 1513099, at *2-*4 (N.D. Cal. Jun. 27, 2005) (denying sanctions motion on "garden-variety discovery dispute" where plaintiff's complaints about defendant's production failed to meet Rule 37's "high standard").

Skillz does not even attempt to meet this District's requirements for issuing terminating sanctions. Terminating sanctions are evaluated under a five-factor test analyzing: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; (5) the availability of less drastic sanctions." *See Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (applying five-factor test and determining that expert testimony should not have been excluded as a sanction for counsel's failure to disclose damages evidence and for late-disclosing experts). Each of these factors require denial of this motion.

First, as to the first and second factors, this case continues to move towards expeditious resolution and off the Court's docket as AviaGames is working around the clock to meet Skillz's discovery demands in this limited period of re-opened discovery so that the trial date can remain in place. Second, Skillz faces no risk of prejudice. "Exclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side." *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 190 F.R.D. 644, 648 (N.D. Cal. 2000). AviaGames already agreed to Skillz's initial demand for three days of source code inspection and Skillz conceded it did not need access to the entire databases before the Motion was filed. Skillz will be able to review AviaGames' source code and make targeted requests for additional information from collateral sources as necessary to understand that code. Third, public policy weighs in favor of

allowing this case to be decided on its merits.  Finally, and notably, there are less drastic remedies available, *i.e.*, an order setting forth the permissible scope of source code review.

Skillz's sanctions motion is an extreme overreach and should be denied.

### IV.  THE PROPER RESOLUTION OF THIS DISCOVERY DISPUTE IS AVIAGAMES' PRE-FILING PROPOSAL.

Instead of terminating sanctions, the Court should order the parties to follow AviaGames' Saturday proposal for code review, specifically:

- Three days of code review, with the ability to request more if necessary;
- One computer pursuant to the Protective Order; and

This proposal strikes the right balance between allowing the limited additional discovery ordered by the Court, without granting Skillz access to additional sensitive trade secret information with no relevance to this action or alleged "bots," and which Skillz has conceded it does not need.

Indeed, AviaGames has good reason not to trust Skillz with its irrelevant sensitive corporate documents and information.  Not only are they fierce business competitors, but Skillz already has violated the protective order in this case at least once.  Skillz used documents and testimony it obtained during discovery in this case to support a motion to amend its complaint in a different case pending between AviaGames, Skillz, and another party (Big Run Studios, a third-party game developer that makes games that directly competes with AviaGames' games) before Judge Araceli Martinez-Olguin.  Skillz admits in that case that it used discovery ***from this patent case*** to craft claims of false advertising and unfair competition.  *See* Case No. 3:21-cv-04656-AMO, ECF. 197-3 at ¶ 116.  Indeed, Skillz uses quotes from AviaGames confidential documents (in a cherry-picked and misleading fashion) to bolster its baseless claims.  The Protective Order plainly prohibits use of confidential information produced in this case for anything other than this specific litigation: "A Receiving Party may use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection with this case ***only for prosecuting, defending, or attempting to settle this litigation***."  (ECF 58 at § 7.1) (emphasis added).

Furthermore, Skillz has repeatedly contested AviaGames' attempts to seal its source code and confidential information.  (*See, e.g.,* ECF 222.)  Skillz has taken the position that AviaGames'

information should be widely disseminated, which raises deep concern that it will, indeed, be widely provided with no regard to the Court's protective order or AviaGames' source code and trade secrets.

## V.  CONCLUSION

Skillz's Motion should be denied, and the Court should order Skillz to conduct its source code review as AviaGames proposed: three days of review under the terms of the Protective Order, with none of the newly requested data sources. Skillz failed to honor the meet and confer process in good faith. It instead rushed to the Court with a sanctions motion only one day after the parties began discussing its demands. Worse, it filed the Motion after AviaGames already agreed to its requested three days of source code inspection. Skillz's conduct should not be rewarded in any fashion, and certainly not with terminating sanctions in its favor.

DATED: September 6, 2023

**PERKINS COIE LLP**

By: */s/ Chao "Wendy" Wang*
<u></u>
Chao "Wendy" Wang, Bar No. 289325
WWang@perkinscoie.com
PERKINS COIE LLP
3150 Porter Drive
Palo Alto, California 94304-1212
Tel: 650.838.4300
Fax: 650.838.4350

Judith B. Jennison, Bar No. 165929
JJennison@perkinscoie.com
Steven S. Beale (Pro Hac Vice)
SBeale@perkinscoie.com
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: (203) 359-8000
Facsimile: (203) 359-9000

Matthew C. Bernstein, Bar No. 199240
MBernstein@perkinscoie.com
Joseph P. Reid, Bar No. 211082
JReid@perkinscoie.com
Miguel J. Bombach, Bar No. 274287
MBombach@perkinscoie.com
Abigail A. Gardner, Bar No. 334598
AGardner@perkinscoie.com
PERKINS COIE LLP
11452 El Camino Real, Suite 300
San Diego, CA 92130-2080
Telephone: (858) 720-5700
Facsimile: (858) 720-5799

*Attorneys for Defendant
AviaGames Inc.*