JENNIFER TAYLOR STEWART (SBN 298798)
jstewart@kslaw.com
**KING & SPALDING LLP**
50 California St., Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200
Facsimile: (415) 318-1300

CHRISTOPHER C. CAMPBELL (*Pro Hac Vice*)
ccampbell@kslaw.com
YUSHAN LUO (SBN 329770)
yluo@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Ave. NW Ste. 200
Washington, DC 20006
Telephone: (202) 737-0500
Facsimile: (202) 626-7411

MATTHEW DAVID WOOD (*Pro Hac Vice*)
mwood@kslaw.com
**KING & SPALDING LLP**
500 W 2nd St.
Austin, TX 78701
Telephone (512) 457-2000

LAZAR POL RAYNAL (*Pro Hac Vice*)
lraynal@kslaw.com
**KING & SPALDING LLP**
110 N Wacker Dr., Ste. 3800
Chicago, IL 60606
Telephone: (312) 995-6333
Facsimile: (312) 995-6330

BRITTON F. DAVIS *(Pro Hac Vice)*
bdavis@kslaw.com
ROY FALIK (*Pro Hac Vice*)
rfalik@kslaw.com
**KING & SPALDING LLP**
1401 Lawrence St. Ste 1900
Denver, CO 80202
Telephone: (720) 535-2300
Facsimile: (720) 535-2400

RAHUL SARKAR (*Pro Hac Vice*)
rsarkar@kslaw.com
**KING & SPALDING LLP**
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2100

*Attorneys for Plaintiff*
SKILLZ PLATFORM, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SKILLZ PLATFORM INC., <br><br> Plaintiff, <br><br> v. <br><br> AVIAGAMES INC., <br><br> Defendant. | Case No. 5:21-cv-02436-BLF <br><br> The Hon. Judge Beth Labson Freeman <br><br> **SKILLZ'S POSITION RE MOTION TO COMPEL DEFENDANT TO COMPLETE BOT INTERROGATORY RESPONSES AND DATA TABLES** <br><br> Date: September 26, 2023 <br> Time: 2:00 p.m. <br> Courtroom: 6 <br> Judge: Hon. Judge Susan van Keulen |

Judge Freeman ordered discovery reopened "on the issue of whether AviaGames uses bots in its Pocket7Games platform." Dkt. 247 at 2. Late-produced "instant messages … appear to suggest that Avia uses bots in its Pocket7Games platform and that [Avia's executives] were aware that Avia uses bots" when testifying otherwise. Dkt. 247 at 1. Judge Freeman concluded: "evidence that Avia uses bots might be relevant to direct infringement if, for example, Skillz can show that Avia' bots receive game data at a client in the United States. The use of bots might also be relevant to damages if, for example, Skillz can show that Avia used bots to increase its revenue." *Id.* at 3-4. Judge Freeman also ruled there is sufficient evidence for a jury to conclude Avia infringes Skillz's patent. Dkt. 263. Avia admits that these infringement issues are the same when Avia uses "bots." Rog 27 Resp. ("the result … is the same; it does not matter"). Avia's bot use, the money it derives, and its efforts to hide its misconduct, are therefore unquestionably relevant to this case.

As ordered by Judge Freeman, Skillz served three targeted bot interrogatories on Avia: (1) Avia's statements about bots, including who at Avia concealed its bot usage; (2) Avia's direct infringement, including how, where, and when Avia's bots operate; and (3) Avia's revenue, including how often Avia uses bots and how much money it makes from that bot use.

## I. Interrogatory No. 26 – development, use, and concealment of bots

**Avia's assertion that it has not concealed bot use is false.** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Dkt. 216-6. These "bots" take the place of a human opponent even during matches where real cash prizes are involved. Users pay an entry fee believing they are competing against live humans of similar skill and that the winner will receive a cash prize. But in the matches at issue here, a human user is actually playing against a "bot." If the "bot" wins, Avia keeps the money. Thus, Avia uses Skillz's patented technology to defraud it users and illicitly grow its profits. This is a "wanton and malicious pirate"—*willful* patent infringement. *Halo*, 579 U.S. at 98. Avia's "attempt[s] to conceal its misconduct" show willfulness. *Read*, 970 F.2d at 827.

Internal messages reveal Avia employees discussing ▮▮▮▮▮ and ▮▮▮▮▮ codenames for "robots" or "bots." AVIA_0061715 ("▮▮▮▮▮▮▮▮"); AVIA_0107837 ("▮▮▮▮▮▮▮▮▮▮"). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" AVIA_0092070.

*Id.* (emphasis added). Avia has lied about its bot usage in response to user complaints where Avia's users have caught Avia red-handed. For example:

AVIA_0111347 (emphasis added). Avia confirmed

"…" *Id.* That is concealing misconduct and willful patent infringement.

Avia regularly lied to customers, assuring them that they were always playing against real players, not bots. Dkt. 256-2 ¶ 127 ("all of your opponents are real players, not bots"); ¶ 128 ("please rest assured that you are playing against real people, not bots"); ¶ 129 (same).

Avia's executives also lied about bot use during their depositions in this case, *as Judge Freeman has already noted*. Dkt. 247 at 1. Avia's VP of Products, Mr. Leung, confirmed under oath there is no "circumstance in which a human player in a match might compete against the computer and not a human player." Dkt. 208-2 at 72:12-73:9. Avia's founder, CEO, and Rule 30(b)(6) designee, Ms. Chen, testified of cash games as follows: "I don't think we ever used bots." Dkt. 208-3 at 177:10-20; see also id. at 178:23-179:3, 180:6-13.

Avia even took steps to conceal its use of bots

AVIA_0111480 ("

1   ▮▮▮"); AVIA_0101879 ("▮▮▮▮▮▮▮▮▮").

2   Yet, in response to Interrogatory No. 26, Avia denies any concealment of bots, citing only one individual within the entire organization who has any knowledge of Avia's use of bots. This is yet another effort by Avia to continue to conceal the prevalence of its "bot" use. Avia should be ordered to answer Interrogatory No. 26 in full.

**Avia must identify the role or involvement of each individual.** Avia's responses include no objection to providing "a description of each person's role or involvement in the development, use, or concealment of Bots." Avia has failed to do so and should be compelled to answer in full.

II.   **Interrogatory No. 27 – how, where, and when bots operate**

**Avia must identify *where* "bots" are used.** Interrogatory No. 27 asks Avia to "Identify any Server, computer, or similar device (including, if applicable, human-controlled, end-user devices) on which each portion of code, file, table, database, and other software information [related to the use of Bots] is stored or executed." Avia did not object to providing this information in its response to the Interrogatory. Yet, Avia has failed altogether to provide this information.

*Where* Avia's source code runs is critical to the issues surrounding this re-opened discovery. Judge Freeman specifically noted in her order reopening discovery "evidence that Avia uses bots might be relevant to direct infringement *if, for example, Skillz can show that Avia' bots receive game data at a client in the United States*." Dkt. 247 at 3 (emphasis added). Despite the centrality of this issue (or perhaps because of it) Avia refuses to explain where the servers or computers that store or execute its code are located.

**Avia has failed to identify *how* and *when* "bots" are used.** Interrogatory No. 27 asks Avia to identify "any event or condition that would trigger the use of any Bot." Avia did not object to providing this information, but has failed to do so. In a letter sent after Avia's objections were due, Avia asserted for the first time that this request "is not directed to any issue in this case." There is hardly an issue more central to bot use than *how and when* Avia's bots are used.

Avia's story on this issue keeps changing. Avia first told Judge Freeman that there is only one type of "bot," and that it was only used in tutorials. Dkt. 242-4 at 9:11-14. Avia has now admitted this was false. ▮▮▮▮▮▮▮▮

1   █████████████████████████████████████████████ Dkt. 216-3 at 3:9-16. Again, Avia
2   has now admitted this was false.
3       Avia's Interrogatory responses now admit that Avia uses ████████
4   ████████████████████████████████████████████████████████
5   ████████████████████████████████████████████████████████
6   ████████████████████████████████████████████████████████
7   ████████████████████████████████████████████████████████
8   ████████████████████████████████████████████████████████
9   █████████████████████████████████

10      Skillz is entitled to understand *how and when* Avia's source code picks between various
11  bots. This issue goes to the heart of Avia's use of bots, and Avia should be ordered to produce this
12  critical information that goes to the heart of the issue of infringement.

13      **III.    Interrogatory No. 28 – outcomes and revenue from bot use**

14      **Avia has failed to produce and identify revenue related to bot use**. In the order to re-
15  open discovery, Judge Freeman stated that "[t]he use of bots might also be relevant to damages if,
16  for example, Skillz can show that Avia used bots to increase its revenue." Dkt. 247 at 3:28-4:2.
17  Skillz's Interrogatory No. 28 makes this inquiry, asking Avia to describe "any revenues relating
18  to the use of Bots in the Accused Products … [including] all categories, sources, or allocations in
19  Your financial documents … under which such revenue is recorded." Despite this, Avia has
20  refused to provide information about the revenue obtained from its use of "bots," again arguing
21  that it is irrelevant.

22      Avia demands that Skillz explain how Avia's revenue is related to its damages expert report
23  before it will provide discovery. This argument is non-sensical, contrary to how discovery works,
24  and found nowhere in Judge Freeman's order reopening discovery. Of course Avia's bot revenue
25  is relevant to damages. Avia has information about "████████████████████████"
26  AVIA_0112859. It must produce it.

27      Skillz's damages expert, Mr. Bergman, factored in "user acquisition costs" for Avia's users
28  in calculating a reasonable royalty. When Avia's "users" playing matches are in fact bots, then the

user acquisition cost for those "users"/bots will be substantially lower, if not zero. Mr. Bergman also considered that the primary benefit of the Patents-in-Suit is adding an element of "fairness" to Avia's Pocket7Games platform. However, as shown above, bots are anything but fair. How often they are used and how much revenue they contribute to Avia (by stealing from its users) is unquestionably relevant to Mr. Bergman's assumptions about Pocket7Games' fairness.

### IV. Data Tables

**Avia must make data tables available or else not rely on them**. The parties have already argued about the relevance of the data tables before Judge Freeman. Avia opposed making all data tables available at the beginning of Skillz's source code review. It argued that "Skillz faces no risk of prejudice" by not producing them on the first day because "Skillz will be able to review Avia' source code and make targeted requests for additional information from collateral sources as necessary to understand that code." Dkt. 249 at 5. Relying on this representation from Avia, Judge Freeman ordered the code produced without "collateral documents" including data tables. Dkt. 251 at 3. Avia, on the same day the Judge Freeman issued her order, reneged on the very representation Avia made to the Court about being receptive to "targeted requests for additional information from collateral sources as necessary to understand that code".

Ironically, Avia now relies on these same data tables to explain how the code operates. For example, Avia asserts that ███████████████████████████████████████████████████████████████ Ex. A at 25. Without access to the table where these values are stored ███████ Skillz cannot verify or challenge Avia's contention that ███ ██████████████████████████

Avia should be ordered to produce all of the data tables that are called by its source code related to bots, including: ██████████████████████████████████████████████████████ ███████████████████████████████████████ These data tables appear to ██ ██████████████████████ If the Court does not order Avia to produce the target requests for data tables, Skillz will move the Court to preclude Avia from relying on the data tables for any purpose at trial.

Dated: September 26, 2023

Respectfully submitted,

**KING & SPALDING LLP**

/s/ *Christopher C. Campbell*
Christopher C. Campbell

*Attorney for Plaintiff*
SKILLZ PLATFORM, INC.