**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| SKILLZ PLATFORM INC., <br>                 Plaintiff, <br><br>     v. <br><br> AVIAGAMES INC., <br>                 Defendant. | Case No.  21-cv-02436-BLF <br><br> **ORDER REGARDING SUMMARY JUDGMENT** <br><br> [Re:  ECF Nos. 163, 166] |

Plaintiff Skillz Platform Inc. ("Skillz") alleges that Defendant AviaGames Inc. ("AviaGames") infringes U.S. Patent No. 9,649,564 (the "'564 Patent") through AviaGames' mobile gaming platform.  Before the Court are the parties' respective motions for summary judgment.  Skillz seeks summary judgment in its favor on two of AviaGames' affirmative defenses:  inequitable conduct and invalidity with respect to three prior art references.  ECF No. 166 ("Skillz Mot.").  AviaGames seeks summary judgment that its products do not infringe the '564 Patent on two independent bases and that the '564 Patent is invalid for lack of a written description regarding a particular claim element.  ECF No. 163 ("AviaGames Mot.").  After careful consideration, Skillz's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART and AviaGames' Motion for Summary Judgment is DENIED.

## I.   BACKGROUND

Skillz is a Delaware corporation with its principal place of business in Oregon.  *See* Amended Complaint, ECF No. 154 ¶ 12.  Skillz maintains a mobile gaming platform that enables third-party game developers to make games available on the platform through a Software Development Kit ("SDK").  *See id.* ¶¶ 2, 12, 22–27, 32–44.  Skillz owns the '564 Patent.  *See id.* ¶ 57.  AviaGames is a Delaware corporation with its principal place of business in California.  *See*

United States District Court
Northern District of California

*id.* ¶ 13.  Skillz alleges that AviaGames maintains a competing mobile gaming platform—

Pocket7Games—which AviaGames developed using Skillz's intellectual property that it gleaned

while developing games for Skillz's platform.  *See id.* ¶¶ 45–53.

The '564 Patent is entitled "Peer-to-Peer Wagering Platform."  It was filed on December

21, 2015 and granted on May 16, 2017, although it belongs to a long line of continuation and

continuation-in-part applications leading back to an application filed on August 8, 2012.  *See* '564

Patent, at [45], [54], and [63].

There are three independent claims in the '564 Patent:  claims 1, 11, and 18.  Claim 1 of

the '564 Patent provides the following:

> 1. A method comprising:
>
> receiving, at a client including an executable game instance, a stream of pseudo random number seeds characterized by a unique match identifier for an online digital gaming competition, the client enrolled in the online competition;
>
> receiving, at the client and from a game server, game data for executing the game instance, the game instance requiring one or more random numbers to complete execution of the game instance;
>
> generating, using the stream of pseudo-random number seeds, a plurality of pseudo-random numbers; and
>
> executing the game instance by the client and using the plurality of pseudo-random numbers to provide the online competition to a player such that a beginning of gameplay experience is common between the game instance and a second game instance executing on a second client enrolled in the online digital gaming competition;
>
> wherein at least one of receiving, generating, and executing is implemented by at least one data processor forming part of at least one computing system.

'564 Patent, 16:9–30.  Claim 11 of the '564 Patent is substantially the same as claim 1, but it

claims a "non-transitory computer program product storing instructions" (i.e., a *Beauregard*

claim).  And claim 18 of the '564 Patent is substantially the same as claim 1, but it is a system

claim.

While the '564 Patent specification generally relates to a "peer-to-peer wagering platform"

that provides targeted advertising, the independent claims pertain to generating pseudo random

United States District Court
Northern District of California

numbers for mobile gaming tournaments to ensure randomized gameplay that is consistent across gaming sessions.  The '564 Patent discloses a mobile gaming platform consisting of servers providing game content to client devices.  *See* '564 Patent, 2:4–9.  The platform allows for gaming tournaments, consisting of one or more matches, where users compete against each other in different instances of the same game and can win prizes based on their performance.  *See id.*, 7:61–8:33; 9:16–33; 10:14–61.  Games can be single-player games like Tetris, where a player competes with other players by performing well in their own instance of the game and obtaining a high score or performing well in other metrics.  *See id.*, 14:61–15:2; 10:26–35.

Such games can require an element of randomness—for example, a Tetris user does not see the same initial series of blocks every game.  *See id.*, 14:61–63.  The '564 Patent discloses that random elements in games are "typically" provided using a "stream of pseudo-random numbers."  *Id.*, 14:49–53.  Pseudo random numbers are generated by a pseudo random number generator function, which outputs a series of numbers in an approximately random distribution.  Given a particular input or "seed" value, a pseudo random number generator function provides the same series of approximately random numbers.

Random gameplay comes at a cost in a competitive tournament setting—if two competing users receive different game instances, then the competition may not be fair.  *See id.*, 14:55; 14:63–67.  The alleged invention of the '564 Patent delivers "a game of skill that still has random elements."  *Id.*, 14:57–60; 5:33–35.  The '564 Patent discloses that each mobile gaming tournament or match has a "unique tournament ID" number or "unique match identifier."  *See id.*, 13:24–25; 16:10–14; 16:61–65; 18:6–10.  The independent claims of the '564 Patent recite "a stream of pseudo random number seeds characterized by a unique match identifier," which are then used to generate the pseudo random numbers.  *See id.*, 16:10–14; 16:19–20; 16:61–65; 17:34; 18:6–10; 18:15–16.  This ensures that "a beginning of gameplay experience is common between the game instance and a second game instance executing on a second client enrolled in the online digital gaming competition."  *See id.*, 18:17–23.

On June 21, 2022, the Court issued a claim construction order.  ECF No. 117.  The Court construed the term "generating, using the stream of pseudo-random number seeds, a plurality of

1  pseudo-random numbers" as "generating, at the client and using the stream of pseudo-random

2  number seeds, a plurality of pseudo-random numbers."  *Id.* at 28; '564 Patent, 16:9–30; 16:57–

3  17:11; 18:1–23.  The Court also construed the term "a stream of pseudo random number seeds

4  characterized by a unique match identifier" as "a stream of pseudo random number seeds wherein

5  a unique match identifier is used for generating the stream of pseudo random number seeds."  ECF

6  No. 117 at 28; '564 Patent, 16:9–30; 16:57–17:11; 18:1–23.

## II.    LEGAL STANDARD

8          Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

9  judgment is appropriate if the evidence and all reasonable inferences in the light most favorable to

10  the nonmoving party "show that there is no genuine issue as to any material fact and that the

11  moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

12  322 (1986).  The current version of Rule 56 authorizes a court to grant "partial summary

13  judgment" to dispose of less than the entire case and even just portions of a claim or defense.  *See*

14  Fed. R. Civ. P. advisory committee's note, 2010 amendments; *Ochoa v. McDonald's Corp.*, 133

15  F.Supp.3d 1228, 1232 (N.D. Cal. 2015).

16          The moving party "bears the burden of showing there is no material factual dispute," *Hill*

17  *v. R+L Carriers, Inc.*, 690 F.Supp.2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court

18  the portions of the materials on file that it believes demonstrate the absence of any genuine issue

19  of material fact."  *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

20  Cir. 1987).  In judging evidence at the summary judgment stage, the Court "does not assess

21  credibility or weigh the evidence, but simply determines whether there is a genuine factual issue

22  for trial."  *House v. Bell*, 547 U.S. 518, 559–60 (2006).  A fact is "material" if it "might affect the

23  outcome of the suit under the governing law," and a dispute as to a material fact is "genuine" if

24  there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party.

25  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

26          Where the moving party will have the burden of proof on an issue at trial, it must

27  affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

28  party.  *Celotex*, 477 U.S. at 325; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

United States District Court
Northern District of California

1    2007).  By contrast, where the moving party does not have the burden of proof on an issue at trial,

2    it "must either produce evidence negating an essential element of the nonmoving party's claim or

3    defense or show that the nonmoving party does not have enough evidence of an essential element

4    to carry its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co. v. Fritz*

5    *Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

6        Once the moving party meets its initial burden, the nonmoving party must set forth, by

7    affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue

8    for trial."  *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks omitted).  If the nonmoving

9    party's "evidence is merely colorable, or is not significantly probative, summary judgment may be

10   granted."  *Id.* at 249–50 (internal citations omitted).  Mere conclusory, speculative testimony in

11   affidavits and moving papers is also insufficient to raise genuine issues of fact and defeat

12   summary judgment.  *See Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

13   For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a

14   reasonable trier of fact to find for the [non-moving party]."  *Corales v. Bennett*, 567 F.3d 554, 562

15   (9th Cir. 2009).

16   **III.    SKILLZ'S MOTION**

17       Skillz seeks summary judgment in its favor on AviaGames' affirmative defense of

18   inequitable conduct.  Skillz Mot. at 5.  Skillz also seeks summary judgment that the '564 Patent is

19   not invalid based on three single prior art references:  U.S. Patent Application No. 2010/0022307

20   ("Steuer"); U.S Patent No. 8,152,643 ("Halliburton"); and U.S. Patent No. 8,840,462 ("Patel").

21   *Id.* at 14.

22       **A.    Inequitable Conduct**

23       In its amended answer, AviaGames raises an inequitable conduct defense, theorizing that

24   the four named inventors of the '564 Patent engaged in inequitable conduct by failing to name two

25   individuals—Tim Fredette and Andrea Shubert (n/k/a Thandrie Davis)—as inventors of the '564

26   Patent.  ECF No. 156 ("Amended Answer") ¶¶ 82–83.  "Inequitable conduct is an equitable

27   defense to patent infringement that, if proved, bars enforcement of a patent."  *Therasense, Inc. v.*

28   *Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc).  To prevail on the

United States District Court
Northern District of California

defense of inequitable conduct, the burden is on the accused infringer to prove—by clear and convincing evidence—two separate requirements:  (1) "the applicant misrepresented or omitted material information" (2) "with the specific intent to deceive the PTO."  *Id.* at 1287.  "[T]o meet the clear and convincing evidence standard, the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'"  *Id.* at 1290 (quoting *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)).  "Inequitable conduct is equitable in nature, with no right to a jury, and the trial court has the obligation to resolve the underlying facts of materiality and intent."  *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1333 (Fed. Cir. 2011).

### i.   Relevant Facts

The named inventors of the '564 Patent are Andrew Paradise, Casey Chafkin, Jason Petralia, and Ahmed Abdallah.  '564 Patent, at [72].  AviaGames alleges that when the named inventors prosecuted the '564 Patent, they intentionally did not name Fredette and Shubert as inventors.  Amended Answer ¶¶ 82–83.  It is undisputed that Fredette and Shubert worked for Skillz around the time it filed the patents over which the '564 Patent claims priority.  *Id.* ¶¶ 84–87; ECF No. 164-6; ECF No. 164-8.

The dispute over inventorship turns on two emails.  The first, sent on October 12, 2012, is Shubert's response to questions from Chafkin about ███████████████████████████ ████████████████████████  *See* ECF No. 164-5 at 2.  Chafkin asked, "████████████ ███████████████████████████████████████████████████████████ ███████████████████████████" *Id.*  Shubert responded:

███████████████████████████████████████
███████████████████████████████████ ██████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████

*Id.*  The second email, sent by Fredette on October 17, 2012, stated, "I put together the engineering team's detailed version of a limited set of features around how players can enter and exit various tournament types, and how these tournament types conclude or are canceled.  . . . There is

6

1   definitely engineering work to do that I hadn't thought of."  ECF No. 164-4 at 2.  In relevant part,

2   the outline that followed Fredette's preamble stated:



7   *Id.* at 4.  Shubert responded, "This is a great writeup."  *Id.* at 2.

8         In their depositions, Paradise, Chafkin, and Petralia testified that the four named inventors

9   collaborated to come up with the idea for the '564 Patent but did not identify Fredette or Shubert

10   as inventors.  Although Paradise testified that "I think all four of us would agree that I was the

11   primary inventor [of the '564 Patent]," ECF No. 169-2 at 125:24–25, he acknowledged that he

12   "collaborated [with the other three inventors] on taking concept and turning it into reality", ECF

13   No. 166-8 at 55:23–24.  Paradise further testified that Skillz had a working product using the idea

14   from the '564 Patent prior to October 1, 2012.  *Id.* at 129:24–130:4.  Chafkin testified that he

15   "remember[s] collaborating with the people listed here on the technology" but he did not "recall a

16   single meeting and point of time where we said, aha, and invented this."  ECF No. 169-3 at 76:1–

17   77:19.  Finally, Petralia testified that the idea behind the '564 Patent was conceived of through the

18   collaboration of the named inventors and that "I'm unaware of anybody being left out [of the

19   named inventors of the '564 Patent]."  ECF No. 166-9 at 53:13–54:10.

20         **ii.**    **Which Legal Standard Applies**

21         Skillz argues that AviaGames has failed to meet either the specific intent or the materiality

22   requirement because AviaGames cannot establish by clear and convincing evidence that Fredette

23   and Schubert were inventors of the '564 Patent.  Skillz Mot. at 7–14.  AviaGames first responds

24   that the Court should apply the summary judgment standard, not the clear and convincing burden

25   of proof that AviaGames must meet at trial.  ECF No. 170 ("AviaGames Opp.") at 9.

26         Although AviaGames is correct that the Court must apply the summary judgment standard,

27   doing so requires consideration of the clear and convincing evidence standard.  "When a party has

28   failed to introduce evidence sufficient to establish the existence of an essential element of that

United States District Court
Northern District of California

1    party's case in accordance with the applicable standard of proof, summary judgment is properly

2    granted against that party." *Optium Corp. v. Emcore Corp.*, 603 F.3d 1313, 1319–20 (Fed. Cir.

3    2010). The applicable standard of proof is clear and convincing evidence. "Clear and convincing

4    evidence must support 'at least a threshold level of each element.'" *Id.* at 1320 (quoting *Star*, 537

5    F.3d at 1365); *see also id.* at 1322 (affirming summary judgment in favor of a patent holder on an

6    inequitable conduct defense where the nonmovant "offered no evidence that could succeed in

7    proving deceptive intent by clear and convincing evidence"); *see also Illumina, Inc. v. BGI*

8    *Genomics Co.*, 559 F.Supp.3d 1072, 1089–92 (N.D. Cal. 2021) (granting summary judgment in

9    favor of a patent holder on an inequitable conduct defense because "drawing all reasonable

10    inferences in [the accused infringer's] favor, I cannot reasonably conclude that the single most

11    reasonable inference for the failure to disclose [a prior art] reference to the PTO was to

12    intentionally deceive the PTO."). Thus, after drawing all reasonable inferences in AviaGames'

13    favor, if the Court finds that there is no dispute of material fact and AviaGames has failed

14    establish the existence of either essential element of an inequitable conduct defense in accordance

15    with the clear and convincing evidence standard, the Court may grant Skillz's motion for summary

16    judgment.

17           **iii.**    **Waiver**

18          In its amended answer, AviaGames pled that the identification of inventors of the '564

19    Patent omitted Fredette and Shubert as inventors to avoid the risk that Skillz might not have

20    retained ownership and control of the '564 Patent. Amended Answer ¶ 117. However,

21    AviaGames' opposition argues that the named inventors of the '564 Patent omitted Fredette and

22    Shubert because Skillz, as a new startup, could not reveal to investors that inventors of its

23    foundational IP left the company. AviaGames Opp. at 12. Skillz argues that AviaGames'

24    "investor" theory was never pled or otherwise disclosed, and thus may not be raised for the first

25    time in an opposition to summary judgment. ECF No. 192 ("Skillz Reply") at 3–4.

26          The Court agrees with Skillz. Inequitable conduct is a defense that, under Rule 9(b), must

27    be pled with particularity. "[C]ourts have declined to allow a defendant to assert a new theory of

28    inequitable conduct if the answer and counterclaims asserted a different theory of inequitable

1   conduct than that relied upon in summary judgment proceedings." *Cal. Inst. of Tech. v. Broadcom*

2   *Ltd.*, No. CV 16-3714-GW (AGRX), 2019 WL 8807748, at *3 (C.D. Cal. July 1, 2019), *aff'd*, 25

3   F.4th 976 (Fed. Cir. 2022).  As such, the Court deems AviaGames' unpled "investor" theory

4   waived and will not address that theory on its merits.  *See id.* at *4 (deeming unpled inequitable

5   conduct theories waived).

### iv.   Materiality

7   "[A]s a general matter, the materiality required to establish inequitable conduct is but-for

8   materiality." *Therasense*, 649 F.3d at 1291.  "[A]n allegation of inequitable conduct before the

9   PTO requires proof that the patentee withheld or misrepresented information that, in the absence

10   of the withholding or misrepresentation, would have prevented a patent claim from issuing." *Ohio*

11   *Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1345 (Fed. Cir. 2013).

12   AviaGames argues that the identity of an inventor is material as a matter of law.  *See*

13   AviaGames Opp. at 13–14.  Skillz does not respond to this argument, and instead argues that any

14   omission is not material to the issuance of the '564 Patent because Fredette and Shubert were not

15   actually inventors.  Skillz Mot. at 13–14.

16   The Court agrees with AviaGames that inventorship is material.  The Federal Circuit has

17   held that "[a]s a critical requirement for obtaining a patent, inventorship is material." *PerSeptive*

18   *Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321 (Fed. Cir. 2000); *see also*

19   *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 828 (Fed. Cir. 2010)

20   ("We have held that when named inventors deliberately conceal a true inventor's involvement, the

21   applicants have committed inequitable conduct and the patent is unenforceable even as to an

22   innocent co-inventor.").  Although some courts have found that, under certain circumstances,

23   incorrect inventorship information is not material, those cases have stopped short of finding as a

24   matter of law that inventorship is not material.  *See, e.g.*, *Indiana Forge, LLC v. Miller Veneers,*

25   *Inc.*, 736 F.Supp.2d 1201, 1208 (S.D. Ind. 2010) (finding that "defendants did not indicate any

26   reason why the patents might not have issued had the patent applicants identified Mr. Koss as a

27   co-inventor, and as such they feel [sic] to meet the requisite showing of materiality").

28   Skillz argues only that inventorship is not material to this case because Fredette and

1    Shubert are not actually inventors.  But Skillz fails to point the Court to any authority that

2    undermines the conclusions of *PerSpective* and *Advanced Magnetic Closures* that errors of

3    inventorship could lead to the rejection of a patent.  *See ChriMar Sys. Inc. v. Cisco Sys., Inc.*, No.

4    13-CV-01300-JSW, 2019 WL 8333452, at *11 (N.D. Cal. Dec. 17, 2019) (finding that defendant

5    failed to point to any authority that undermines the legal conclusion that inventorship is material).

6    However, even if AviaGames presented sufficient evidence to establish the element of materiality

7    with respect to the omission of Fredette and Shubert from the '564 Patent's list of inventors, or

8    even a genuine dispute of material fact with respect to that element, AviaGames has failed to

9    produce any specific facts that would show a genuine issue for trial on specific intent to defraud.

10    **v.    Specific Intent to Defraud**

11    "In a case involving nondisclosure of information, clear and convincing evidence must

12    show that the applicant *made a deliberate decision* to withhold a *known* material [fact]."

13    *Therasense*, 649 F.3d at 1290 (quoting *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed. Cir.

14    1995)).  "Because direct evidence of deceptive intent is rare, a district court may infer intent from

15    indirect and circumstantial evidence.  However, to meet the clear and convincing evidence

16    standard, the specific intent to deceive must be 'the single most reasonable inference able to be

17    drawn from the evidence.'"  *Id.* (citation omitted) (quoting *Star*, 537 F.3d at 1366).

18    Skillz argues that AviaGames has failed to show by clear and convincing evidence that

19    anyone at Skillz had specific intent to deceive the PTO because there is no evidence that anyone

20    considered Fredette and Shubert to be inventors and, even if Fredette and Shubert were considered

21    inventors, they were contractually obligated to assign any inventorship rights to Skillz.  Skillz

22    Mot. at 7–13.  AviaGames responds that disputes of material fact precluding summary judgment

23    include:  whether Fredette and Shubert are inventors and why Paradise and Chafkin omitted

24    Fredette and Shubert.  AviaGames Opp. at 10–11.  AviaGames further argues that Fredette's and

25    Shubert's contractual assignment of rights bear on ownership, rather than inventorship, *id.* at 12–

26    13, and that the circumstantial evidence in this case shows that the named inventors had intent to

27    deceive the PTO, *id.* at 14–16.

28    As support for its position, AviaGames primarily relies on the two October 2012 emails

from Shubert and Fredette.  AviaGames also characterizes the deposition testimony of Paradise, Chafkin, and Petralia as inconsistent because Paradise characterized himself as the primary inventor of the '564 Patent while Chafkin and Petralia testified that the four inventors collaborated on the idea.[1]  AviaGames Opp. at 3–4.  Finally, as evidence that Shubert thought of themself as an inventor, AviaGames points to a Tweet in which Shubert states, "@skillz closes a $15 MM funding round. A long time ago, I created their rating system for fair matchups."  ECF No. 170-6.

AviaGames' evidence—in particular, the October emails—might raise a dispute of fact over whether Fredette and Shubert are inventors because they discuss ideas consistent with the '564 Patent.  In order to be considered a "co-inventor," a person "must generally contribute to the conception of the invention."  *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998).  Skillz responds that the Court need not reach the inventorship question.  Skillz Reply at 6.  The Court agrees.  The question is not whether Fredette and Shubert are true inventors, but whether the other four inventors knew that Fredette and Shubert were inventors and deliberately withheld this information from the PTO.  *Therasense*, 649 F.3d at 1290.

Assuming *arguendo* that Fredette and Shubert are true inventors, AviaGames has failed to present sufficient evidence to show a genuine issue for trial.  Drawing all reasonable inferences in AviaGames' favor, none of the evidence discussed above creates a genuine dispute as to whether any of the named inventors understood Fredette and Shubert to be inventors of the '564 Patent *and* that the named inventors deliberately withheld this information from the PTO.  For example, the fact that Paradise and Chafkin were recipients of the emails in which Fredette and Shubert discussed concepts similar to the '564 Patent shows, at best, knowledge that Fredette and Shubert might be inventors.  But knowledge alone is does not create a genuine issue as to whether non-disclosure was based on a deliberate decision.  *See 1st Media, LLC v. Elec. Arts, Inc.*, 694 F.3d 1367, 1375 (Fed. Cir. 2012).  Second, even if Paradise was inconsistent about the contributions of the other three inventors to the '564 Patent, he did not acknowledge that Fredette or Shubert contributed to the '564 Patent.  In fact, deposition testimony from Paradise and Petralia indicates

---

[1] However, consistent with Chafkin and Petralia, Paradise acknowledged that the '564 Patent was a collaborative effort.  ECF No. 166-8 at 55:10–56:5.

United States District Court
Northern District of California

that Fredette and Shubert did not contribute.  Paradise testified that Skillz had a working invention by October 1, 2012—before Fredette and Shubert began working for Skillz.  ECF No. 166-8 at 6.  Paradise also testified that Shubert did not contribute anything to the '564 Patent.  *Id.* at 129:8–13.  Petralia testified that "I'm unaware of anybody being left out [of the named inventors of the '564 Patent]."  ECF No. 166-9 at 129:21–130:4.  Finally, Shubert's Tweet reasonably indicates that they invented a rating system, but it does not indicate that Shubert considered himself an inventor of the '564 Patent.  In fact, there is no evidence in the record that Fredette or Shubert told anyone at Skillz that they should be named as inventors of the '564 Patent.  *See Mformation Techs., Inc. v. Rsch. in Motion Ltd.*, 830 F.Supp.2d 815, 829 (N.D. Cal. 2011) (granting summary judgment to the patent holder on an inequitable conduct claim in part because an alleged inventor never indicated that he believed he should be named as an inventor).

AviaGames' only pled theory supporting its position that the four named inventors had specific intent to deceive the PTO is its speculation that Skillz was incentivized to exclude Fredette and Shubert as inventors in order to maintain ownership of the '564 Patent.  This theory is based on the assertion that Fredette and Shubert were not under obligation to assign their rights to Skillz.  But AviaGames offers no evidence to support this theory, and the record directly contradicts AviaGames' assertion.  Fredette and Shubert signed employment contracts with Skillz that assigned their interests in any inventions conceived of in the course of their employment to Skillz.  *See* ECF Nos. 164-6, 164-7.  AviaGames' unpled investor theory of intent to deceive and the evidence supporting it are not material to the pled ownership theory and cannot stand to defeat summary judgment.

After considering the evidence and drawing all reasonable inferences in AviaGames' favor, the Court finds that AviaGames has failed to point to specific evidence raising a genuine issue for trial.  Moreover, the record demonstrates that there are multiple reasonable inferences that may be drawn about the four named inventors' intent in omitting Fredette and Shubert as inventors.  Because specific intent to deceive is not "the single most reasonable inference able to be drawn from the evidence," *Therasense*, 649 F.3d at 1290, the Court finds that no reasonable trier of fact could return a verdict in AviaGames' favor and GRANTS Skillz's motion for summary judgment

United States District Court
Northern District of California

1    on the inequitable conduct defense.

2        **B.    Invalidity Based on Prior Art References**

3        Skillz seeks summary judgment that the '564 Patent is not invalid based on three single

4    prior art references:  Steuer, Halliburton, and Patel.  Skillz Mot. at 14.  AviaGames' expert, Dr.

5    Gregory Welch, opined that Steuer, Halliburton, and Patel anticipate and render obvious the

6    asserted claims of the '564 Patent.  ECF No. 165-4 ("Welch Report") at 3.

7        Invalidity is an affirmative defense.  At trial, the party asserting the defense must establish

8    invalidity by clear and convincing evidence.  *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*,

9    411 F.Supp.3d 975, 991 (N.D. Cal. 2019).  A patent may be invalid if a prior art reference

10   anticipates or renders obvious the patent.  A prior art reference anticipates a patent "[i]f the

11   claimed invention was 'described in a printed publication' either before the date of invention, 35

12   U.S.C. § 102(a), or more than one year before the U.S. patent application was filed, 35 U.S.C.

13   § 102(b)."  *Finisar Corp. v. DirecTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008).  A prior art

14   reference renders obvious a patent "if the differences between the claimed invention and the prior

15   art are such that the claimed invention as a whole would have been obvious before the effective

16   filing date of the claimed invention to a person having ordinary skill in the art to which the

17   claimed invention pertains."  35 U.S.C.A. § 103.

18       **i.    Steuer Reference**

19       Steuer is a U.S. Patent Application Publication entitled "Skill-Based Electronic Gaming

20   Tournament Play."  U.S. Patent Application No. 2010/0022307 ("Steuer"), at [54].  Steuer was

21   published on January 28, 2010.  *Id.*, at [43].  Steuer discloses, *inter alia*, "a skill-based electronic

22   game operably deployed on a plurality of client devices, the skill-based electronic game having at

23   least one of its starting conditions, its behavior or its appearance determined by one or more

24   pseudo-random equations."  *Id.*, at [57].  Steuer qualifies as a prior art under 35 U.S.C. § 102.

25   During prosecution of the '564 Patent, the examiner found that Steuer "fail[s] to disclose, suggest

26   or render obvious, in combination with the other claimed limitations, that the stream of pseudo

27   random number seeds are *characterized by* a unique match identifier for an online digital gaming

28   competition."  January 18, 2017 Notice of Allowance, ECF No. 75-6 at 7–8.

a.   Anticipation

Skillz argues that Steuer does not teach the "characterized by" limitation of the '564 Patent. Skillz Mot. at 15. Skillz further argues that Dr. Welch's opinion does not identify any disclosure in Steuer that teaches how a tournament ID is used to generate a seed. *Id.* at 16. AviaGames responds that Dr. Welch's report raises a genuine dispute of material fact because Dr. Welch opines that "Steuer discloses looking up a previously generated seed for a tournament." AviaGames Opp. at 19.

The Court agrees with Skillz. Steuer teaches using a tournament database, which includes a tournament ID, and a seed for playing the tournament that is common among participants in the tournament. Steuer ¶¶ 25–27, 64. Steuer does not disclose a relationship between a tournament ID and the seed, let alone that the tournament ID "is used to generate" the seed. "To anticipate under either section 102(a) or section 102(b), a single prior art reference must disclose every limitation of the claimed invention." *Network Appliance, Inc. v. Bluearc Corp.*, 374 F.Supp.2d 825, 832 (N.D. Cal. 2005), *aff'd*, 205 F. App'x 835 (Fed. Cir. 2006). Because "characterized by" is an essential limitation of the '564 Patent and Steuer does not disclose any limitation consistent with this Court's claim construction, Steuer fails to disclose every limitation of the claimed invention.

AviaGames has failed to point to sufficient facts to create a genuine dispute for trial regarding Steuer. AviaGames relies on the expert report and deposition testimony of Dr. Welch. Dr. Welch concludes that "[w]hen a user selects a tournament, the system retrieves the appropriate random seed for that tournament, and provides it to the user." Welch Report ¶ 256. In support of his analysis, Dr. Welch points to Figure 6 of Steuer, which shows that when a player "selects a specific tournament (red), then a seed for that particular tournament is retrieved (green)." *Id.* ¶ 252. At his deposition, Dr. Welch further clarified,

> I do know that Steuer teaches when a user joins it gets them a seed for that tournament. So if that is happening there has to be something that is identifying that tournament specifically. And so whatever that is, I think a person of ordinary skill would see that as a tournament ID, the thing that is identifying that tournament.

ECF No. 165-5 ("Welch Deposition") at 230:19–25. However, in both his deposition and his

expert report, Dr. Welch did not point to anything in Steuer that discloses this limitation. "Conclusory expert assertions cannot raise triable issues of material fact." *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1359 (Fed. Cir. 2019) (quoting *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013)). Drawing all reasonable inferences in favor of AviaGames, Steuer discloses the use of a tournament ID and the use of a seed common across players that is retrieved when a player joins a tournament. But Steuer fails to disclose every limitation of the '564 Patent because Steuer does *not* disclose that the seed is "characterized by" the tournament ID. As such, the Court GRANTS summary judgment to Skillz on invalidity as it pertains to anticipation by Steuer.

### b. Obviousness

Skillz argues that Dr. Welch failed to provide a reasoned analysis sufficient to support an obviousness determination regarding Steuer. Skillz Mot. at 16. AviaGames responds that Skillz merely disagrees with Dr. Welch's interpretation of *Numerical Recipes in C* and that Dr. Welch's opinion creates a dispute of material fact because Steuer teaches that any seed value can be used and thus, using a unique match identifier as a seed is an obvious design choice. AviaGames Opp. at 24–25.

The Court agrees with Skillz that there is insufficient evidence in the record to create a dispute of material fact on obviousness. "Obviousness is a question of law based on multiple underlying factual determinations, including 'whether a [person of ordinary skill in the art] would have been motivated to combine the prior art to achieve the claimed invention and whether there would have been a reasonable expectation of success in doing so.'" *TQ Delta, LLC v. CISCO Sys., Inc.*, 942 F.3d 1352, 1357 (Fed. Cir. 2019) (quoting *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333 (Fed. Cir. 2016)). As noted above, Steuer does not disclose the "characterized by" limitation of the '564 Patent. Thus, obviousness in this context requires that a POSITA would have been motivated to supply the "characterized by" limitation to Steuer to arrive at the '564 Patent. However, AviaGames fails to identify evidence that would create a dispute of material fact as to whether a POSITA would do so. AviaGames points to the fact that Steuer is agnostic as to the starting seed value and Dr. Welch's opinion that:

> [A] seed is just a number, and picking any number is an obvious design choice. It is recognized that "any initial 'seed' choice of [] is as good as any other: the sequence just takes off from that point." The choice of a single starting number bears no significance to the algorithm, or provide the point of the '564 Patent (like-seeds and competitive gameplay) any differently. In my opinion, choosing a particular number would have been obvious.

Welch Report ¶ 263 (quoting ECF No. 166-17 ("*Numerical Recipes in C*")). But Dr. Welch does not explain in his expert report or his deposition why the knowledge that "picking any number is an obvious design choice" would lead a POSITA to supply the "characterized by" limitation to Steuer. Conclusory expert testimony that "fail[s] to provide any meaningful explanation for why one of ordinary skill in the art would be motivated to [supply the missing limitation]" is not sufficient to support an obviousness determination. *TW Delta*, 942 F.3d at 1359 (quoting *InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1349 (Fed. Cir. 2014)). To the extent that Dr. Welch's opinion might be construed as based on common sense, it fails to create a dispute of material fact. Common sense "cannot be used as a wholesale substitute for reasoned analysis and evidentiary support, especially when dealing with a limitation missing from the prior art references specified." *Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016). As such, the Court GRANTS summary judgment to Skillz on invalidity as it pertains to obviousness rendered by Steuer.

### ii.    Halliburton Reference

Halliburton is a U.S. Patent entitled "Solitaire Game Played over the Internet with Features to Extend Play." U.S Patent No. 8,152,643 ("Halliburton"), at [54]. Halliburton was issued on April 10, 2012. *Id.*, at [45]. Halliburton discloses "a method for playing a computer-based solitaire game including the steps of retrieving an input from an internet server to a computer, playing and scoring the game according to the input." *Id.*, at [57]. Halliburton qualifies as a prior art under 35 U.S.C. § 102. During *inter partes* review, the PTAB found, "[That] each tournament in Halliburton has an identifier number does not support the conclusion that the 'tournament game identifier number[ ]' characterizes the stream of pseudo random number seeds or otherwise supports concluding that the 'tournament game identifier number[ ]' is a 'unique match number'

16

as recited."  ECF No. 166-16 ("Institution Decision") at 17 (second and third alterations in original).

#### a.   Anticipation

Skillz argues that Halliburton does not anticipate the '564 Patent because Halliburton does not disclose any connection between its tournament identifier and the generation of pseudo-random number seeds, and thus does not disclose the "characterized by" limitation.  Skillz Mot. at 17.  AviaGames responds that Dr. Welch's report creates a dispute of material fact with respect to Halliburton because Dr. Welch opines that Halliburton discloses a tournament identification number (which corresponds to the unique match identifier) and "seeds are provided after selecting a particular game."  AviaGames Opp. at 21 (quoting Welch Report ¶ 323).  To anticipate, "a single prior art reference must disclose every limitation of the claimed invention."  *Network Appliance*, 374 F.Supp.2d at 832.

The Court finds a dispute of material fact as to whether Halliburton discloses the "characterized by" limitation.  Contrary to Skillz's argument, Dr. Welch and AviaGames have adequately pointed to disclosures in Halliburton that appear to disclose the "characterized by" limitation.  For example, Halliburton discloses that:

> Field **122** instructs a prospective player to select one of the available tournaments; the selection is made by highlighting the line using the mouse pointer.  Upon selection of a game, the player moves the cursor to the play button **124** and depresses the selection button on the mouse.  *Upon activating the play button the program is instructed to contact the web server with information relating to the selected game. The web server then "provides" the cards by providing a seed number and other information relating to the features*, which are to be activated in the particular game, selected.

Halliburton, 7:37–46 (emphasis added); *see also* AviaGames Opp. at 21 (citing Halliburton, 7:37–46); Welch Report ¶ 332 (same).  Although this language does not precisely describe the relationship between a unique match identifier and a stream of pseudo-random number seeds, it is sufficient to create a dispute of material fact.  The Court must view this evidence in the light most favorable to AviaGames, the non-movant, and draw all reasonable inferences in AviaGames' favor.  Skillz's infringement theory is that Pocket7Games "uses a seed library to look up and

17

retrieve a pseudo-random number seed for a particular match."  ECF No. 173 ("Skillz Opp.") at 9.

Halliburton discloses that "information relating to the selected game," which presumably includes

the tournament identification number, is sent to the server, which sends back a seed number.

Based on this evidence, a reasonable finder of fact could conclude Halliburton discloses the

lookup function that Skillz maintains is consistent with the "characterized by" limitation.  Thus,

the Court DENIES summary judgment based on anticipation by Halliburton.

>                   b.   Obviousness

Assuming, for purposes of obviousness, that the "characterized by" limitation is missing

from Halliburton, the Court now examines whether a POSITA would have been motivated to

supply the missing limitation.  *See Arendi*, 832 F.3d at 1361.  The parties generally repeat the

same arguments that they made for Steuer.  Skillz notes that Dr. Welch repeats the same

obviousness analysis that he conducted for Steuer and argues that Dr. Welch failed to provide a

reasoned analysis sufficient to support an obviousness determination.  Skillz Mot. at 18.

AviaGames responds that Skillz merely disagrees with Dr. Welch's interpretation of *Numerical*

*Recipes in C* and that Dr. Welch's opinion creates a dispute of material fact because Halliburton

teaches that any seed value can be used and thus, using a unique match identifier as a seed is an

obvious design choice.  AviaGames Opp. at 24–25.

For the same reasons as discussed above with respect to Steuer, the Court agrees with

Skillz that there is insufficient evidence in the record to create a dispute of material fact on

obviousness.  AviaGames fails to point to evidence that would create a dispute of material fact as

to whether a POSITA would be motivated to supply the "characterized by" limitation to

Halliburton to arrive at the '564 Patent.  AviaGames points to the fact that Halliburton is agnostic

as to the starting seed value and Dr. Welch's opinion that "a seed is just a number, and picking any

number is an obvious design choice."  Welch Report ¶ 263 (quoting *Numerical Recipes in C*).  Dr.

Welch's obviousness analysis with respect to Halliburton is identical to his analysis with respect

to Steuer.  As such, it suffers from the same flaws—Dr. Welch does not explain in his expert

report or his deposition why the knowledge that "picking any number is an obvious design choice"

would lead a POSITA to supply the "characterized by" limitation to Halliburton.  Because Dr.

1   Welch's analysis of obviousness does not provide a meaningful explanation for why a POSITA

2   would supply the missing limitation, it is conclusory and insufficient to support an obviousness

3   determination.  *See TW Delta*, 942 F.3d at 1359.  As above, even if the Court were to construe Dr.

4   Welch's opinion as based on common sense, common sense is not an adequate substitute for

5   "reasoned analysis and evidentiary support, especially when dealing with a limitation missing

6   from the prior art references specified."  *Arendi*, 832 F.3d at 1362.  As such, the Court GRANTS

7   summary judgment to Skillz on invalidity as it pertains to obviousness rendered by Halliburton.

        **iii.**    **Patel Reference**

9         Patel is a U.S. Patent entitled "Tournament Bonus Awards and Related Methods."  U.S.

10  Patent No. 8,840,462 ("Patel"), at [54].  Patel was issued on September 23, 2014.  *Id.*, at [45].

11  Patel discloses "[v]arious methods for administrating a tournament game on a plurality of gaming

12  machines."  *Id.*, at [57].

13          a.  Anticipation

14        Skillz argues that Patel does not anticipate the '564 Patent because it does not disclose a

15  unique match identifier or the "characterized by" limitation.  Skillz Mot. at 18–19.  AviaGames

16  responds that Patel's "gameID" is a unique match identifier.  AviaGames Opp. at 22.  AviaGames

17  also argues that because Patel teaches that a gameID is associated with a seed library, there is a

18  dispute of material fact as to whether the gameID is used to retrieve a seed.  *Id.* at 23.  In reply,

19  Skillz clarifies that it agrees that gameID is not a unique match identifier.  Skillz Reply at 14.  At

20  the hearing on the parties' motions for summary judgment, AviaGames agreed that summary

21  judgment on anticipation with respect to Patel would be appropriate in light of the parties'

22  agreement that Patel's gameID is not a unique match identifier.  ECF No. 214 at 38:15–17.

23        Because Patel's gameID is not a unique match identifier, Patel fails to "disclose every

24  limitation of the claimed invention."  *Network Appliance*, 374 F.Supp.2d at 832.  Thus, the Court

25  GRANTS summary judgment to Skillz on invalidity as it pertains to anticipation by Patel.

26          b.  Obviousness

27        On obviousness, the parties again repeat the same arguments that they made for Steuer.

28  Skillz argues that Dr. Welch failed to provide a reasoned analysis sufficient to support an

United States District Court
Northern District of California

obviousness determination.  Skillz Mot. at 19.  AviaGames responds that Skillz merely disagrees with Dr. Welch's interpretation of *Numerical Recipes in C* and that Dr. Welch's opinion creates a dispute of material fact because Patel is silent on the particular seed value chosen and thus, using a unique match identifier as a seed is an obvious design choice.  AviaGames Opp. at 24–25.

For the same reasons as discussed above with respect to Steuer, the Court agrees with Skillz that there is insufficient evidence in the record to create a dispute of material fact on obviousness.  The parties agree that Patel fails to disclose the "unique match identifier" limitation of the '564 Patent.  Because the stream of pseudo-random number seeds cannot be characterized by an undisclosed limitation, it follows that Patel also fails to disclose the "characterized by" limitation.  The '564 Patent is obvious in light of Patel if a POSITA would have been motivated to supply the missing limitations.  *See Arendi*, 832 F.3d at 1361.  However, AviaGames fails to point to evidence that would create a dispute of material fact as to whether a POSITA would do so.  Because Dr. Welch's analysis of a "unique match identifier" is based on Skillz's argument at the time that gameID is a unique match identifier, his analysis does not address why a POSITA would be motivated to supply a unique match identifier to Patel or why a "unique match identifier" would be obvious.  To the extent that Dr. Welch discusses obviousness, he does not identify in his expert report or his deposition why the knowledge that "picking any number is an obvious design choice" would lead a POSITA to supply the "unique match identifier" and "characterized by" limitations to Patel.  Conclusory expert testimony that "fail[s] to provide any meaningful explanation for why one of ordinary skill in the art would be motivated to [supply the missing limitation]" is not sufficient to support an obviousness determination.  *TW Delta*, 942 F.3d at 1359 (quoting *InTouch*, 751 F.3d at 1349).  Therefore, the Court GRANTS summary judgment to Skillz on invalidity as it pertains to obviousness rendered by Patel.

## IV.  AVIAGAMES' MOTION

AviaGames seeks summary judgment that: (1) AviaGames does not infringe the '564 Patent because Skillz alleged only direct infringement and the asserted claims are not directed toward software companies; (2) AviaGames does not infringe the '564 Patent because AviaGames' software does not use a "unique match identifier" for generating a stream of pseudo

United States District Court
Northern District of California

1    random number seeds received by a client; and (3) the '564 Patent is invalid for lack of written

2    description regarding the claim element "stream of pseudo random number seeds characterized by

3    a unique match identifier."  AviaGames Mot. at 1.  The Court addresses each issue in turn.

### A.    Whether AviaGames Directly Infringes the '564 Patent

5          The parties agree that only direct infringement has been alleged in this case.  Direct

6    infringement occurs when an accused party "without authority makes, uses, offers to sell, or sells

7    any patented invention, within the United States or imports into the United States any patented

8    invention during the term of the patent therefor."  35 U.S.C.A. § 271(a).  "Evaluation of summary

9    judgment of noninfringement is a two-part inquiry:  first, a court construes the scope and meaning

10   of the asserted patent claims, and then compares the construed claims to the accused product or

11   process."  *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016).  "As such, a

12   grant of summary judgment of noninfringement is proper when no reasonable factfinder could find

13   that the accused product contains every claim limitation or its equivalent."  *Id.*

14         Skillz asserts that AviaGames infringes claims 1–4, 6, 10–14, 16, 18–21.  These claims

15   include method, *Beauregard*, and system claims.  Because the parties make different arguments

16   for the *Beauregard* claims than for the method and system claims, the Court will treat them

17   separately.

### i.    Method Claims (Claims 1–10) and System Claims (Claims 18–21)

19         The '564 Patent's method claims require "receiving, *at a client* . . . a stream of pseudo

20   random number seeds characterized by a unique match identifier."  '564 Patent, 16:10–12

21   (emphasis added).  They also require "receiving, *at the client* . . . game data for executing the

22   game instance."  *Id.*, 16:15–16 (emphasis added).  The Court also construed "generating, using the

23   stream of pseudo random number seeds, a plurality of pseudo-random numbers" as "generating, *at*

24   *the client* and using the stream of pseudo-random number seeds, a plurality of pseudo-random

25   numbers."  ECF No. 117 at 28 (emphasis added).  The '564 Patent's system claims use identical

26   language, such as "receiving, *at a client* . . . a stream of pseudo random number seeds

27   characterized by a unique match identifier."  '564 Patent, 18:6–8.

28         AviaGames represents, and Skillz does not contest, that with respect to the method and

United States District Court
Northern District of California

system claims, "client" means a user's mobile device.  AviaGames Mot. at 9; *cf.* Skillz Opp. at 8

(arguing that with respect to the *Beauregard* claims, "client" refers to software).  To succeed on a

method claim, the patentee must show that the accused infringer performed all of the steps in the

claimed methods.  *Mirror Worlds, LLC v. Apple Inc.,* 692 F.3d 1351, 1359 (Fed. Cir. 2012).

Similarly, "direct infringement by 'use' of a system claim 'requires a party . . . to use each and

every . . . element of a claimed [system].'"  *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l,

Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011).

      AviaGames argues that Skillz cannot prove direct infringement because it cannot show that

AviaGames performed one or more actions prescribed under 35 U.S.C. § 271(a).  AviaGames

Mot. at 8–9.  AviaGames argues that the asserted claims of the '564 Patent require hardware and

consumer devices, and Skillz has no evidence of hardware or consumer devices used by

AviaGames.  *Id.* at 9.  Skillz responds that AviaGames infringes on the asserted method and

systems claims because its employees in the United States use the claimed methods and systems

and AviaGames' testing and development activities in the United States constitute infringement.

Skillz Opp. at 6–7.  AviaGames replies that all of its testing and development work is done in

China and that Skillz's evidence discusses consumers, rather than employees, using

Pocket7Games in the United States.  ECF No. 188 ("AviaGames Reply") at 3–4.

      The Court finds that there are material questions of fact as to whether AviaGames

employees play Pocket7Games in the United States.  AviaGames points to evidence that its

research and development employees are all located in China.  *See* ECF Nos. 185-4 (listing

employees); 185-5 (noting that AviaGames' "R&D center [is] located in China"); 185-6 at 32:23–

33:2, 34:16–22 (AviaGames CEO Vickie Chen testifying in a deposition that AviaGames' original

game development was conducted in China).  Skillz responds with evidence suggesting that

AviaGames employees in the United States play Pocket7Games.  At the hearing on the motion for

summary judgment, Skillz argued that "AviaGames actually encourages all of its employees to

play the game on a daily basis as much as possible to generate content for social media posts."

ECF No. 214 at 66:2–4.  In 2019, Chen stated in an email that ███████████████████

████████████████████████████████████████████████████████████████

1   ████████████████████████████████████████████████████

2   ██████████████████████████████████.”  ECF No. 172-5 at 2.  An

3   AviaGames PowerPoint states that AviaGames ███████████████████████

4   ██████████████████████████████████ ECF No. 172-4 at 3.

5   Finally, AviaGames employees testified in depositions that AviaGames' "activities" occurred in

6   the United States.  *See* ECF No. 172-6 at 50:22–51:1 ████████████████████

7   ████████████████████████████████████████████████████

8   ████████████████████████████████);  *see also*

9   ECF No. 172-7 at 66:14–21 ("[I]s Pocket7Games offered in any geographic territory outside of the

10  United States?  A: I don't think so . . .").

11          Although AviaGames may be correct that the deposition testimony refers to the use of

12  Pocket7Games by customers, rather than AviaGames employees, Skillz has presented enough

13  evidence that, when construed in the light most favorable to Skillz, creates a dispute of material

14  fact as to whether AviaGames employees play Pocket7Games in the United States.  For example,

15  it may be that the nine AviaGames employees in the United States, even if not R&D employees,

16  play Pocket7Games to create posts for social media, or the game testers in the United States may

17  be AviaGames employees.  *See Mirror Worlds*, 692 F.3d at 1359 ("Direct infringement of a

18  method claim can be based on even one instance of the claimed method being performed."); *see*

19  *also Interwoven, Inc. v. Vertical Computer Sys.*, No. CV 10-04645 RS, 2014 WL 490996, at *2

20  (N.D. Cal. Feb. 4, 2014) (denying summary judgment on noninfringement because the alleged

21  infringer's testing department "must have practiced the method steps in order to test and verify"

22  functionality).  These are factual determinations that must be left for the jury.  Accordingly, there

23  is a genuine dispute as to whether AviaGames infringes the method and system claims of the '564

24  Patent.

25              ii.    ***Beauregard*** **Claims (Claims 11–17)**

26          "A Beauregard claim is one that recites an article of manufacture that is embodied in a

27  computerreadable medium."  *Deep9 Corp. v. Barnes & Noble, Inc.*, No. C11-0035JLR, 2012 WL

28  4336726, at *13 (W.D. Wash. Sept. 21, 2012), *aff'd*, 504 F. App'x 923 (Fed. Cir. 2013).  The '564

United States District Court
Northern District of California

Patent's *Beauregard* claims describe a "non-transitory computer program product storing instructions, which when executed by at least one data processor of at least one computing system, implement a method comprising:  receiving, at a client . . . receiving, at the client . . . [and] generating, [at the client]."  '564 Patent, 16:57–17:3.  Put differently, claims 11–17 disclose the embodiment of the method of claim 1 in "a non-transitory computer program product."

AviaGames argues that the '564 Patent's *Beauregard* claims are subject to the same hardware requirements as the method and system claims.  AviaGames Mot. at 10.  Skillz argues AviaGames infringes because the '564 Patent's *Beauregard* claims require only that the accused infringer supplies software and, to the extent that AviaGames relies on "client," "client" refers to "a role that a software component performs."  Skillz Opp. at 8.  AviaGames replies that the law is settled that claims reciting instructions on a non-transitory medium require a device to execute the instructions.  AviaGames Reply at 4–6.

The Court disagrees with Skillz's arguments that the '564 Patent's *Beauregard* claims require only that the accused infringer supplies software.  Skillz relies on the conditional language "which when executed" to support its argument that only software is required.  Skillz Opp. at 7–8.  This conditional language indicates that the *Beauregard* claims cover capability—that is, the infringing device need only be capable of implementing the method, rather than actively performing the method—but it says nothing about whether software or hardware is required.  "[T]o infringe a claim that recites capability and not actual operation, an accused device 'need only be capable of operating' in the described mode."  *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (quoting *Intel Corp. v. U.S. Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991)).

The Court finds *GREE, Inc. v. Supercell Oy* instructive.  In *GREE*, the accused infringer of a *Beauregard* claim argued that "a non-transitory computer readable medium requires a data storage device to store the software."  *GREE, Inc. v. Supercell Oy*, No. 219CV00070JRGRSP, 2020 WL 4931398, at *3 (E.D. Tex. July 18, 2020), *report and recommendation adopted*, No. 219CV00070JRGRSP, 2020 WL 4922154 (E.D. Tex. Aug. 21, 2020).  The court noted that *Beauregard* claims, and an accused act of infringement, "must . . . be drawn to a specific

apparatus."  *Id.*  The apparatus in question was a server.  The court then held that a dispute of material fact precluded summary judgment because the patentee presented sufficient evidence that the accused infringer owned servers in the United States.  *Id.*  Similarly, the '564 Patent draws a "non-transitory computer program product" to a specific apparatus:  "at least one data processor." '564 Patent, 16:57–58.  Thus, AviaGames is correct that the *Beauregard* claims require some hardware, such as a mobile device.  *See also Finjan*, 626 F.3d at 1205 (interpreting "computer-readable storage medium" as drawn to a "server" or a "computer").

However, even if the Court agrees that the *Beauregard* claims require some hardware, the Court finds that disputes of material fact preclude summary judgment.  For example, if as described above, AviaGames employees play Pocket7Games in the United States, this would also mean that their devices are capable of performing the patented methods and thus infringe the *Beauregard* claims.  Therefore, the Court DENIES summary judgment on direct infringement.[2]

### B.    Whether AviaGames Uses the '564 Patent's Technique

"[A] grant of summary judgment of noninfringement is proper when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Medgraph*, 843 F.3d at 949.  AviaGames argues that it does not infringe the '564 Patent because it does not have "a stream of pseudo random number seeds characterized by a unique match identifier."  AviaGames Mot. at 11.  The Court previously construed this term to mean "a stream of pseudo random number seeds wherein a unique match identifier is used for generating the stream of pseudo random number seeds."  ECF No. 117 at 28.  The parties' dispute is narrowed to two issues:  (1) whether AviaGames uses a "unique match identifier" consistent with Skillz's infringement theory; and (2) whether the unique match identifier is used to "generate" seeds.

####     i.    Unique Match Identifier

In the Pocket7Games platform, each user is assigned and identified by a string of numbers called a "user ID."  ECF No. 161-4 ("Welch Rebuttal Report") ¶ 67.  Each game—e.g., Bingo

---

[2] Because the Court denies summary judgment on direct infringement based on the arguments raised in the parties' summary judgment briefs, it need not address Skillz's argument that AviaGames' alleged use of bots constitutes direct infringement.

United States District Court
Northern District of California

1   Clash, Solitaire!, 21 Gold, etc.—is assigned and identified by a numeric "game ID."  For example,

2   the game ID for Solitaire! is 2.  *Id.* ¶ 71.  After a user chooses a game to play, they start a match

3   against another user.  The match is assigned and identified by a string of numbers called a "match

4   ID."  *Id.* ¶ 63.

5            AviaGames argues that when considered individually, ███████████████████ and the

6   seed created by the ████████████ (described below) cannot be a unique match identifier.

7   AviaGames Mot. at 12, 14–15.  The Court need not address these arguments because Skillz

8   clarifies that its infringement theory is not based on ██████████████████████████████

9   ████████.  Instead, Skillz states that its infringement theory is "that the *combination* of ████

10  ████████████constitutes a unique match identifier, not that each independently functions as a

11  unique match identifier."  Skillz Opp. at 13.  Skillz further clarifies that the combination of ████

12  ███████████████████████████████████████████, and thus the

13  combination identifies a unique match.  *Id.* at 14.  AviaGames responds that ███████████

14  ████████████████████████████████████████████

15  AviaGames Mot. at 15.  Put differently, ████████████████████████████████

16  ████████████████████████.  *Id.*  AviaGames further argues that

17  it does not use a temporal component to identify matches.  AviaGames Reply at 7.

18            The Court begins by noting that the parties' dispute over this question is based on claim

19  construction positions that were never raised during the claim construction phase of this case.

20  "When considering disputes over claim scope at the summary judgment stage, courts in this

21  district carefully consider disputes but . . . as part of the infringement analysis, not part of the

22  claim construction."  *Cellspin Soft, Inc. v. Fitbit, Inc.*, No. 4:17-CV-05928-YGR, 2022 WL

23  2784467, at *4 (N.D. Cal. June 15, 2022) (quotations omitted) (quoting *Apple, Inc. v. Samsung

24  Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 252045, at *4 (N.D. Cal. Jan. 21, 2014)).  "Under

25  this approach, 'the Court will view the parties' disputes through the lens of whether a reasonable

26  jury, armed with the Court's claim construction as to certain terms and an instruction that the plain

27  and ordinary meaning controls as to others, could or would necessarily conclude that the asserted

28  claim reads on an accused device (or that a prior art reference reads on an asserted claim).'"  *Id.*

United States District Court
Northern District of California

1   (quoting *Apple*, 2014 WL 252045, at *5).

2      The Court concludes that a reasonable jury could understand the plain and ordinary

3   meaning of the term "unique" to be "unique" at a point in time.  AviaGames does not cite any

4   support—either in the '564 Patent or elsewhere in the record—for its interpretation of the plain

5   and ordinary meaning of "unique."  In fact, Dr. Jose Zagal's expert report directly contradicts this

6   interpretation:  "AviaGames appears to be adopting an overly narrow interpretation of unique as

7   meaning 'never used,' . . . .  A person of ordinary skill in the art would not understand unique to

8   prohibit *any* reuse, as computer systems are finite and thus inevitably must reuse values."  ECF

9   No. 161-3 ("Zagal Report") ¶ 91.  AviaGames disagrees with Dr. Zagal's assertions that

10  "computer systems are finite."  AviaGames Reply at 7.  AviaGames notes that Dr. Zagal

11  acknowledged in his deposition that it is "totally possible" to implement a system that uses values

12  that will not repeat for the life of the system.  ECF No. 185-7 ("Zagal Deposition") at 244:9–11.

13  AviaGames also points to Dr. Welch's Rebuttal Report, which states, "'Unique' means one of a

14  kind.  Dr. Zagal states that interpreting 'unique' to mean 'never reused' is overly narrow, but

15  'unique' means exactly that, both generally and in this context:  one of a kind."  Welch Rebuttal

16  Report ¶ 61.  Viewing this evidence in the light most favorable to Skillz, as the Court must when

17  evaluating summary judgment, this evidence does not preclude a reasonable jury from finding that

18  "unique" can mean "unique" at a point in time.  Dr. Zagal's acknowledgement of a system that

19  could use values that will not repeat does not contradict his opinion that "unique" does not

20  prohibit reuse.  Moreover, Dr. Welch's rebuttal defines "unique" to mean "one of a kind," but he

21  does not engage with the temporal aspect of uniqueness that Skillz alleges in its infringement

22  theory.  Therefore, a grant of summary judgment to AviaGames on the basis of its construction of

23  "unique" is not appropriate.

24      The Court also finds that disputes of material fact preclude a grant of summary judgment

25  to AviaGames on whether AviaGames uses a "unique match identifier."  For example, among

26  other things, the parties disagree about whether the ███████████ uniquely identify a match

27  at a given time.  AviaGames argues that its ███████████ does not use a temporal

28  component and notes that Drs. Welch and Zagal agree that the pseudo-random number seeds in

United States District Court
Northern District of California

Pocket7Games are ███████████████████████████████████ ████████████████████████████. *Compare* Zagal Report ¶ 85 ███████████████ █████████████████████████████████████████████████████ ████████████████████████████████████████████ *with* Welch Rebuttal Report ¶ 53 ██████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████ However, AviaGames' evidence does not preclude Skillz's position that ███████████████████ are unique because they can identify only one match at a given time.  Indeed, Skillz supports this position with Dr. Zagal's opinion that ████ █████████████████████████████████████████████████████ █████████████████████████████████████████████████████ ██████ Zagal Report ¶ 85 (citation omitted); *see also* ECF No. 153-3 at 49:7–8 (Peng Zhang testifying that ███████████████████████████████).  Because a reasonable jury could find that the combination of ██████████████████ at a given time implement the "unique match identifier" limitation, the Court DENIES summary judgment to AviaGames on this issue.

### ii.   Generating

AviaGames uses a ██████████████████████.  AviaGames Mot. at 11–12. ███████████████████████████████████████████.  *Id.* at 12. AviaGames states that it obtains a seed by either (1) ████████████████████ or (2) ███████████████████████████████████.  *Id.* at 12.  Skillz concedes that ██████████ does not meet the claim language.  Skillz Opp. at 9.  Instead, Skillz argues that its infringement theory is that Pocket7Games ██████████████████ ██████████████████████████████ *Id.*  AviaGames argues that ███████████████████████████████████████████████████ █████████████████.  AviaGames Mot. at 13.  Skillz argues that AviaGames should not be permitted to retread its claim construction arguments because the Court declined to exclude look-up tables in its claim construction.  Skillz Opp. at 10–11.  Skillz also argues AviaGames' interpretation of "generating" reads out the exemplar in the specification.  *Id.* at 11.  That

specification allows a tournament identification number to be used as the seed to generate pseudo-random numbers. '564 Patent, 15:3–7. AviaGames argues that its interpretation is not inconsistent with the exemplar in the specification because the ██████████████████████ ███████████████████████████████████████. AviaGames Reply at 9. Finally, Skillz argues that there is a dispute of material fact as to whether AviaGames' ████████████ constitutes "generating" within the scope of the claims. Skillz Opp. at 11–12.

The Court does not find that its claim construction forecloses AviaGames' argument, and it does not find that AviaGames' interpretation reads out the exemplar in the specification in the '564 Patent. The Court's claim construction order declined to consider "whether a stream of pseudo random number seeds generated by a lookup table is within the scope of the claims," but refusing to consider this position is not akin to endorsing it. *See* ECF No. 117 at 9 n.4. Similarly, AviaGames' interpretation does not read out the exemplar of the '564 Patent because it is possible that the seed is created when its value is assigned to be the same as the tournament identification number.

That said, the Court agrees with Skillz that disputes of material fact preclude summary judgment on this issue. Among other things, the parties disagree about whether AviaGames' ████████████████████████████████████████████████████████ ████████████████████. Skillz points to the report of Dr. Zagal, which states that ██████████ ████████████████████████████████████████████████████████████████ ████████████████" Zagal Report ¶ 85. AviaGames points to Dr. Welch's rebuttal report, which argues that generation is synonymous with creation. *See* Welch Rebuttal Report ¶ 85 (defining "generates" as "produces" or "creates" and collecting dictionary definitions). However, as Skillz points out, Dr. Welch's deposition takes a more nuanced position, arguing that a seed is generated ████████████████████████████████ Welch Deposition at 117:7–19. Dr. Welch testified that whether a programmer intended a value to be a seed "depend[s] on context" and "a lot of things." *Id.* at 128:24–25. The contrary positions of the two experts and Dr. Welch's deposition testimony create disputes of material fact. At what point AviaGames' random number seeds are generated (████████████████ and the related question of programmers' intent are questions

1    of fact that should be left to the jury.  Moreover, there is enough doubt based on the evidence in

2    the record, when construed in Skillz's favor, for a reasonable jury to find for Skillz.  Thus, the

3    Court DENIES summary judgment to AviaGames on the issue of "generating."

4         ### C.     Invalidity for Lack of Written Description

5         "The specification shall contain a written description of the invention."  35 U.S.C.

6    § 112(a).  "A specification adequately describes an invention when it 'reasonably conveys to those

7    skilled in the art that the inventor had possession of the claimed subject matter as of the filing

8    date.'"  *Juno Therapeutics, Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1335 (Fed. Cir. 2021)

9    (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).

10   Whether a patent complies with the written description requirement is a question of fact that

11   depends on various factors that vary depending on the context.  *Ariad*, 598 F.3d at 1351.  For

12   generic claims, these factors include "the existing knowledge in the particular field, the extent and

13   content of the prior art, the maturity of the science and technology, [and] the predictability of the

14   aspect at issue."  *Capon v. Eshhar*, 418 F.3d 1349, 1359 (Fed. Cir. 2005).

15        AviaGames argues that the claim element "a stream of pseudo random number seeds

16   characterized by a unique match identifier" lacks written description support.  AviaGames Mot. at

17   16.  AviaGames argues that the '564 Patent's specification includes only one disclosure for

18   "seeds"—an exemplar that states "the transactional server can use a tournament identification

19   number as a seed to generate pseudo-random numbers . . . ."  '564 Patent, 15:3–7.  AviaGames

20   challenges the written description on three bases: (1) the specification describes a singular

21   identifier relating to a single seed, but the claims describe a singular identifier relating to plural

22   seeds; (2) the claims describe receiving a stream of seeds, but the specification does not disclose

23   the transmission of seeds; and (3) the tournament identifier does not correspond to a unique match

24   identifier because the '564 Patent distinguishes between matches and tournaments and Skillz

25   unambiguously disclaimed any correlation between the tournament identifier and unique match

26   identifier.  AviaGames Mot. at 16–22.

27        ### i.     Numerical Relationship Between the Unique Match Identifier and Seeds

28        AviaGames argues that the '564 Patent's claims contemplate a multiple-to-one relationship

United States District Court
Northern District of California

30

United States District Court
Northern District of California

1   between the seeds and the unique match identifier, but the specification's example contemplates a

2   one-to-one relationship.  AviaGames Mot. at 17–18.  Skillz responds that this is a claim

3   construction argument that AviaGames should have raised at claim construction, and its failure to

4   do so constitutes waiver.  Skillz Opp. at 16.  Skillz further argues that, under well-established

5   Federal Circuit law, "a" in "a unique match identifier" means "one or more" such that a dispute of

6   material fact exists as to the numerical relationship between seeds and unique match identifiers.

7   *Id.*

8          Although the Court agrees with Skillz that AviaGames should have raised its multiple-to-

9   one construction at claim construction, the Court considers AviaGames' argument and finds that

10  AviaGames' construction is contrary to law.  The Federal Circuit has long held that the indefinite

11  article "a" or "an" in patent parlance means "one or more."  *See Baldwin Graphic Sys., Inc. v.*

12  *Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).  "The exceptions to this rule are extremely

13  limited:  a patentee must 'evince[] a clear intent' to limit 'a' or 'an' to 'one.'"  *Id.* (alteration in

14  original) (quoting *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000)).

15  AviaGames argues that an exception to this rule applies, likening this case to *Harari v. Lee*.  But

16  *Harari* is distinguishable because in that case, the relevant claims contained multiple instances of

17  language that "expressly distinguished[ed] between the singular and plural."  *Harari v. Lee*, 656

18  F.3d 1331, 1341 (Fed. Cir. 2011).  For example, the patent in *Harari* distinguished singular and

19  plural by using "a number of" in some clauses while omitting it from parallel clauses (e.g., the

20  patent "recites '*accessing a number of* control gates' while '*accessing* a bit line' to active 'a

21  number of memory cells'").  *Id.* (emphasis added).  Unlike the patent in *Harari*, the '564 Patent

22  does not include the same or similar language.  Although the '564 Patent discusses "a stream of

23  seeds" there are no parallel clauses from which the Court might infer "clear intent" sufficient to

24  depart from the Federal Circuit's rule that "a" means "one or more."

25         Even assuming that AviaGames' multiple-to-one construction is correct, the Court finds

26  that disputes of material fact preclude summary judgment.  Among other things, the parties

27  dispute whether a POSITA would reasonably understand the specification to include the multiple-

28  to-one relationship between the seeds and the unique match identifier described in the claims.  As

at claim construction, AviaGames' focus on the one example from the specification ignores the broader context of the specification. *See LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) ("A claim will not be invalidated on section 112 grounds simply because the embodiments of the specification do not contain examples explicitly covering the full scope of the claim language."). The specification includes language that contemplates the possibility of multiple unique match identifiers, especially when considering that "a" in patent parlance means "one or more." *See, e.g.*, '564 Patent, 10:14–15 ("Tournaments can comprise *a single match or a series of matches*." (emphasis added)); 15:3–7 ("[T]he transactional server can use *a* tournament identification number as *a* seed to generate pseudo-random numbers . . . ." (emphasis added)). Moreover, Dr. Zagal opined that the claims "also encompass a plurality of pseudo random number seeds characterized by a plurality of unique match identifiers." Zagal Report ¶ 81. For example, "a stream associated with a series of matches, each with its own unique match identifier and pseudo-random number seed characterized by that identifier . . . is fully consistent with the exemplary embodiment in the specification." *Id.* Viewing this evidence in the light most favorable to Skillz, a reasonable jury could find that the written description adequately supports "a stream of pseudo random number seeds characterized by a unique match identifier." Whether a POSITA would understand the specification as supporting the multiple-to-one relationship that AviaGames describes is a question of fact that is best left to the jury. Because there is a genuine dispute of material fact, the Court DENIES summary judgment to AviaGames on this issue.

### ii.   Transmitting and Receiving Seeds

AviaGames argues that the '564 Patent's claims contemplate receiving a stream of seeds, but the specification does not disclose transmission, which must occur before anything can be received. AviaGames Mot. at 18. Skillz responds that AviaGames errs in focusing on one exemplar, because a claim can be broader than the specific embodiments disclosed in the specification. Skillz Opp. at 19. Skillz also argues that the specification is clear that the disclosed embodiments are not limited to the particular server and client configurations in the exemplar. *Id.* at 20. Skillz further argues that a POSITA would understand that whether certain functionality is

implemented at a server or client is a trivial design choice.  *Id.*  In its reply, AviaGames argues that the specification must include some mention of transmission and the fact that such functionality is a trivial design choice does not satisfy the written description requirement.  AviaGames Reply at 10.

The Court finds that a genuine dispute exists as to whether a POSITA would reasonably understand the specification as supporting transferring or receiving a seed.  The specification states:

> The subject matter described herein may be implemented in a computing system that includes a back-end component (e.g., as a data server), or that includes a middleware component (e.g., an application server), or that includes a front-end component (e.g., a client computer having a graphical user interface or a Web browser through which a user may interact with an implementation of the Subject matter described herein), or any combination of Such back end, middleware, or front-end components.

'564 Patent, 15:48–56.  The experts further agree that a POSITA would understand that the claims may be implemented on various arrangements of servers and clients.  *See* Zagal Report ¶ 87 ("A POSITA would thus fully understand that whether random numbers based on a seed are generated at a server, or at each game client, is a design choice that simply represents predictable variations of the exemplary embodiment in the specification."); Welch Deposition at 167:15–18 ("Q.  If I understood you correctly, a person of ordinary skill in the art would be able to assess whether functionality could be implemented either at a server or a client and the pros and cons of where you would implement that functionality.  Fair?  A.  Generally, yes, the short answer.").  The fact that the specification does not explicitly state that pseudo random number seeds are transferred from a server to a client is insufficient to support summary judgment for AviaGames.  *See LizardTech*, 424 F.3d at 1345 ("[I]t is unnecessary to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation.").  It is enough that the specification's language and the expert opinions, when viewed in the light most favorable to Skillz, could cause a reasonable jury to find that a POSITA would understand the specification to support the transmission of pseudo random

1  number seeds.  Because a reasonable jury could find in Skillz's favor, the Court DENIES

2  summary judgment to AviaGames on this issue.

3          **iii.**    **Tournament Identifier and Unique Match Identifier**

4        AviaGames argues that the specification's "tournament identification number" is not the

5  same as a "unique match identifier" because tournaments and matches are distinct and because

6  Skillz disavowed the association between a tournament identification number and a unique match

7  identifier during IPR proceedings.  AviaGames Mot. at 19–22.  Skillz argues that a tournament

8  identification number can be a unique match identifier under certain circumstances, and that it did

9  not disavow this argument in IPR proceedings.  Skillz Opp. at 21–23.

10        The parties agree that the '564 Patent distinguishes between tournaments and matches.

11  AviaGames argues that this distinction means that a tournament identification number cannot be a

12  unique match identifier.  *See* AviaGames Mot. at 19.  However, the Court finds a genuine dispute

13  of material fact on this issue.  Skillz argues that a tournament identification number can be a

14  unique match identifier when a tournament consists of a single match.  Skillz Opp. at 21.  Skillz

15  points to the specification, which states that "[t]ournaments can comprise a single match or a

16  series of matches."  '564 Patent, 10:13–14.  Consistent with the specification, Dr. Zagal opined

17  that "single matches are a specific instance of a tournament, and for those matches the tournament

18  ID and the match ID are the same."  Zagal Report ¶ 95.  Viewing this evidence in the light most

19  favorable to Skillz, a reasonable jury could find that the specification supports a unique match

20  identifier because under the circumstances identified, a tournament identification number can be

21  used as a unique match identifier.

22        AviaGames' remaining argument is that Skillz disclaimed any association between a

23  tournament identification number and a unique match identifier during IPR proceedings.  "The

24  doctrine of prosecution disclaimer 'preclud[es] patentees from recapturing through claim

25  interpretation specific meanings disclaimed during prosecution.'"  *Genuine Enabling Tech. LLC v.*

26  *Nintendo Co.*, 29 F.4th 1365, 1374 (Fed. Cir. 2022) (alteration in original) (quoting *Omega Eng'g,*

27  *Inc, v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003)).  "For a statement during prosecution

28  to qualify as a disavowal of claim scope, it must be 'so clear as to show reasonable clarity and

United States District Court
Northern District of California

1    deliberateness,' and 'so unmistakable as to be unambiguous evidence of disclaimer.'" *Id.* (quoting

2    *Omega Eng'g*, 334 F.3d at 1325).  AviaGames points to Skillz's argument to the PTAB that

3    tournaments and matches are distinct and that Halliburton's tournament ID is not equivalent to a

4    unique match identifier.  *See* ECF Nos. 163-13 at 25, 29–31; 163-14 at 2.  AviaGames also argues

5    that the PTAB endorsed Skillz's arguments and held that a tournament identification number does

6    not satisfy the unique match identifier.  Institution Decision at 17.

7         The Court does not find this record "so clear" or "so unmistakable" such that Skillz

8    disclaimed any association between the tournament identification number in the specification and

9    a unique match identifier.  Contrary to AviaGames' argument, Skillz's position in IPR

10   proceedings was consistent with its current position.  Although Skillz drew a distinction between a

11   tournament and a match, it clarified that "[t]he claims, which recite skill-based gaming

12   competitions, including tournaments within their scope; they are not, however, limited to

13   tournaments."  ECF No. 163-13 at 25.  Thus, Skillz's position is consistent with its current

14   position that a tournament identification number can be a unique match identifier when the

15   tournament consists of a single match.  Similarly, Skillz's arguments were directed at the

16   "tournament ID" disclosure in Halliburton, rather than the tournament identification number in the

17   '564 Patent's specification or even tournaments more generally.  *See, e.g.*, ECF Nos. 163-13 at

18   30–31 ("[AviaGames] is mapping Halliburton's ***tournament*** ID to the unique ***match*** ID required

19   by the claims. . . . Halliburton's disclosure of a tournament ID is not sufficient to render obvious a

20   ***match*** ID."); 163-14 at 2 ("[I]f the unique match ID refers to a match, Halliburton cannot render

21   the claims unpatentable.").  Nor did the PTAB endorse the construction that any tournament

22   identification number cannot be a unique match identifier.  Like Skillz's arguments, the PTAB's

23   holding was limited to its analysis of Halliburton and based on AviaGames' failure to provide an

24   explanation for why Halliburton's tournament ID teaches a unique match identifier.  *See, e.g.*,

25   163-15 at 16–17 ("The Petition provides no explanation or reasoning as to how or why the

26   'tournament game identifier number[]' as disclosed in Halliburton teaches the 'unique match

27   number' as recited in claim 1 of the '564 Patent.").

28        Because Skillz has not disclaimed the association between the tournament identification

United States District Court
Northern District of California

number in the specification and a unique match identifier and a genuine dispute remains as to whether POSITA would reasonably understand the specification as supporting the unique match identifier limitation, the Court DENIES summary judgment to AviaGames on this issue.

## V.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff Skillz Platform Inc.'s Motion for Partial Summary Judgment is GRANTED in part and DENIED in part.

      a.   Skillz's Motion for Partial Summary Judgment is GRANTED as to whether inequitable conduct bars enforcement of the '564 Patent.  AviaGames has failed to submit sufficient evidence showing a material dispute of fact and thus its claim of inequitable conduct fails.

      b.   Skillz's Motion for Partial Summary Judgment is GRANTED as to whether the '564 Patent is invalid based on the single prior art reference Steuer. AviaGames has not met its burden to show disputed facts to support its claim that Steuer anticipates or renders obvious the '564 Patent, thus its claim fails.

      c.   Skillz's Motion for Partial Summary Judgment is DENIED as to whether the single prior art reference Halliburton anticipates the '564 Patent.  Disputed issues of fact defeat Skillz's motion for summary judgment.

      d.   Skillz's Motion for Partial Summary Judgment is GRANTED as to whether the single prior art reference Halliburton renders obvious the '564 Patent. AviaGames has not met its burden to show disputed facts to support its claim that Halliburton renders obvious the '564 Patent, thus its claim fails.

      e.   Skillz's Motion for Partial Summary Judgment is GRANTED as to whether the '564 Patent is invalid based on the single prior art reference Patel.  AviaGames has not met its burden to show disputed facts to support its claim that Patel anticipates or renders obvious the '564 Patent, thus its claim fails.

2.    Defendant AviaGames Inc.'s Motion for Summary Judgment is DENIED.

      a.   AviaGames' Motion for Summary Judgment is DENIED as to noninfringement

of the '564 Patent.

    b.  AviaGames' Motion for Summary Judgment is DENIED as to invalidity of the '564 Patent for lack of written description supporting "a stream of pseudo random number seeds characterized by a unique match identifier."

Dated:  September 20, 2023

_____

BETH LABSON FREEMAN
United States District Judge