UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKILLZ PLATFORM INC.,<br><br>Plaintiff,<br><br>v.<br><br>AVIAGAMES INC.,<br><br>Defendant. | Case No. 21-cv-02436-BLF (SVK)<br><br>**UNDER SEAL**<br><br>**ORDER FOLLOWING IN-CAMERA REVIEW OF AVIAGAMES DOCUMENTS**<br><br>Re: Dkt. No. 301 |

Before the Court is the Parties' Joint Discovery Submission regarding the request of Plaintiff Skillz Platform Inc. that the Court conduct an *in-camera* review of documents withheld as privileged by Defendant AviaGames Inc. ("Avia"). Dkt. 300-3, 301. The basis for Skillz' request is that the crime-fraud exception may apply. *Id.* On October 6, 2023, the Court ordered Avia to provide the Court with the documents that are the subject of the request for *in-camera* review. Dkt. 325. On October 10, 2023, the Court ordered Skillz to provide the Court with additional documents concerning the basis for its request for *in-camera* review. Dkt. 331.

Following the Court's *in-camera* review of the documents submitted by Avia and the Court's review of the additional documents provided by Skillz at the Court's request, the Court set this matter for hearing. Dkt. 339. Before the hearing the Court issued an order requesting that Avia be prepared to address whether specified documents were properly subject to attorney-client privilege and/or fell within the crime-fraud exception to the privilege. Dkt. 350.

The Court held a hearing on October 24, 2023, during which the Court ordered the Parties to submit additional briefs. *See* Dkt. 411-412. Having reviewed the Parties' submissions, the arguments at the hearing, the relevant law and the litigation history in this action, the Court finds that the crime-fraud exception to attorney-client privilege applies to certain of the documents reviewed *in-camera* and orders Avia to produce those documents, including attachments, no later than **November 2, 2023**.

## I. RELEVANT PROCEDURAL BACKGROUND

The present discovery dispute arises out of an August 23, 2023 order by the presiding District Judge, the Honorable Beth L. Freeman, which granted-in-part and denied-in-part Skillz' request to reopen discovery for the purpose of investigating Avia's use of "bots"[1] in its Pocket7Games platform. Dkt. 224 (the "August 23 Order"). Judge Freeman explained in that order that two Avia executives testified in depositions taken in May 2023 to the effect that Avia does not use bots. *Id.* at 1-2. However, shortly before fact discovery closed on May 25, 2023, Avia produced instant messages that appeared to suggest that Avia uses bots in its Pocket7Games platform and that the Avia witnesses were aware of this fact. *Id.* at 2. Judge Freeman found good cause to allow limited discovery on this issue. *Id.* at 3-4, 5-6. The August 23 Order, among other things, authorized the following additional discovery:

> (a) AviaGames shall produce all documents and communications, including source code, that refer to, bear on, or relate to AviaGames' or Pocket7Games' use of bots (including, but not limited to, all documents and communications that refer to, bear on, or relate to Avia's use, directly or indirectly, of bots, robots, cucumbers, guides, any artificial or computer-enabled virtual player, or any other naming convention used by Avia to refer to the same).
>
> (b) AviaGames shall produce all documents and communications from all sources, including but not limited to Lark, WeChat, messaging on personal devices and any other messaging platforms used by AviaGames and AviaGames' employees regarding AviaGames' or Pocket7Games' business practices, that hit on the original search terms and the search terms contained in Schedule A of Skillz's proposed discovery plan. See ECF No. 215.
>
> (c) Skillz may propound, and AviaGames shall answer up to 3 interrogatories limited to AviaGames' use of bots. Skillz will not be permitted to propound

---

[1] The Parties dispute the meaning of the term "bot" and whether playing against previously-recorded videos of a game played by human players constitutes a "bot."

|   |   |
|---|---|
| 1 | requests for admission. |
| 2 | (d) Skillz may serve a supplemental 30(b)(6) corporate deposition notice regarding AviaGames' use of bots, and Skillz may take an additional deposition of AviaGames under Rule 30(b)(6) not to exceed 3 hours (AviaGames may designate more than one witness to address the topics in the 30(b)(6) notice, and the total time that the individuals may be deposed may not exceed 3 hours) and up to 1 deposition of an individual witness not to exceed 3 hours. |

*Id.* at 5-6.

On September 6, 2023, Judge Freeman granted Avia's motion for clarification of the August 23 Order and issued the following clarifications:

(a) AviaGames shall produce all documents that hit on the search terms identified in the first bullet of Schedule A (ECF No. 215-1) without regard to whether those documents also hit on the original search terms.

(b) AviaGames shall produce all documents that hit on search terms in the second bullet of Schedule A that also hit on any of the original search terms from all non-IM repositories.

(c) For all documents that hit on any search term run disjunctively but not ordered produced under paragraph (a) or (b), Avia shall no later than September 7, 2023, provide to Skillz a list of all terms, its total hits, the relevant repositories, and any privilege hits, in a chart.

(d) The parties shall meet and confer on any terms identified in paragraph (c) no later than September 8, 2023.

(e) AviaGames may conduct a privilege review and must produce all documents subject to privilege review and privilege logs no later than September 20, 2023.

(f) Without prejudice to Skillz moving for certain documents or logs to be produced earlier, Avia shall produce all logs or documents as appropriate on a

3

|   |   |
|---|---|
|   | rolling basis through September 20, 2023. AviaGames shall prioritize documents hitting on search terms in Schedule A, first bullet; then Schedule A, second bullet; then the original terms. |
| (g) | AviaGames shall make its source code available for Skillz to review for three days, with the ability to request more if necessary. This review shall be conducted on one computer and shall not include collateral documents. |

Dkt. 251 (the "Clarification Order").

The Parties have had several discovery disputes arising out of the August 23 Order and Clarification Order, resulting in additional orders by Judge Freeman and the undersigned. *See* Dkt. 284, 318.

The present discovery dispute involves a subset of the documents responsive to Skillz' bot-related discovery that Avia withheld on the basis of privilege. *See* Dkt. 300-3. The first category of privileged documents challenged by Skillz concerns certain communications between Avia and attorneys at the law firm of Blank Rome in connection with "issues around skill gaming." *Id.* at 1. According to Skillz, Blank Rome provided "reasoned legal opinion[s]" that Avia used to access financial institutions in which Blank Rome represented that in all "For Cash" games "the Prize(s) announces are guaranteed to be awarded to User(s) participating in the Game," and "[n]either [Avia] nor any Developer may keep or win any Prize(s) associated with any Game." *Id.; see also* Tab 1 to Dkt. 336 (the Court refers to the exemplar at Tab 1 as the "Opinion Letter"). This allegation is supported by the evidence Skillz presented to the Court, specifically the opinion letters authored by Blank Rome to financial institutions on behalf of Avia. *See* Dkt. 336-338 at Tabs 1 to 57. Skillz argues that these representations in the opinion letters were fraudulent because "players are actually playing against Avia's bots who win cash." Dkt. 300-3 at 2. The second category of privileged documents challenged by Skillz concerns Avia seeking legal advice regarding how to respond to player questions and complaints. *Id.* at 1. Skillz contends that "[f]ollowing receipt of such advice, Avia repeatedly lied to customers" by telling them they were always playing against real players rather than bots, "leading a reasonable person to infer that Avia utilized such attorney communications to craft its fraudulent responses." *Id.* at 5.

Skillz argues that "[b]ecause Avia's communications with counsel relate to and likely were in furtherance of Avia's ongoing fraud against its customers" and other third parties "such communications fall within the crime-fraud exception to the attorney-client privilege." *Id.* at 1; *see also id.* at 2-3. Skillz requested that the Court conduct an *in-camera* review of 207 "communications" and 24 "documents" listed on Avia's privilege logs. *Id.*

The Court ordered Avia to produce the materials for *in-camera* review. Dkt. 325.[2] The Court also ordered Skillz to provide the Court with additional documents concerning the basis for its request for *in-camera* review, specifically the opinion letters and customer complaints referenced in the Parties' joint discovery submission. Dkt. 331; *see also* Dkt. 336-338. The Court completed a review of the documents submitted by Avia and Skillz, then set this matter for hearing on October 24, 2023. Dkt. 339. Before the hearing, the Court issued an order directing Avia to be prepared to explain the basis for asserting the attorney/client privilege for 25 documents in light of non-attorneys identified as either author or recipients of communications. Dkt. 350. The Court also directed Avia to be prepared to explain why the attorney-client privilege had not been waived on the basis of the crime-fraud exception as to 87 of the documents. *Id*. Twelve (12) of the 25 documents for which the Court questioned the basis for privilege are included in the 87 for which the Court evaluates the crime-fraud exception.

At the October 24, 2023, the Court ordered the Parties to submit additional briefs on specific topics. *See* Dkt. 411-412. The Court has reviewed those additional briefs, declarations and exhibits. Dkts. 416, 417, 419, 420, 421.

**II.    LEGAL STANDARD**

Federal common law governs the attorney-client privilege when courts adjudicate issues of federal law. *United States v. Ruehle,* 583 F.3d 600, 608 (9th Cir. 2009); *see also* Fed. R. Ev. 501.

---

[2] According to the Parties' joint submission, the first category of documents (Avia's communications with attorneys at Blank Rome) consists of 207 documents, and the second category of documents (Avia's efforts to obtain legal advice for responding to player questions and complaints) consists of 24 documents. Dkt. 300-3. The joint statement does not indicate whether there is any overlap between these categories of documents. In response to the Court's order at Dkt. 325, Avia provided the Court with 228 documents for *in-camera* review, along with a spreadsheet identifying those 228 documents. The Court has reviewed those 228 documents *in-camera*.

5

The attorney-client privilege protects confidential communications between attorneys and clients for the purpose of legal advice. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). The privilege "is intended 'to encourage clients to make full disclosure to their attorneys,'" recognizing that sound advice depends on transparency. *Hernandez v. Tanninen,* 604 F.3d 1095, 1100 (9th Cir. 2010) (quoting *Upjohn*, 449 U.S. at 389).

Whether a communication or document is covered by the attorney-client privilege is determined by an eight-part test:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*United States v. Graf,* 610 F.3d 1148, 1156 (9th Cir. 2010 (citation omitted). "As with all evidentiary privileges, the burden of proving that the attorney-client privilege applies rests not with the party contesting the privilege, but with the party asserting it." *Weil v. Inv./Indicators, Rsch. & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (internal citations omitted); *see also Ruehle*, 583 F.3d at 607 (stating that the "party asserting the attorney-client privilege has the burden of establishing the relationship *and* the privileged nature of the communication" (emphasis in original)). Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002). The same burden applies to the party asserting work product protection. *See Hernandez,* 604 F.3d at 1102.

## III. DISCUSSION

As explained above, the undersigned has conducted an *in-camera* review of the 228 documents submitted by Avia, and before the October 24, 2023 hearing, the Court asked Avia to be prepared to explain (1) the basis for asserting the attorney/client privilege for 25 documents in light of non-attorneys identified as either author or recipients of communications, and (2) why the attorney-client privilege had not been waived on the basis of the crime-fraud exception as to 87 of the documents. Dkt. 350. After careful consideration of the relevant law and the Parties' arguments in their briefs (including supplemental briefs) and at the hearing, the Court concludes as to certain of the documents at issue that even if those documents are subject to the attorney-client

privilege, they fall within the crime-fraud exception to the privilege.

## 1. Applicability of attorney-client privilege

"Generally, an attorney-client communication made in the presence of, or shared with, a third party is not confidential and therefore not privileged." *Klein v. Meta Platforms, Inc.*, No. 20-cv-08570-JD (VKD), 2022 WL 767096, at *4 (N.D. Cal. Mar. 11, 2022) (citations omitted).

Before the October 24 hearing, the Court asked Avia to be prepared to address the basis for claiming attorney-client privilege for 25 specified documents for which non-attorney third parties were identified as either author or recipients. Dkt. 350. At the hearing, the Court also ordered the Parties to provide supplemental briefing on the circumstances under which a third party's presence abrogates the attorney-client privilege. Dkt. 411, 412. The Parties submitted supplemental briefs on this issue. Dkt. 417, 419, 420.

## 1. Communications involving Jarrod Epps

Of the 25 documents in this category, 23 identify third-party business consultant and software licensor Jarrod Epps as either an author or a recipient.[3] Avia advances two theories as to why including Mr. Epps does not destroy the attorney-client privilege: (1) Avia argues that Mr. Epps was a functional employee of Avia; and (2) Avia argues that Mr. Epps and Avia had a common legal interest. *See* Dkt. 417-2. In support of these arguments, Avia points to the consulting contract and the software license between Mr. Epps and Avia. Dkt. 417-5. Skillz challenges Avia's arguments with citations to Mr. Epps' deposition. Dkt. 419-4 to 419-8.

### a. Functional Employee

The Ninth Circuit has held that where a third party is the functional equivalent of a corporate employee, his participation or inclusion in an attorney-client communication does not destroy the corporation's privilege. *United States v. Graf*, 610 F.3d 1148, 1158-59 (9th Cir. 2010). A functional employee includes a non-employee representative of a company who has

---

[3] The documents are: PrivLog_0400, PrivLog_0401, PrivLog_0403, PrivLog_0404, PrivLog_0405, PrivLog_0406, PrivLog_0407, PrivLog_0408, PrivLog_0409, PrivLog_0410, PrivLog_0411, PrivLog_0412, PrivLog_0413, PrivLog_0414, PrivLog_0415, PrivLog_0416, PrivLog_0417, PrivLog_0418, PrivLog_0430, PrivLog_0431, PrivLog_0446, PrivLog_0447, and PrivLog_0462

1   information corporate counsel needs to provide legal advice to the corporation. *Klein*, 2022 WL

2   767096, at *4 (citing *Graf*, 610 F.3d at 1158-59). More specifically, the attorney-client privilege

3   may be extended to a non-employee who is demonstrably integrated into the staff of the party

4   seeking to maintain the privilege. *Schaeffer v. Gregory Village Partners*, 78 F. Supp. 3d 1198

5   (N.D. Cal. 2015). Facts supporting the requisite level of integration include the non-employee

6   acting as the public face of the company (*Shaeffer*,77 F. Supp. 3d at 1204); daily involvement with

7   company's principals and daily attention to the company's objectives (*In re Bieter Co.*, 16 F.3d

8   929, 938 (8th Cir.1994)); and the non-employee having unique marketing and employee

9   management responsibilities (*Graf* 610 F.3d at 1158-59).

10   Mr. Epps is a consultant who worked with Avia from approximately November, 2016 to

11   March, 2017. Dkt. 417-2 at 4. Mr. Epps testified that he was a "business consultant for

12   AviaGames" "[f]or a brief period" and that he was "familiar" with Avia "to some extent."

13   Dkt. 419-5. This description is consistent with Avia's acknowledgement that under the terms of

14   their contract, Mr. Epps spent approximately 15 hours a month consulting with Avia. Dkt. 417-2

15   at 4. The scope of Mr. Epp's work, which is the laid out in the written contract, includes

16   introductions to key partners, facilitation of the exchange of initial information with these key

17   partners, the review of non-legal documents and advice on how to gain approvals from key

18   partners. Dkt. 417-5 at 2. Mr. Epps elaborated that his consulting company "cooperated with

19   hundreds of companies," presumably providing similar services. Dkt. 419-4.

20   Skillz characterizes of Mr. Epps' relationship with Avia as that of a "part-time consultant,"

21   and the Court agrees. There are no facts in the record that demonstrate the level of integration

22   relied upon by other courts in expanding the claim of privilege to a "functional employee."

23   Accordingly, the Court declines to find that Mr. Epps was a functional employee of Avia and

24   therefore the communications identified above as including Mr. Epps as either an author or a

25   recipient are not privileged under this theory.

### b.     Common Interest

27   In addition to the consulting arrangement, Mr. Epps granted to Avia a non-exclusive

28   software license to a gaming platform that he had developed. Dkt. 417-5 at 6-11. Avia argues that

8

1  this licensor and licensee relationship gave rise to a common legal interest between Avia and Mr.
2  Epps such that communications with counsel which include Mr. Epps are privileged. *See* Dkt.
3  417-2 at 4-5.  The common interest doctrine serves as an exception to the waiver of attorney-client
4  privilege where (1) the communication at issue is made by separate parties in the course of a
5  matter of common interest; (2) the communication is designed to further that effort; and (3) the
6  privilege has not been waived.  *Callwave Comms., LLC v. Wavemarket, Inc.*, No. C 14-80112 JSW
7  (LB), 2015 WL 831539, at *4 (N.D. Cal. Feb. 23, 2015) (citations omitted).  The parties "must
8  have a common legal, as opposed to commercial, interest." *Id.* (citations omitted).

9        Avia posits that because of their licensor/licensee relationship, "Mr. Epps and AviaGames
10  possessed an identical common legal interest in obtaining a legal opinion regarding AviaGames'
11  platform and game offerings." Dkt. 417-2 at 4-5.  Avia points to *In re Regents of Univ. of*
12  *California*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) as instructive.  In that case, the court addressed
13  the common legal interest held by a patent holder and a licensee in defending patents in litigation,
14  the common legal interest being that the patents be found valid and enforceable.  *Id*.  Here
15  however whether the common interest shared by Mr. Epps and Avia in obtaining a legal opinion
16  letter from Blank Rome is legal or commercial in nature is far less clear.  However, the Court need
17  not reach a conclusion as to whether the common interest exception applies because, as discussed
18  below, twelve (12) of the 23 documents reflecting communications between Avia and counsel at
19  Blank Rome which include Mr. Epps, even if privileged, also fall within the crime-fraud exception
20  (PrivLog_0400-401; 0403-408; 0430-431; and 0446-447).  As for the remaining eleven (11)
21  documents that include Mr. Epps (PrivLog_0409-0418 and 0462), the Court has determined that
22  they are not relevant to the issues now before the Court and therefore declines to abrogate the
23  assertion of privilege on this record.

24        **2.    Two remaining documents for which the Court questioned privilege**
25        Of the remaining (two) documents in this category (PrivLog_587 and 588), the first,
26  PrivLog_587, appears to be communications between principals of Avia, some of whom are using
27  the domain "newcode.co," and a third party unrelated to this dispute.  The second, PrivLog_588,
28  appears to be an internal communication between Avia principals transmitting the opinion letter,

and again one of the principals is using the newcode.co domain. The Court had inquired as to the status of NewCode, which the Parties addressed in supplemental briefing in starkly contrasting terms. However, upon further evaluation, the Court finds that neither of these two documents involves communications with counsel.[4] Accordingly, neither of these documents is privileged, and they both must be produced.

### 2. Crime-Fraud Exception

The crime-fraud exception to the attorney-client privilege applies when (1) a "client consults an attorney for advice that will serve [them] in the commission of a fraud or crime," and (2) the communications are "sufficiently related to" and were made "in furtherance of" the crime. *In re Grand Jury Investigation,* 810 F.3d 1110, 1113 (9th Cir. 2016); *In re Grand Jury Proc.*, 87 F.3d 377, 381-83 (9th Cir. 1996). It is irrelevant whether the attorney was aware of the illegal purpose or whether the scheme was ultimately successful. *United States v. Laurins,* 857 F.2d 529, 540 (9th Cir. 1988); *In re Grand Jury Proc. (Corp.)*, 87 F.3d at 382. The exception extinguishes both the attorney-client privilege and work product protection. *Eastman v. Thompson,* 594 F. Supp. 3d 1156, 1188 (C.D. Cal. 2022) (citing *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 694 F.2d 1235, 1242 (5th Cir. 1982); *In re John Doe Corp.*, 675 F.2d 482, 492 (2d Cir. 1982); and *United States v. Christensen*, 828 F.3d 763, 805 (9th Cir. 2015)). The party seeking disclosure must prove the crime-fraud exception applies by a preponderance of the evidence, meaning "the relevant facts must be shown to be more likely true than not." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1094–95 (9th Cir. 2007), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *see also United States v. Lawrence*, 189 F.3d 838, 844 (9th Cir.1999); Fed. R. Evid. 104(a).

A party requesting that a court conduct an *in-camera* review of documents withheld as privileged must make a threshold showing of a factual basis adequate to support a good faith belief by a reasonable person that *in-camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. *United States v. Zolin*, 491 U.S. 554,

---

[4] The opinion letter is not privileged and a draft falls within the crime-fraud exception as reasoned below.

10

572 (1989). "Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court," which "should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged communication, and the likelihood that the evidence produced through *in-camera* review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.*

Applying this legal standard, the Court finds that the crime-fraud exception applies to 87 of the documents for which privilege has been claimed. The documents fall into two general categories: (1) communications between Avia and its counsel relating to the formation and execution of the attorney opinion letter; and (2) communications between Avia and its counsel relating to customer complaints that the games were not being played against live persons. The Court addresses each category in turn.

### 1.     **The Opinion Letter**

It is Skillz' burden is to demonstrate that it is more likely than not that the crime fraud exception applies. More particularly, Skillz must demonstrate that it is more likely than not that Avia consulted Blank Rome for advice that would serve Avia in the commission of a fraud, and that the communications were made in furtherance of the fraud.

The essence of Skillz' allegation of fraud arising out of the Opinion Letter is that (1) there are intentional, material misrepresentations to financial institutions; (2) which were relied upon; (3) to the detriment of the institutions. Dkt. 300-3 at 2 (citing *Huntsman v. Corp. of the Pres. of the Church of Jesus Christ of Latter-Day Saints*, 76 F.4th 962, 971 (9th Cir. 2023)). The Opinion Letter speaks for itself, and the Parties do not dispute what it is and what it says. Avia does, however, challenge whether the statements in the Opinion Letter were in fact intentional misrepresentations. In relevant part, the Opinion Letter provides:

> 1. The Company operates a skill gaming platform (the "Platform") that enables game developers ("Developers") to offer multi-player mobile games (the "Games") to a customer base managed by the

11

    Company ( collectively the "Business").

    *******

    4.  In all "For Cash" Games, the following requirements are met:

    ******

    c. For each Game, the Prize(s) announced are guaranteed to be

    awarded to User(s) participating in the Game (unless the

    Game is cancelled and all entry fees are refunded); and

    d. Neither the Company nor any Developer may keep or win

    any Prize(s) associated with any Game.

Dkt. 336 at Tab 1 p. 1-2, *see also* Dkts. 336-338 at Tabs 2-57.  The Opinion Letter is verified by Jamie Leung, Head of Product and Compliance for Avia, which provides:

    3.    I have reviewed the factual background set forth under the heading

    "Limitation on Scope of Factual Review" of the Legal Advice, and confirm that the

    statements contained therein in paragraphs 1-11 are true, accurate  and complete, and

    hereby make such statements to Blank Rome LLP.

*Id*. at PDF p. 85.

At the hearing, Avia conceded that when a user plays against a video of a previously played game[5], if the user loses, Avia keeps with winnings:

    Mr. Riedinger:  As I understand it, if the video player wins, the player who is live at the

    time is losing and they lose the bet that they made.

    The Court:  Right.  And who- who benefits from that?

    Mr. Riedinger:  As I understand it, that money is retained by the company.

Dkt. 429 (SEALED transcript of 10/24/23 hearing) at 22:14-20.

---

[5] The Parties contest whether this format is in fact "a bot."  However, at a previous hearing addressing issues arising out of "bot"-related discovery, the Court expressly included that format in the Court's definition of "bot" for purposes of these discovery disputes.  Dkt. 286 (transcript of 9/28 hearing) at 5-6.

1    Further in the hearing and in subsequent briefing, Avia argued that a "Game" (a product,
2    such as Solitaire) is different from a "match" (a competition between players). *Id.* at 59:14-61:16;
3    Dkt. 421-1 at 3. Avia argues that Skillz' allegations arise out of user statements regarding
4    matches (*see* Dkt. 416-3 at 4, Ex. C), whereas the statements in the Opinion Letter relate to
5    Games. "So what we have with the Avia People is a belief that their games overall don't result in
6    them keeping money. Individual matches might, but the games don't. They're losing money on
7    what Skillz is calling Bots." Dkt. 429 (SEALED transcript of 10/24/23 hearing) at 60:5-8. But
8    there is no evidence in the record to support counsel's argument that Avia was distinguishing
9    between matches and Games, and Mr. Leung's verification undermines this argument. The Court
10   does not find Avia's attempt to distinguish between whether it retained "Prizes" in a particular
11   match or in a "Game" to be either meaningful or persuasive for purposes of the crime-fraud
12   analysis. Nor is it persuaded by the suggestion that Avia was distinguishing between a match and
13   a Game in signing off on the Opinion Letter. Avia keeps money awarded by the use of bots, yet it
14   represented to the financial institutions that it did not keep any Prize "*associated with any Game*."
15   This latter statement logically encompasses a match played using any particular Game. Thus, the
16   evidence demonstrates that it is more likely than not that the statements in section 4 of the Opinion
17   Letter set forth above are intentional, material misrepresentations.[6]

18   Avia also argued that Skillz has presented no evidence of reliance or harm by the financial
19   institutions. Avia's emphasis on whether or not Skillz can ultimately prove fraud is misplaced.
20   *See In re Napster*, 479 F.3d at 1094–95. Here, there are sufficient facts of an actual
21   misrepresentation along with the fact that Avia games has been able to conduct its business with
22   the assistance of financial institutions from which reliance by those institutions on the Opinion
23   Letter is reasonably inferred. *See United States v. Christensen*, 828 F.3d 763, 801 (9th Cir. 2015).
24   Similarly, harm to the institutions from doing business with Avia based upon the Opinion Letter is
25   also reasonably inferred.

---

[6] There is no evidence in the record before this Court, including in documents reviewed *in-camera*, that counsel at Blank Rome was aware that the statements were misrepresentations of fact.

The communications at issue all relate to the development of the opinion letter by Blank Rome, including the statement affirmed by Avia that it takes no prizes from any Game. The Court finds Skillz has shown that it is more likely than not that Avia consulted Blank Rome for advice that would serve Avia in the commission of a fraud, to wit the representations in section 4 of the Opinion Letter, and that the communications were made in furtherance of that fraud. Accordingly, the Court concludes that as to the communications between Avia and its counsel at Blank Rome regarding the Opinion Letter, the crime-fraud exception applies and the documents must be produced.

### 2.   Avia's statements to users in re use of bots

At issue here are communications between Avia and counsel at Blank Rome regarding how Avia should respond to customer complaints regarding the use of bots. As to these communications, Skillz must demonstrate that it is more likely than not that Avia consulted Blank Rome for advice that would serve Avia in the commission of a fraud, specifically what it would tell users about its use of bots, and that the communications were made in furtherance of the fraud. *See* section 2 above.

The essence of Skillz' allegation of fraud arising out of Avia's representations to users is that (1) there were intentional, material misrepresentations to users; (2) which were relied upon; (3) to the users' detriment. Dkt. 300-3 at 2 (citing *Huntsman*, 76 F.4th at 971). In supplemental briefing, Skillz provided the Court ten examples of Avia's public responses to users' complaints about playing against bots or "not live players." Avia frequently responded that the user was playing against "opponents with similar skill level," or even more directly that "your opponents are real players, not bots." Dkt. 416-6, at 2-6. These statements misrepresent against whom or what the users are playing. Even adopting, *en arguendo*, Avia's position that a previously video-taped game is not a "bot," its response that the opponent is "real" to the users' complaint that the opponent is "not live" is an intentional, material misrepresentation, and Avia's argument to the contrary at the hearing was unavailing.

As with the Opinion Letter, Avia argued that Skillz has presented no evidence of reliance by or harm to the users. As addressed above, Avia's emphasis on whether or not Skillz can

14

1  ultimately prove fraud is misplaced. *See In re Napster*, 479 F.3d at 1094–95. Here, there are
2  sufficient facts of actual misrepresentations along with the fact that Avia has continued to be in
3  business because users have continued to play its games from which the users' reliance on Avia's
4  misrepresentations is reasonably inferred. *See Christensen*, 828 F.3d at 801. Harm to the users,
5  loss of their wagers to bots, is also a reasonable inference.

6        The communications at issue all relate to Avia inquiries to Blank Rome as to how much
7  information Avia must give users who raise these complaints, including whether opponents have
8  to be identified. The Court finds that Skillz has shown that it is more likely than not that Avia
9  consulted Blank Rome for advice that would serve Avia in the commission of a fraud, to wit the
10 misrepresentations to users as to Avia's use of bots, and that the communications were made in
11 furtherance of that fraud. Accordingly, the Court concludes that as to the communications
12 between Avia and its counsel at Blank Rome regarding Avia's response to user complaints
13 regarding opponents, the crime-fraud exception applies and the documents must be produced.[7]

14       In sum, all 87 documents listed in Section 3 of Attachment A are in furtherance of the
15 alleged fraud arising out of Avia's misrepresentations to financial institutions and customers. *See*
16 *In re Grand Jury Proc.,* 87 F.3d at 381-82. Accordingly, the crime-fraud exception to the
17 assertion of privilege applies to these documents.[8] Avia is to produce the documents to Skillz no
18 later than November 2, 2023. Either party may appeal this order to the District Judge. *See* Fed. R.
19 Civ. P. 72(a) ("A party may serve and file objections" to a nondispositive pretrial order of a
20 magistrate judge "within 14 days after being served with a copy"); *see also* Civ. L.R. 72-2
21 (procedure for motion for relief from nondispositive pretrial order of a magistrate judge).

---

[7] There is no evidence in the record before this Court, including in documents reviewed *in-camera*, that counsel at Blank Rome was aware that the statements to users were misrepresentations of fact.

[8] Although the Parties' joint statement (Dkt. 301) focuses on attorney-client privilege, Avia's privilege log claims both attorney-client privilege and work product protection for four documents in this category: PrivLog_0463 to PrivLog_0466. *See* Dkt. 300-4. As indicated above, the crime-fraud exception extinguishes both the attorney-client privilege and the work product doctrine. *See Eastman,* 594 F. Supp. at 1188.

15

## IV. CONCLUSION

For the foregoing reasons, the Court orders Avia to produce the documents listed in Attachment A to Skillz no later than November 2, 2023.

**SO ORDERED.**

Dated: October 31, 2023

                                                                  _____
                                                                  SUSAN VAN KEULEN
                                                                  United States Magistrate Judge

16

# ATTACHMENT A

1. Avia is ordered to produce the following documents, including attachments, because the Court finds that they are not privileged:

    PrivLog_587

    PrivLog_588

2. Avia is ordered to produce the following documents, including attachments, because even if covered by the common interest doctrine, these documents fall within the crime-fraud exception to attorney-client privilege:

    PrivLog_0400

    PrivLog_0401

    PrivLog_0403

    PrivLog_0404

    PrivLog_0405

    PrivLog_0406

    PrivLog_0407

    PrivLog_0408

    PrivLog_0430

    PrivLog_0431

    PrivLog_0446

    PrivLog_0447

3. Avia is ordered to produce the following documents, including attachments, because the Court finds that they fall within the crime-fraud exception to attorney-client privilege:

    PrivLog_0419

    PrivLog_0420

    PrivLog_0421

    PrivLog_0422

    PrivLog_0423

    PrivLog_0424

    PrivLog_0426

| | |
|---|---|
| 1 | PrivLog_0432 |
| 2 | PrivLog_0433 |
| 3 | PrivLog_0434 |
| 4 | PrivLog_0435 |
| 5 | PrivLog_0436 |
| 6 | PrivLog_0437 |
| 7 | PrivLog_0438 |
| 8 | PrivLog_0439 |
| 9 | PrivLog_0440 |
| 10 | PrivLog_0442 |
| 11 | PrivLog_0443 |
| 12 | PrivLog_0444 |
| 13 | PrivLog_0445 |
| 14 | PrivLog_0448 |
| 15 | PrivLog_0449 |
| 16 | PrivLog_0450 |
| 17 | PrivLog_0456 |
| 18 | PrivLog_0457 |
| 19 | PrivLog_0458 |
| 20 | PrivLog_0459 |
| 21 | PrivLog_0460 |
| 22 | PrivLog_0461 |
| 23 | PrivLog_0463 |
| 24 | PrivLog_0464 |
| 25 | PrivLog_0465 |
| 26 | PrivLog_0466 |
| 27 | PrivLog_0467 |
| 28 | PrivLog_0468 |

| | |
|---|---|
| 1 | PrivLog_0469 |
| 2 | PrivLog_0470 |
| 3 | PrivLog_0471 |
| 4 | PrivLog_0472 |
| 5 | PrivLog_0473 |
| 6 | PrivLog_0474 |
| 7 | PrivLog_0475 |
| 8 | PrivLog_0476 |
| 9 | PrivLog_0477 |
| 10 | PrivLog_0482 |
| 11 | PrivLog_0483 |
| 12 | PrivLog_0484 |
| 13 | PrivLog_0485 |
| 14 | PrivLog_0486 |
| 15 | PrivLog_0487 |
| 16 | PrivLog_0488 |
| 17 | PrivLog_0489 |
| 18 | PrivLog_0490 |
| 19 | PrivLog_0491 |
| 20 | PrivLog_0493 |
| 21 | PrivLog_0500 |
| 22 | PrivLog_0508 |
| 23 | PrivLog_0509 |
| 24 | PrivLog_0510 |
| 25 | PrivLog_0513 |
| 26 | PrivLog_0514 |
| 27 | PrivLog_0515 |
| 28 | PrivLog_0516 |

| | |
|---|---|
| 1 | PrivLog_0789 |
| 2 | PrivLog_0790 |
| 3 | PrivLog_0791 |
| 4 | PrivLog_0792 |
| 5 | PrivLog_0793 |
| 6 | PrivLog_0794 |
| 7 | PrivLog_0795 |
| 8 | PrivLog_0796 |
| 9 | PrivLog_0797 |
| 10 | PrivLog_0798 |
| 11 | PrivLog_0802 |
| 12 | PrivLog_0803 |