*Counsel for Defendant AviaGames Inc.*
*Listed on Signature Page*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SKILLZ PLATFORM INC., a Delaware corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>AVIAGAMES INC., a Delaware corporation,<br><br>                    Defendant. | Case No. 5:21-cv-02436-BLF<br><br>**DEFENDANT AVIAGAMES INC.'S ANSWER TO SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED**<br><br>Judge: Hon. Beth L. Freeman |

Defendant AviaGames Inc. ("AviaGames" or "Defendant"), by and through its undersigned counsel, hereby answer and respond to Plaintiff Skillz Platform Inc.'s Second Amended Complaint as follows. For the sake of convenience, Defendant incorporates the headings appearing in the Second Amended Complaint. Defendant does not admit any allegation made in, or inference suggested by, such headings, and specifically deny the same. Defendant denies all allegations in the Second Amended Complaint that are not expressly admitted below. Defendant denies that Plaintiff is entitled to the requested relief or any relief.

**INTRODUCTION**

1. AviaGames denies stealing Skillz's intellectual property. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of Paragraph 1 and, on that basis, denies them.

2. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 2 and, on that basis, denies them.

3. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 3 and, on that basis, denies them.

4. AviaGames admits that it met with Skillz in 2016 and that it was once a Skillz customer. AviaGames denies the remaining allegations in Paragraph 4.

5. AviaGames admits that it has a platform called Pocket7Games. AviaGames denies the remaining allegations in Paragraph 5.

6. AviaGames admits that it has standalone games independent of its Pocket7Games platform, including games titled "Bingo Clash" and "Solitaire Clash." AviaGames denies the remaining allegations in Paragraph 6.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

11. AviaGames lacks knowledge or information to form a belief about why Skillz brings this action and, on that basis, denies those allegations. AviaGames denies the remaining allegations in Paragraph 11.

## THE PARTIES

12. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 12 and, on that basis, denies them.

13. AviaGames admits that it is a Delaware corporation and that it offers the Pocket7Games application and standalone game applications in the United States and in this District. AviaGames denies the remaining allegations in Paragraph 13.

14. Denied.

## JURISDICTION & VENUE

15. AviaGames admits that this action purports to be an action for patent infringement, but AviaGames denies that it infringes or has infringed any valid Skillz patent claim.

16. AviaGames admits that this action purports to be an action for patent infringement, but AviaGames denies that it infringes or has infringed any valid Skillz patent claim.

17. Paragraph 17 states legal conclusions to which no response is required. To the extent a response is required, AviaGames admits that it operates in the Northern District of California but denies the allegations in Paragraph 17.

18. Paragraph 18 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 18.

19. Paragraph 19 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 19.

20. Paragraph 20 states legal conclusions to which no response is required. To the extent a response is required, AviaGames admits that it has a regular and established place of business in the Northern District of California but denies the allegations in Paragraph 20.

## INTRADISTRICT ASSIGNMENT

21. Paragraph 21 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 21.

**FACTUAL ALLEGATIONS**

**I.     SKILLZ'S INNOVATION GIVES BIRTH TO A THRIVING NEW INDUSTRY**

22.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 22 and, on that basis, denies them.

23.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 23 and, on that basis, denies them.

24.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 24 and, on that basis, denies them.

25.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 25 and, on that basis, denies them.

26.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 26 and, on that basis, denies them.

27.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 27 and, on that basis, denies them.

28.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 28 and, on that basis, denies them.

29.     AviaGames admits that a document purporting to be a copy of U.S. Patent No. 9,649,564 (the "'564 Patent" or the "Patent-in-Suit") was attached to the Second Amended Complaint in this matter and that on its face, that document identifies Skillz as the assignee. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations of Paragraph 29 and, on that basis, denies them.

30.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 30 and, on that basis, denies them.

**II.    LED BY SKILLS, THE "ESPORTS" INDUSTRY EXPLODES**

31.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 31 and, on that basis, denies them.

32.     AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 32 and, on that basis, denies them.

33. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 33 and, on that basis, denies them.

34. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 34 and, on that basis, denies them.

35. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 35 and, on that basis, denies them.

36. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 36 and, on that basis, denies them.

37. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 37 and, on that basis, denies them.

38. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 38 and, on that basis, denies them.

39. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 39 and, on that basis, denies them.

40. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 40 and, on that basis, denies them.

41. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 41 and, on that basis, denies them.

42. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 42 and, on that basis, denies them.

43. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 43 and, on that basis, denies them.

### III. AVIAGAMES TEAMS UP WITH SKILLS TO DEVELOP A GAME FOR THE SKILLZ PLATFORM—OR SO IT SAYS

44. Denied.

45. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 45 and, on that basis, denies them.

46. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 46 and, on that basis, denies them.

47. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 47 and, on that basis, denies them.

48. AviaGames lacks knowledge or information sufficient to form a belief regarding the truth of the allegations of Paragraph 48 and, on that basis, denies them.

49. AviaGames admits that it was a Skillz customer in 2016. AviaGames denies the remaining allegations of Paragraph 49.

50. Denied.

51. AviaGames admits that it has released standalone games since 2016. AviaGames denies the remaining allegations of Paragraph 51.

52. Denied.

53. AviaGames lacks knowledge or information to form a belief about why Skillz brings this action and, on that basis, denies those allegations. AviaGames denies the remaining allegations in Paragraph 53.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. 9,649,564

54. AviaGames repeats and incorporates herein its responses to Paragraphs 1 through 53 of this Answer.

### The '564 Patent

55. AviaGames admits that a document purporting to be a copy of the '564 Patent was attached to the Original Complaint in this matter and that on its face, that document is purportedly entitled "Peer-to-peer wagering platform," and shows an issue date to be May 16, 2017.

56. AviaGames admits that a document purporting to be a copy of the '564 Patent was attached to the Original Complaint in this matter and that on its face, that document shows a filing date of December 21, 2015. AviaGames denies the remaining allegations of Paragraph 56.

57. AviaGames admits that a document purporting to be a copy of the '564 Patent was attached to the Original Complaint in this matter and that on its face, that document identifies Skillz as the assignee.

1  58. Denied.

2  59. Denied.

3  60. AviaGames admits that the texts at 10:18-24 and 10:26-27 of the Second Amended Complaint purport to be quotations from the '564 Patent. AviaGames denies the remaining allegations of Paragraph 60.

6  61. Denied.

7  62. AviaGames admits that the text at 11:15-25 of the Second Amended Complaint purports to be quotation from claim 1 of the '564 Patent. AviaGames denies the remaining allegations of Paragraph 62.

10  63. AviaGames admits that the text at 11:27-28 of the Second Amended Complaint is a quotation from claim 3 of the '564 Patent. AviaGames denies the remaining allegations of Paragraph 63.

### '564 Patent Allegations

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. AviaGames admits that it offers the Pocket7Games platform in the United States through the Apple App Store. AviaGames also admits that it offers standalone games such as "Bingo Clash" and "Solitaire Clash" in the United States through the Apple App Store. AviaGames denies the remaining allegations in Paragraph 68.

69. AviaGames admits that its primary products and services in the United States include the Pocket7Games platform and its standalone games. AviaGames denies the remaining allegations in Paragraph 69.

70. AviaGames admits that it has used the Pocket7Games platform and its standalone games in the United States. AviaGames denies the remaining allegations in Paragraph 70.

71. Denied.

72. Denied.

73. Denied.

74. AviaGames admits that the text at 19:17-19 contains quotes from Ms. Vickie Chen's deposition transcript. AviaGames denies the remaining allegations in Paragraph 74.

75. AviaGames admits that the text at 20:1-10 contains quotes from Ms. Vickie Chen's deposition transcript. AviaGames denies the remaining allegations in Paragraph 75.

76. AviaGames admits the text at 20:13-15 contains quotes from Ms. Vickie Chen's deposition transcript. AviaGames denies the remaining allegations in Paragraph 76.

77. AviaGames admits that it signed a Software License Agreement with Mr. Jarrod Epps. AviaGames admits that the text at 20:23-26 contains quotes from Ms. Vickie Chen's deposition transcript. AviaGames denies the remaining allegations in Paragraph 77.

78. AviaGames admits that the text at 20:28-21:1-7 contains quotes from AviaGames' interrogatory responses. AviaGames denies the remaining allegations in Paragraph 78.

79. Denied.

80. AviaGames admits that the text at 21:18-19 and 21:23-26 contains quotes from Mr. Peng Zhang's deposition transcript. AviaGames denies the remaining allegations in Paragraph 80.

81. Denied.

82. Paragraph 82 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 82.

83. Denied.

84. AviaGames admits that, under certain circumstances, it may match a live user with a previous played match by a real player of a similar skill level ("historical playthrough"). AviaGames denies the remaining allegations in Paragraph 84.

85. AviaGames admits that when a historical playthrough wins a match against a live user, it retains the live user's entry fee and, if offered, the cash prize for the match. AviaGames denies the remaining allegations in Paragraph 85.

86. Paragraph 86 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 86.

87. AviaGames admits that when a historical playthrough wins a match against a user, it retains the user's entry fee, which includes the platform commission and the cash prize. But when a historical playthrough loses a match against a user, AviaGames, through the historical playthrough, pays the entry fee and the cash prize to the user. AviaGames denies the remaining allegations in Paragraph 87.

88. Denied.

89. Paragraph 89 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 89.

90. Paragraph 90 states legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 90.

91. AviaGames denies that historical playthroughs are "bots," and therefore denies the allegations in Paragraph 91. AviaGames denies that Mr. Peng Zhang has testified that "if a user could not find another user to match with, the user would wait indefinitely." The remaining allegations in Paragraph 91 state legal conclusions to which no response is required. To the extent a response is required, AviaGames denies the allegations in Paragraph 91.

92. Denied.

## PRAYER FOR RELIEF

Defendant denies that Plaintiff is entitled to any relief.

## DEMAND FOR JURY TRIAL

No response is required to Plaintiff's demand for a trial by jury, but Defendant demands a trial by jury on all issues so triable, including without limitation, Defendant's defenses.

## DEFENDANTS' DEFENSES

Without any admission as to the burden of proof, and subject to its responses above, Defendant asserts the following defenses, upon information and belief, in response to the allegations of the Second Amended Complaint. Regardless of how such defenses are listed herein, Defendant undertakes the burden of proof only as to those defenses that are deemed affirmative defenses as a matter of law. Defendant expressly reserves the right to amend or raise additional

defenses pursuant to any docket control order or as additional information becomes available through further investigation and discovery.

**First Affirmative Defense**

**(No Infringement)**

AviaGames does not and has not infringed, whether directly or indirectly, willfully, literally or under the doctrine of equivalents, any valid and enforceable claim of the '564 Patent.

**Second Affirmative Defense**

**(Invalidity)**

Each asserted claim of the Patent-In-Suit is invalid for failure to comply with one or more requirements of the patent laws of the United States, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

**Third Affirmative Defense**

**(Prosecution History Estoppel)**

By reason of the prior art and/or statements and representations made to and by the U.S. Patent and Trademark office during prosecution of the applications that led to the issuance of the Patent-In-Suit and related applications, including without limitation post-grant proceedings relating to the validity of the Patent-In-Suit and related patents, the Patent-In-Suit is so limited that none of the claims of the Patent-In-Suit could properly be construed to cover any activity of AviaGames.

**Fourth Affirmative Defense**

**(Statute of Limitations and Marking)**

Upon information and belief, Skillz's claim for damages is limited by 35 U.S.C. §§ 286 and/or 287.

**Fifth Affirmative Defense**

**(Judicial Estoppel)**

Skillz's claim for relief is limited by the doctrine of judicial estoppel, including without limitation because of statements made by Skillz and relied upon by the U.S. Patent and Trademark Office during post-grant proceedings related to the validity of the Patent-In-Suit.

**Sixth Affirmative Defense**

**(Inequitable Conduct and Unclean Hands)**

Skillz's enforcement of the Patent-In-Suit, and each claim thereof, is barred by inequitable conduct and unclean hands, as set forth below:

93. The Patent-in-Suit is unenforceable due to inequitable conduct and fraud on the U.S. Patent and Trademark Office under 37 C.F.R. 1.56(a). Specifically, Andrew Paradise, Skillz's CEO, knowingly and intentionally failed to disclose full, complete, and accurate inventorship. These false representations and deliberate omissions regarding inventorship were material to patentability, made with the intent to deceive the USPTO, and were justifiably relied upon by the USPTO in ultimately issuing the '564 Patent.

94. Documentary evidence produced by Skillz in this case indicates that two engineers working with Skillz as consultants at the relevant time, Andrea Shubert and Tim Fredette, either individually or collectively contributed to the inventions of the '564 Patent. As such, either or both should have been named as inventors.

95. The '564 Patent ultimately arose from an application originally filed on December 21, 2015 as Application Serial Number 14/976,569.

96. The '564 Patent claims priority to U.S. App. No. 13/569424, which was filed on August 8, 2012.

97. The '564 Patent also claims priority to U.S. App. No. 13/858581, which was a continuation in part of U.S. App. No. 13/569424, and was filed on April 8, 2013.

98. U.S. App. No. 13/858581 is the first time that subject matter related to the claims, namely random number generation and seeds, was introduced into the common specification. The below paragraphs were added in U.S. App. No. 13/858581:

> The transactional server 160 can further be configured to generate a stream of pseudo-random numbers for use by the third party game instances. Since random numbers are typically used in gameplay engines to decide game elements and properties (e.g., what obstacles are present can be decided based on the value that a random number generator returns), the use of common random numbers can provide a common gameplay experience to a subset of users (e.g., the players involved in a third party game tournament).

> The common gameplay experience can be used to standardize (or level the playing field) for a game of skill that still has random elements.
>
> For example, while Tetris is typically considered a game of skill, the order in which the Tetris pieces present to a player is normally random. By providing a common stream of pseudo-random numbers to each game instance participating in an online tournament, the order that Tetris pieces appear to each player can be common across all participating game instances. Thus, the results of a competitive tournament would be based entirely on skill, and not on a random chance of getting an easier order of Tetris pieces presented.
>
> In one example, the transactional server 160 can use a tournament identification number as a seed to generate pseudo-random numbers, thus causing gameplay to be different between tournaments, but not between game instances involved in a given tournament.

99. The critical aspect of the '564 Patent claims is (1) "provid[ing] the online competition to a player such that a beginning of gameplay experience is common between the game instance and a second game instance" and (2) "a stream of pseudo random number seeds characterized by a unique match identifier." Specifically, the phrase "a stream of pseudo random number seeds characterized by a unique match identifier" was amended in prosecution from the phrase "a stream of pseudo random number seeds **associated with** a unique match identifier" (emphasis added) to overcome the prior art rejections.

100. The documentary evidence produced in this case demonstrates that these elements were conceived by Andrea Shubert and/or Tim Fredette.

101. On October 11, 2012, Skillz founder and named inventor Casey Chafkin wrote to Andrea Shubert, then working as a consultant for Skillz, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (SKLZPAT00058358)

102. On October 12, 2012, Andrea Shubert responded. Among other comments in Andrea Shubert's email is the suggestion that, ███████████████████████

1  ███████████████████████████████████████████████
2  ███████████████████████████████████████████████
3  ███ (SKLZPAT00058358)

4  103. Andrea Shubert's October 12, 2012 e-mail was sent to Casey Chafkin and Andrew
5  Paradise, both of whom were subsequently named as inventors on the '564 Patent, while Andrea
6  Shubert was not.

7  104. A few days later, on October 17, 2012, another engineer working with Andrea
8  Shubert named Tim Fredette wrote an e-mail to Andrew Paradise and Andrea Shubert stating:
9  ███████████████████████████████████████████████
10 ████████████████████████████ (SKLZPAT00058354)

11 105. Mr. Fredette continued that ████████████████████
12 ███████████████████████████████████████████████
13 ███████████████████████████████████████████████
14 ████████████████████████████ (SKLZPAT00058354, 56-
15 57) (emphasis added).

16 106. Andrea Schubert complimented Mr. Fredette that ███████████████
17 (SKLZPAT00058354).

18 107. No other documentary evidence regarding conception or reduction to practice of
19 the '564 Patent pre-dates Andrea Shubert's October 12, 2012 e-mail.

20 108. The closest documents in time are dated nearly half a year later.

21 109. Although Andrew Paradise, Skillz's CEO, claimed to have invented the '564
22 Patent ███████████████████████████████████████
23 ████████████████████

24 110. Andrea Schubert now goes by Thandrie Davis and uses the plural pronouns
25 "they/their." (https://thandrie.games/#intro)



111. Thandrie Davis (formerly Andrea Shubert) has indicated their belief that they created the Skillz tournament system.

112. Further, Thandrie Davis (formerly Andrea Shubert) posted on their Twitter account that, "[a] long time ago, I created [Skillz's] rating system for fair matchups."

> **Tweet**
>
> **Thandrie**
> @_Thandrie
>
> .@skillz closes a $15MM funding round. A long time ago, I created their rating system for fair matchups. gamasutra.com/view/news/2547...
>
> 8:07 AM · 9/29/15
>
> **1** Retweet

113. Thandrie Davis' (formerly Andrea Shubert) personal webpage makes similar claims of creation and inventorship (https://thandrie.games/#awards).

- Employee #8, Chief Creative Consultant and Product Lead at **Skillz** in 2013, left in 2014 after finishing the core tournament matchmaking product. **Went public in 2020 for $3.5 Billion.**

114. Each person involved in the prosecution of the '564 Patent, including each of the four named inventors and their patent prosecution counsel, owed a statutory duty of candor to the U.S. Patent & Trademark Office.

115. Among other things, each person involved in the prosecution of the '564 Patent had a duty to notify the U.S. Patent & Trademark Office of the names of the proper inventors of the '564 Patent.

116. Each named inventor signed a declaration in connection with the prosecution of the '564 Patent.

117. In those sworn declarations, each named inventor represented that, "I believe that I am the original inventor or an original joint inventor of a claimed invention in the application."

118. Moreover, each of the inventors signed under penalty of perjury.

119. Yet, no one involved with the prosecution of the '564 Patent identified Andrea Shubert and/or Tim Fredette as potential inventors in any of the filings submitted to the U.S. Patent & Trademark Office.

120. Both CEO Andrew Paradise and founder Casey Chafkin had reason to know that Andrea Shubert and Tim Fredette contributed to the '564 Patent's invention by way of their suggestions regarding how and why to create "a stream of pseudo random number seeds characterized by a unique match identifier."

121. Indeed, CEO Andrew Paradise ███████████████████████
███████████████████

███████████████████████████████████
███████████████████████████████████
███████████████
█████
███████████
███████████████████
████
███████████████████████
███████████████████████████

122. The omission of Andrea Shubert and Tim Fredette as inventors appears to have been made with intent to deceive the U.S. Patent & Trademark Office.

123. For example, CEO Andrew Paradise has represented that the '564 Patent is a ███████████████████████████████████
█████

124. As a consultant rather than an employee, Thandrie Davis (formerly Andrea Shubert) does not appear to have been under any obligation to assign inventorship rights to Skillz.

125. Accordingly, if Skillz had acknowledged Thandrie Davis' (formerly Andrea Shubert) role as an inventor, Skillz may not have retained its ownership and control of the '564 Patent.

126. Similarly, no evidence has been presented that Tim Fredette was under any obligation to assign inventorship rights to Skillz.

127. Given that Mr. Fredette was fired from Skillz over a personality conflict with another employee, if Skillz had acknowledged Mr. Fredette's role as an inventor, Skillz may not have retained its ownership and control of the '564 Patent.

128. Rather than risk losing the '564 Patent, CEO Andrew Paradise—and perhaps others, like founder Casey Chafkin—decided to withhold the contributions of Thandrie Davis (formerly Andrea Shubert) and Tim Fredette.

129. The improper inventorship of the '564 Patent is confirmed by the fact that, despite being a named inventor on the '564 Patent, Mr. Chafkin testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

130. Another named inventor, Jason Petralia, confirmed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

131. As such, at least Andrew Paradise had deceptively excluded Andrea Shubert and Tim Fredette as inventors, in order to secure the patent for himself and his company Skillz.

132. The '564 Patent is invalid because it contains misjoinder and/or nonjoinder of inventors under 35 U.S.C. §§ 101, 102, 111, 115, 116, 282.

133. Inventorship is a critical requirement for obtaining a patent, and any misrepresentations with regard to inventorship, such as the misrepresentations made by Andrew Paradise, are material to patentability.

134. Having deliberately withheld material information from the U.S. Patent & Trademark Office regarding inventorship contrary to his duty of candor, and having provided a false inventor's oath in support of the '564 Patent, Andrew Paradise committed inequitable conduct.

135. In light of this fraud on the Patent & Trademark Office, the Court should find the '564 Patent unenforceable.

## RESERVATION OF RIGHTS

AviaGames reserves the right to amend or supplement its answers and affirmative defenses above should it learn of additional information or defenses.

| | | |
|---|---|---|
| 1 | DATED: November 22, 2023 | **PERKINS COIE LLP** |
| 2 | | |
| 3 | | By: */s/ Chao "Wendy" Wang*<br>Chao "Wendy" Wang, Bar No. 289325 |
| 4 | | WWang@perkinscoie.com<br>PERKINS COIE LLP |
| 5 | | 3150 Porter Drive<br>Palo Alto, CA 94304 |
| 6 | | Telephone: (650) 838-4315<br>Facsimile: (650) 838-4350 |
| 7 | | Andrea W. Jeffries, SBN: 183408 |
| 8 | | ajeffries@jonesday.com<br>Sarah G. Conway, SBN: 261414 |
| 9 | | sgconway@jonesday.com<br>JONES DAY |
| 10 | | 555 S. Flower Street, 50th Fl.<br>Los Angeles, CA 90071 |
| 11 | | Telephone: (213) 489-3939<br>Facsimile: (213) 243-2539 |
| 12 | | Matthew Chung, SBN: 339854 |
| 13 | | mchung@jonesday.com<br>JONES DAY |
| 14 | | 555 California St, 26th Fl.<br>San Francisco, CA 94109 |
| 15 | | Telephone: (415) 626-3939<br>Facsimile: (415) 875-5700 |
| 16 | | Miguel J. Bombach, Bar No. 274287 |
| 17 | | MBombach@perkinscoie.com<br>Abigail A. Gardner, Bar No. 334598 |
| 18 | | AGardner@perkinscoie.com<br>PERKINS COIE LLP |
| 19 | | 11452 El Camino Real, Suite 300<br>San Diego, CA 92130-2080 |
| 20 | | Telephone: (858) 720-5700<br>Facsimile: (858) 720-5799 |
| 21 | | Jerry A. Riedinger, (*pro hac vice*) |
| 22 | | JRiedinger@perkinscoie.com<br>Judith B. Jennison, Bar No. 165929 |
| 23 | | JJennison@perkinscoie.com<br>PERKINS COIE LLP |
| 24 | | 1201 Third Avenue, Suite 4900<br>Seattle, WA 98101-3099 |
| 25 | | Telephone: (203) 359-8000<br>Facsimile: (203) 359-9000 |
| 26 | | |
| 27 | | |
| 28 | | |

1
2
3
4
5
6
7
8

W. Matthew Pierce (*pro hac vice*)
WPierce@perkinscoie.com
PERKINS COIE LLP
1900 16th Street, Ste. 1400
Denver, CO 80202
Telephone: (303) 291-2300
Facsimile: (303) 291-2400

Dakota Paul Kanetzky (*pro hac vice*)
DKanetzky@perkinscoie.com
PERKINS COIE LLP
405 Colorado Street, Ste 1700
Austin, TX 78701
Telephone: (737) 256-6115
Facsimile: (737) 256-6300

9

*Attorneys for Defendant AviaGames Inc.*

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28