UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SKILLZ PLATFORM INC., <br> Plaintiff, <br> v. <br> AVIAGAMES INC., <br> Defendant. | Case No. 21-cv-02436-BLF <br><br> **ORDER REGARDING MOTIONS** *IN LIMINE* <br><br> [Re: ECF No. 353, 356, 358, 359, 368, 370, 372, 383] |

On November 9, 2023, the Court held a pretrial conference in this action, during which it issued oral rulings on Plaintiff Skillz Platform Inc.'s and Defendant AviaGames Inc.'s motions *in limine*. The Court here expands upon those oral rulings.

**I.   SKILLZ'S MOTIONS** *IN LIMINE*

Skillz filed four motions *in limine*. ECF Nos. 358, 368, 370, 372. AviaGames opposed all four motions. ECF Nos. 398, 399, 400, 401. The Court considers each motion *in limine* in turn.

**A.   Skillz's Motion** *in Limine* **No. 1 to Exclude Evidence or Argument Relating to Unasserted or Invalid Claims and Patents (ECF No. 358)**

Skillz moves to exclude the facts that Skillz originally asserted more claims and patents than Skillz will present to the jury and that the '602 Patent was found unpatentable. ECF No. 358 at 1. Skillz argues that such evidence is inadmissible under Federal Rules of Evidence 401, 402, and 403 because it is not relevant and it risks prejudice, confusion of issues, and misleading the jury. *Id.* at 1–2. AviaGames agrees that Skillz's unasserted claims and patents are not relevant to the validity or infringement of the '564 Patent and that AviaGames will not point to the fact that the '602 Patent was found unpatentable to imply that the '564 patent is invalid. ECF No. 398 at 1. However, AviaGames argues that the '602 Patent is relevant to damages because Skillz's damages

expert, Jim Bergman, did not consider the '602 Patent or any of Skillz's other intellectual property in assigning value to the '564 Patent. *Id.* at 1–3.

The Court agrees with AviaGames that evidence of the '602 Patent and Skillz's other intellectual property is relevant to damages because AviaGames may use this evidence to challenge Bergman's damages opinion. *See SPEX Techs. v. Apricorn, Inc*, No. CV 16-07349JVS(AGRX), 2020 WL 1289546, at *1 (C.D. Cal. Jan. 21, 2020) (permitting evidence of other claims as relevant to an expert's damages opinion). Moreover, evidence of the '602 Patent and Skillz's other intellectual property—absent suggestion that the '602 Patent was found unpatentable—would not prejudice Skillz in the eyes of the jury.

Accordingly, the Court GRANTS Skillz's Motion *in Limine* No. 1 as to any evidence that the '602 Patent was invalidated. This ruling does not preclude AviaGames from examining Bergman and, AviaGames' damages expert, Brian Napper regarding the relative value of the '564 Patent to other patents held by Skillz.

**B.  Skillz's Motion *in Limine* No. 2 to Exclude Reasonable Royalty Opinion of Brian W. Napper (ECF No. 368)**

Skillz argues that Napper's reasonable royalty opinion should be excluded to the extent that he relies on a November 22, 2016 Software License between Jarrod Epps and AviaGames ("Epps Agreement") and a May 13, 2020 License between Shanghai Huanyue Network Technology and AviaGames ("Shanghai Agreement"). ECF No. 368 at 1. Skillz raises three arguments. First, Skillz argues that the Shanghai Agreement should be excluded under Federal Rule of Civil Procedure 37(c)(1) because AviaGames failed to timely identify the Shanghai Agreement in its interrogatory responses.[1] *Id.* at 2–4. Second, Skillz argues that the Shanghai Agreement was not at arms-length because AviaGames' CEO, Vickie Chen, represented both parties in the transaction. *Id.* at 4–5. Third, Skillz argues that both the Epps and Shanghai

---

[1] Skillz's motion *in limine* originally argued the Shanghai Agreement should be excluded because AviaGames failed to identify or produce the Shanghai Agreement until after the close of fact discovery. ECF No. 368 at 1. At the pretrial conference, Skillz corrected its brief and acknowledged that the Shanghai Agreement was produced before the close of fact discovery. ECF No. 489 at 58:3–8. However, Skillz continued to argue that the Shanghai Agreement should be excluded because AviaGames failed to timely identify the agreement in its interrogatory responses. *Id.* at 60:15–61:20.

2

Agreements represent AviaGames' cost to obtain the infringing technology, which has no relevance to the question of a reasonable royalty. *Id.* at 5.

AviaGames responds that the Shanghai Agreement was produced 12 days before the close of discovery and that Skillz was put on notice of the Shanghai Agreement and failed to follow up on this information. ECF No. 399 at 1; ECF No. 489 at 64:5–65-11. AviaGames also argues that the record includes evidence that the Shanghai Agreement was negotiated at arms-length: the Shanghai Agreement includes an indemnification clause and Pannel Kerr Forster conducted a third-party valuation to determine the fair market value of the transaction. ECF No. 399 at 2. Finally, AviaGames argues that Napper used the Epps and Shanghai Agreements as valuations, rather than design alternatives, and this approach is not contrary to case law. *Id.* at 2–4.

The Court first concludes that exclusion of the Shanghai Agreement based on Rule 37 is improper. The Court finds that AviaGames' disclosure of the Shanghai Agreement was in time. The parties agree that AviaGames produced the Shanghai Agreement on May 13, 2023, which was almost two weeks before the discovery deadline and which gave Skillz ample time to seek additional information. *See Atari Interactive, Inc. v. Redbubble, Inc.*, No. 18-CV-03451-JST, 2021 WL 6014734, at *4 (N.D. Cal. Oct. 14, 2021) (denying a motion *in limine* to exclude late-disclosed evidence where the moving party did not file a discovery motion and instead waited until motions *in limine* to bring its concern to the court's attention), *aff'd*, No. 21-17062, 2023 WL 4704891 (9th Cir. July 24, 2023).

On Skillz's second argument, there is evidence in the record suggesting that the Shanghai Agreement was not negotiated at arms-length. In particular, Chen negotiated and signed on behalf of both parties to the Shanghai Agreement. ECF No. 367-6 at 10. If the Shanghai Agreement was not negotiated at arms-length, then it is irrelevant to a hypothetical negotiation and Napper's reliance on the Shanghai Agreement to calculate a reasonable royalty is unreliable. *Cf. Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825-PSG, 2015 WL 451950, at *2 (N.D. Cal. Jan. 27, 2015) ("Damages may take the form of 'reasonable royalty [the patentee] would have received through arms-length bargaining' in a hypothetical negotiation." (alteration in original)); *see also* Fed. R. Civ. P. 702(b) (requiring expert testimony to be based on sufficient facts or data). Napper

3

1  states that the Shanghai Agreement was treated as if it was an arms-length deal and notes that a
2  third-party valuation was performed.  His only citation for this assertion is his discussion with
3  Chen.  ECF No. 369-4 ("Napper Report") ¶ 158 & n.303.  At his deposition, Napper
4  acknowledged that he did not review the written third-party valuation.  ECF No. 396-3 ("Napper
5  Depo.") at 123:6–23.  Although the third-party valuation might be a sufficient factual basis for
6  Napper's conclusion that the Shanghai Agreement was negotiated at arms-length, AviaGames has
7  never produced the third-party valuation and Skillz has not had the opportunity to challenge it.
8  ECF No. 368 at 4.  As the pretrial conference, the Court denied Skillz's motion in limine with
9  respect to this argument, but its denial was conditional upon AviaGames' production of the
10 independent valuation report within one week of the conference.  *See* ECF No. 489 at 73:12–16.
11 The Court further noted that Skillz's damages expert, Bergman, will be permitted to opine on the
12 third-party valuation, but Skillz need not make Bergman available for further deposition.  *Id.* at
13 66:19–24.
14       Third, assuming that the Shanghai Agreement was negotiated at arms-length, the Court
15 finds that the Epps and Shanghai Agreements are relevant to the question of a reasonable royalty.
16 The Epps Agreement conveyed rights to software that AviaGames used to run its back-end
17 systems prior to 2020.  *Id.* ¶ 147.  After 2020, the Shanghai Agreement conveyed rights to
18 software, documentation, material, content, and other elements that AviaGames used to run
19 Pocket7Games.  *Id.* ¶¶ 152–54.  Skillz argues that these agreements represent the "actual cost of
20 developing" the infringing system, which is of little probative value and is unfairly prejudicial to
21 the question of a reasonable royalty.  ECF No. 368 at 5.  But Skillz relies on inapposite case law.
22 Skillz relies three cases in which the same expert offered "cost savings" opinions that were based
23 on the cost of building the infringing system from scratch rather than considering the costs and
24 availability of non-infringing alternatives.  *See Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-
25 BLF, 2020 WL 13180005, at *4 (N.D. Cal. Apr. 21, 2020); *Finjan, Inc. v. ESET, LLC*, No. 17-
26 CV-183-CAB-BGS, 2019 WL 5212394, at *4 (S.D. Cal. Oct. 16, 2019); *Acceleration Bay LLC v.
27 Activision Blizzard Inc.*, No. 1:16-CV-00453-RGA, 2019 WL 4194060, at *3 (D. Del. Sept. 4,
28 2019).  But Napper's opinion is not based on the cost savings approach, and he does not offer an

4

opinion on building the infringing system from scratch. Instead, the Epps and Shanghai Agreements represent what AviaGames paid for licenses that included comparable technology to the '564 Patent and may be used as data points under *Georgia-Pacific* factor 12, especially considering that Skillz has never licensed the '564 Patent. Napper Report ¶ 139.

Accordingly, the Court DENIES Skillz's Motion *in Limine* No. 2 with respect to the Epps Agreement. The Court's DENIAL of the motion with respect to the Shanghai Agreement was conditioned upon AviaGames' production of the independent valuation report no later than November 16, 2023 such that Bergman can review the report and offer a rebuttal. ECF No. 489 at 73:12–16. If AviaGames did not timely produce the independent valuation report, then the Court will GRANT Skillz's motion with respect to the Shanghai Agreement.

### C. Skillz's Motion *in Limine* No. 3 to Exclude Evidence Regarding Alleged Skillz's Conduct and Other Litigation (ECF No. 370)

Skillz seeks to exclude evidence and argument regarding four categories of information. ECF No. 370 at 3–4. First, Skillz argues that its alleged use of bots is irrelevant to the issues in this patent litigation and would be prejudicial and confuse the jury. *Id.* at 4–5. Second, Skillz argues that accusations that Skillz is acting on "racial animus" would unfairly prejudice Skillz and mislead the jury. *Id.* at 5. Third, Napper suggests that there could be errors in Skillz's financial statements because Skillz previously restated its consolidated financial statements. Napper Report ¶ 10; ECF No. 369-5 ("Napper Depo.") at 145:1–150:19. Skillz argues that such accusations are irrelevant to the suit and are highly prejudicial because there is no reasonable dispute about whether Skillz's restatement corrected any issues with the company's financial statements. ECF No. 370 at 5–6. Fourth, Skillz argues that evidence of other litigation and regulatory actions to which Skillz has been a party are irrelevant and overly prejudicial. *Id.* at 6.

AviaGames agrees that evidence and argument regarding racial animus and other litigation should be excluded. ECF No. 400 at 3–4. However, AviaGames argues that evidence of Skillz's use of bots is relevant because Bergman's damages opinion is based on how AviaGames' use of bots would make Skillz reluctant to license to AviaGames in a hypothetical negotiation and because Skillz CEO Andrew Paradise misrepresented to the public that Skillz never uses bots. *Id.*

at 2–3. AviaGames also argues that Skillz's restatement of its financial statements are relevant because Skillz argues that it is losing market share to AviaGames and Skillz's misrepresentations offer an alternative explanation for Skillz's loss in market share. *Id.* at 3–4.

On the first disputed issue, the Court finds that evidence of Skillz's use of bots is relevant to damages issues and witness credibility. *See* Fed. R. Evid. 401 (defining relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Bergman's damages opinion states that Skillz is entitled to a larger royalty rate because AviaGames' use of bots, among other things, puts Skillz at a competitive disadvantage and risks harm to the competitive gaming industry. ECF No. 351-4 ("Bergman Supp. Report") ¶¶ 11–14. Put differently, Bergman calculated an increase in the reasonable royalty rate calculations based in part on an assumption that AviaGames uses bots and Skillz does not. Thus, evidence of Skillz's use of bots is relevant because it would allow AviaGames to challenge Bergman's damages opinion. Similarly, Skillz's use of bots will be relevant in the cross-examination of Paradise because Paradise previously stated that Skillz has never used bots and Skillz's damage theory is based in part on the importance of fairness to Skillz and the '564 Patent. *See* ECF No. 218-19 (Paradise stating publicly that Skillz does not use bots); Bergman Supp. Report ¶¶ 11–14. Evidence that Skillz also uses bots is thus relevant to challenge Paradise's credibility and Skillz's arguments about fairness. The Court does not find that this evidence, when offered for the purposes described above, would unduly prejudice Skillz.

On the second disputed issue, the Court finds that evidence of Skillz's correction of its consolidated financial statements is substantially more prejudicial than probative. Napper opines that because Skillz previously had to restate its consolidated financial statements, that there is a possibility that Skillz's financial statements continue to be inaccurate or unreliable. *See* Napper Report ¶ 10; Napper Depo. at 147:15–24. But Napper has no basis for this assertion other than the fact of the restatement itself—he did not audit Skillz's SEC filings and there is otherwise no evidence to suggest that Skillz's restated financial statements are inaccurate. *See* Napper Depo. At 147:10–148:22. Absent support, the introduction of the fact of the restatement and Napper's

6

1    opinion on the reliability of Skillz's restated financial statements would be inflammatory and
2    highly prejudicial to Skillz.  Although AviaGames argues that the evidence and opinion are
3    relevant to address Skillz's "market share" theory, Skillz's damages theory is not based on a loss
4    of market share.  The only reference to this market share theory is not a damages argument but a
5    passing statement made by Skillz's counsel at a hearing to show continuing harm to Skillz from
6    delay of this case.  *See* ECF No. 400 at 4.

7    Accordingly, the Court DENIES Skillz's Motion *in Limine* No. 3 with respect to evidence
8    of bots.  As stated at the pretrial conference, evidence of bots may be introduced for the discussion
9    of damages under the *Georgia-Pacific* factors and for the cross-examination of Paradise on the
10   issues of fairness and Paradise's credibility.  ECF No. 489 at 85:15–18, 86:13–16.  The Court
11   GRANTS Skillz's Motion *in Limine* No. 3 with respect to evidence of racism, Skillz's restatement
12   of its consolidated financial statements, and other litigation and regulatory actions.  As discussed
13   and agreed to at the pretrial conference, any remarks suggesting racial animus must be redacted
14   from evidence presented at trial.  *Id.* at 79:11–80:25.

### D. Skillz's Motion *in Limine* No. 4 to Exclude Evidence Regarding Employee Wealth and Compensation and Skillz's Financial Condition (ECF No. 372)

Skillz seeks to exclude evidence regarding the compensation and wealth of individuals at Skillz because such evidence is irrelevant and likely to mislead the jury.  ECF No. 372 at 2.  Skillz also seeks to exclude references to its financial condition, including its stock price and changes to its stock price, as irrelevant, unduly prejudicial, and likely to mislead the jury.  *Id.*  AviaGames does not oppose the exclusion of evidence regarding employee wealth and compensation and Skillz's stock price.  *See* ECF No. 401 at 1.  However, AviaGames argues that information about Skillz's financial condition is relevant to damages, the parties' relationship, and Skillz's reason for filing suit.  *Id.* at 1–2.  AviaGames also argues that Skillz has not explained why such evidence would confuse the jury.  *Id.* at 2–3.

On the contested issue, AviaGames has articulated a sufficient basis for why Skillz's financial condition is relevant to damages.  For example, Skillz is asking for almost $38 million in damages and its market capitalization is approximately $100 million.  Skillz's market

7

capitalization thus serves as a data point by which the jury may determine whether Skillz's requested damages are reasonable. Although Skillz argues that the comparison of its damages request to its market cap is irrelevant because the reasonable royalty rate considers AviaGames' financial gain from the accused product rather than Skillz's financial condition, this is a point to be made through cross-examination rather than a basis for exclusion. The Court also concludes that evidence of Skillz's market capitalization and profits are not unfairly prejudicial. Skillz has not identified why any of its financial information, which is publicly available, would mislead the jury or otherwise prejudice Skillz.

The Court finds, however, that Skillz's motivation for bringing this lawsuit is not relevant to any of the issues at trial. At the pretrial conference, AviaGames agreed that it would not offer evidence of Skillz's financial condition to show its motivation for suing unless Skillz put its motivation into dispute. ECF No. 489 at 93:21–94:20.

Accordingly, the Court GRANTS Skillz's Motion *in Limine* No. 4 with respect to evidence of Skillz's employees' compensation and wealth, evidence of Skillz's stock price, and evidence regarding Skillz's motive for bringing the case. The Court DENIES the motion with respect to the use of Skillz's financial condition (i.e., market share and profits) by the damages experts to show the reasonableness or unreasonableness of the damages demand.

## II.    AVIAGAMES' MOTIONS *IN LIMINE*

AviaGames filed five motions *in limine*. ECF Nos. 353, 356, 359, 383, 383-1. Skillz opposed all five motions. ECF Nos. 406, 410, 415, 424, 427. The Court considers each motion *in limine* in turn.

### A.    AviaGames' Motion *in Limine* No. 1 to Exclude Evidence or Argument Referencing Skillz's Non-Patent Allegations (i.e., Copyright Infringement, "Fraud," or "Criminal" Activity) (ECF No. 353)

AviaGames seeks to exclude evidence and argument regarding Skillz's non-patent allegations, including allegations about copyright, fraud, and criminal activity because these allegations are not relevant to this patent litigation and unduly prejudicial, risk confusing the jury, and would waste time. ECF No. 353 at 1–3. In particular, AviaGames points to Jose Zagal's supplemental expert report, which opines that "Avia hijacks the normal operation of the user's

8

device to implement the ROBOT functionality and present a fake user and false impressions of fairness." *Id.* at 1 (quoting ECF No. 352-4 ("Zagal Supp. Report") ¶ 62). AviaGames also argues that Skillz's allegations of AviaGames' wrongdoing should be excluded as propensity evidence barred by Fed. R. Evid. 404(b)(1). *Id.* at 4–5.

Skillz characterizes AviaGames' motion as a request to exclude evidence related to bots and argues that evidence of bots and related fairness principles are relevant to Skillz's theory of infringement, damages, and willfulness. ECF No. 406 at 1–3. Skillz further argues that evidence of bots is not unfairly prejudicial and does not risk wasting time or confusing the jury. *Id.* 3–5. Finally, Skillz argues that it is not offering evidence of bots as propensity evidence and, to the extent that it is, Skillz's evidence would fall under the exception to Fed. R. Evid. 404 that permits such evidence to attack a witness's character for truthfulness. *Id.* at 5 (discussing Fed. R. Evid. 608).

At the pretrial conference, the parties agreed that evidence of other parallel litigation or investigation will not be offered at trial. ECF No. 489 at 112:1–3. On evidence of fraud or criminal activity, the Court notes that evidence of bot use is relevant to infringement, damages, and willfulness and will allow evidence of bot use to prove the elements of the patent claims in this lawsuit. However, evidence of bot use may be unfairly prejudicial if presented in a way that suggests that AviaGames cheats customers or is committing a crime or fraud because such allegations are irrelevant to the patent dispute and would unduly prejudice AviaGames. Because the Court's ruling will depend on how particular evidence is presented, the Court will defer ruling on AviaGames' motion with respect to allegations of fraud and criminal activity and AviaGames may raise specific objections at trial.

Accordingly, the Court GRANTS AviaGames' Motion *in Limine* No. 1 with respect to evidence of the copyright lawsuit and DEFERS ruling the motion with respect to fraud or criminal activity. AviaGames may raise objections to specific evidence under Fed. R. Evid. 403 and 404 at trial.

9

B.  **AviaGames' Motion *in Limine* No. 2 to Exclude New "Bot" Arguments (ECF No. 383)**

AviaGames seeks to exclude Skillz's theory that AviaGames infringes the '564 Patent through its use of bots.[2] AviaGames argues that Skillz's bot theory is inconsistent with Skillz's previously disclosed infringement theories and thus is in violation of the Court's order reopening discovery and the Northern District's Patent Local Rules. ECF No. 383 at 1–3. Skillz responds that the theory of infringement described by Zagal in his supplemental report is consistent with Skillz's infringement contentions and Zagal's original report. ECF No. 424 at 1–4. Skillz also argues that AviaGames is using its motion *in limine* to relitigate Skillz's diligence in pursuing its claims. *Id.* at 4.

As stated above, the Court finds that evidence of bots is relevant to infringement, damages, and willfulness. The Court disagrees with AviaGames' argument that Zagal's supplemental report is inconsistent with his original report. Zagal's supplemental report clarifies that:

> Avia puts the systems into use, performs the methods, and implements the instructions claimed in the '564 patent on the user device as soon as the user enrolls in the match using the Accused Products. Once a user is paired with a ROBOT for a match, the rest of the process is entirely under Avia's control and operates under Avia's control and for Avia's benefit in the same or similar manner to that on which I opined in my Opening Report constitutes infringement.

Zagal Supp. Report ¶ 13. In essence, Zagal's supplemental report opines that AviaGames uses bots to practice the asserted claim limitations in the same way that the limitations are practiced in games without bots. Thus, the theory of infringement is consistent between Zagal's opening and supplemental report and the difference is what practices the asserted claim limitations.

Accordingly, the Court DENIES AviaGames' Motion *in Limine* No. 2.

C.  **AviaGames' Motion *in Limine* No. 3 to Exclude Evidence or Argument Referencing Third Party Statements (ECF No. 356)**

AviaGames argues that statements by third parties, including customer reviews and news coverage, should be excluded as hearsay and no exception to the hearsay rule applies. ECF No.

---

[2] AviaGames's Motion *in Limine* No. 2 also sought to exclude evidence referencing bot use as unfair. The Court struck this argument for failure to comply with the Court's standing orders. *See* ECF No. 384.

10

356 at 1–3.  AviaGames also argues that such evidence should be excluded under Fed. R. Evid. 403 as unduly prejudicial to AviaGames.  *Id.* at 4–5.  Skillz responds that AviaGames' motion is overbroad because it does not identify any specific evidence.  ECF No. 310 at 1.  Skillz also argues that customer reviews and news articles may be offered for non-hearsay purposes.  *Id.* at 2–3.  Finally, Skillz argues that customer reviews and news articles are relevant to show infringement, willfulness, and damages and are not unfairly prejudicial.  *Id.* at 4–5.

Although AviaGames may be correct that certain customer reviews and news coverage could be excluded at trial as hearsay or under Fed. R. Evid. 403, AviaGames has not identified or described any specific evidence it seeks to exclude.  "Because the admissibility of such evidence is an individualized and fact-specific inquiry," the Court cannot determine based on AviaGames' motion *in limine* whether any particular evidence is admissible.  *JIPC Mgmt., Inc. v. Incredible Pizza Co.*, No. CV 08-04310 MMM PLAX, 2009 WL 8591607, at *12 (C.D. Cal. July 14, 2009).

Accordingly, the Court DEFERS ruling on AviaGames' Motion *in Limine* No. 3.  AviaGames may raise any hearsay or Fed. R. Evid. 403 objections to specific evidence at trial.

### D. AviaGames' Motion *in Limine* No. 4 to Exclude Certain Opinions of Jim W. Bergman (ECF No. 383-1)

AviaGames seeks to exclude the opinion of Skillz's damages expert, Bergman for three reasons.[3]  First, AviaGames argues that Bergman's use of a 30% royalty and his supplemental adjustment from 30% to 35% is arbitrary and unsupported.  ECF No. 383-1 at 1.  Second, AviaGames argues that Bergman's identification of five "key" features of Skillz's Software Development Kit ("SDK") is arbitrary.  *Id.* at 2.  Third, AviaGames argues that Bergman's decision to weigh the five key features equally is not supported by facts and is the equivalent of unreliable feature counting.  *Id.* at 3–4.

Skillz first argues that Bergman's 30% royalty is supported by his analysis of the 2016 SDK Agreement and his explanation for why the Epps Agreement is not technically or economically comparable.  ECF No. 427 at 1–2.  Skillz also argues that Bergman's adjustment

---

[3] AviaGames originally raised an argument in its Motion *in Limine* No. 4 challenging the opinion of Jose Zagal, but the Court struck this argument for failure to comply with the Court's standing orders.  *See* ECF No. 384.

1    from 30% to 35% is supported by AviaGames' data regarding bot use and AviaGames'
2    "Pocket7Games User Impression Survey." *Id.* at 2–3.  Second, Skillz argues that Bergman's
3    identification of five key features is reasonably based on Skillz's public statements in SEC filings
4    and AviaGames ultimately challenges the factual underpinnings of Bergman's analysis, which is
5    not a basis for exclusion. *Id.* at 3–4.  Third, Skillz argues that Bergman's apportionment opinion
6    is grounded in the facts of the case. *Id.* at 4–5.

       The Court will address each of AviaGames' arguments in turn.  First, Bergman's 30% royalty and adjustment to 35% are neither arbitrary nor unsupported.  Although AviaGames faults Bergman for relying on the SDK Agreement, which is not a patent license, and dismissing the Epps Agreement, the SDK Agreement is sufficiently comparable to be probative of the hypothetical negotiation because it involves the actual parties, includes the relevant technology, and was close in time to the hypothetical negotiation.  *See SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1093–94 (Fed. Cir. 2014) (affirming the district court's conclusion that non-patent license agreements were sufficiently comparable to be probative of the hypothetical negotiation). The fact that Bergman found the SDK Agreement comparable and the Epps Agreement not comparable is not a basis for exclusion, but an argument going to the weight of Bergman's opinion that AviaGames can make in cross-examination.  Similarly, Bergman's adjustment from 30% to 35% based on AviaGames' use of bots is based on data.  For example, Bergman considered the number of games in which bots participated, bot win rates, and user surveys about the importance of fairness to calculate the 5% adjustment.  *See* Bergman Supp. Report ¶¶ 9–14.  As above, AviaGames' arguments that Bergman's adjustment is based on suggestions, that Bergman ignores Skillz's use of bots, and that bot use does not impact fairness in any way that pertains to the '564 Patent go to the weight of Bergman's opinion rather than admissibility.

       Second, Bergman's reliance on Skillz's public filings to identify five "key benefits" of the SDK is not arbitrary.  *See* ECF No. 381-3 ("Bergman Report") ¶ 143.  AviaGames primarily argues that it was arbitrary for Bergman to decide on five key features when other documents identify different numbers of features.  *See, e.g.*, ECF No. 383-8 at 5 (Skillz's Form 10-K, which states that the SDK "contains over 200 features"); ECF No. 381-4 at § 1.1 (Skillz's SDK

12

1   Agreement, which AviaGames argues identifies 8 separate features).  However, it is not arbitrary
2   for Bergman to rely on Skillz's SEC filings, which the parties agree list the same features year-
3   after-year.  *See Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1312–13 (Fed. Cir. 2018)
4   (holding that it was not error for an expert to apportion revenues for a royalty base using internal
5   diagrams identifying different features); *see also* Bergman Report ¶ 143 n.262 (noting that the
6   Skillz's public filings identifying the key features have identical language); ECF No. 489 at
7   104:19–105:3 (AviaGames accepting that the public filings tout five features).  Ultimately,
8   AviaGames' argument is a dispute over the factual underpinnings of Bergman's analysis, which
9   go to the opinion's weight, not admissibility.  *See Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-
10  00072-BLF, 2020 WL 13180005, at *9 (N.D. Cal. Apr. 21, 2020).  Put differently, whether
11  Bergman properly excluded 195 other features is an argument that AviaGames may properly raise
12  during cross-examination.
13          Third, Bergman's decision to assign equal value to the five key features is appropriately
14  supported by evidence.  After concluding, based on Zagal's opinion, that the fair play feature is
15  attributed to and enabled by the '564 patent, Bergman further concluded that "on a relative basis,
16  the value attributable to fair gaming, as enabled by the '564 patent, would be at least equivalent to
17  the average value of all the features."  Bergman Report ¶ 170.  This apportionment was not
18  "plucked out of thin air" as AviaGames suggests.  Instead, Bergman reviewed, among other
19  things, Skillz's developer presentations, Skillz's marketing materials, Skillz's and AviaGames'
20  user responses to surveys, and depositions of witnesses for both parties.  Bergman Report ¶¶ 148–
21  67.  Bergman's reliance on these documents is not arbitrary, and to the extent that AviaGames
22  contests Bergman's conclusion that fair gaming is at least equally valuable as the average value of
23  all features, AviaGames may do so in cross-examination.  *See Blue Coat*, 879 F.3d at 1312–13
24  (affirming the district court's admission of an expert's apportionment opinion that assigned equal
25  value to 24 features because the analysis was based architectural diagrams and a technical expert's
26  analysis).
27          Accordingly, the Court DENIES AviaGames' Motion *in Limine* No. 4.
28

### E. AviaGames' Motion *in Limine* No. 5 to Preclude Discussion, Evidence, and Argument Regarding the Parties' Discovery Disputes (ECF No. 359)

AviaGames seeks to exclude evidence of the discovery disputes that occurred earlier in this case because such evidence is not relevant to the patent claims at issue. ECF No. 359 at 1. AviaGames also wishes to exclude Chen's and other witnesses' assertion of their Fifth Amendment rights and to preclude Skillz from requesting an instruction that the jury draw negative inferences against AviaGames based on its witnesses' assertion of their Fifth Amendment rights. *Id.* at 2–3. Skillz agrees that details about the parties' discovery disputes will not be offered at trial, but Skillz wishes to present evidence of AviaGames' interrogatory responses and testimony before and after the Court reopened discovery as evidence going to AviaGames' credibility. ECF No. 415 at 1. Skillz further argues that AviaGames' request to exclude witnesses' invocation of their Fifth Amendment rights is contrary to law, which permits adverse inference instructions in this context, and is overbroad and premature. *Id.* at 2–4.

At the pretrial conference, the parties agreed that discovery disputes are not relevant and Skillz may read interrogatory responses, subject to relevance objections by AviaGames. ECRF No. 489 at 125:6–13. On AviaGames' request to exclude its witnesses' invocation of their Fifth Amendment rights and to preclude Skillz from requesting an adverse inference, the Court finds that AviaGames' request is premature. Whether a witness's invocation of their Fifth Amendment rights should be excluded and whether Skillz may request an adverse inference instruction requires "a case-by-case [determination] under the microscope of the circumstances of that particular civil litigation." *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 912 (9th Cir. 2008) (quoting *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000)). Thus, the Court cannot determine at this time whether any particular invocation of the Fifth Amendment should be excluded or whether an adverse inference would be appropriate.

Accordingly, the Court GRANTS AviaGames' Motion *in Limine* No. 5 with respect to evidence of the discovery disputes in this case and DEFERS ruling on the motion with respect to witnesses' invocation of their Fifth Amendment rights. This ruling does not preclude Skillz from offering AviaGames' interrogatory responses as evidence at trial. Regarding the Fifth Amendment, AviaGames may raise objections to particular questions at trial.

## III. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Skillz's Motion *in Limine* No. 1 (ECF No. 358) is GRANTED.

2. Skillz's Motion *in Limine* No. 2 (ECF No. 368) is DENIED.

3. Skillz's Motion *in Limine* No. 3 (ECF No. 370) is GRANTED IN PART and DENIED IN PART.

4. Skillz's Motion *in Limine* No. 4 (ECF No. 372) is GRANTED IN PART and DENIED IN PART.

5. AviaGames' Motion *in Limine* No. 1 (ECF No. 353) is GRANTED IN PART and DEFERRED IN PART.

6. AviaGames' Motion *in Limine* No. 2 (ECF No. 383) is DENIED.

7. AviaGames' Motion *in Limine* No. 3 (ECF No. 356) is DEFERRED.

8. AviaGames' Motion *in Limine* No. 4 (ECF No. 383-1) is DENIED.

9. AviaGames' Motion *in Limine* No. 5 (ECF No. 359) is GRANTED IN PART and DEFERRED IN PART

Dated: November 27, 2023

BETH LABSON FREEMAN
United States District Judge

15