# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SKILLZ PLATFORM INC., | Case No.  21-cv-02436-BLF |
| Plaintiff, | |
| v. | **JURY INSTRUCTIONS** |
| AVIAGAMES INC., | |
| Defendant. | |

**IT IS SO ORDERED.**

Dated:  February 8, 2024

BETH LABSON FREEMAN
United States District Judge

# INSTRUCTION NO. 1.1:  DUTY OF THE JURY

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial, I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**INSTRUCTION NO. 1.2:  WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute relating to a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). The process of obtaining a patent is called patent prosecution. A valid United States patent gives the patent owner the right to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, during the term of the patent without the patent holder's permission. A violation of the patent owner's rights is called infringement. The patent owner may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

To obtain a patent one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes what is called a "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it so others skilled in the field will know how to make or use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

After the applicant files the application, a PTO patent examiner reviews the patent application to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner reviews records available to the PTO for what is referred to as "prior art." The examiner also will review prior art if it is submitted to the PTO by the applicant. Prior art is defined by law, and I will give you at a later time specific instructions as to what constitutes prior art A patent lists the prior art that the examiner considered; this list is called the "cited references."

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable,

and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner is satisfied that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the patent issues.

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all the information that will be presented to you. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent.

**INSTRUCTION NO. 1.3:  SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Skillz Platform Inc. ("Skillz") and AviaGames Inc. ("AviaGames"). The case involves United States Patent Number 9,649,564, which was obtained by four inventors—Andrew Paradise, Casey Chafkin, Jason Petralia, and Ahmed Abdalla—and transferred by the inventors to Skillz.  For convenience, the parties and I will often refer to this patent by the last three numbers of the patent:  the '564 patent.

Skillz filed suit in this court seeking money damages from AviaGames for allegedly infringing the '564 patent by making, using, selling, and offering for sale products and methods that Skillz argues are covered by claims 1, 4, 11, 14, 18, and 21 of the '564 Patent. These claims may be referred to as the "Asserted Claims" of the '564 patent. Skillz's position is that AviaGames's Pocket7 Game application infringes these Asserted Claims.

AviaGames denies that it has infringed the Asserted Claims and argues, in addition, that the Asserted Claims are invalid. Invalidity is a defense to infringement.

Your job will be to decide whether the Asserted Claims have been infringed and whether those claims are invalid. If you decide that any claim has been infringed by AviaGames and is not invalid, you will then need to decide the amount of money damages, if any, to be awarded to Skillz based on the value of the patented invention to compensate it for AviaGames's infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

Before you decide whether AviaGames has infringed the Asserted Claims or whether any of the Asserted Claims are invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have already determined the meaning of certain terms of the Asserted Claims, or the parties have already agreed to the meaning of certain terms of the Asserted Claims. The copy of these Instructions that I provide to you will include a section entitled "Claim Construction," which sets forth those meanings. You are to apply these definitions of these terms throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**INSTRUCTION NO. 1.4:  BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

1

2

**INSTRUCTION NO. 1.5:  BURDEN OF PROOF—CLEAR AND CONVINCING**

**EVIDENCE**

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

**INSTRUCTION NO. 1.10:  RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**INSTRUCTION NO. 2.2:  DEPOSITION IN LIEU OF LIVE TESTIMONY**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify.

1

## INSTRUCTION NO. 2.4:  FOREIGN LANGUAGE TESTIMONY

2

You may hear testimony of a witness who will be testifying in a foreign language.  Witnesses

3    who do not speak English or are more proficient in another language testify through an official court

4    interpreter.  Although some of you may know the foreign language, it is important that all jurors

5    consider the same evidence.  Therefore, you must accept the interpreter's translation of the witness's

6    testimony. You must disregard any different meaning.

7

You must not make any assumptions about a witness, or a party based solely on the use of

8    an interpreter to assist that witness or party.

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 2.5:  EXPERT OPINION

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions. This opinion testimony is allowed, because of the specialized knowledge, skill, experience, training, or education of this witness.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

**INSTRUCTION NO. 2.6:  CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not received in evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**INSTRUCTION NO. 2.7:  CHARTS AND SUMMARIES RECEIVED IN EVIDENCE**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

# INSTRUCTION NO. 1.12: CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, Instagram, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers— until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

## INSTRUCTION NO. 1.13:  NO TRANSCRIPT AVAILABLE TO THE JURY

I urge you to pay close attention to the trial testimony as it is given. During deliberations you will not have a transcript of the trial testimony.

If at any time you cannot hear or see the testimony, evidence, questions, or arguments, let me know so that I can correct the problem.

### INSTRUCTION NO. 1.14:  TAKING NOTES

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the courtroom. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

## INSTRUCTION NO. 1.15:  BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

# INSTRUCTION NO. 1.16:  OUTLINE OF TRIAL

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is more likely true than not, which is referred to as the "preponderance of evidence" standard. On other issues you must use a higher standard and decide whether it is highly probable that something is true, which is referred to as the "clear and convincing evidence" standard.

Skillz will present its evidence on its assertion that the Asserted Claims have been and continue to be infringed by AviaGames and that the infringement has been and continues to be willful. These witnesses will be questioned by Skillz's counsel in what is called direct examination. After Skillz completes its direct examination of a witness, AviaGames has an opportunity to cross-examine the witness.

To prove infringement of any claim, Skillz must persuade you by a preponderance of the evidence, which means that it is more likely than not that AviaGames has infringed that claim. To persuade you that any infringement was willful, Skillz must also prove that it is more likely than not that the infringement was willful.

After Skillz has presented its witnesses, AviaGames will call its witnesses, who will also be examined and cross-examined. AviaGames will present its evidence that certain of the Asserted Claims are invalid.

To prove invalidity of any claim, AviaGames must persuade you by clear and convincing evidence, which means that it is highly probable that the claim is invalid. In addition to presenting its evidence of invalidity, AviaGames may put on evidence responding to Skillz's infringement and willfulness contentions.

1    Skillz may then return and put on evidence responding to AviaGames's contention that any

2    of the claims of the '564 patent are invalid. Skillz will also have the option to put on what is referred

3    to as "rebuttal" evidence to any evidence offered by AviaGames of non-infringement or lack of

4    willfulness.

5    Finally, AviaGames will have the option to put on "rebuttal" evidence to any evidence

6    offered by Skillz on the validity of the claims of the '564 patent.

7    Because the evidence is introduced piecemeal, you need to keep an open mind as the

8    evidence comes in and wait for all the evidence before you make any decisions. In other words, you

9    should keep an open mind throughout the entire trial.

10    The parties may present the testimony of a witness by reading from his or her deposition

11    transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn

12    testimony of a witness taken before trial and is entitled to the same consideration as if the witness

13    had testified at trial.

14    After the evidence has been presented, the attorneys will make closing arguments, and I will

15    give you final instructions on the law that applies to the case. Closing arguments are not evidence.

16    After the closing arguments and instructions, you will then decide the case.

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 3.1: DUTY OF JURY

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

**INSTRUCTION NO. 3.2:  SUMMARY OF CONTENTIONS**

I will now give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions.

As I previously told you, Skillz seeks money damages from AviaGames for allegedly infringing claims of the '564 patent by making, using, selling, and offering for sale products and methods that Skillz argues are covered by claims 1, 4, 11, 14, 18, and 21 of the '564 Patent. These are the Asserted Claims of the '564 patent. Skillz alleges that AviaGames's Pocket7 Games application infringes the Asserted Claims. AviaGames denies that it has infringed the Asserted Claims and argues that, in addition, the Asserted Claims are invalid.

Your job is to decide whether the Asserted Claims of the '564 patent have been infringed and whether any of the Asserted Claims are invalid. If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Skillz to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later. No other claims are before you.

**INSTRUCTION NO. 3.3:  INTERPRETATION OF CLAIMS**

Before you decide whether AviaGames has infringed the Asserted Claims or whether any Asserted Claim is invalid, you will need to understand the patent claims. As I mentioned, the patent claims are numbered sentences at the end of the patent that describe the boundaries of the patent's protection. It is my job as judge to explain to you the meaning of any language in the claims that needs interpretation.

I have interpreted the meaning of some of the language in the Asserted Claims, and the parties have agreed to the meaning of some of the language in the Asserted Claims. You must accept those interpretations as correct. These interpretations are attached to the jury instructions. For any claim term for which I have not provided you a definition, you should apply the plain and ordinary meaning of that term in the context of the patent specification, as understood by one of ordinary skill in the art. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

1

**INSTRUCTION NO. 3.4: INDEPENDENT AND DEPENDENT CLAIMS**

2          This case involves two types of patent claims: independent and dependent claims.

3          An independent claim sets forth all of the requirements that must be met in order for a

4    product or process to be covered by that claim. Thus, it is not necessary to look at any other claim

5    to determine what an independent claim covers. In this case, the Asserted Claims 1, 11, and 18 of

6    the '564 patent are independent claims.

7          The remaining Asserted Claims, claims 4, 14, and 21 of the '564 patent, are dependent

8    claims. A dependent claim does not itself recite all of the requirements for the claim but refers to

9    another claim or claims for some of its requirements. In this way, the claim "depends" on another

10   claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The

11   dependent claim then adds its own additional requirements. To determine what a dependent claim

12   covers, it is necessary to look at both the dependent claim and any other claim to which it refers.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INSTRUCTION NO. 3.5:  INFRINGEMENT—BURDEN OF PROOF**

I will now instruct you on the rules you must follow in deciding whether Skillz has proven that AviaGames has infringed one or more of the Asserted Claims. To prove infringement of any claim, Skillz must persuade you that AviaGames has infringed by a preponderance of the evidence. In other words, Skillz must persuade you that it is more likely than not that AviaGames has infringed that claim.

**INSTRUCTION NO. 1.6:  WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1.  The sworn testimony of any witness;

2.  The exhibits which are received into evidence;

3.  Any facts to which the lawyers have agreed; and

4.  Any facts that I may instruct you to accept as proved.

**INSTRUCTION NO. 1.7:  WHAT IS NOT EVIDENCE**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.  Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they may say in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.  Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.  Testimony that has been excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.

4.  Anything you may see or hear when the court is not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION NO. 1.9:  DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

# INSTRUCTION NO. 1.11 RE CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1. The opportunity and ability of the witness to see or hear or know the things testified to;
2. The witness's memory;
3. The witness's manner while testifying;
4. The witness's interest in the outcome of the case, if any;
5. The witness's bias or prejudice, if any;
6. Whether other evidence contradicted the witness's testimony;
7. The reasonableness of the witness's testimony in light of all the evidence; and
8. Any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION NO. 3.6:  DIRECT INFRINGEMENT**

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the Asserted Claims. The second step is to decide whether AviaGames has made, used, sold, or offered for sale a product or method covered by an Asserted Claim. If it has, it infringes. You, the jury, make this decision.

There are different ways Skillz can prove that AviaGames has "used" a product or method covered by an Asserted Claim in an infringing way. First, if you find that AviaGames controls the operation of, and obtains benefit from, use of each and every element of a claimed system , you should conclude that AviaGames infringes that Asserted Claim. Second, if you find that AviaGames itself performs every step of a method covered by an Asserted Claim, you should conclude that AviaGames infringes that Asserted Claim. And third, if you find that AviaGames performs some of the steps in a method covered by an Asserted Claim, conditions participation in an activity or receipt of a benefit upon performance of all of the remaining steps, and establishes the manner or timing of that performance, you should conclude that AviaGames infringes that Asserted Claim..

With one exception, you must consider individually each of the Asserted Claims of the patent, and decide whether AviaGames's products or methods infringe that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own. As a result, if you find that an independent claim is not infringed, you must also find that its dependent claims are not infringed. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the additional requirements of its dependent claims have also been infringed.

You have heard evidence about both Skillz's commercial products and AviaGames's accused products. However, in deciding the issues of infringement, you may not compare AviaGames's accused products to Skillz's commercial products. Rather, you must compare

AviaGames's accused products to the Asserted Claims when making your decision regarding infringement.

Whether or not AviaGames knew its products or methods infringed or even knew of the patent does not matter in determining direct infringement.

There are two ways in which a patent claim may be directly infringed. A claim may be "literally" infringed, or it may be infringed under the "doctrine of equivalents." The following instructions will provide more detail on these two types of direct infringement.

# INSTRUCTION NO. 3.7:  LITERAL INFRINGEMENT

To decide whether AviaGames's products or methods literally infringe a claim of the '564 patent, you must compare AviaGames's product or method with the patent claim and determine whether every requirement of the claim is included in that product or method. If so, AviaGames's product or method literally infringes that claim. If, however, AviaGames's products or methods do not have every requirement in the patent claim, AviaGames's products or methods do not literally infringe that claim. You must decide literal infringement for each Asserted Claim separately.

If the patent claim uses the term "comprising," that patent claim is to be understood as an open claim. An open claim is infringed as long as every requirement in the claim is present in AviaGames's products or methods. The fact that AviaGames's products or methods also include other steps will not avoid infringement, as long as it has every requirement in the patent claim.

If AviaGames's product does not itself include every requirement of the asserted patent claim, AviaGames cannot be liable for infringement merely because other parties supplied the missing element(s), unless AviaGames directed or controlled the acts by those parties. AviaGames does not direct or control someone else's action merely because AviaGames entered into a business relationship with that person. Instead, AviaGames must specifically instruct or cause that other person to perform each step in an infringing manner, so that every step is attributable to AviaGames as controlling party.

**INSTRUCTION NO. 3.8:  INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you decide that AviaGames's products or methods do not literally infringe the Asserted Claims, you must then decide whether that product or method infringes those claims under what is called the "doctrine of equivalents."

Under the doctrine of equivalents, the products or methods can infringe an asserted patent claim if they include parts or steps that are identical or equivalent to the requirements of the claim. If the products or methods are missing an identical or equivalent part or step to even one requirement of the asserted patent claim, the products or methods cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at each individual requirement of the asserted patent claim and decide whether the products or methods have either an identical or an equivalent part or step to that individual claim requirement.

A part or step of a product or method Is equivalent to a requirement of an Asserted Claim if a person of ordinary skill in the field would think that the differences between the part or step and the requirement were not substantial as of the time of the alleged infringement.

Changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for the purposes of the doctrine of equivalents if it still meets the other requirements of the doctrine of equivalents set forth in this instruction.

One way to decide whether any difference between a requirement of an Asserted Claim and a part or step of the products or methods is not substantial is to consider whether, as of the time of the alleged infringement, the part or step of the products or methods performed substantially the same function, in substantially the same way, to achieve substantially the same result as the requirement in the patent claim.

In deciding whether any difference between a claim requirement and the products or methods is not substantial, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the part or step with the claimed requirement. The known interchangeability between the claim requirement and the part or step of the products or methods is not necessary to find infringement under the doctrine of

equivalents. However, known interchangeability may support a conclusion that the difference between the part or step in the products or methods and the claim requirement is not substantial. The fact that a part or step of the products or methods performs the same function as the claim requirement is not, by itself, sufficient to show known interchangeability.

You may not use the doctrine of equivalents to find infringement if you find that AviaGames's product is the same as what was in the prior art before the application for the '564 patent or what would have been obvious to persons of ordinary skill in the field in light of what was in the prior art. A patent holder may not obtain, under the doctrine of equivalents, protection that it could not have lawfully obtained from the Patent and Trademark Office.

You may not use the doctrine of equivalents to find infringement if you find that the subject matter alleged to be equivalent to a requirement of the patent claim was described in the '564 patent but not covered by any of its claims. The subject matter described but not claimed must be specific enough that one of ordinary skill in the art would understand that it was present in the patent.

# INSTRUCTION NO. 3.9:  WILLFUL INFRINGEMENT

In this case, Skillz argues that AviaGames willfully infringed Skillz's patent.

If you find that Skillz has proved AviaGames has infringed a valid and enforceable claim of Skillz's patent as described to you in my earlier instructions, then you must determine whether Skillz has proved by a preponderance of the evidence that the infringement was willful.

Skillz must prove by a preponderance of the evidence the following:

1.   AviaGames knew of the patent; and

2.   Engaged in deliberate or intentional infringement.

You must base your decision on AviaGames's knowledge and actions at the time of infringement. Evidence that AviaGames had knowledge of the patent at the time of infringement by itself is insufficient to show willfulness. Rather, to show willfulness, you must find that AviaGames engaged in additional conduct evidencing intentional or deliberate infringement of Skillz's patent rights.

In deciding whether AviaGames willfully infringed, you should consider all of the facts surrounding the infringement.  You may consider the prior relationship between the parties, if any, and AviaGames's conduct after it learned about the existence of the patent that you have found was infringed.

## INSTRUCTION NO. 3.10:  INVALIDITY—BURDEN OF PROOF

I will now instruct you on the rules you must follow in deciding whether AviaGames has proven that the Asserted Claims are invalid. Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, AviaGames must persuade you by clear and convincing evidence, which means that it is highly probable that the claim is invalid.

**INSTRUCTION NO. 3.11:  INVALIDITY— PERSPECTIVE OF ONE OF ORDINARY SKILL IN THE ART**

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of April 8, 2013. In deciding the level of ordinary skill, you should consider all the evidence introduced at trial, including:

(1)    the levels of education and experience of persons working in the field;

(2)    the types of problems encountered in the field; and

(3)    the sophistication of the technology.

Skillz contends that a person of ordinary skill in the art would have a bachelor's degree in game design, computer science, computer engineering, or a related field, with at least two years of professional experience working in computer game design. AviaGames contends that a person of ordinary skill in the art would have had at least a bachelor's degree in computer science, computer engineering, or electrical engineering (or equivalent work experience) and two or more years of additional practical experience specifically with designing and developing interactive electronic systems.

## INSTRUCTION NO. 3.12:  WRITTEN DESCRIPTION REQUIREMENT

A patent claim is invalid if the patent does not contain an adequate written description of the claimed invention.  The purpose of this written description requirement is to demonstrate that the inventor was in possession of the invention at the time the application for the patent was filed, even though the claims may have been changed or new claims added since that time. The written description requirement is satisfied if a person of ordinary skill in the field reading the original patent application at the time it was filed would have recognized that the patent application described the invention as claimed, even though the description may not use the exact words found in the claim.  A requirement in a claim need not be specifically disclosed in the patent application as originally filed if a person of ordinary skill would understand that the missing requirement is necessarily implied in the patent application as originally filed.

## INSTRUCTION NO. 3.15: DAMAGES—BURDEN OF PROOF

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. If you find that AviaGames infringed any valid Asserted Claim, you must then determine the amount of money damages to be awarded to Skillz to compensate it for that infringement.

The amount of those damages must be adequate to compensate Skillz for the infringement. A damages award should put Skillz in approximately the financial position it would have been in had the infringement not occurred. You should keep in mind that the damages you award are meant to compensate Skillz and not to punish AviaGames.

Skillz has the burden to persuade you of the amount of its damages by a preponderance of the evidence. You should award only those damages that Skillz more likely than not suffered. While Skillz is not required to prove this amount with mathematical precision, it must prove the amount with reasonable certainty.

1

## INSTRUCTION NO. 3.16:  REASONABLE ROYALTY

2    A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell

3    the claimed invention. This right is called a "license." A reasonable royalty is the payment for the

4    license that would have resulted from a hypothetical negotiation between Skillz and AviaGames

5    taking place at the time when the infringing activity first began. In considering the nature of this

6    negotiation, you must assume that Skillz and AviaGames would have acted reasonably and would

7    have entered into a license agreement. In determining this, you must also assume that both parties

8    believed the patent claim was valid and infringed. Your role is to determine what royalty would

9    have resulted from the hypothetical negotiation and not simply what either party would have

10   preferred. The parties agree for the purpose of calculating damages that the hypothetical negotiation

11   date is June 28, 2018.

12   A royalty can be calculated in several different ways, and it is for you to determine which

13   way is the most appropriate based on the evidence you have heard. You should consider all of the

14   facts known and available to the parties at the time the infringement began. Some of the factors you

15   may consider in making your determination are:

16    (1) The value that the claimed invention contributes to the accused products and methods;

17    (2) The value that factors other than the claimed invention contribute to the accused

18        products and methods; and

19    (3) Comparable license agreements, such as those covering the use of the claimed

20        invention or similar technology.

21   One way to calculate a royalty is to determine what is called an "ongoing royalty." To

22   calculate an ongoing royalty, you must first determine the "base," that is, the product on which the

23   alleged infringer is to pay. You then need to multiply the revenue the defendant obtained from that

24   base by the "rate" or percentage that you find would have resulted from the hypothetical negotiation.

25   For example, if the patent covers a nail, and the nail sells for $1, and the licensee sold 200 nails, the

26   base revenue would be $200. If the rate you find would have resulted from the hypothetical

27   negotiation is 1%, then the royalty would be $2, or the rate of 0.01 times the base revenue of $200.

28   By contrast, if you find the rate to be 5%, the royalty would be $10, or the rate of 0.05 times the

base revenue of $200. These numbers are only examples, and are not intended to suggest the appropriate royalty rate.

If the patent covers only part of the product that AviaGames sells, then the base would normally be only that feature or component. For example, if you find that for a $100 car, the patented feature is the tires which sell for $5, the base revenue would be $5. In this case, the '564 patent covers only certain components of the products that AviaGames uses or sells, so the reasonable royalty must be based on the incremental value that the patented inventions add to the end product. It is Skillz's burden to demonstrate what value those inventions have added to the desirability of the product as a whole and to separate the value of the patented contribution from the value of other parts of the product that are not attributable to the patented inventions.  The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more. When the accused infringing products have both patented and unpatented features, measuring this value requires you to identify and award only the value of the patented features.

In this case, Skillz has introduced evidence of a license agreement between Skillz and AviaGames. This license may be considered if it helps to establish the value that is attributable to the patented invention as distinct from the value of other features of AviaGames's product.

It is up to you, based on the evidence, to decide what royalty is appropriate in this case.

**INSTRUCTION NO. 3.17:  REASONABLE ROYALTY—RELEVANT FACTORS**

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of factors that you may consider in making your determination are:

(1)     The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty.

(2)     The rates paid by licensees for the use of other patents comparable to the patent-in-suit.

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4)     The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5)     The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6)     The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7)     The duration of the patent and the term of the license.

(8)     The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9)     The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11)     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12)     The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13)     The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14)     The opinion and testimony of qualified experts.

(15)     The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive, and you should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty AviaGames would have been willing to pay and that Skillz would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between Skillz and AviaGames taking place at a time prior to when the infringement began.

## INSTRUCTION NO. 3.18:  DATE OF COMMENCEMENT

Damages that Skillz may be awarded by you commence on the date that AviaGames has both infringed and been notified of the '564 patent.  Skillz and AviaGames agree that, if AviaGames is found to infringe, that date was April 5, 2021.

# INSTRUCTION NO. 4.1:  DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## INSTRUCTION NO. 4.2:  COMMUNICATION WITH COURT

If it becomes necessary during your deliberations to communicate with me, you may send a note through the bailiff, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

1

## INSTRUCTION NO. 4.3:  RETURN OF VERDICT

2        A verdict form has been prepared for you. After you have reached unanimous agreement on

3   a verdict, your presiding juror should complete the verdict form according to your deliberations,

4   sign and date it, and advise the bailiff that you are ready to return to the courtroom.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CLAIM CONSTRUCTION

2

| Claim Term | Construction |
|---|---|
| "a stream of pseudo random number seeds characterized by a unique match identifier" | "a stream of pseudo random number seeds wherein a unique match identifier is used for generating the stream of pseudo random number seeds" |
| "generating, using the stream of pseudo-random number seeds, a plurality of pseudo-random numbers" | "generating, at the client and using the stream of pseudo-random number seeds, a plurality of pseudo-random numbers" |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28