

## AviaGames Capitalization and Lilith Warrant Memo

To: Accounting Files

Date: March 22, 2022

Prepared by: ARC on behalf of Management

Reviewed by: Eddy Ji, Senior Financial Manager

Bill Liu, VP of Finance

### Purpose

This memo documents the accounting consideration relating to the formation of AviaGames, Inc. ("AviaGames", or the "Company"), as well as the accounting treatment of the warrants issued to one of its investors.

### Company Overview

AviaGames is a mobile skill gaming company that creates a game competition platform that's easy for everyone to play and win real money. The Company develops and publishes multiple app's, including Pocket7Games: Win Cash, Bingo Clash: Win Cash, or Solitaire Clash: Win Real Cash, which are real-money mobile skill gaming app's for players to compete with each other. Players can choose to play against others to win cash rewards in the game.

AviaGames was established in 2020 and is headquartered in Mountain View, California. The Company has a fiscal year which ends on December 31.

### Background

Prior to the creation of AviaGames in 2020, the intellectual property of AviaGames was held by Shanghai Huanyue Network Technology Co., Ltd. ("Shanghai Huanyue"), a Chinese entity with the following investors: Chen Yanjuan, Wang Ping, Zhang Xiaojuan, Lilith, and Vikings. Shanghai Huanyue operates in more than the mobile skill gaming competition space and the initial investors desired to create a U.S. entity (AviaGames, Inc.) and pass the intellectual property to AviaGames. Therefore, Shanghai Huanyue went through a recapitalization to create AviaGames.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

Below is the org structure of Shanghai Huanyue immediately prior to the creation of AviaGames.

Chen Yanjuan
Wang Ping
Zhang Xiaojuan
Lilith
Vikings
58.1%
11.9%
8.75%
8.75%
12.5%
Beijing Lemi
100%
Shanghai Huanyue
Mainland China
HonKong and U.S.
100%
100%
AviaGames Limited HK
NewCode HK
100%
NewCode US

Below is the org structure immediately after recapitalization, upon creation of AviaGames, the U.S. entity.

Chen Yanjuan
Wang Ping
Zhang Xiaojuan
Lilith
Vikings
100%
100%
100%
BVI Chen
BVI Wang
BVI Zhang
100%
80.9524%
19.0476%
100%
Spark Network BVI Holding
Dawn Graceful Limited
M Plus Medical Device
ESOP
60.9131%
8.5313%
8.5313%
12.1875%
9.8368%
AviaGames
BVI and U.S.
100%
Mainland China
Beijing Huanxin
Chen Yanjuan
Wang Ping
Zhang Xiaojuan
73.78%
15.11%
11.11%
VIE Agreement
Beijing Huanyueqixin

**Commented [吉1]:** Upon on the formation of AviaGames, the US entity was entering into an IP license agreement and R&D service agreement with Shanghai Huanyue, so that the gaming business that was conducted by Shanghai Huanyue can be fully transited to AviaGames. My concern here is whether someone will challenge us whether we should consider this is a spin-off of the gaming segment from Shanghai Huanyue, thus carrying over the retained earnings attributed to the gaming business? Do you have any insights? Am I over-concerned?

**Commented [GC2R1]:** The investors before and after are the same so you have common control. So there is not a step up in basis. Any spinoff accounting would be done by Shanghi Huanyue

Page 2 of 11

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

AVIA_0314901

PTX 619.2

Note, upon formation of the AviaGames in May 2020, all Chinese investors were expected to receive shares in the new Company, and each investor received common shares in the new Company. However, one of its Chinese investors, Lilith, did not have a foreign entity to act as the shareholder of AviaGames, Inc. Therefore, the Company issued warrants to Lilith Shanghai (a Chinese entity). On February 3, 2020, the Company granted Lilith a warrant to purchase 8,531,250 shares of the Company's common stock at an exercise price of $0.00001 per share ("Lilith Warrant"). On April 10, 2021, the Company and Lilith Limited entered into an amendment to the warrant agreement in order to extend the exercise period to May 31, 2021. On May 6, 2021, Lilith Limited exercised in full its warrant to purchase 8,531,250 shares of the Company's common stock for a purchase price of $85.31.

Below is a summary of the equity received in AviaGames, as well as the relationship of the holders to the Company upon the formation of AviaGames in May 2020:

| Beneficial Name | Shareholder | Common Shares Received | Restrictions | Relationship to Company |
|---|---|---|---|---|
| Ping Wang | Spark Network (BVI Holding) | 19,674,937 | Vests 1/4 on 5/13/2020 and monthly thereafter | VP of Marketing |
| Yanjuan Chen | Spark Network (BVI Holding) | 41,238,188 | Vests 1/4 on 5/13/2020 and monthly thereafter | CEO |
| Lilith | Lilith | 8,531,250 | Exercised from common stock warrant | Investor |
| Xiaojuan Zhang | Dawn Graceful Limited | 8,531,250 | N/A | Investor/BOD member (same BOD member as M Plus) |
| Vikings | M Plus Medical Device | 12,187,500 | N/A | Investor/BOD member (same BOD member as Dawn Graceful) |

In September 2020, Beijing Huanxin Internet Technology Ltd., (Beijing Huanxin) was established, which is fully owned by AviaGames through equity investments. Beijing Huanxin is acting as the R&D center and back office of AviaGames.

In September 2020, Beijing Huanxin also entered into a set of VIE agreements with Beijing Huanyueqixin Technology Ltd., (Beijing Huanyueqixin). However, there is no substantial business operations conducted by Beijing Huanyueqixin since its inception, and the VIE agreements are terminated in May 2022 by both parties. Considering there is no financial impact resulting from the entering of the VIE agreements, we will not discuss the accounting impact of the VIE agreements in this memo.

**Commented [吉3]:** ARC to review and confirm

**Commented [GC4R3]:** agreed

**Legal Agreements, Documents Reviewed and Supporting Workbooks**

**Recapitalization**:
**Attachment A** – Restructuring Agreement
**Attachment B** – Restructuring Agreement (English Translation)
**Attachment C** – VIE Agreements

**Commented [吉5]:** ARC to review

**Commented [GC6R5]:** agreed

**Lilith Warrants**:
**Attachment A** – Lilith Warrant Supporting Schedule
**Attachment B** – Lilith Warrant Agreement
**Attachment C** – Lilith Warrant Amendment
**Attachment D** – Lilith Warrant Exercise Notice

**Authoritative Guidance**

- Accounting Standards Codification ("ASC") 852, *Reorganizations*
- ASC 805, *Business Combinations*
- ASC 480 – *Distinguishing Liabilities from Equity*
- ASC 815 – *Derivatives and Hedging*
- *PwC Guide- Business Combinations and Noncontrolling Interest (December 2021) – "PwC Business Combinations Guide"*
- *PwC Guide- Financing Transactions (December 2021) – "PwC Financings Guide"*

**Accounting Issues**

1. Does the recapitalization result in a reorganization under ASC 852 Reorganizations?
2. Could the recapitalization be accounted for as a business combination, i.e. did a change of control occur?
3. What is the accounting for the issuance of the Lilith Warrants?

***Accounting Issue #1 – Does the recapitalization result in a reorganization under ASC 852?***

Management reviewed ASC 852, noting this subtopic applies to accounting and financial statement disclosures related to petitions filed with the bankruptcy court and thus management concluded this guidance is not applicable.

**Conclusion:** ASC 852 does not apply to the recapitalization of the Company.

***Accounting Issue #2 – Could the recapitalization be accounted for as a business combination, i.e. did a change of control occur?***

All transactions in which an entity obtains control of one or more businesses qualify as business combinations, as described in the FASB's Master Glossary. The ASC Master Glossary defines a business combination as *"A transaction or other event in which an acquirer obtains control of one or more businesses."*

ASC 805-10-25-1 further establishes the principle for identifying a business combination. Excerpt from ASC 805-10-25-1: *"An entity shall determine whether a transaction or other event is a business combination by applying the definition in this Subtopic, which requires that the assets acquired and liabilities assumed constitute a business. If the assets acquired are not a business, the reporting entity shall account for the transaction or other event as an asset acquisition."*

A business combination is defined as a transaction or other event in which an acquirer obtains control of one or more businesses. Under ASC 805, control is defined as a having a controlling financial interest, as discussed in ASC 810. According to ASC 810, control is based on one of two common transaction characteristics that determine whether to apply the variable interest entity (VIE) approach or the voting interest (VOE) approach. ASC 810 requires a detailed analysis of which reporting entity, if any, should consolidate the VIE under the VIE approach. If the reporting entity is not a VIE, the VOE approach should be applied.

The first step of the analysis is understanding if there was a change of control. As outlined in the background above, the original investors of Shanghai Huanyue were the same investors of AviaGames upon recapitalization. No additional or new parties were introduced during the recapitalization and thus management deems there was no acquirer obtaining control of the business.

Management also considered PwC Business Combinations Guide *Section 2.3.1 new entity created to facilitate a business combination. It is not uncommon to use one or more newly formed legal entities (NewCos) in a business combination or other common corporate transactions, such as legal reorganizations or recapitalizations. There may be various legal, tax, or other business purposes for the creation of a NewCo in such transactions. NewCos may also be created to facilitate combinations between entities that are under common control or under a high degree of*

*common ownership. Common control transactions are excluded from the scope of the business combinations guidance in ASC 805.*

The accounting for common control transactions is based on the nature of what is transferred or exchanged as part of the transaction. Figure BCG 7-2 provides a decision tree which may help determine how the transaction should be measured and presented for financial reporting purposes.

**Figure BCG 7-2**
Accounting for common control transactions

Does common control exist? (BCG 7.1.1)
No
Account for the transaction as an asset acquisition or business combination.
Yes
What was transferred: assets, net assets, or a business?
Assets[1]
Net assets or equity interests
Business
Account for the transaction at carrying value prospectively.
Account for the transaction at carrying value in accordance with the procedural guidance in ASC 805-50 (BCG 7.1.3 and 7.1.4).

Following the flowchart above, management deemed common control of Shanghai Huanyue and AviaGames to exist, transferring a business, thus management will assess ASC 805-50 below.

Transactions between entities under common control: ASC 805-50-05-04 through 05 state the following:

*As noted in paragraph 805-10-15-4(c), the guidance related to business combinations does not apply to combinations between entities or businesses under common control.*

*Some transfers of net assets or exchanges of shares between entities under common control result in a change in the reporting entity. In practice, the method that many entities have used to account for those transactions is similar to the pooling-of-interests method. The Transactions Between Entities Under Common Control Subsections provide guidance on preparing financial statements and related disclosures for the entity that receives the net assets.*

Therefore, management concluded there was not a change of control as the investors prior to and post recapitalization remained the same. Management deems the recapitalization to be a transaction between entities under common control, and thus there was no business combination to be accounted for under ASC 805.

**Conclusion:** There was no business combination to be accounted for under ASC 805.

***Accounting Issue #3 - What is the accounting for the issuance of the Lilith Warrants?***

The Company has reviewed all documents associated with the warrant agreement and has considered the following accounting issues with regards to issuances under these arrangements:

1. Classification of Warrant as Equity or Liability
2. Valuation of Warrants

**Sub accounting issue #1 - Classification of Warrants as Equity or Liability**

The accounting for warrants for common stock is provided for under ASC 480, *Distinguishing Liabilities from Equity*, and ASC 815, *Derivatives and Hedging*. The Company evaluated both warrant issuances to determine if it met certain criteria which would require it to be liability-classified, as follows:

***Step 1 – Determine if the warrants for common stock are considered to be freestanding instruments under ASC 480.***

ASC 480 applies only to freestanding financial instruments that embody an obligation of the issuer. The guidance defines a freestanding financial instrument as a financial instrument that is entered into (1) separately and apart from any of the entity's other financial instruments or equity transactions or (2) in conjunction with some other transaction and is legally detachable and separately exercisable.

**Analysis:**

The Company considered if the warrants are legally detachable and separately exercisable. Determining that the warrant is freestanding and is separately exercisable as the warrant was not entered into in conjunction with other agreements and was entered into apart from the Company's other equity transactions. The Lilith Warrant allows for the transfer to the Lilith Limited and allow for transfer with prior written consent of the Company. As such, the legally detachable criterion is met. Thus, the Company has concluded that the Lilith Warrant is freestanding.

***Step 2 - Is the warrant within the scope of ASC 480?***

The next step is to assess whether the warrant is within the scope of ASC 480. An instrument falls under the scope of ASC 480 if it is any of the following types of instruments:

a. Mandatorily redeemable financial instruments as defined in ASC 480-10-25-4 to 7;
b. An obligation to repurchase the issuer's equity shares by transferring assets as defined in ASC 480-10-25-8 to 13;
c. Certain obligations to issue a variable number of shares as defined in ASC 480-10-25-14.

A contract that is not in the scope of ASC 480 is evaluated under the guidance in ASC 815-40 to determine whether it would meet the requirements to be classified within equity.

**Analysis:**

The Company noted that the Lilith Warrant does not meet any of the criteria outlined in ASC 480 based on the analysis below.

In regards to (a) management referred to the definition for mandatorily redeemable financial instruments per ASC 480-10-25-6 as shown below:

> **Mandatorily redeemable financial instruments** (ASC 480-10-25-6) - *These financial instruments should be classified as liabilities in an entity's financial statements unless the redemption is required to occur only upon the entity's liquidation or termination. A financial instrument issued in the form of shares is mandatorily redeemable if it embodies an unconditional obligation requiring the issuer to redeem the instrument by*

> *transferring its assets at a specified or determinable date or upon an event certain to occur. For example, shares that are required to be redeemed by an entity upon the death of a stockholder (an event certain to occur) are mandatorily redeemable shares.*
>
> *Further, if a financial instrument will be redeemed only upon the occurrence of a conditional event, redemption of that instrument is conditional and, therefore, the instrument does not meet the definition of mandatorily redeemable financial instrument. However, the financial instrument would be assessed at each reporting period to determine whether circumstances have changed such that the instrument now meets the definition of a mandatorily redeemable instrument. If the event has occurred, the condition is resolved, or the event has become certain to occur, the financial instrument is reclassified as a liability.*

The Lilith Warrant does not meet the criteria in (a) (i.e., mandatorily redeemable financial instrument) as it is not applicable to the warrant as it only applies to financial instruments issued in the form of shares.

The Lilith Warrant also does not meet the criteria in (b) as neither the warrant nor the underlying shares are puttable back to the company and therefore the warrant is not an obligation or indexed to an obligation to repurchases shares by transferring assets.

The Lilith Warrant does not meet the criteria under (c) since it is exercisable for a fixed number of shares.

As the Lilith Warrant was determined not to be in the scope of ASC 480, the Company evaluated it under the guidance in ASC 815-40.

***Step 3 - Are the warrants a derivative per the guidance in ASC 815?***

An instrument that is not in the scope of ASC 480 is evaluated under the guidance in ASC 815-40, which states that instruments should be classified as derivatives if they are both (1) indexed to the issuer's own stock and (2) classified in stockholders' equity in the issuer's statement of financial position.

To determine whether an equity contract is indexed to the issuer's own stock, it should be analyzed pursuant to the indexation guidance in ASC 815-40-15-5 through 15-8. There are two steps in evaluating an instrument: (1) evaluate any contingent exercise provisions and (2) perform an analysis of provisions that could change the instrument's settlement amount.

In the first step, an exercise contingency does not preclude an instrument from being considered indexed to an entity's own stock provided that it is not based on either of the following:

> a. An observable market, other than the market for the issuer's stock (if applicable)
>
> b. An observable index, other than an index calculated or measured solely by reference to the issuer's own operations

In the second step, an instrument is considered indexed to an entity's own stock if its settlement amount equals the difference between (1) the fair value of a fixed number of the entity's equity shares and (2) a fixed monetary amount or a fixed amount of a debt instrument issued by the entity. While the second step appears to be a strict fixed-for-fixed concept, an exception is provided such that if the instrument's strike price or the number of shares used to calculate the settlement amount is not fixed, the instrument could still be considered indexed to an entity's own stock if the only variables that could affect the settlement amount would be inputs to a fair value valuation model for a fixed-for-fixed forward or option on equity shares. Accordingly, any feature that adjusts the settlement amount of an equity contract should be carefully analyzed.

If based on the indexation guidance the equity contract is not considered indexed to the issuer's own stock, it would be precluded from equity classification.

**<u>Analysis:</u>**

As the Lilith Warrant was determined not to be in the scope of ASC 480 per step 2 above, the Company evaluated it under the guidance in ASC 815-40.

*Definition of a Derivative*

If the warrant is not a liability per ASC 480, it must be analyzed to determine if it meets the definition of a derivative. ASC 815 defines a derivative as a financial instrument or other contract with all of the following:

1. An underlying amount and a notional amount or payment provision
2. The contract requires no or limited initial net investment
3. The contract requires or permits net settlement

The Lilith Warrant meets the criteria (1) and (2), as there is an underlying amount (stock price), a notional amount (number of shares) and there is no initial net investment. However, the terms of the Lilith Warrant do not implicitly or explicitly require or permit net settlement. In order to determine if the net settlement criteria is met, the Company considered the following from PwC Guide section 5.4.2:

> *To determine whether the net settlement criterion in ASC 815-10-15-83(c) is met, a reporting entity should first determine whether gross physical settlement is required. Gross physical settlement occurs when the asset to be delivered in settlement is both (1) related to the underlying and (2) delivered in quantities equal to the equity component's notional amount. If gross physical settlement is required, a reporting entity should analyze whether the asset (e.g., shares) to be delivered at settlement is readily convertible to cash. The following considerations are typically relevant to that analysis.*
>
> - *Whether the shares received upon settlement are publicly traded*
> - *Whether the number of shares to be exchanged is large relative to the daily transaction volume*
> - *The effect of any restrictions on the future sale of any shares received*

Based off the above considerations, the Company determined that the Lilith Warrant meets gross physical settlement, but the underlying shares are not readily convertible to cash and thus does not meet criteria (3) as the warrant does not have any net settlement provisions. Therefore, the Lilith Warrant does not meet the definition of a derivative. The Company referenced Section 5.6 of the PwC Guide for guidance on treatment of warrants that do not meet the definition of a derivative:

> *The guidance in ASC 815-40 must be applied to freestanding instruments, regardless of whether the instrument meets the definition of a derivative. For example, a freestanding warrant on the shares of a private reporting entity may not meet the definition of a derivative because it cannot be net settled and the underlying equity is not readily convertible to cash. However, the instrument should be analyzed to determine whether it would be considered indexed to the reporting entity's own stock and, if so, to determine whether the instrument meets the additional requirements for equity classification.*

***Derivative Determination*:** Management concluded that the Lilith Warrant does not meet the definition of a derivative per ASC 815. The Lilith Warrant is a freestanding instrument and is not considered an ASC 480 liability, the warrant must be further evaluated under ASC 815-40 to determine whether they would meet the requirements to be classified within equity pursuant to the equity scope exception in ASC 815-40.

The Company will further evaluate the Lilith Warrant to determine whether it would be considered indexed to the Company's own stock.

*Indexation Guidance:*

In accordance with the indexation guidance within ASC 815-40, the Lilith Warrant requires evaluation to determine if it is indexed to the Company's common stock. This evaluation involves a two-step process whereby any exercise contingencies are evaluated in the first step and the settlement amount is evaluated in the second step.

Step 1: An exercise contingency is a provision that entitles the entity to exercise an equity-linked financial instrument based on changes in an underlying, including the occurrence or nonoccurrence of a specified event. An exercise contingency would not preclude an instrument from being considered indexed to an entity's own stock provided that it is not based on (a) an observable market other than the market for the issuer's stock, or (b) an observable index, other than an index calculated or measured solely by reference to the issuer's own operations.

Step 2: An instrument would be considered indexed to an entity's own stock if its settlement amount will equal the difference between the fair value of a fixed number of the entity's equity shares and a fixed monetary amount.

In order for an instrument to qualify for the exception under the first criterion of ASC 815-10-15-74(a): a) any contingent exercise provisions within the instruments must be evaluated; and b) the instruments must meet certain guidelines with respect to settlement as enumerated within the guidance issued in ASC 815-40. In applying the first step of the indexation guidance, if there are no exercise contingencies (i.e., the instrument or feature is immediately exercisable or exercisable only with the passage of time), Step 1 is not applicable given the agreement did not contain any contingent exercise features based on the occurrence of an underlying event. Step 2 is considered in more detail below.

ASC 815-40-15-7D states, "*An instrument's strike price or the number of shares used to calculate the settlement amount are not fixed if its terms provide for any potential adjustment, regardless of the probability of such adjustment(s) or whether such adjustments are in the entity's control. If the instrument's strike price or the number of shares used to calculate the settlement amount are not fixed, the instrument (or embedded feature) would still be considered indexed to an entity's own stock if the only variables that could affect the settlement amount would be inputs to the fair value of a "fixed-for-fixed" forward or option on equity shares*."

In order for the warrant to meet the criteria outlined in Step 2, the exercise price and number of shares issued should all be fixed (subject to permitted anti-dilution adjustments that maintain the original economics of the warrant). Both the exercise price and number of shares associated with the Lilith Warrant are not subject to adjustment and are determined to be fixed. As such, the Company has concluded that the warrant meets the criteria outlined in Step 2 and is indexed to the Company's own stock.

***Indexation Determination*:** Per the above, management concluded that the freestanding warrant is considered to be indexed to the Company's own stock under ASC 815-40-15, and is classified as equity.

***Conclusion for sub accounting issue #1***

The Lilith Warrant does not meet the definition of a liability under ASC 480, the warrant is a freestanding instrument but does not meet the definition of a derivative under ASC 815. Since it is considered to be indexed to the Company's own stock, it is determined to be equity classified. As a result, the outstanding common stock warrants will be classified as equity.

**Sub accounting issue #2 - Valuation of Warrants**

As noted in sub accounting issue #1, the Company valued the warrants (which are not considered derivatives) at fair value as of the issuance date. As of the issue date, the Company's current circumstances and all other external data should be considered in arriving at a justifiable and reasonable estimate of variable terms in the warrant.

The Company determined the warrant issuance date of February 3, 2020 to be the measurement date, and used the black-scholes pricing model to value the warrant. For the assumptions used in the black-scholes model, refer to **Attachment A** for detailed calculation. Please note the Company determined that the value of the warrant was immaterial, as the warrant was issued in February 2020 which occurred significantly before the first financing of the Company (Series A in May 2020) and the initial 409a valuation of the Company's common stock, also in May 2020.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

There were no restrictions on the warrant and the warrant was issued as a mechanism to issue common shares to an existing investor that did not have an entity structure to invest in common stock of a US based company. Based on the above, and the value fair value of the warrant as calculated, the Company concluded that there was no initial accounting for the issuance of the warrants.

As the warrants were set to expire in February 2021, Lilith needed additional time in order to finalize the entity structure in order to receive the common stock investment in Avia Games. As such, on April 10, 2021, the Company modified the warrant to extend the expiration date until May 31, 2021, so the warrant could be exercised with common shares issued to Lilith Limited (a foreign entity). Management assessed the amendment as a modification and noted the follow from the PwC Financing guide:

> *In May 2021, the FASB issued ASU 2021-04, Earnings Per Share (Topic 260), Debt—Modifications and Extinguishments (Subtopic 470-50), Compensation—Stock Compensation (Topic 718), and Derivatives and Hedging—Contracts in Entity's Own Equity (Subtopic 815-40). The ASU clarifies the guidance related to an issuer's accounting for modifications or exchanges of freestanding equity classified written call options (for example, warrants) that remain equity-classified after modification or exchange. The amendments in the ASU are effective for all entities for fiscal years beginning after December 15, 2021, including interim periods within those fiscal years. Early adoption is permitted for all entities, including adoption in an interim period. If an entity elects early adoption in an interim period, the guidance should be applied as of the beginning of the fiscal year that includes that interim period.*
>
> *Under this guidance, a reporting entity should recognize the effect of a modification or an exchange of a freestanding equity-classified written call option that remains equity classified after modification or exchange on the basis of the substance of the transaction in the same manner as if cash had been paid as consideration.*
>
> *Modifications or exchanges that are not related to debt or equity financings, compensation for goods or services, or other exchange transactions within the scope of other guidance should be recognized as a dividend consistent with ASC 815-40-35-17(d). The dividend amount is measured as the excess, if any, of the fair value of the modified or exchanged instrument over the fair value of that instrument immediately before it is modified or exchanged in accordance with ASC 815-40-35-16. See FSP 7.4.1.6 for additional information related to the computation of earnings per share.*

Upon amendment of the warrant, the Company calculated the fair valued the warrant modification using the black-scholes model both before and after the modification, refer to **Attachment A** for detailed calculation. Given the modification only extended the warrant exercisability for a limited amount of time (through May 2021) the value of the warrant before and after the modification was deemed to be not materially different. As such, there was no incremental charge, and had there been a modification charge, based on the guidance in the PwC Financing Guide, any modification charge would be considered a deemed dividend.

***<u>Conclusion for sub accounting issue #2</u>***

Based on above, there is no material accounting impact upon the issuance of the warrant, as well as the modification of the warrant.

**Conclusion:** The outstanding common stock warrants shall be classified as equity, and there is no material accounting impact upon the issuance of the warrant, as well as the modification of the warrant.

**Commented [吉7]:** Basically, we are saying there is no financial impact in relation to the Lilith Warrant transaction. Can you please confirm?

**Commented [GC8R7]:** Correct.

**Overall Memo Conclusion**

Based on the facts and circumstances described above, the Company has determined as there was no business combination, no change of control, there is no fair value step up of assets acquired and liabilities assumed. In

addition, the Company concluded that it has properly accounted for the warrants issued to Lilith, an investor in AviaGames.

**Appendix – Disclosure of Lilith Warrants**

On February 3, 2020, the Company issued 8,531,250 warrants to purchase common stock of the Company (the "Lilith Warrants") in connection with the formation of the Company. The Lilith Warrants entitle the holders of the warrants to acquire shares of the Company's common stock from the Company at an exercise price of $0.00001 per share, subject to, among other matters, the proper completion of an exercise notice and payment. The exercise price and the number of shares of Company common stock issuable upon exercise are subject to customary anti-dilution and adjustment provisions, which include stock splits, subdivisions or reclassifications of the Company's common stock. The Lilith Warrants were amended on April 10, 2021, extending the expiration date from February 3, 2021, to May 31, 2021. The warrants were subsequently exercised on May 6, 2021.

HIGHLY CONFIDENTIAL - ATTORNEY'S EYES ONLY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF
CALIFORNIA

Case No: 5:21-cv-02436-BLF - Skillz Platform Inc. v. AviaGames Inc.

Plaintiff Exh. No.: **PTX 619**

Date Admitted: 2/5/2024

By: Tiffany Salinas-Harwell, Deputy Clerk